1  Melissa Grant (SBN 205633)
   MGrant@initiativelegal.com
2  Valerie Kincaid (SBN 123728)
   VKincaid@initiativelegal.com
3  Arnab Banerjee (SBN #252618)
   ABanerjee@initiativelegal.com
4  Initiative Legal Group APC
   1800 Century Park East, 2nd Floor
5  Los Angeles, California 90067
   Telephone:  (310) 556-5637
6  Facsimile:  (310) 861-9051

7

8  *Attorneys for Proposed Defendant-Intervenors*

9

10                    UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13

14  ASSOCIATION DES ELEVEURS DE          Case No. CV-12-5735-SVW (RZx)
    CANARDS ET D'OIES DU QUÉBEC,
15  a Canadian nonprofit corporation;    **PROPOSED DEFENDANT-**
    HVFG LLC, a New York limited         **INTERVENORS'**
16  liability company; and HOT'S         **MEMORANDUM OF POINTS &**
    RESTAURANT GROUP, INC., a            **AUTHORITIES IN OPPOSITION**
17  California corporation;,             **TO PLAINTIFFS' EX PARTE**
                                         **APPLICATION FOR**
18            Plaintiff,                 **TEMPORARY RESTRAINING**
                                         **ORDER AND ORDER TO SHOW**
19       v.                             **CAUSE RE PRELIMINARY**
                                         **INJUNCTION**
20  KAMALA D. HARRIS, in her official
    capacity as Attorney General of      Opposition Date: July 11, 2012
21  California; EDMUND G. BROWN, in      Time:     3:00 p.m.
    his official capacity as Governor of Judge:    Stephen V. Wilson
22  California; and the STATE OF
    CALIFORNIA,
23
              Defendant.
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

BACKGROUND ........................................................................................ 2

ARGUMENT ............................................................................................... 3

I.  Plaintiffs Are Unlikely to Prevail on the Merits .................................. 4

    A.  The Foie Gras Law Is Not Unconstitutionally Vague ............... 4

        1.  The Foie Gras Law Provides Fair Notice That Sale of Foie Gras is Prohibited ................................................. 4

        2.  The Foie Gras Law is Not Vague Due to Lack of Scienter ................................................................. 5

        3.  The Foie Gras Law is Not Facially Vague ...................... 6

    B.  The Foie Gras Law Does Not Violate the Commerce Clause .............................................................................. 7

        1.  The Foie Gras Law Does Not Directly Regulate Interstate Commerce .................................................. 8

        2.  The Foie Gras Law Does Not Discriminate Against Interstate Commerce .................................................. 9

        3.  The Foie Gras Law Serves a Legitimate Purpose and Imposes No Excessive Burdens on Interstate Commerce ............................................................... 10

        4.  Plaintiffs' Accusations That the Foie Gras Law Amounts to an Improper "State-imposed Boycott" Are Based on Archaic Case Law That Has Been Replaced by the Test Described Above ......................... 11

        5.  The Foie Gras Law Is Similarly Valid Under the Foreign Commerce Clause ............................................ 12

    C.  The Foie Gras Law Is Not Preempted by the PPIA ................ 13

II.  Plaintiffs Cannot Demonstrate Irreparable Harm .............................. 15

III.  TRO is Inequitable in Light of Plaintiffs' Self-Created Emergency ................................................................................ 17

IV.  Plaintiffs' Alleged Harm Is Outweighed by the Documented Animal Welfare Harms That Will Be Inflicted ..................................... 18

CONCLUSION ............................................................................................ 19

**TABLE OF AUTHORITIES**

**Page(s)**

FEDERAL CASES

*Am. Trucking Ass'ns v. City of Los Angeles,*
   559 F.3d 1046 (9th Cir. 2009)........................................................................... 3

*Am. Tunaboat Ass'n v. Brown,*
   67 F.3f 1404 (9th Cir. 1995)............................................................................. 19

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.,*
   476 U.S. 573 (1986) ........................................................................................... 7

*Caplan v. Fellheimer Eichen Braverman & Kaskey,*
   68 F.3d 828 (3rd Cir. 1995)............................................................................. 16

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (2003) ......................................................................................... 11

*Cohen v. Coahoma County, Miss.,*
   805 F. Supp. 398 (N.D. Miss. 1992) ............................................................... 18

*Connally v. General Constr. Co.,*
   269 U.S. 385 (1925) ........................................................................................... 4

*Corning Savings and Loan Ass'n v. Federal Home Loan Bank Bd.,*
   562 F.Supp. 279 (E.D. Ark. 1983) ........................................................... 1, 4, 15

*DeHart v. Town of Austin, Ind.,*
   39 F.3d 718 (7th Cir. 1994) ........................................................................ 1, 11

*Fiba Leasing Co., Inc. v. Airdyne Indus., Inc.,*
   826 F. Supp. 38 (D.Mass. 1993)...................................................................... 17

*FTC v. World Wide Factors, Ltd.,*
   882 F.2d 344 (9th Cir. 1989)........................................................................... 19

*Gerling Global Reinsurance Corp. v. Low,*
   240 F.3d 739 (9th Cir. Cal. 2001) ................................................................... 12

*Granny Goose Foods v. Bhd. Of Teamsters & Auto Truck Drivers,*
   415 U.S. 423, 94 S.Ct. 113 (1974).................................................................... 4

*Greater Iowa Corp. v. McLendon,*
   378 F.2d 783 (8th Cir. 1967) ......................................................................................... 1

*Illinois Restaurant Association v. City of Chicago,*
   492 F. Supp. 2d 891 (N.D. Ill. June 12, 2007) .......................................................... 8, 9

*Lee v. Christian Coalition of Am., Inc.,*
   160 F. Supp. 2d 14 (D.D.C. 2001) .............................................................................. 16

*Levas & Levas v. Antioch,*
   684 F.2d 446 (7th Cir. 1982) ......................................................................................... 6

*Los Angeles Mem. Coliseum Comm. v. Nat'l Football League,*
   634 F.2d 1197 (9th Cir. 1980) ..................................................................................... 15

*Lydo Enter., Inc. v. City of Las Vegas,*
   745 F.2d 1211 (9th Cir. 1994) ..................................................................................... 17

*Minnesota v. Clover Leaf Creamery Co.,*
   449 U.S. 456 (1981) ..................................................................................................... 10

*National Meat Ass'n v. Harris,*
   123 S. Ct. 965, 181 L.Ed. 2d 950 (2012) ............................................................... 13, 14

*Oregon Waste Systems, Inc. v. Department of Environmental Quality of
   Oregon,*
   511 U.S. 93 (1994) ......................................................................................................... 7

*Pike v. Bruce Church, Inc.,*
   397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) ............................................... 7, 11

*S.D. Meyers, Inc., v. City and Cnty. of San Francisco,*
   253 F.3d 461 (9th Cir. 2001) ......................................................................................... 7

*Sandoz, Inc. v. Food and Drug Admin.,*
   439 F. Supp. 2d 26 (D.D.C. 2006) .............................................................................. 15

*Schollenberger v. Commonwealth of Pennsylvania,*
   171 U.S. 1 (1898) ......................................................................................................... 12

*SDDS, Inc. v. South Dakota,*
   47 F.3d 263 (8th Cir. 1995) ........................................................................................... 9

*SSC Corp. v. Town of Smithtown,*
    66 F.3d 502 (2nd Cir. 1995) ........................................................................ 12

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
    240 F.3d 832 (9th Cir. 2001) ........................................................................ 3

*United States v. 594,464 Pounds of Salmon,*
    871 F.2d 824 (9th Cir. 1988) ........................................................................ 6

*United States v. Lanier,*
    520 U.S. 259 (1997) ........................................................................ 4

*United States v. Mazurie,*
    419 U.S. 544 (1975) ........................................................................ 4

*United States v. Nat'l Dairy Products Corp.,*
    372 U.S. 29 (1963) ........................................................................ 4, 5

*United States v. Phillip Morris USA, Inc.,*
    449 F. Supp. 2d 26 (D.D.C. 2006) ........................................................................ 15, 16

*Valley Bank of Nevada v. Plus System, Inc.,*
    914 F.2d 1186 (9th Cir. 1990) ........................................................................ 8, 9

*Ventura County Christian High Sch. v. City of San Buenaventura,*
    233 F. Supp. 2d 1241 (C.D. Cal. 2002) ........................................................................ 17

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ........................................................................ 4, 5, 7

*West Lynn Creamery v. Healy,*
    512 U.S. 186 (1994) ........................................................................ 12

*Winter v. Natural Res. Def. Council,*
    555 U.S. 7, 129 S.Ct. 365 ........................................................................ 3, 4, 17

*Wisc. Gas Co. v. Fed. Energy Regulatory Comm'n,*
    758 F.2d 669 (D.C. Cir. 1985) ........................................................................ 15

**OTHER CASES**

*Pa. Soc'y for the Prevention of Cruelty to Animals v. Bravo Enter., Inc.,*
    237 A.2d 342 (Pa. 1968) ........................................................................ 18

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

*Pacific Merchant Shipping Ass'n v. Voss,*
   12 Cal.4th 503 (1995) ............................................................................ 9

*People v. Coria,*
   21 Cal. 4th 868 (1999) ......................................................................... 6

*People v. Simon,*
   9 Cal. 4th 493 (1995) ........................................................................... 6

*People v. Speegle,*
   53 Cal. App. 4th 1405 (1997) ............................................................. 5

*People v. Vogel,*
   46 Cal. 2d 798 (1956) .......................................................................... 6

*Wilkerson v. State,*
   401 So. 2d 1110 (Fla. 1981) ............................................................... 5

**FEDERAL STATUTES**

21 U.S.C. § 467e ........................................................................................ 13

**OTHER STATUTES**

Cal. Health & Safety Code § 25980 ....................................................3, 4, 13

Cal. Health & Safety Code §§ 25980 - 25984 ............................................. 2

Cal. Health & Safety Code § 25980(b) ...................................................3, 5

Cal. Health & Safety Code § 25981 ......................................................3, 10

Cal. Health & Safety Code § 25982 ...............................................passim

Cal. Health & Safety Code § 25983 ............................................................ 3

Cal. Health & Safety Code § 25984(c) ....................................................... 2

**OTHER AUTHORITIES**

AVMA, *Welfare Implications of Foie Gras* (Sept. 24, 2007), *available at*
   <u>http://www.avma.org/reference/ backgrounders/foie_gras_bgnd.pdf</u> ................. 5

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

**INTRODUCTION**

Proposed Defendant-Intevenors submit this Memorandum in Opposition to Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction.

Plaintiffs have moved to enjoin the State of California from enforcing the Foie Gras Law, a law banning the sale of force fed bird products. Cal. Health & Safety Code § 25982. Although the Foie Gras Law was signed into law over seven years ago, Plaintiffs have waited until now to bring this emergency motion before the Court. Rather than raising these claims earlier, or better yet developing methods to comply with the Foie Gras Law, Plaintiffs have squandered their time in complacency and do not deserve extraordinary relief from this self-created "emergency."

Plaintiffs seek to invalidate California's Foie Gras Law but fail to raise a single meritorious challenge. The Foie Gras Law is designed to protect birds from the trauma of constant force feeding, and represents an ordinary exercise of the State's historic police power to prevent cruelty to animals and to regulate and protect the health, safety, and morals of its citizenry. *DeHart v. Town of Austin, Ind.*, 39 F.3d 718, 722 (7th Cir. 1994). The law clearly prohibits the production and sale of foie gras and is therefore not void for vagueness. Furthermore, the law evenhandedly regulates the production and sale of foie gras within California's borders and therefore does not discriminate against out-of-state producers, and does not conflict with either the federal government's Commerce Clause powers or existing federal legislation.

The emergency injunctive remedies Plaintiffs seek are reserved for extraordinary cases and only granted "under strict rules for the protection of all parties." *Corning Savings and Loan Ass'n v. Federal Home Loan Bank Bd.*, 562 F.Supp. 279, 283 (E.D. Ark. 1983) (quoting *Greater Iowa Corp. v. McLendon*, 378

1  F.2d 783, 799 (8th Cir. 1967).  Plaintiffs have failed to show why such remedies are

2  necessary or appropriate in the present case.  The Court should therefore deny

3  Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to

4  Show Cause Re Preliminary Injunction.

5  **BACKGROUND**

6  On September 29, 2004, former California Governor Arnold Schwarzenegger

7  signed SB 1520 (the "Foie Gras Law"), a bill prohibiting the force feeding of birds

8  for the purpose of enlarging the birds' livers beyond normal size or hiring another

9  person to do so, and prohibiting the sale of products produced in this manner.  Cal.

10  Health & Safety Code §§ 25980 - 25984.  In essence, the law prohibits the

11  production and sale of the food product known as foie gras – the specially fattened

12  liver of a duck or a goose.  The law's effective date was delayed until July 1, 2012

13  in order to "allow a seven and one-half year period for persons or entities engaged

14  in agricultural practices that include raising and selling force fed birds to modify

15  their business practices." *Id.* § 25984(c).

16  Foie gras is typically produced through a process known as "gavage," or

17  force feeding the birds by placing a long tube down the birds' esophagi and

18  pumping an unnatural quantity of food directly into their stomachs. *See* Declaration

19  of Jennifer Fearing In Support of Motion for Leave to Intervene ("Fearing Decl."),

20  ¶ 5.  Leading welfare scientists and the general public consider this method of

21  feeding to be one of the most inhumane practices in food production. *Id.* ¶ 6;

22  Declaration of Stephen Wells In Support of Motion for Leave to Intervene ("Wells

23  Decl."), ¶ 3; Declaration of Bruce Friedrich In Support of Motion for Leave to

24  Intervene ("Friedrich Decl.") at ¶¶ 9-10.  It has been condemned by Israel's highest

25  court as unlawfully cruel, Wells Decl., ¶ 3, and more than a dozen other countries

26  have either specifically prohibited the practice or interpreted it as illegal under

27  existing cruelty laws. *Id.*

28  The Foie Gras Law contains two prohibitions.  First, the law prohibits within

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

California the "force feed[ing of] a bird for the purpose of enlarging the bird's liver beyond normal size, or hir[ing] another person to do so." Cal. Health & Safety Code § 25981. Second, the law prohibits the sale of a product in California "if it is the result of force feeding a bird for purposes of enlarging the bird's liver beyond normal size." *Id.* § 25982. The law defines "force feeding" as

> a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily. Force feeding methods include, but are not limited to, delivering feed through a tube or other device inserted into the bird's esophagus.

*Id.* § 25980(b). The law allows law enforcement to issue citations and impose civil penalties. *Id.* § 25983. The statute does not authorize imprisonment. *Id.*

The clear purpose of the Foie Gras Law is to prevent the cruelty associated with the current foie gras production practice of force feeding ducks and geese, and this intent is clear from former Governor Schwarzenegger's signing message. The signing message states:

> This bill's intent is to ban the current foie gras production practice of forcing a tube down a bird's throat to greatly increase the consumption of grain by the bird. It does not ban the food product, foie gras. This bill provides 7 and one half years for agricultural husbandry practices to evolve and perfect a *humane* way for ducks to consume grain to increase the size of its liver through natural processes. If agricultural producers are successful in this endeavor, the ban on foie gras sales and production in California will not occur.

Cal. Health & Safety Code § 25980, His. & Stat. Notes (emphasis added).

## ARGUMENT

To obtain a preliminary injunction, a plaintiff must establish that (1) it "is likely to succeed on the merits," (2) it "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S.Ct. 365, 374). The requirements for a temporary

1    restraining order (TRO) are largely the same. *Stuhlbarg Int'l Sales Co. v. John D.*

2    *Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001). A TRO is an "extraordinary"

3    remedy, *Winter*, 555 U.S. at 22, the purpose of which is to "preserv[e] the status

4    quo and prevent[ ] irreparable harm just so long as is necessary to hold a hearing,

5    and no longer." *Granny Goose Foods v. Bhd. Of Teamsters & Auto Truck Drivers*,

6    415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974). Injunctions are "granted sparingly

7    and under strict rules for the protection of all parties." *Corning Savings and Loan*

8    *Ass'n.*, 562 F.Supp. at 283.

9    **I.**    **Plaintiffs Are Unlikely to Prevail on the Merits**.

10      **A.**    **The Foie Gras Law Is Not Unconstitutionally Vague**.

11      There is a "strong presumptive validity" to legislative acts. *United States v.*

12    *Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Even so, "a statute which

13    either forbids or requires the doing of an act in terms so vague that men of common

14    intelligence must necessarily guess at its meaning and differ as to its application,

15    violates the first essential of due process of law." *Connally v. General Constr. Co.*,

16    269 U.S. 385, 391 (1925); *United States v. Lanier*, 520 U.S. 259, 266 (1997). The

17    key inquiry in a vagueness analysis is whether the challenged law provides "fair

18    notice." *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S.

19    489, 498 (1982). Vagueness challenges that do not involve First Amendment rights

20    must be examined only as applied to the case before the court. *United States v.*

21    *Mazurie*, 419 U.S. 544, 550 (1975).

22      **1.**    **The Foie Gras Law Provides Fair Notice That Sale of Foie**
23           **Gras is Prohibited**.

24    Section 25982 prohibits the sale of products that are the result of force

25    feeding birds. Cal. Health & Safety Code § 25980. Plaintiffs argue that the Foie

26    Gras Law's definition of "force feeding" is unconstitutionally vague because there

27    is supposedly some ambiguity regarding the proper measurement of food that may

28    be forcibly poured down a bird's throat for the purpose of enlarging his liver. Pls.'

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

1  Br. Supp. TRO at 12-13 (Dkt. No. 9). But the law specifically defines force feeding
2  as "a process that causes the bird to consume more food than a typical bird of the
3  same species would consume voluntarily [including] delivering food through a tube
4  or other device inserted into the bird's esophagus." Cal. Health & Safety Code §
5  25980(b).

6      Foie gras is normally produced by feeding birds large amounts of food
7  through a manually inserted tube for several weeks prior to slaughter. Fearing
8  Decl., at ¶ 5. Indeed, "[t]here is no current alternative to force feeding that
9  produces an equivalent product [to foie gras]. AVMA, *Welfare Implications of*
10 *Foie Gras* (Sept. 24, 2007), *available at* http://www.avma.org/reference/
11 backgrounders/foie_gras_bgnd.pdf (last accessed July 10, 2012). Accordingly, a
12 seller of ordinary intelligence would understand that bird livers that are enlarged to
13 ten times the size of a normal bird's liver, or which are marketed as foie gras,
14 almost certainly violates this standard. See Cheever Decl., at ¶¶ 6-7. This seller
15 may then take appropriate steps to avoid liability.

16     Even if there was some legitimate confusion about whether funneling large
17 amounts of food down an animal's throat constitutes prohibited force feeding,
18 "statutes are not automatically invalidated as vague simply because difficulty is
19 found in determining whether certain marginal offenses fall within their language."
20 *Nat'l Dairy Products Corp.*, 372 U.S. at 32. California courts, among others, have
21 rejected vagueness challenges to animal protection laws that impose greater
22 penalties and contain greater ambiguity than Section 25982. *See, e.g., People v.*
23 *Speegle*, 53 Cal. App. 4th 1405 1416 (1997) (finding no vagueness in animal
24 cruelty law that imposed misdemeanor penalty for failing to give animal "proper
25 care and attention"); *Wilkerson v. State*, 401 So. 2d 1110, 1111 (Fla. 1981)
26 (rejecting vagueness challenge to animal cruelty law).

27     Whatever ambiguities might arise in marginal cases, sections 25980(b) and
28 25982 give Plaintiffs clear notice that virtually all foie gras is prohibited, and thus

- 5 -

1    is not impermissibly vague as applied to the circumstances before the court.

2         **2.    The Foie Gras Law is Not Vague Due to Lack of Scienter**.

3         Plaintiffs' claim that the Foie Gras Law is unconstitutional because it does

4    not include a required mental state is similarly unavailing.  The critical inquiry in

5    any vagueness analysis is whether the challenged law provides persons of ordinary

6    intelligence fair notice of the prohibited conduct.  *See Hoffman Estates*, 455 U.S. at

7    499.  The lack of a scienter requirement does not render a law unconstitutionally

8    vague.  *Id.*

9         Indeed, it is well-settled that, when faced with a penal statute that contains no

10   mental state, the Courts will apply the typical "knowing" standard to the

11   prohibition.  *See People v. Simon*, 9 Cal. 4th 493, 507 (1995) (interpreting provision

12   of Corporations Code as including "knowing" scienter where statute was silent to

13   avoid overly harsh penalties); *People v. Coria*, 21 Cal. 4th 868, 880 (1999)

14   (construing prohibition on the production of methamphetamine in the Health &

15   Safety Code as requiring a "knowing" scienter where statute was silent to avoid

16   unfair application).  Thus, Plaintiffs' complaint that the statute does not specifically

17   list a mental state required before citations can issue goes nowhere.

18        Even if the Court were to construe the legislature's failure to state a required

19   mental state as an indication that the measure imposes strict liability, this also

20   provides no help to Plaintiffs, as courts generally validate strict liability associated

21   with minor penalties for violating economic regulations and public welfare laws.

22   *See United States v. 594,464 Pounds of Salmon*, 871 F.2d 824, 829 (9th Cir. 1988)

23   (strict liability provisions in wildlife law that imposed significant civil penalties on

24   international corporation were not vague); *Levas & Levas v. Antioch*, 684 F.2d 446,

25   450 (7th Cir. 1982) (strict liability prohibition on sale of drug pipes that imposed

26   $500 per violation per day penalty was not vague); *People v. Vogel*, 46 Cal. 2d 798,

27   801 n.2 (1956) (stating that public health and safety laws may properly impose

28   strict liability even when criminal sanctions are relied upon for enforcement).

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

1   Plaintiffs' argument that the statute's omission of a specific mental state renders it

2   unconstitutional must therefore fail as a matter of law.

3       **B.**    **The Foie Gras Law Does Not Violate the Commerce Clause**.

4       The Foie Gras law does not violate the Commerce Clause because it does not

5   directly regulate or discriminate against interstate commerce, it does not favor in-

6   state economic interests over out-of-state interests, the State's interests in enacting

7   the law are legitimate, and any burden on interstate commerce clearly exceeds the

8   putative local benefits. *See Pacific Northwest Venison Producers v. Smitch*, 20

9   F.3d 1008, 1012 (9th Cir. 1994) (holding that an import ban and a ban on private

10   possession of certain wildlife did not discriminate against interstate commerce

11   because such a law "adds nothing to the prohibitions that apply equally to in-state

12   and out-of-state interests"). The test for whether a law runs afoul of the Dormant

13   Commerce Clause has two parts. First, the court must determine if the law at issue

14   "directly regulates or discriminates against interstate commerce" or if "its effect is

15   to favor in-state economic interests over out-of-state interests." *Brown-Forman*

16   *Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579 (1986); *Oregon*

17   *Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511 U.S.

18   93, 99 (1994) (discrimination "means differential treatment of in-state and out-of-

19   state economic interests that benefits the former and burdens the latter"); *S.D.*

20   *Meyers, Inc., v. City and Cnty. of San Francisco*, 253 F.3d 461, 466 (9th Cir. 2001).

21   If the law regulates in-state and out-of-state activities equally, and only indirectly

22   affects interstate commerce, the Court must then examine whether the State's

23   interest is legitimate and whether the burden on interstate commerce clearly

24   exceeds the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142,

25   90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

26       The Foie Gras Law does not directly regulate interstate commerce,

27   discriminate against interstate commerce, or favor in-state economic interests,

28   contrary to Plaintiffs' allegations. Furthermore, the Foie Gras Law is supported by

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

1    a legitimate state purpose and imposes no undue burden on interstate commerce.
2    The law is therefore valid under the Dormant Commerce Clause.   Importantly,
3    another court has decided precisely this same issue and found that there was no
4    violation of the Dormant Commerce Clause. *Illinois Restaurant Association v. City*
5    *of Chicago*, 492 F. Supp. 2d 891 (N.D. Ill. June 12, 2007).

6           1.    **The Foie Gras Law Does Not Directly Regulate Interstate**
7                 **Commerce.**

8           The Foie Gras Law affects only activities and transactions within California,
9    and therefore does not "directly regulate" interstate commerce.    Plaintiffs
10   incorrectly state that the Foie Gras Law's "only practical effect is to regulate
11   economic activity beyond California's borders." Pls.' Br. Supp. TRO at 16 (Dkt.
12   No. 9). The law and the facts in this case do not support this contention.

13          The Foie Gras Law was designed to prohibit the production and sale of foie
14   gras within the State of California.    When the law was passed, foie gras was
15   produced and sold within the State's borders. Fearing Decl. at ¶ 10. As a result of
16   the law, foie gras is no longer produced in California. *Id.* Thus, Plaintiffs'
17   contention that the "only practical effect is to regulate economic activity beyond
18   California's borders" is false.

19          Transactions that occur within a state's borders do not directly regulate
20   interstate commerce. "'Direct regulation' occurs when a state law directly affects
21   transactions that 'take place across state lines' or entirely outside of the state's
22   borders." *Valley Bank of Nevada v. Plus System, Inc.*, 914 F.2d 1186, 1190 (9th
23   Cir. 1990) (holding that Nevada could constitutionally impose fees on withdrawals
24   from automated teller machines (ATMs) within the state even for ATMs that
25   belonged to out-of-state banks).   The Foie Gras Law expressly prohibits only the
26   sale of force fed bird products in California. Cal. Health & Safe Code § 25982. The
27   law is not written to regulate transactions outside of the State's borders and
28   Plaintiffs are allowed to produce and sell foie gras outside of California. *See id.*

Plaintiffs can even purchase foie gras outside California, and bring it into the state for personal use without violating the Act. Thus, any effects on sales outside of California would be incidental and attenuated, not direct. Because it applies only to California sales, Section 25982 does not run afoul of the Commerce Clause even if it has an indirect effect on out-of-state parties. *See Valley Bank of Nevada*, 914 F.2d at 1190.

This result is consistent with *Illinois Restaurant Association v. City of Chicago*, in which the Northern District of Illinois held that Chicago's city-wide foie gras sales ban did not violate the Dormant Commerce Clause. *Illinois Restaurant Ass'n*, 492 F. Supp. 2d at 899 (holding that, while the ban did reduce out-of-state parties' profits, it did "not govern foie gras production or pricing. Thus, it neither regulates nor discriminates against interstate commerce"). Because it only affects activities and transactions within California, and makes no attempt to regulate beyond the borders of the State, the Foie Gras Law does not directly regulate interstate commerce.

### 2. The Foie Gras Law Does Not Discriminate Against Interstate Commerce.

The Foie Gras Law evenhandedly applies to all producers of force fed bird products, whether in-state or out-of-state, and is therefore nondiscriminatory under the Commerce Clause. Courts have identified three general ways of discriminating against interstate commerce: a statute may facially discriminate against interstate commerce, may be facially neutral but have a discriminatory purpose, or be facially neutral but have a discriminatory effect. *Pacific Merchant Shipping Ass'n v. Voss*, 12 Cal. 4th 503, 517 (1995); *SDDS, Inc. v. South Dakota*, 47 F.3d 263, 267 (8th Cir. 1995).

The Foie Gras Law does not facially discriminate against interstate commerce because it contains no language that gives California poultry producers any advantage over their out-of-state counterparts. *See* Cal. Health & Safe Code §

25982.  The law straightforwardly bans the sale of all force fed bird products, whether or not the seller is an in-state or out-of-state entity. *See id.*

The Foie Gras Law also does not have a discriminatory purpose.  The purpose of the law, according to Senate President pro Tempore John Burton and Governor Schwarzenegger, is not to protect in-state businesses or to put out-of-state firms at a disadvantage, as would be impermissible under the Commerce Clause. *See Brown-Forman Distillers Corp.*, 476 U.S. at 579 (1986).  Rather, the sole purpose is to ban the force feeding of birds to enlarge their livers, and to prohibit the in-state sale of such products. *See* Declaration of Michael Tenenbaum in Support of Plaintiffs' Application for Temporary Order and Order to Show Cause re Preliminary Injunction, Exhibit A at 36 (Dkt. No. 7). Plaintiffs argue that Section 25981's prohibition on force feeding birds is sufficient to protect birds in the State, and that the Foie Gras Law must therefore intend to target out of state producers. Pls.' Br. Supp. TRO at 20 (Dkt. No. 9).  However, by eliminating the local market demand for force fed bird products, Section 25982 further reduces the incentive for in-state poultry producers to force feed birds in contravention of the ban. Therefore, this section is an essential part of furthering the law's proper anti-cruelty purpose of preventing the force feeding of birds, and not a measure that discriminates against interstate commerce, as Plaintiffs allege.

Finally, the Foie Gras Law has no discriminatory effect.  The law forbids the sale of force fed bird products, regardless of the origin of those products. Accordingly, force fed bird products from other states and other countries are treated no differently than force fed bird products originating from California. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471-72 (1981) (state statute that banned the sale of milk in plastic, nonreturnable milk containers did not effect "simple protectionism," but, rather, "regulate[d] evenhandedly," because the state applied "without regard to whether the milk, the containers, or the sellers are from outside the State").

Because the law applies the same restrictions to in-state and out-of-state parties, the Foie Gras Law neither discriminates against interstate commerce nor favors in-state economic interests.

### 3. The Foie Gras Law Serves a Legitimate Purpose and Imposes No Excessive Burdens on Interstate Commerce.

Because the Foie Gras Law supports a legitimate purpose, and because it does not impose clearly excessive burdens on interstate commerce, the statute is permissible under the Commerce Clause.

By regulating conduct towards animals in California, the Foie Gras Law advances the legitimate purpose of protecting the health, safety and morals of California's citizens. *See DeHart* 39 F.3d at 722 ("regulation of animals has long been recognized as part of the historic police power of the States," as part of the States' "authority to provide for the public, health, safety, and morals"); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 538 (2003) (recognizing the "legitimate governmental interests in . . . preventing cruelty to animals."). Thus the manner in which a society treats animals is an issue of profound moral importance and well within California's police power to regulate. The local benefits of the Foie Gras law are real, significant, and legitimate.

Furthermore, the burdens the Foie Gras Law imposes on interstate commerce are minimal, and are not "clearly excessive in relation" to the important local benefits realized as a result of the law. *See Pike*, 397 U.S. at 142. The Foie Gras Law, like virtually all government regulations, may require Plaintiffs to expend some additional resources to comply with the law. But in this case, the burden is minimal. Plaintiffs are free to sell force fed bird products anywhere outside California. And in California, Plaintiffs are free to sell as much duck meat or products as they care to. The only thing they may not do is sell animal products which come from animals which were fed using one particular method of feeding, the method of force feeding. Plaintiffs suffer no excessive burdens under the Foie

1  Gras Law. The Foie Gras Law does not directly regulate or discriminate against

2  interstate commerce, nor does it impose an excessive burden on interstate

3  commerce. The law therefore passes muster under the Commerce Clause. *See*

4  *Spoklie v. Montana*, 411 F.3d 1051 (9th Cir. 2005) (State statute that imposed

5  restrictions on certain ranching practices did not place unconstitutional burden on

6  interstate commerce where there was no plausible evidence that interstate burden

7  would be more than incidental and burden was therefore not excessive); *Pacific*

8  *Northwest Vension Producers*, 20 F.3d 1008, 1015 (9th Cir. 1994) (finding that

9  because no evidence was offered to support a finding of more than minimal

10 economic impact on interstate commerce and foreign commerce, there was no

11 excessive burden).

**4.  Plaintiffs' Accusations That the Foie Gras Law Amounts to an Improper "State-imposed Boycott" Are Based on Archaic Case Law That Has Been Replaced by the Test Described Above.**

15     Before applying more conventional Commerce Clause analysis to the Foie

16 Gras Law, Plaintiffs oddly request that the Court summarily overturn the law as a

17 "state boycott on wholesome and unadulterated food products from other states."

18 Pls.' Br. Supp. TRO 15 (Dkt. No. 9). Plaintiffs base this argument heavily on

19 *Schollenberger v. Commonwealth Of Pennsylvania*, in which the Supreme Court

20 overturned a Pennsylvania prohibition on the sale of oleomargarine more than a

21 century ago. *Schollenberger v. Com. of Pa.*, 171 U.S. 1 (1898). Decided in 1898,

22 *Schollenberger* is a product of the now defunct *Lochner* era. *Schollenberger* has

23 not been cited since *Nat'l Kerosene Heater Association* in 1987, with the exception

24 of twice in the 1990's as a historical curiosity. *See West Lynn Creamery v. Healy*,

25 512 U.S. 186, 206 n.22 (1994); *SSC Corp. v. Town of Smithtown*, 66 F.3d 502, 504

26 (2nd Cir. 1995). Accordingly the Court should disregard Plaintiffs' arguments

27 citing the outdated *Schollenberger* case, and instead apply modern Commerce

28 Clause analysis as discussed above.

- 12 -

### 5. The Foie Gras Law Is Similarly Valid Under the Foreign Commerce Clause.

While "'any state law that involves the state in the actual conduct of foreign affairs is unconstitutional,' . . . 'any action that has only some incidental or indirect effect in foreign countries' is not." *Gerling Global Reinsurance Corp. v. Low*, 240 F.3d 739, 752 (9th Cir. 2001). As explained above, The Foie Gras Law regulates sales of force fed bird products in California only. *See* Cal. Health & Safe Code § 25982. The law never even mentions international trade, and certainly does not constitute "actual conduct of foreign affairs." *See id.* The impact on out-of-state parties, whether in different states or different countries, is indirect, and is incidental to California's pursuit of its legitimate local purposes. Plaintiffs' alarmist claims that Section 25982 will place California "off-limits to foreign commerce with Canada and the United States trading partners in Europe" are unfounded. *See* Pls.' Br. Supp. TRO at 21 (Dkt. No. 9). Rather, foreign entities will have exactly the same rights under Section 25982 as any American or Californian. As a locally applicable and otherwise legitimate law with only incidental effects on foreign commerce, the Foie Gras Law does not violate the Foreign Commerce Clause. *See Illinois Rest. Ass'n v. City of Chicago*, 492 F. Supp. 2d 891, 905 (N.D. Ill. 2007) (holding that because a city ordinance banning foie gras – similar to the California law at issue here – treated in-state and out-of-state foie gras equally, there was no violation of the Foreign Commerce Clause); *Cavel Int'l v. Madigan*, 500 F.3d 551, (7th Cir. 2007).

### C. The Foie Gras Law Is Not Preempted by the PPIA.

Buried for some reason within their Commerce Clause argument, Plaintiffs attempt to argue that "to the extent it imposes any additional requirement" on the producers of USDA-approved duck products for any reason of public health, Section 25982 is preempted by the federal Poultry Products Inspection Act ("PPIA"). Pls.' Br. Supp. TRO at 18 (Dkt. No. 9). As a threshold matter, this

1    claim is not pled in Plaintiffs' complaint, and thus cannot form the basis for

2    injunctive relief.

3        Moreover, as noted above, the Foie Gras Law is an anti-cruelty law, the sole

4    purpose of which is to prevent the inhumane practice of force feeding birds and the

5    sale of products produced in this manner in the State. *See* Governor's Signing

6    Statement, Cal. Health & Safety Code § 25980, His. & Stat. Notes. This purpose is

7    in no way related to preventing adulterated or misbranded poultry products. While

8    Plaintiffs correctly note that the PPIA regulates the inspection and slaughter of

9    poultry, the law is not at all concerned with the humane treatment of birds, unlike

10   the Foie Gras Law at issue here. Further, Plaintiffs advance a very limited and

11   incomplete understanding of the holding in *National Meat Ass'n v. Harris*, 123 S.

12   Ct. 965, 181 L.Ed. 2d 950 (2012) and its treatment of the FMIA. Far from

13   supporting a finding that the Foie Gras Law is preempted by the PPIA, *National*

14   *Meat Ass'n* makes clear that both the Foie Gras Law's force feeding and sales bans

15   are distinguishable from the nonambulatory slaughter ban overturned in *National*

16   *Meat Ass'n*.

17       The Foie Gras Law's ban on the force feeding of birds is distinguishable

18   from the law at issue in *National Meat Ass'n* in that it regulates activity that takes

19   place *entirely on the farm*, and where foie gras is sold in California and therefore

20   clearly falls outside the reach of the PPIA. Indeed, the Foie Gras Law in no way

21   touches the "premises, facilities, and operations" of federally-inspected poultry

22   slaughterhouses regulated under the PPIA. *See* 21 U.S.C. §467e. The Foie Gras

23   Law simply prohibits the force feeding of birds for the purpose of enlarging their

24   livers, and prohibits sale of products produced from birds who have been force fed.

25   Thus, in contrast to the law at issue in *National Meat Ass'n*, which the Supreme

26   Court ruled to impacted the conduct of slaughterhouses with respect to

27   nonambulatory animals, the Foie Gras Law in no way "reaches into the

28   slaughterhouse's facilities and affects its daily activities." *National Meat Ass'n* at

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

974.

The Supreme Court's decision in *National Meat Ass'n* also in no way means that the Foie Gras Law's ban on the sale of foie gras is preempted. The sales ban itself will have no impact or effect on poultry inspection or the operations of poultry slaughterhouses - the law simply prohibits the sale of foie gras products produced in a way that California has deemed to be unacceptably cruel. In *National Meat Ass'n,* the Court found that while the FMIA's preemption ban does not usually regulate commercial sales activities of slaughterhouses, when read in conjunction with the other provisions of §599f – which targeted slaughterhouse activity expressly covered by the FMIA and its regulations, such as receipt, purchase, butchering, and processing – the sales ban would achieve the same effect as enforcement of all of the law's other provisions. *National Meat Ass'n v. Harris*, No. 10-224 at 10. Here, the California foie gras law's sales ban cannot be said to "function as a command to slaughterhouses to structure their operations," *Id.,* in any particular way; it simply prohibits the sale of a product produced *on the farm* in a certain manner and as explained above the PPIA has zero application to on-farm husbandry practices; they are outside the scope of the PPIA. Unlike the foie gras ban, the clear purpose of which is to prevent cruelty, neither the PPIA nor any regulations or directives implementing it contain provisions pertaining to the humane treatment of animals slaughtered for humane consumption and this anti-cruelty law, as discussed, "in no way reaches into [a] slaughterhouse's facilities [or] affects its daily activities," *Id.* at 13.

The Foie Gras Law's ban on both the force feeding of birds and sale of foie gras created from force fed birds is thus not preempted by federal law because it is an anti-cruelty law that operates outside the scope of the PPIA and thus does not touch on poultry slaughter or inspection or in any way impose requirements on slaughterhouse operations.

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

1   **II.    Plaintiffs Cannot Demonstrate Irreparable Harm**.

2       Plaintiffs also fail to establish that they will suffer any substantial harm, let

3   alone irreparable harm, that outweighs the significant animal welfare interests that

4   are centrally important to the state of California, the public and Defendant-

5   Intervenors, and their members should a TRO be granted.

6       First, Plaintiffs' claim of economic injuries is fatally flawed.  Plaintiffs argue

7   that if they are immediately forced to stop selling foie gras and other duck products,

8   the financial harm they will suffer as a result would be "devastating."  Pls.' Br.

9   Supp. TRO at 22 (Dkt. No. 9).  However, "[i]t is well settled that monetary loss,

10  *even where substantial*, does not, in and of itself, constitute irreparable harm."

11  *Corning Savings and Loan Ass'n*, 562 F. Supp. at 283. (emphasis added).  *See also*

12  *Los Angeles Mem. Coliseum Comm. v. Nat'l Football League*, 634 F.2d 1197, 1202

13  (9th Cir. 1980) ("It is well established . . . that . . . monetary injury is not normally

14  considered irreparable.").    Indeed, monetary losses will rise to the level of

15  "irreparable harm only where the loss *threatens the very existence of the movant's*

16  *business*," *Wisc. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674

17  (D.C. Cir. 1985) (emphasis added), or where the economic harm is "so severe as to

18  cause extreme hardship to the business." *Sandoz, Inc. v. Food and Drug Admin.*,

19  439 F. Supp. 2d 26, 32 (D.D.C. 2006) (quotations omitted).  *See also United States*

20  *v. Phillip Morris USA, Inc.*, 449 F. Supp. 2d 26, 32 (D.D.C. 2006) (standard for

21  determining whether economic loss constitutes irreparable harm is "complete

22  destruction of [the] business").  Here, Plaintiff HVFG claims that California sales

23  represent approximately 18.7% of its total sales volume, and AECOQ claims that

24  such sales represent 25% of the sales volume of one of its largest members. Pls.'

25  Br. Supp. TRO at 22 (Dkt. No. 9).  Plaintiff Hot's Restaurant group only refers to a

26  vague "loss in sales" and does not allege that it will lose a particular percentage of

27  its business due to loss of sales from a single menu item.  This moderate (25% or

28  less) loss in sale volume does not rise to the level of irreparable harm.  Nor do

1    Plaintiffs allege that loss of the California market would result in the "complete

2    destruction" of their respective businesses. *Phillip Morris*, 449 F. Supp. 2d at 32.

3    Indeed, restaurants that serve foie gras can make up lost profits by selling other

4    foods.  Likewise, out-of-state producers may make up for lost sales by decreasing

5    production of foie gras and therefore reducing operating costs.

6        Additionally, Plaintiffs argue that, in the absence of an injunction, restaurants

7    such as Hot's Kitchen, owned by Plaintiff Hot's Restaurant Group, will be forced to

8    either stop selling foie gras and other duck products or "face crippling penalties if

9    any police or animal control officer cites them and it turns out that the product in

10   question came from a duck that had been fed 'too much.'"  Pls.' Br. Supp. TRO at

11   21 (Dkt. No. 9).  Plaintiffs allege these penalties could amount to over $ 1 million.

12   *Id.* at 22.  However, it is hard to swallow Plaintiffs' inflated claims that the civil

13   penalties for potential citations issued pursuant to this statute will be significant.

14   Not only does this argument inappropriately assume the merits of Plaintiffs'

15   vagueness arguments, but if Plaintiffs are fined for selling foie gras that is a harm

16   that is entirely self-inflicted.  *See Caplan v. Fellheimer Eichen Braverman &*

17   *Kaskey*, 68 F.3d 828, 839 (3rd Cir. 1995) ("If the harm complained of is self-

18   inflicted, it does not qualify as irreparable.");  *Lee v. Christian Coalition of Am.,*

19   *Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001) ("The case law is well-settled that a

20   preliminary injunction movant does not satisfy the irreparable harm criterion when

21   the alleged harm is self-inflicted." (internal quotations and alteration omitted));

22   *Fiba Leasing Co., Inc. v. Airdyne Indus., Inc.*, 826 F. Supp. 38, 39 (D.Mass. 1993)

23   (same).

24       Finally, Plaintiffs argue that they face irreparable harm due to "threats from

25   animal extremists who have vowed to take the law into their own hands."  Pls.' Br.

26   Supp. TRO at 22 (Dkt. No. 9).  This argument is not only inflammatory and

27   sensational, but it is based on pure speculation that someone, somewhere may one

28   day do something that harms Plaintiffs.  Such speculation does not constitute harm,

1    let alone irreparable harm.  *See Winter*, 555 U.S. at 22, 129 S. Ct. at 375-76

2    ("[i]ssuing a preliminary injunction based only on a possibility of irreparable harm

3    is inconsistent with our characterization of injunctive relief as an extraordinary

4    remedy . . . .").    Further, Plaintiffs do not explain how they think that the

5    extraordinary relief of a TRO would somehow mitigate this alleged "threat," which

6    are independent criminal acts which would presumably occur whether or not this

7    Court issues an injunction.

8    **III.    Issuance of an Injunction Would be Inequitable in Light of Plaintiffs'
            Self-Created Emergency.**

9

10       The issuance of a TRO is entirely inappropriate in this case due to Plaintiffs'

11   unreasonable delay in seeking relief.  "A delay in seeking [injunctive relief] is a

12   factor to be considered in weighing the propriety of relief.  *Lydo Enter., Inc. v. City*

13   *of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1994).  Plaintiffs filed this pre-

14   enforcement challenge more than *seven years* after the Foie Gras Law was signed

15   into law, and one day after the challenged provision took effect. Plaintiffs' self-

16   created emergency does not warrant the issuance of emergency relief, because "[b]y

17   sleeping on its rights a plaintiff demonstrates the lack of need for speedy action."

18   *Id.* at 1213-14.  *See also Ventura County Christian High Sch. v. City of San*

19   *Buenaventura*, 233 F. Supp. 2d 1241, 1253 (C.D. Cal. 2002) (where plaintiffs

20   allege "financial peril [that] is due in part to their own failure to obtain a judicial

21   determination of their rights and obligations at some earlier point in time[,] . . . the

22   public interest should receive greater weight," and preliminary injunctive relief

23   should be denied).   Any supposed emergency here is one that Plaintiffs have

24   conjured up for themselves through their own delay.  The balance of hardships

25   clearly weighs in favor of Defendants, and the injunctive relief sought must be

26   denied.

27

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

**IV.   Plaintiffs' Alleged Harm Is Outweighed by the Documented Animal Welfare Harms That Will Be Inflicted.**

Since injunctive relief is sought against the public servants charged with enforcing the Foie Gras Law for the benefit of the public, the balance of harms and disservice to the public interest may be considered together. *See Cohen v. Coahoma County, Miss.*, 805 F. Supp. 398, 407 (N.D. Miss. 1992). The California Legislature, on behalf of the State's citizenry, has already made its own policy determination that the compelling animal protection reasons to prohibit the cruel practice of force feeding birds for the food product foie gras and the sale of such products easily outweigh any economic or other interests in having that conduct continue. Simply put, therefore, the Legislature has already made a specific public policy judgment about where the public interest lies, and there is no need or justification for the Court to second-guess that judgment. *See Pa. Soc'y for the Prevention of Cruelty to Animals v. Bravo Enter., Inc.*, 237 A.2d 342, 360 (Pa. 1968) ("A legislative proscription, such as that found in the cruelty to animals statute, is declarative of the public policy and is tantamount to calling the proscribed matter *prejudicial to the interests of the public*." (emphasis added)). Plaintiffs' argument that the State Defendants "will suffer no real consequence" from an injunction in this case wrongly presumes that Californians have no interest in strong enforcement of the anti-cruelty laws enacted upon their behalf. The Foie Gras law was enacted to further the public interest in animal welfare, and the continued sale of a product deemed unacceptable by Californians threatens the public, Defendant-Intervenors and their members, and the force fed animals with far greater, and more clearly irreparable, harm than the purely private loss of several weeks' profits or a single menu item to Plaintiffs. *See Am. Tunaboat Ass'n v. Brown*, 67 F.3f 1404, 1411(9th Cir. 1995) (loss of one week's worth of revenue from purse seine fishing was not sufficient irreparable injury to require grant of preliminary injunction when balanced against possibility of irreparable injury to

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)

1  marine mammals); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir.

2  1989) ("[W]hen a district court balances the hardships of the public interest against

3  a private interest, the public interest should receive greater weight.").

## **CONCLUSION**

5  For the foregoing reasons, NMA's motion should be denied.

8  Dated: July 11, 2012

Respectfully submitted,

Initiative Legal Group APC

By:_____

Arnab Banerjee
Attorney for Defendant-Intervenors

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE
CV-12-5735-SVW (RZx)