Melissa Grant (SBN 205633)
MGrant@initiativelegal.com
Valerie Kincaid (SBN 123728)
VKincaid@initiativelegal.com
Arnab Banerjee (SBN 252618)
ABanerjee@initiativelegal.com
Initiative Legal Group APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Attorneys for Proposed Defendant-Intervenors

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and HOT'S RESTAURANT GROUP, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California; EDMUND G. BROWN, in his official capacity as Governor of California; and the STATE OF CALIFORNIA,<br><br>Defendant. | Case No. CV-12-5735-SVW (RZx)<br><br>Hon. Stephen V. Wilson<br><br>**REPLY BRIEF IN SUPPORT OF PROPOSED INTERVENORS' MOTION TO INTERVENE**<br><br>Date: August 13, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 6 |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................... 1

II.  ARGUMENT ...................................................................................... 1

    A.  Intervenors' Interests Are Not Adequately Represented By State Defendants .................................................................... 1

        1.  Intervenors' Interests Are Narrower Than and Differ From Those of the State ........................................... 3

        2.  Plaintiffs' Complaint Threatens Intervenors' Considerable Financial and Reputational Investments ........... 6

        3.  Intervenors Will Offer a Perspective Not Shared With and Potentially Neglected by State Defendants ............. 7

        4.  The Authority Cited in Plaintiffs' Opposition Is Inapposite to the Issues In This Case ...................................... 8

    B.  Intervenors Have Demonstrated That Permissive Intervention Is Warranted ............................................................... 10

III. CONCLUSION ................................................................................... 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .............................. 2, 7, 8, 9

*Black & Veatch Corp. v. Modesto Irr. Dist.*, No. 1:11–cv–00695, 2011
    WL 4842319 (E.D. Cal Oct. 12, 2011) ............................................................ 7

*California Dump Truck Owners Assn. v. Nichols*, 275 F.R.D. 303
    (E.D. Cal. 2011) ............................................................................. 2, 4, 10, 11

*Californians for Safe and Competitive Dump Truck Transp. v.
    Mendonca*, 152 F.3d 1184 (9th Cir. 1998) ...................................................... 4

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893
    (9th Cir. 2011) ................................................................................................ 2

*California Hosp. Ass'n v. Maxwell-Jolly*, No. CV 09-3694, 2009 WL
    4120725 (C.D. Cal. Nov. 23, 2009) ................................................................ 6

*Cramer v. Brown, et al.*, No. 2:12-cv-03130 (C.D. Cal. 2012) .......................... 10

*Forest Cons. Council v. U.S. Forest Service*, 66 F.3d 1489 (9th
    Cir. 1995) ........................................................................................................ 4

*Golden Gate Restaurant Ass'n v. City and County of San Francisco*, No.
    C 06-06997, 2007 WL 1052820 (N.D. Cal. Apr. 5, 2007) .............................. 4

*Illinois Restaurant Association v. City of Chicago*, 492 F. Supp. 2d 891
    (N.D. Ill. 2007) ............................................................................................... 9

*In Defense of Animals v. U.S. Dept. of Interior*, 2011 WL 1085991
    (E.D. Cal. Mar. 21, 2011) ............................................................................... 4

*Jackson v. Abercrombie*, No. 11–00734, 2012 WL 2053204 (D. Haw.
    May 2, 2012) ................................................................................................... 8

*Nat'l Audubon Soc'y, et al. v. Gray Davis, et al.*, No. 3:98-cv-04610
    (N.D. Cal. 1998) ........................................................................................... 10

*National Meat Ass'n v. Harris, et al.*, No. 1:08-cv-01963

(E.D. Cal. 2009) .................................................................................................. 10

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) ................................................. 11

*Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ........................ 11

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ............... 2, 7

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ............. 10, 11

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ............... 4, 5

*Yount v. Salazar*, No. CV 11–081712012 WL 1378684 (D. Ariz. Apr. 20, 2012) ..................................................................................................... 4

**STATE CASES**

*Asian Am. Rights Comm. v. Brown et al.*, No. 12-517723 (Cal. Sup. Ct., San Francisco County 2012) .......................................................................... 10

*JS West Milling Co., Inc. v. California*, No. 10-04225 (Cal. Sup. Ct. Fresno County 2010) ........................................................................................ 10

*Mary Mendibourne, et al. v. John McCamman, et al.*, No. 46349 (Cal. Sup. Ct. Lassen County 2009) ........................................................................ 10

**FEDERAL STATUTES**

Fed. R. Civ. P. 24(b) ............................................................................................ 10

**STATE STATUTES**

Cal. H. & S. Code § 25982 .................................................................................... 3

Cal. S.B. 1520 (Foie Gras Law) .................................................................. *passim*

# I. INTRODUCTION

Proposed Defendant-Intervenors ("Intervenors") respectfully submit their Reply Brief In Support Of Intervenors' Motion To Intervene. The State Defendants (the "State") do not oppose this motion. Plaintiffs have opposed, but concede this motion was timely brought, that Intervenors have significantly protectable interests relating to the subject of this action, and that disposition of this action may impair or impede their ability to protect their interests. Plaintiffs' Brief in Opposition to Motion to Intervene ("Plfs' Opp Brief") at 3. (Dkt. No. 36). Plaintiffs contend, however, that Intervenors are not entitled to intervene as of right because Intervenors' interests are purportedly adequately represented by the State. Plaintiffs are mistaken. The uncontested facts set out in the six declarations submitted in support of the motion to intervene establish that the interests of Intervenors differ from, and are not adequately represented by, the State.

This group of intervenors brings to this litigation narrower interests and on-point expertise that is not co-extensive with that of the State. None of the cases Plaintiffs cite overcome this failure, because none hold that representation is adequate where, as here, there is a divergence of interests between state government officials and advocacy organizations that stand to incur financial losses, loss of stature, and loss of ability to implement their core missions if a state law is enjoined. These factors, unrecognized or ignored by Plaintiffs, counsel strongly in favor of intervention.

# II. ARGUMENT

## A. Intervenors' Interests Are Not Adequately Represented By State Defendants

Plaintiffs do not contest that Intervenors have satisfied three of the four

required elements for intervention as of right.[1] (Plfs' Opp. Brief at 3.) Plaintiffs' sole argument—that the State adequately represents the interests of the Intervenors—fails because Plaintiffs ignore salient facts establishing a divergence of interests, and then rely on case law that applies only in the absence of those overlooked facts.

As explained in Intervenors' Memorandum of Points & Authorities in Support of their Motion to Intervene (the "Motion"), the burden of establishing inadequate representation is "minimal," and an applicant need only demonstrate that representation of its interest by existing parties "may be" inadequate. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). Although a presumption of adequacy of representation arises when "an applicant for intervention and an existing party share the same ultimate objective," *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011), that presumption is overcome through precisely the kinds of facts that Plaintiffs conveniently ignore. *See California Dump Truck Owners Assn. v. Nichols*, 275 F.R.D. 303, 308 (E.D. Cal. 2011) (finding that while a non-profit organization and a California agency shared the 'ultimate objective' of defending a regulation, their "interests [were] neither 'identical' nor 'the same'" because, among other reasons, the agency was required to "balance relevant environmental and health interests with competing resource constraints and the interests of various constituencies . . . ."). Moreover, "[a]ny doubt as to whether the existing parties will adequately represent the intervenor[s] should be resolved in favor of intervention." *Id.* at 307.

---

[1] Courts consider four factors to determine whether a party may intervene as of right: "(1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

Intervenors have direct and unique interests in the enforcement of the Foie Gras Law that differ from that of the State in upholding a law. First, Intervenors have an interest in preventing the inhumane treatment of animals that is narrower than the State's general interest in upholding the section of the law challenged by Plaintiffs. Second, as the sponsors, advocates, and enforcers of the Foie Gras Law, a ruling enjoining enforcement of California Health & Safety Code section 25982 will not only eviscerate the entire Foie Gras Law, but will also threaten Intervenors specifically with the loss of their considerable financial and reputational investment in the law's passage and a concomitant loss of stature and future financial support from their members and supporters and members of the general public seeking to sponsor groups like Intervenors who are making a significant impact on decreasing cruelty.

### 1. Intervenors' Interests Are Narrower Than and Differ From Those of the State

Plaintiffs incorrectly argue that the interests of Intervenors "exactly mirror" those of the State defendants, as Intervenors and their members have a unique and specific interest in this case—preventing the cruelty associated with force feeding ducks—that is narrower than the State's general interest in upholding its laws.[2] Courts in this Circuit have repeatedly held that the

---

[2] *See* Declaration of Paula Kislak in Support of Motion for Leave to Intervene ("Kislak Decl.") (Dkt. No. 26) ¶ 4 ("Among HSVMA's advocacy efforts is promoting farm animal welfare reforms, including . . . the cruel practice of force feeding ducks and geese in the production of foie gras."); Declaration of Bruce Friedrich in Support of Motion for Leave to Intervene ("Friedrich Decl.") (Dkt. No. 29) ¶¶ 4-6 (describing how Farm Sanctuary has rescued birds that were abused on foie gras farms and continues to provide ongoing and intensive care for these animals, and that Farm Sanctuary has established a campaign specific to foie gras); Declaration of Stephen Wells in Support of Motion for Leave to Intervene ("Wells Decl.") (Dkt. No. 22) ¶ 4 (describing ALDF's "strong commitment to ending the practice of force-feeding in the foie gras industry"); Declaration of Jennifer Fearing in Support of Motion for Leave to Intervene ("Fearing Decl.") (Dkt. No. 27) ¶ 3 ("The HSUS actively advocates against inhumane practices that harm farm animals, including ducks and geese raised for foie gras"); Declaration of Cindy Machado ("Machado Decl.") (Dkt. No. 28) ¶¶ 7, 9 (MHS "is obligated to enforce violations of the Foie Gras Law," and its "mission would be negatively

presumption of adequacy "may be overcome where the prospective intervenor's interests may be 'more narrow and parochial than the interests of the public at large.'" *Golden Gate Restaurant Ass'n v. City and County of San Francisco*, No. C 06-06997, 2007 WL 1052820, at *4 (N.D. Cal. Apr. 5, 2007) (quoting *Californians for Safe and Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (granting a union's right to intervene on the grounds that the member's personal interest in enforcing an ordinance was more narrow than the City's general interest)); *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("The Forest Service is required to represent a broader view than the more narrow, parochial interests of the [state and local government intervenors].") (abrogated in part on other grounds by *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1178 (9th Cir. 2011)); *California Dump Truck Owners*, 275 F.R.D. at 308 (proposed intervenor environmental group's interests are more "narrow and parochial" than those of California Air Resources Board); *In Defense of Animals v. U.S. Dept. of Interior*, 2011 WL 1085991 * 3 (E.D. Cal. Mar. 21, 2011); (non-profit organization granted leave to intervene because it held "specific interests . . . that may not be shared by federal defendants, who represent a wide variety of sometimes competing interests held by various segments of the general public"); *Yount v. Salazar*, No. CV 11–08171, 2012 WL 1378684 * 4 (D. Ariz. Apr. 20, 2012) (proposed intervenors showed that their interests may be inadequately represented where their interest in environmental and cultural preservation was distinct from the government's interest in land management for multiple uses). Indeed, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Cons. Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995),

---

impacted if the Foie Gras Law was overturned").

*abrogated in part on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1178 (9th Cir. 2011).

Intervenors, as their declarations establish, spent considerable time and money fighting for the enactment of the Foie Gras Law to put an end to the cruel practice of force feeding ducks. (*See* Kislak Decl., ¶¶ 8-9; Friedrich Decl., ¶¶ 8, 11; Wells Decl., ¶ 7; Fearing Decl., ¶¶ 4, 9, 11; Machado Decl., ¶¶ 7-8.) Indeed, Governor Schwarzenegger's signing message makes clear that this is the purpose of the Foie Gras Law. (*See* Mot. at 2:22-3:7). The law therefore prohibits both the "force feed[ing of] birds for the purpose of enlarging the bird's liver beyond normal size" in California (Section 25891) and the sale of products in California that are "the result of force feeding a bird for purposes of enlarging the bird's liver beyond normal size" (Section 25892). If the sale of such products were permitted in California, the purpose of the Foie Gras Law would be thwarted. Intervenors are interested in the preservation and strenuous enforcement of the Foie Gras Law in its entirety.

Plaintiffs do not deny this strong interest, but instead try to claim that this case has nothing to do with inhumane treatment of animals. This they cannot do. Plaintiffs' own complaint alleges that the in-state benefits generated by the law—*i.e.*, the prevention of animal cruelty, are significantly outweighed by the putative impacts of the Foie Gras Law on interstate commerce. Additionally, Plaintiffs concedes that all Intervenors have significantly protectable interests in the subject of this litigation and that disposition of this litigation may impair or impede their ability to protect such interests (Plfs' Opp. Brief at 3), while at the same time arguing repeatedly that humane issues are irrelevant here. This makes no sense at all. If the interest of these organizations in the subject of this litigation is not a *humane* interest, it is impossible to imagine what it might be. Humane issues are at the heart of this matter, at the heart of the text and history of the Foie Gras Law, and at the heart of the constitutional claims raised here.

Plaintiffs' transparent effort to deny the humane issue for purposes of excluding animal protection experts from the case, and thus clear the decks to make unopposed merits arguments later about there being little or no humane benefit to this law, should not be countenanced by the Court.

### 2. Plaintiffs' Complaint Threatens Intervenors' Considerable Financial and Reputational Investments

In light of the substantial time, effort, and resources that each of the Intervenors committed to the passage and implementation of the Foie Gras Law, a ruling striking down the law could have a significant impact on Intervenors' pecuniary and reputational interests.  (*See* Kislak Decl., ¶¶ 8-9; Friedrich Decl., ¶¶ 8, 11; Wells Decl., ¶ 7; Fearing Decl., ¶¶ 4, 9, 11; Machado Decl., ¶¶ 7-8.) While each of the five Intervenors has committed both financial and political capital to the passage of the Foie Gras Law, the Marin Humane Society ("MHS") has an additional unique and narrow interest as a non-profit and donation-dependent advocacy entity charged with the authority to enforce the state's animal cruelty laws, including the Foie Gras Law.[3]  Machado Decl., ¶¶ 4, 7-8. The State does not and cannot possibly share these interests with the Intervenors, because it does not stand to lose financial or other support based on whether or not the Foie Gras Law stands.  *See California Hosp. Ass'n v. Maxwell-Jolly*, No. CV 09-3694, 2009 WL 4120725, *3 (C.D. Cal. Nov. 23, 2009) (finding possibility of inadequate representation even though proposed intervenor and state defendants shared the same "ultimate objective," because proposed

---

[3] MHS is funded in part by private donations, and its ability to generate continued donor support depends heavily on the success of its advocacy and law enforcement program, as well as MHS' demonstrated willingness to protect farm animals along with wildlife and companion animals.  MHS also receives public funding for its law enforcement role in Marin County, which includes the enforcement of the Foie Gras Law, which it was directly involved in supporting at the time it was passed.  It follows that if MHS loses the ability to enforce the Foie Gras Law, its vital mission to protect all animals will be harmed, and its donors may not fully appreciate MHS's continued need for financial support.

intervenor had an economic interest not shared by the government); *Black & Veatch Corp. v. Modesto Irr. Dist.*, No. 1:11–cv–00695, 2011 WL 4842319, *12 (E.D. Cal. Oct. 12, 2011) (finding that representation was inadequate because proposed intervenors would suffer damages existing parties in the litigation would not).

Intervenors need not show that this unique potential injury will definitely come to pass, nor that the injury to the organizations will definitely be severe. *See Trbovich*, 404 U.S. at 538 n.10 (applicant need only show that representation of her interest "may be" inadequate); *Arakaki*, 324 F.3d at 1086 (same). All they must do, and all they have done without any challenge from Plaintiffs, is show that they have an interest here that the named defendants may not adequately represent.

### 3. Intervenors Will Offer a Perspective Not Shared With and Potentially Neglected by State Defendants

The State has not, and may never, highlight all of the arguments that demonstrate why Plaintiffs' vagueness and Commerce Clause claims fail. Due to decades of experience both litigating and advocating for the humane treatment of farm animals, and working to enforce anti-cruelty laws, Intervenors bring to bear extensive factual and legal knowledge that is simply not shared in full by State Defendants, and the ability to make important arguments that may not be raised by State Defendants at all.

For example, Intervenors are unique in their expertise with and knowledge of the humane issues at the core of Foie Gras Law debate. The State has not offered veterinary expertise essential in combatting Plaintiffs' claim that the Foie Gras Law is vague as to what constitutes force feeding of birds. (Plfs' Complaint at ¶¶ 30-38). Intervenors, in contrast, have demonstrated an ability to provide the Court with such expertise. (*See* Declaration of Holly Cheever In Support of Proposed Defendant-Intervenors' Opposition to Temporary

1  Restraining Order ("Cheever Decl.") (Dkt. No. 25) ¶¶ 6-7 )(describing the
2  difference between the liver of birds that are naturally enlarged (swollen 2-3
3  times natural size) and those that are the result of force feeding (swollen up to 12
4  times natural size); Kislak Decl. ¶¶ 6-8) (describing a detailed veterinary
5  perspective on force feeding).  It is understandable that State Defendants, who
6  are generalists, would not be able to raise the humane arguments that
7  Intervenors, with their combined expertise with animal welfare issues, are able to
8  raise.  Intervenors can therefore add a unique and crucial perspective that State
9  Defendants cannot.  Moreover, Intervenors can offer advanced and
10 comprehensive rationales for the Foie Gras Law that State Defendants cannot
11 because Intervenors are not "constrained by political considerations." *See*
12 *Jackson v. Abercrombie*, No. 11–00734, 2012 WL 2053204, *11 (D. Haw.
13 May 2, 2012).  Indeed, Plaintiffs oppose intervention here precisely *because* the
14 Intervenors have a unique and special ability to successfully defend the law at
15 issue, beyond that of the State defendants.

### 4. The Authority Cited in Plaintiffs' Opposition Is Inapposite to the Issues In This Case

18 Plaintiffs rely heavily on two distinguishable cases to support their
19 contention that Intervenors' interests are adequately represented by the State.
20 First, in *Arakaki*, a group of native Hawaiians sought to intervene as defendants
21 in a case in which plaintiffs challenged the constitutionality of the State's
22 provision of certain benefits exclusively to native Hawaiians.  In finding that the
23 proposed intervenors had failed to overcome the presumption that existing
24 parties will adequately represent their interests, the court stressed that "the
25 presence of [another group of native Hawaiians which had already been granted
26 intervention in the case] as a similarly situated intervenor, combined with the
27 State defendants' specific statutory and constitutional obligations to protect
28 native Hawaiians' interests, distinguishes this case from those in which we have

1 permitted intervention on the government's side in recognition that the
2 intervenors' interests are narrower than that of the government and therefore may
3 not be adequately represented." *Arakaki*, 324 F.3d at 1087. Here, there is no
4 similarly situated group that has already been granted intervenor status.

5     Importantly, Intervenors have not located, and Plaintiffs failed to cite, a
6 single case within the Ninth Circuit in which a non-profit advocacy organization
7 with law enforcement duties was denied intervention as of right based on
8 adequate state representation. Instead, Plaintiffs invoke a second inapposite
9 decision in which an Illinois district court denied a request for *permissive*
10 intervention. Ironically, the case in which the decision was issued subsequently
11 rejected a nearly identical Commerce Clause challenge to a local ban on foie
12 gras. (Ex. A to Plaintiffs Req. for Judicial Notice (Dkt. 37-1)).[4] While the
13 court's Commerce Clause analysis is directly applicable to the present case, its
14 intervention decision is readily distinguishable. The process of force feeding and
15 its attendant cruelty was not an issue in the Illinois District Court case because
16 the Chicago ordinance did not address the production of foie gras. Here,
17 however, force feeding is explicitly banned in the Foie Gras Law, making force
18 feeding and expertise as to the cruelty of the practice germane in a way it was
19 not in the Chicago case. Thus, the fact that Intervenors have unique knowledge
20 and expertise that can aid the court in adjudicating the matter (see *infra* Part II.
21 B.), is the very reason that Intervenors here have established that their interests
22 do not "exactly mirror" those of the named defendants and "that their interests
23 will not be adequately represented" by these defendants, as distinguishable from
24 the Chicago case.

---

[4] As Plaintiffs rely so heavily on this early decision in *Illinois Restaurant Association*, Intervenors would consent to withdraw this motion in its entirety if Plaintiffs will stipulate that this case is controlling as to the Commerce Clause issues presented here. *Illinois Restaurant Association v. City of Chicago*, 492 F. Supp. 2d 891 (N.D. Ill. 2007).

### B.     Intervenors Have Demonstrated That Permissive Intervention Is Warranted

Even if this Court were to deny intervention as a matter of right, the Court should find that Intervenors have satisfied the threshold requirements for permissive intervention. Intervenors have shown—and Plaintiffs do not dispute—that independent grounds for jurisdiction exist based on the federal questions raised in Plaintiffs' Complaint, that the motion was timely, and that common questions of law and fact exist. Fed. R. Civ. P. 24(b); *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002).

Plaintiffs' general objection that permitting Intervenors' timely intervention at this early stage of proceedings would unduly delay this case or unfairly prejudice the existing parties is baseless. *See California Dump Truck Owners*, 275 F.R.D. at 309 (stating that if the court were to accept Plaintiff's unsupported argument that proposed intervenor would add "nothing of substance" and that Plaintiff would be unduly burdened by litigating against a state and an intervenor, "there would be almost no case in which permissive intervention would be granted"). Contrary to Plaintiffs' claims, Intervenors have no interest in interjecting collateral claims or material into this action. Instead, Intervenors plan only to provide a vigorous defense of the law at issue, as they have done in many other federal and state cases in California challenging humane laws on Constitutional grounds,[5] in cooperation with and without duplicating the State defendants' efforts. Thus, the value added by Intervenors' participation in this case would far outweigh any delay occasioned by their

---

[5] *See*, *e.g.*, *National Meat Ass'n v. Harris, et al.*, No. 1:08-cv-01963 (E.D. Cal. 2009); *JS West Milling Co., Inc. v. California*, No. 10-04225 (Cal. Sup. Ct. Fresno County 2010); *Cramer v. Brown, et al.*, No. 2:12-cv-03130 (C.D. Cal. 2012); *Asian Am. Rights Comm. v. Brown et al.*, No. 12-517723 (Cal. Sup. Ct., San Francisco County 2012); *Nat'l Audubon Soc'y, et al. v. Gray Davis, et al.*, No. 3:98-cv-04610 (N.D. Cal. 1998); *Mary Mendibourne, et al. v. John McCamman, et al.*, No. 46349 (Cal. Sup. Ct. Lassen County 2009).

intervention.

As discussed above, Intervenors are the ideal parties to explain to this Court the humane interests that drove the passage of this law and thus, with respect to Plaintiffs' Commerce Clause challenge, answer the question of whether the purely incidental impacts on interstate commerce clearly outweigh the humane concerns that form the basis for this law. In addition, Intervenors have the expertise to explain to the Court that there is no ambiguity with respect to what constitutes the force feeding of a bird. (*See* Declaration of Holly Cheever In Support of Proposed Defendant-Intervenors' Opposition to Temporary Restraining Order ¶¶ 6-7.) In fact, such specialized knowledge demonstrates that Intervenors "will bring a unique perspective and expertise to this action that will not necessarily duplicate [the State's] role" (*California Dump Truck Owners*, 275 F.R.D. at 309), a perspective that "may support a trial judge's discretionary grant of permissive intervention." *Prete v. Bradbury*, 438 F.3d 949, 959 n.13 (9th Cir. 2006).

Finally, the fact that Intervenors, as official sponsors and main supporters of the Foie Gras Law, have demonstrated a particularly strong protectable interest in this case that would be impaired should Plaintiffs succeed on their claims should weigh in favor of permissive intervention here.[6] *See City of Los Angeles*, 288 F.3d at 404 ("[T]he idea of 'streamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome.").

---

[6] Plaintiffs have wisely conceded that Intervenors have a significantly protectable interest in this case that may be impaired by its disposition. *See Prete*, 438 F.3d at 954 ("a public interest group that has supported a measure . . . has a 'significant protectable interest' in defending the legality of the measure . . . [and] an adverse court decision on such a measure may, as a practical matter, impair the interest held by the public interest group"); *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (same).

### III. CONCLUSION

For the foregoing reasons, Intervenors' motion to intervene should be granted. However, should this Court deny intervention, HSVMA, Farm Sanctuary, ALDF, The HSUS, and MHS respectfully request leave to appear as *amicus curiae* and submit a brief in support of the State Defendants' opposition to Plaintiffs' motion for preliminary injunctive relief.

Dated: July 30, 2012

Respectfully submitted,

Initiative Legal Group APC

By: /s/ Melissa Grant
Melissa Grant
Valerie Kincaid
Arnab Banerjee

Attorneys for Proposed Defendant-Intervenors