Michael Tenenbaum, Esq. (No. 186850)
*mt@post.harvard.edu*
THE TENENBAUM LAW FIRM
1431 Ocean Ave., Ste. 400
Santa Monica, CA 90401
Tel   (310) 919-3194
Fax   (310) 919-3727

*Counsel for Plaintiffs*



FILED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; HOT'S RESTAURANT GROUP, INC., a California corporation; and GAUGE OUTFITTERS, INC., dba ELEVATION SPORTS;<br><br>            Plaintiffs,<br><br>– against –<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California; EDMUND G. BROWN, in his official capacity as Governor of California; and the STATE OF CALIFORNIA;<br><br>            Defendants. | Case No. CV-12-5735-SVW (RZx)<br><br>**FIRST AMENDED COMPLAINT TO DECLARE INVALID AND ENJOIN ENFORCEMENT OF CALIFORNIA HEALTH & SAFETY CODE § 25982 FOR VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS, THE SUPREMACY CLAUSE, AND THE COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION**<br><br>**DEMAND FOR JURY TRIAL** |

# JURISDICTION

1. This case arises under the Constitution of the United States and under 42 U.S.C. § 1983. This court has subject matter jurisdiction under 28 U.S.C. § 1331.

# NATURE OF THE ACTION

2. On July 1, 2012, after the Legislature delayed its operative date for seven and a half years, section 25982 of the California Health & Safety Code took effect. With penalties of $1,000 per violation per day, section 25982 prohibits the sale in California of any product "if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size." Section 25980(b) defines "force feeding" as "a process that causes a bird to consume more food than a typical bird of the same species would consume voluntarily." In practice, the vagueness of this purported standard makes it impossible for Plaintiffs to know at what point any particular duck or goose has been fed "more food" than the statute allows. Yet section 25982 threatens crushing penalties for California distributors, restaurants, retailers, and other sellers of duck and goose products in the stream of commerce, who cannot reasonably know what the animals from which they were produced were fed throughout their lifetimes — let alone what "purpose" the feeder had in mind.

3. Even putting aside these inherent vagueness and Due Process infirmities, section 25982 operates in four other ways that make it unconstitutional. First, in forcing out-of-state and foreign farmers to comply with California's dietary guidelines for ducks and geese in order to sell their resulting products here, section 25982 operates as an extraterritorial regulation of conduct that courts have recognized as invalid *per se* under the Commerce Clause. Second, section 25982 disrupts national uniformity in the interstate market for poultry products and invites chaos to reign if each state were to project its own preferred farming practices onto farmers in other states. Third, section 25982 imposes "additional" and "different" requirements on producers of poultry products than the federal Poultry Products Inspection Act provides, and it otherwise stands as an obstacle to the accomplishment of Congress's objectives in ensuring the

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

free flow of such products among the states; it is thus preempted by federal law. Fourth, apart from the discriminatory effect it is already starting to have in the market for duck breasts, section 25982 massively burdens interstate and foreign commerce without any legitimate local benefit, since all the ducks and geese it purports to protect are outside California.

4. Plaintiffs therefore seek a declaratory judgment that section 25982 is unconstitutional as applied to them and to the sale of any products from a moulard duck. Plaintiffs also seek a preliminary and permanent injunction prohibiting enforcement of section 25982 accordingly.

## THE PARTIES

*Plaintiffs*

5. Plaintiff Association des Éleveurs de Canards et d'Oies du Québec (the "Canadian farmers") is a Canadian non-profit corporation formed in 2009 to represent the interests and defend the rights of producers and exporters of foie gras and other duck products from Quebec, Canada, to the United States. The Canadian farmers include the province's leading producers and exporters of foie gras and other products from moulard ducks. They account for virtually all of the production of such products in Canada as well as 100% of the exports of such products to the United States. The products of Canadian farmers Palmex, Inc., Élevages Périgord (1993) Inc., and Aux Champs d'Élisé are regularly sold in California, and any of them would have standing in their own right to present the claims asserted in this action, though neither the claims asserted nor the relief requested requires that these members participate individually in this suit. The Canadian farmers are also suffering injury as an association in the form of a continuing drain on its resources if section 25982 remains in effect and the association must devote its resources to trying to ascertain when its members have fed a duck or goose "more food" than the statute allows.

6. Plaintiff HVFG LLC, which does business as Hudson Valley Foie Gras ("Hudson Valley"), is a New York farmer of moulard ducks that are raised and

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

slaughtered in its USDA-inspected facilities in full compliance with New York and federal law. Hudson Valley is the largest producer of foie gras and other products from moulard ducks in the United States.

7. Plaintiff Hot's Restaurant Group, Inc. ("Hot's"), is a California corporation that owns Hot's Kitchen, a restaurant in Hermosa Beach, California. Until July 1, 2012, Hot's was free to sell dishes with duck products such as foie gras, duck leg confit, and duck fat, but it now risks prosecution — and literally millions of dollars in penalties — for continuing to sell these to its customers if, even without its knowledge, any of these products can be traced to a duck that is found to have been fed "more food than a typical bird of the same species would consume voluntarily" for the purpose of enlarging its liver.

8. Plaintiff Gauge Outfitters, Inc., dba Elevation Sports ("Elevation"), is a California corporation that owns and operates a ski and snowboard shop in Santa Monica, California. Elevation sells the leading brands of ski apparel, including goose down jackets made by Patagonia, The North Face, Canada Goose, and KJUS. Until July 1, 2012, Elevation was free to sell these jackets, but it now risks prosecution — and literally millions of dollars in penalties — for continuing to sell them if, even without its knowledge, the down feathers in any of these jackets is the result of a goose that is found to have been fed "more food than a typical bird of the same species would consume voluntarily" for the purpose of enlarging its liver.

*Defendants*

9. Defendant Kamala D. Harris is the current Attorney General of California. In her official capacity under the California Constitution, the Attorney General is the chief law officer of the state and has direct supervision over every district attorney, sheriff, other law enforcement officers. Cal. Const. Art. 5, § 13.

10. Defendant Edmund G. Brown is the current Governor of California. In his official capacity under the California Constitution, the Governor is vested with the supreme executive power of the state. Cal. Const. Art. 5, § 1.

11. Defendant State of California is a state that, through its officers and agencies, including the Governor and Attorney General, enforces California law.

## VENUE

12. Venue in this district is proper under 28 U.S.C. § 1391(b) because at least one Defendant resides in this district and all Defendants are residents of the State of California, because the injuries giving rise to Plaintiffs' claims are taking place in this district, because a substantial part of the property that is the subject of the action is situated in this district, and because all Defendants are subject to the Court's personal jurisdiction in this district.

## GENERAL ALLEGATIONS

**Section 25982 bans the sale of any product from a duck or goose based on how much food it consumed during its lifetime.**

13. On September 29, 2004, Governor Arnold Schwarzenegger signed California Senate Bill 1520, legislation authored by then Sen. John Burton to add sections 25980 – 25984 to the California Health & Safety Code.

14. Section 25981 makes it a violation of state law for a person to "force feed a bird for the purpose of enlarging the bird's liver beyond normal size." Cal. Health & Safety Code § 25981.[1] Under section 25980(a), "[a] bird includes, but is not limited to, a duck or goose."

15. Section 25982, however, goes farther and prohibits the *sale* of any product in California "if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size." Section 25980(b) defines "force feeding" to mean "a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily."

---

[1] All further unspecified section references are to the California Health & Safety Code.

- 4 -
FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

16. Section 25982 notably does not prohibit the sale of a product that is the result of merely "force feeding" a bird; it only applies if the feeder did so "*for the purpose* of enlarging the bird's liver beyond normal size."

17. Similarly, section 25982 does not prohibit the sale of a product from a bird that was fed for the purpose of enlarging its liver beyond normal size; it only does so if the feeder caused the bird to consume "more food than a typical bird of the same species would consume voluntarily."

18. Under sections 25983(a) and (b), any peace officer, humane society officer, or animal control officer may issue a citation for a violation of section 25982, which "shall require the person cited to pay a civil penalty in an amount up to one thousand dollars ($1,000) for each violation, and up to one thousand dollars ($1,000) for each day the violation continues." The civil penalties are payable to the local agency that prosecutes the violation.

**Section 25982 is directed at products from ducks or geese fed by farmers outside California.**

19. Section 25984(a) delayed the operative date of SB 1520 until July 1, 2012. In section 25984(c), the Legislature explained why: "It is the express intention of the Legislature, by delaying the operative date of provisions of this chapter pursuant to subdivision (a) until July 1, 2012, to allow a seven and one-half year period for persons or entities engaged in agricultural practices that include raising and selling force fed birds to modify their business practices."

20. Because section 25981 prohibited "force feeding" within California as of July 1, 2012, the one farmer of moulard ducks raised for their livers in the state closed down its farming operations prior to that date.

21. In contrast to section 25981's regulation of the *feeding* of ducks within California, section 25982's ban on *sale* is necessarily targeted at farmers who feed their ducks and geese outside the state.

- 5 -
FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Hudson Valley and the Canadian farmers raise moulard ducks with careful attention to their feeding and in full compliance with New York and Canadian law.**

22. Hudson Valley and the Canadian farmers raise moulard ducks.

23. The moulard is a selectively-bred, sterile, hybrid progeny of two ducks from two different species (and even from two different genera): a male strain of Muscovy duck and a female strain of Pekin duck.

24. The Muscovy duck is of the genus *Cairina* and of the species M*oschata*.

25. The Pekin duck is of the genus *Anas* and of the species *Platyrhynchos*.

26. The moulard duck is impossible to classify as belonging to any single species.

27. The moulard is specially bred for its capacity of ingestion and of fat storage in its liver.

28. In addition to the breasts, legs, fat, deboned meat, feathers, bones, and offal — all of which go to market — one of the products that Hudson Valley and the Canadian farmers make from their moulard ducks is foie gras, the fatty liver of a specially fed duck or goose.

29. Foie gras is made using a method known as *gavage*, which is a term for the hand-feeding of ducks and geese.

30. Hudson Valley and the Canadian farmers pay careful attention to the feeding of their ducks. Each hand-fed duck is given a variable amount of food each day, depending on how many days it has been in *gavage,* its appetite, whether its crop sac is clear of the last feeding, and even the weather.

31. As New York farmers subject to the laws of that state, Hudson Valley raises its ducks in full compliance with New York law, and no provision of New York law dictates how much food Hudson Valley may feed to its ducks.

32. Similarly, on their farms in Quebec, the Canadian farmers raise their ducks in full compliance with the laws of that province and of Canada, and no such law prescribes how much food a Canadian farmer may feed to its ducks.

33. In addition, all duck products from the Canadian farmers must be processed in Canada at establishments approved by the United States Department of Agriculture, and all are subject to USDA inspection upon entry to the United States.

**Every duck product destined for human consumption is subject to extensive federal regulation.**

34. Under the federal Poultry Products Inspection Act (the "PPIA"), all ducks intended for human consumption in America must undergo several stages of federal inspection by the USDA. 21 U.S.C. §§ 451 *et seq.*

35. Beyond the PPIA, a comprehensive set of detailed regulations and directives issued by the USDA and its Food Safety and Inspection Service (FSIS) govern the ante-mortem inspection of the ducks; the premises, facilities, and operations of the establishments at which the ducks are slaughtered and processed; the post-mortem inspection of the ducks; the marking of duck products with the USDA seal; the labeling and containers of duck products; and even the definitions and standards of identity or composition of duck products. 9 C.F.R. § 381.1 *et seq.*

36. Federal regulations further authorize the Administrator of the FSIS to "prescribe definitions and standards of identity or composition for poultry products whenever he determines such action is otherwise necessary for the protection of the public." 9 C.F.R. § 300.2(a); 9 C.F.R. § 381.155(a).

37. As for the product most commonly claimed to be a target of section 25982, i.e., foie gras, FSIS has issued "standards of identity or composition" that specifically recognize that ducks will be hand-fed to create foie gras: "Goose liver and duck liver foie gras (fat liver) *are obtained exclusively from specially fed and fattened geese and ducks.*"

38. In addition, a specific FSIS directive instructs federal inspectors to consider fatty duck livers as wholesome, which thus renders them fit for sale in interstate commerce.

39. The current USDA Food Standards and Labeling Policy Book cites a federal policy memo going back to September 1984, which explains that the USDA standards for foie gras are the result of a long-standing agreement with the French government.

40. The federal standards of identity address no less than 14 approved duck and goose liver products — including those produced by Hudson Valley and the Canadian farmers.

**By-products of ducks and geese raised for their livers include feathers, bones, and offal, which are ubiquitous in products sold in interstate and foreign commerce.**

41. Ducks raised for foie gras are the source of a host of other products for human consumption such as their breasts, legs, and fat.

42. Duck meat, for example, is processed into a variety of food products.

43. Excess duck fat and offal is used for biodiesel.

44. Duck bones contain nutrients and are ground and added to pet food.

45. And perhaps the most familiar product that is the result of ducks raised for foie gras is the down feathers that are used in everything from comforters to outdoor apparel.

46. Several leading makers of down jackets, for example, have publicly acknowledged that the down and feathers in them come from geese raised for their meat and livers.

47. All of these products are sold in interstate commerce and in California today.

48. SB 1520 makes no reference to foie gras; rather, section 25982 prohibits the sale in California of *any* "product . . . that is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size."

49. In his signing message, then Governor Arnold Schwarzenegger wrote to the Senate, "This bill's intent is to ban the current foie gras production practice . . . It does not ban the food product, foie gras."

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

50. Indeed, the law's author opened the Senate committee hearing on SB 1520 by stating, "This bill has nothing to do, uh — despite the mail that many of us get from restaurants — with banning, uh, foie gras. What it does is prohibit, uh, what a process of which most people, uh, consider to be an inhumane of force feeding ducks and geese for the purpose of unnaturally enlarging their liver beyond the normal size."

**Plaintiffs and other sellers of duck and goose products are unable to ascertain from section 25982 any meaningful measure or sensible reference to know how much food California allows a duck or goose to be fed.**

51. Section 25982 provides that, as a prerequisite to the sale of any duck or goose product in California, the product must not be the result of "a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily" "for the purpose" of enlarging the bird's liver beyond normal size.

52. Hudson Valley and the Canadian farmers have decades of experience raising and feeding ducks. Yet they are genuinely unable to make sense of this provision. In particular, they cannot ascertain a meaningful measure, a relevant time period, or an appropriate reference bird or other standard of comparison that would allow them to know how much food they can feed their moulard ducks in New York and Canada in order for California to allow the resulting products to be sold here.

53. Meanwhile, the chef and owner at Hot's has no idea how much the ducks whose legs and fat he cooks with had to eat throughout their lives, and he has no better idea than the farmers do as to what section 25982 allows the ducks to consume in any event.

54. Similarly, the owner of Elevation Sports, a local ski shop that sells name-brand jackets filled with goose down, has no idea how much any goose that was the source of that down was fed during its lifetime, nor would he know how to determine how much the "typical" Hungarian goose would consume voluntarily.

- 9 -
FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

55. There is no known system of tracing duck or goose products from the farm to the restaurant table or to the retail store rack based on each animal's diet.

**Section 25982 is causing Plaintiffs to suffer significant lost sales that they can never recover.**

56. Hudson Valley is the largest U.S. producer of moulard duck products, including foie gras. Hudson Valley and one other domestic producer, La Belle Farm, account for the entire market of foie gras and other duck products sold in California that are produced from moulard ducks in the United States.

57. Hudson Valley's sales of those products to California in just the six months prior to July 1, 2012, were $1.6 million — and growing, as more people have discovered foie gras. In June 2012 alone, Hudson Valley sold $435,922 of foie gras and other edible moulard duck products in California — an average of $14,533 per day.

58. As a result of section 25982, Hudson Valley is no longer receiving foie gras orders from California customers. Based on Hudson Valley's average monthly sales for 2012, it will continue to lose approximately $250,210 per month if section 25982 remains in effect.

59. Because of their concern about the scope of section 25982 and the penalties it threatens, some California distributors are starting to replace their purchases of duck breasts from Hudson Valley in New York with those of Grimaud Farms in California.

60. Through three of its association members, the Canadian farmers supply 100% of Canada's imports of moulard duck products to the United States and California.

61. Sales to California from just two of these members — Palmex and Élevages Périgord — in the six months prior to July 1, 2012, were over $628,000. In the case of Palmex, California represents 25% of its annual U.S. sales. Those sales have dwindled to almost nothing as California customers can no longer order the Canadian farmers'

products. Based on an average for 2012, these two members alone will continue losing over $104,000 per month if section 25982 remains in effect.

62. Hot's, too, is suffering irreparable financial losses, as it has been forced to either stop selling any moulard duck products or risk an arbitrary prosecution under section 25982. Its sales of foie gras products for the month of June 2012 were $6,000, and it is now losing those sales every month.

63. And, while it has not pulled its name-brand products from its racks, Elevation is also facing irreparable harm in the form of its fear of prosecution and penalties of $1,000 per violation per day for continuing to sell jackets containing goose down and feathers, if section 25982 is enforced against it.

## FIRST CAUSE OF ACTION

## Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Due Process Clause — Void for Vagueness

64. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

65. Section 25982 of the California Health & Safety Code, which incorporates the definition in section 25980(b), is unconstitutionally void for vagueness as applied to Plaintiffs.

66. As alleged above, section 25982 does not provide a person of ordinary intelligence fair notice of what amount of food he may cause a moulard duck to consume without violating California law. *A fortiori*, it does not provide a person of ordinary intelligence fair notice of whether he can sell in California any product that is the result of feeding a moulard duck. Section 25982 is so standardless that it authorizes and encourages arbitrary enforcement.

67. As alleged above, Hudson Valley and the Canadian farmers are unable to ascertain from section 25982 any clear standard in the form of a meaningful unit of measure, a relevant time period, or an appropriate reference bird or other standard of comparison that would allow them to know how much food they can feed their ducks

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 in New York and Canada in order for California to allow the sale of the resulting
2 products under this law.

3   68. Moreover, because of its vagueness, section 25982 makes it impossible for Hot's (or any California seller) to know whether it may continue to sell any products from moulard ducks.

   69. For the same reasons, the inherent vagueness in section 25982 makes it impossible for Elevation (or any California seller) to know whether it may continue to sell goose down jackets or any products from geese that have been raised for their livers.

   70. This vagueness has already begun to cause Plaintiffs irreparable injury in the form of lost sales, and they will face millions more in losses if this unconstitutional law remains in effect.

   71. The vagueness of section 25982 leaves it open to entirely arbitrary enforcement by any of California's tens of thousands of peace officers, humane society officers, and animal control officers for whom the statute fails to provide the precision and guidance required by the Constitution.

   72. As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction. A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

   73. Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

## SECOND CAUSE OF ACTION
**Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Due Process Clause — Imposition of Penalty without Requirement of *Scienter* for Conduct Not Involving Public Health or Safety**

   74. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

75. Section 25982 violates the Due Process Clause as to Plaintiffs because it unconstitutionally penalizes innocent conduct without any *scienter* requirement.

76. Section 25982 penalizes a person who sells in California any product that "is the result of" a duck or goose — whether it be foie gras, meat, fat, or even feathers — based on the process that was used to feed it, even where the person has no knowledge or other *scienter* as to how the duck or goose was fed throughout its lifetime.

77. Section 25982 further penalizes a person who sells in California any product from a duck or goose that was fed by another person — as of July 1, 2012, a person necessarily outside the state — if such other person fed the duck or goose "for the purpose" of enlarging the bird's liver beyond normal size. As such, section 25982 unconstitutionally penalizes a California seller for the unknowable mental state of another.

78. In banning the sale in California of duck and geese products that are the result of the feeding prohibition in SB 1520, section 25982 has as its obvious purpose the reduction in consumer demand for products from out-of-state farmers who use a feeding practice that the California legislature disfavors. Section 25982 thus does not involve the public health or safety of any person in California — or even of any duck or goose within the state — and cannot excuse the absence of any requirement of *scienter* on the part of the California seller before significant penalties may be imposed.

79. As of July 1, 2012, Hot's faces civil penalties of up to $1,000 per sale per day — penalties which, in light of Hot's sales history, could easily add up to millions of dollars in a single month — if the duck products it sells in California are deemed to be products of ducks fed more than section 25982 allows and for the purpose of enlarging their livers.

80. Elevation likewise faces these same crippling penalties if — completely unbeknownst to it and beyond its power to control — the goose down jackets it sells in

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

California are deemed to be products of geese fed more than section 25982 allows and for the purpose of enlarging their livers.

81. As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction. A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

82. Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

### THIRD CAUSE OF ACTION
### Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Commerce Clause — Extraterritorial Regulation

83. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

84. The Commerce Clause restricts states from regulating conduct beyond their borders.

85. As alleged above, in forcing out-of-state farmers such as Hudson Valley and the Canadian farmers to conform their duck feeding practices to the vague and arbitrary limitation in section 25980(b) in order to sell their products in California, section 25982 has the practical effect of regulating out-of-state and foreign conduct. Such extraterritorial regulation violates the Commerce Clause.

86. As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction. A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

87. Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

## FOURTH CAUSE OF ACTION

### Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Commerce Clause — Regulation Disrupting National Uniformity in Market for USDA-Approved Poultry Products

88. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

89. The Commerce Clause restricts states from enacting regulations that disrupt national uniformity and impede the free flow of goods in interstate commerce.

90. As alleged above, section 25982 operates as a forced economic boycott of lawful, wholesome, unadulterated, USDA-approved duck products from New York and Canada.

91. As alleged above, in prohibiting the sale in California of lawful, wholesome, unadulterated, USDA-approved duck products, section 25982 disrupts the federal interest in national uniformity in the market for poultry products and thus violates the Commerce Clause.

92. As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction. A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

93. Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

## FIFTH CAUSE OF ACTION

### Declaratory Relief — Violation of the Supremacy Clause — Preemption

94. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

95. Under the Supremacy Clause, federal law preempts state law where, as here, Congress expresses an intent to preempt state law through explicit statutory

language or where the state law stands as an obstacle to the accomplishment of the full objectives of Congress.

96. The federal Poultry Products Inspection Act expressly prohibits states from imposing "additional" or "different" inspection, processing, handling, or ingredient requirements for poultry products. 21 U.S.C. § 467e.

97. Because any inspection, processing, handling, or ingredient requirement imposed by section 25982 would be "additional" to or "different" from federal inspection, processing, handling, and ingredient requirements, section 25982 is preempted by the PPIA.

98. Moreover, because the PPIA reflects Congress's objectives to ensure the free flow of commerce in poultry products and to "prevent and eliminate burdens upon such commerce, to effectively regulate such commerce, and to protect the health and welfare of consumers," 21 U.S.C. § 451, section 25982 stands as an obstacle to the accomplishment of these objectives.

99. Section 25982 is therefore preempted by federal law.

100. As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction. A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

101. Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

SIXTH CAUSE OF ACTION

Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Commerce Clause — Discriminatory or Substantial Burden on Commerce Exceeding Putative Local Benefits

102. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

103. The Commerce Clause restricts states from discriminating against out-of-state goods in interstate and foreign commerce and from placing excessive burdens on interstate and foreign commerce.

104. As alleged above, section 25982 is starting to have discriminatory effects in the market for duck breasts, as distributors and processors in California who fear prosecution for selling moulard duck breasts from New York and Canada now begin to turn to in-state producers of Muscovy duck breasts.

105. As alleged above, in banning the sale of moulard duck products from New York and Canada, section 25982 places excessive burdens on interstate and foreign commerce without advancing any legitimate local interest in the feeding of ducks and geese by farmers outside of California.

106. As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction. A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

107. Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

## SEVENTH CAUSE OF ACTION
### Injunctive Relief

108. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

109. Section 25982 is unconstitutional for the reasons stated in the foregoing causes of action.

110. The enforcement of section 25982 will cause immediate and irreparable injury to Plaintiffs, including but not limited to loss of opportunity, disruption of business, lost profits, diminution in value, and civil penalties.

111. Because Defendants' enforcement of section 25982 will cause harm that cannot be adequately compensated in damages, Plaintiffs request that this Court

provide preliminary and permanent injunctive relief enjoining Defendants from enforcing section 25982 with respect to Plaintiffs and those similarly situated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully seek the following relief from this Court:

A. A declaratory judgment, pursuant to 28 U.S.C. § 2201 *et seq.* (the Declaratory Judgment Act), that section 25982 of California Health & Safety Code is unconstitutional as applied to Plaintiffs and to the sale of any products from moulard ducks for each of the reasons stated above;

B. A preliminary injunction prohibiting the enforcement of section 25982 against Plaintiffs or the sale of any products from moulard ducks;

C. A permanent injunction prohibiting the enforcement of section 25982 against Plaintiffs or the sale of any products from moulard ducks;

D. An award of reasonable attorneys fees and costs to the extent permitted by law, including but not limited to under 42 U.S.C. § 1988; and

E. Such other relief as the Court deems just and proper.

Dated: August 20, 2012          THE TENENBAUM LAW FIRM

/s/ Michael Tenenbaum

Michael Tenenbaum, Esq.
*Counsel for Plaintiffs*

# DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury.

Dated: August 20, 2012                THE TENENBAUM LAW FIRM

_____
Michael Tenenbaum, Esq.
*Counsel for Plaintiffs*

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF