1   KAMALA D. HARRIS
    Attorney General of California
2   CONSTANCE L. LELOUIS
    Supervising Deputy Attorney General
3   State Bar No. 148821
    STEPHANIE F. ZOOK
4   Deputy Attorney General
    State Bar No. 238383
5     1300 I Street, Suite 125
      P.O. Box 944255
6     Sacramento, CA 94244-2550
      Telephone: (916) 324-2512
7     Fax: (916) 324-8835
      E-mail: Stephanie.Zook@doj.ca.gov
8   *Attorneys for Defendants State of California,*
    *Governor of California, and Attorney General*
9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

13

| | |
|---|---|
| **ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian non-profit corporation; HVFG LLC, a New York limited liability company; and HOT'S RESTAURANT GROUP, INC., a California corporation,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**KAMALA D. HARRIS, in her official capacity as Attorney General of California; EDMUND G. BROWN, in his official capacity as Governor of California; and the STATE OF CALIFORNIA,**<br><br>Defendants. | **CV-12-05735-SVW-RZ**<br><br>**OPPOSITION OF THE STATE OF CALIFORNIA, GOVERNOR OF CALIFORNIA, AND ATTORNEY GENERAL TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:           September 18, 2012<br>Time:           12:00 p.m.<br>Courtroom:   6<br>Judge:          Steven V. Wilson<br>Trial Date:    None<br>Action Filed: 7/3/2012 |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction...........................................................................................................1

Standard for Issuing a Preliminary Injunction........................................................1

Argument .............................................................................................................2

    I.    Plaintiffs have not met their burden of showing that they are
likely to succeed on the merits..........................................................2

        A.    Defendants are immune from suit pursuant to the
Eleventh Amendment. ......................................................2

        B.    Plaintiffs' claims are not justiciable. ...............................6

        C.    California Health and Safety Code section 25982 is not
unconstitutionally vague...................................................7

            1.    Plaintiffs cannot raise a facial challenge.........................7

            2.    Plaintiffs' as applied challenge fails. ..............................7

        D.    Health and Safety Code section 25982 does not violate
the Commerce Clause. ....................................................11

            1.    Section 25982 does not regulate extraterritorially. ........12

            2.    Section 25982 has no discriminatory effects. ................13

            3.    *Pike* balancing is not required, but section 25982
serves a legitimate local purpose and its benefits
outweigh any burden on interstate commerce................14

            4.    The Dormant Foreign Commerce Clause is
inapplicable. ..................................................................16

            5.    *National Meat Ass'n v. Harris* is inapposite
because it does not involve the Commerce Clause. ........16

            6.    *Schollenberger* does not change the Commerce
Clause analysis. .............................................................18

    II.    Plaintiffs have not established that they are likely to suffer
irreparable harm. ...............................................................................19

    III.    Plaintiffs have not established that the balance of equities tips in
their favor..........................................................................................20

    IV.    Plaintiffs have not established that an injunction is in the public
interest...............................................................................................20

Conclusion ........................................................................................................21

# TABLE OF AUTHORITIES

**Page**

CASES

*Agua Caliente Band of Cahuilla Indians v. Hardin*
   223 F.3d 1041 (9th Cir. 2000)......................................................................... 3

*Alliance for the Wild Rockies v. Cottrell*
   632 F.3d 1127 (9th Cir. 2011)......................................................................... 2

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
   476 U.S. 573, 106 S. Ct. 2080, 90 L. Ed. 2d 552 (1986) .................................... 11, 12

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*
   511 U.S. 383, 114 S. Ct. 1677, 128 L. Ed. 2d 399 (1994) ...................................... 11

*California Med. Ass'n v. Douglas*
   848 F. Supp. 2d 1117 (C.D. Cal. 2012) ............................................................ 19

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*
   508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) ..................................... 15

*Coalition for Econ. Equity v. Wilson*
   122 F.3d 718 (9th Cir. 1997)......................................................................... 2, 20

*Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*
   527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) ....................................... 3

*Cupolo v. Bay Area Rapid Transit*
   5 F. Supp. 2d 1078 (N.D. Cal. 1997) ............................................................... 2

*Doe v. Lawrence Livermore Nat'l Lab.*
   131 F.3d 836 (9th Cir. 1997)......................................................................... 3

*Ex parte Young*
   209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) ............................................ 3, 5

*Gerling Global Reinsurance Corp. of Am. v. Low*
   240 F.3d 739 (9th Cir. 2001)......................................................................... 12, 13

*Grayned v. City of Rockford*
   408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) ......................................... 8

*Healy v. Beer Inst.*
   491 U.S. 324, 109 S. Ct. 2491, 105 L. Ed. 2d 275 (1989) ...................................... 11, 12

*Holder v. Humanitarian Law Project*
   130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010) ....................................................... 7, 8

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Humanitarian Law Project v. U.S. Treasury Dep't*
578 F.3d 1133 (9th Cir. 2009)............................................................... 10

*Illinois Rest. Ass'n v. City of Chicago*
492 F. Supp. 2d 891 (N.D. Ill. 2007) ............................................. *passim*

*Long v. Van de Kamp*
772 F. Supp. 1141 (C.D. Cal. 1991).......................................................... 5

*Long v. Van de Kamp*
961 F.2d 151 (9th Cir. 1992).......................................................... 3, 4, 5

*Los Angeles Cnty. Bar Ass'n v. Eu*
979 F.2d 697 (9th Cir. 1992)................................................................... 4

*Lydo Enters., Inc. v. City of Las Vegas*
745 F.2d 1211 (9th Cir. 1984)................................................................. 2

*Maine v. Taylor*
477 U.S. 131, 106 S. Ct. 2440, 91 L. Ed. 2d 110 (1986) ...................... 11

*Maryland v. King*
No. 12A48, 2012 WL 3064878 (U.S. July 30, 2012) ........................... 19

*Mazurek v. Armstrong*
520 U.S. 968, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) ...................... 1

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) ........................ 6

*Nat'l Audubon Soc'y, Inc. v. Davis*
307 F.3d 835 (9th Cir. 2002).............................................................. 4, 5

*National Meat Ass'n v. Harris*
132 S. Ct. 965, 181 L. Ed. 2d 950 (2012) ...................................... 16, 17

*Northern Wind, Inc. v. Daley*
200 F.3d 13 (1st Cir. 1999)................................................................... 10

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*
762 F.2d 1374 (9th Cir. 1985)............................................................... 20

*Pacific Nw. Venison Producers v. Smitch*
20 F.3d 1008 (9th Cir. 1994)..................................................... 14, 15, 16

iii

# TABLE OF AUTHORITIES
## (continued)

Page

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) ............................................. 3

*People v. Speegle*
53 Cal. App. 4th 1405, 62 Cal. Rptr. 2d 384 (1997)........................................ 10

*Pike v. Bruce Church, Inc.*
397 U.S. 137, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970)................................ 12, 14, 15

*Rocky Mountain Farmers Union v. Goldstene*
843 F. Supp. 2d 1071 (E.D. Cal 2011)................................................ 13

*Sacks v. Office of Foreign Assets Control*
466 F.3d 764 (9th Cir. 2006)........................................................ 7

*Schollenberger. Nat'l Kerosene Heater Ass'n, Inc. v. Mass.*
653 F. Supp. 1079 (D. Mass. 1986) ........................................ 17, 18

*Schollenberger v. Pennsylvania*
171 U.S. 1, 18 S. Ct. 757, 43 L. Ed. 48 (1898) ............................ 18, 19

*UFO Chuting of Hawaii, Inc. v. Smith*
508 F.3d 1189 (9th Cir. 2007)................................................ 15

*United States v. Mazurie*
419 U.S. 544, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975) ...................... 7

*United States v. Nat'l Dairy Products Corp.*
372 U.S. 29, 83 S. Ct. 594, 9 L. Ed. 2d 561 (1963) ........................ 8

*United States v. Purdy*
264 F.3d 809 (9th Cir. 2001)........................................................ 7

*United States v. Stevens*
130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) .............................. 15

*Ventura County Christian High Sch. v. City of San Buenaventura*
233 F. Supp. 2d 1241 (C.D. Cal. 2002) ................................ 20

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982)................. 8

*W. Lynn Creamery, Inc. v. Healy*
512 U.S. 186, 114 S. Ct. 2205, 129 L. Ed. 2d 157 (1994) ................ 18

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Weinstein v. Edgar*
   826 F. Supp. 1165 (N.D. Ill. 1993) .................................................................. 5

*Western Mining Council v. Watt*
   643 F.2d 618 (9th Cir. 1981) .......................................................................... 6

*Winter v. Natural Res. Def. Council, Inc.*
   555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) .................................... 2

**STATUTES**

21 United States Code
   § 451 ............................................................................................................... 17
   § 452 ............................................................................................................... 19
   § 453(f) ........................................................................................................... 17
   § 467(e) ........................................................................................................... 17

28 United States Code
   § 2201 ............................................................................................................... 6
   § 2201(a) ........................................................................................................... 6

42 United States Code
   § 1983 ........................................................................................................... 2, 3

California Health & Safety Code
   § 25980(b) ......................................................................................................... 9
   § 25981 ........................................................................................................... 13
   § 25982 .................................................................................................... *passim*
   § 25984 ....................................................................................................... 1, 13
   § 25984(c) ....................................................................................................... 13

**CONSTITUTIONAL PROVISIONS**

California Constitution
   Article V, § 13 .................................................................................................. 5

United States Constitution
   Article I, § 8, cl. 3 .......................................................................................... 11
   Article III ........................................................................................................... 6
   Eleventh Amendment ................................................................................. 1, 3, 4
   First Amendment ............................................................................................... 7

**OTHER AUTHORITIES**

11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure
   § 2948, pp. 129-130 (2d ed. 1995) ................................................................. 1

# TABLE OF AUTHORITIES
## (continued)

Page

California Bill Analysis, S.B. 1520, 2003-2004 Regular Sess. (Cal. Aug. 17, 2004), *available at* http://leginfo.ca.gov/pub/03-04/bill/sen/sb_1501-1550/sb_1520_cfa_20040825_095126_sen_floor.html..........................................................10, 16

1   **INTRODUCTION**

2   By their motion, Plaintiffs seek to enjoin the enforcement of a statute that has

3   been on the books since January 1, 2005 and took effect on July 1, 2012.  *See* Cal.

4   Health & Safety Code § 25984.  In other words, Plaintiffs have known for *seven*

5   *and one-half years* that California Health and Safety Code section 25982 would

6   take effect on July 1 and could have raised their claims long ago.  Instead, they

7   waited and now seek provisional relief, which they put off repeatedly, finally filing

8   their preliminary injunction motion almost three weeks after the original deadline.

9   Even then, Plaintiffs filed their moving papers and evidence a day late.  The Court

10   should deny Plaintiffs' motion for many of the same reasons that it denied

11   Plaintiffs' application for a temporary restraining order.

12   First, Plaintiffs' lengthy delay highlights the absence of irreparable harm.

13   Defendants State of California, the Governor of California, and the Attorney

14   General (collectively, "Defendants") also cannot be enjoined, and indeed should be

15   dismissed from this action, because they are immune from suit under the Eleventh

16   Amendment to the United States Constitution.  Furthermore, Plaintiffs are unlikely

17   to prevail on the merits.  A federal court has already upheld a city ordinance

18   banning the sale of foie gras.  *Illinois Rest. Ass'n v. City of Chicago*, 492 F. Supp.

19   2d 891 (N.D. Ill. 2007).  Plaintiffs' strained and implausible reading of the statute

20   notwithstanding, section 25982 is likewise constitutional.  For these reasons, and as

21   more fully explained below, Defendants respectfully request that Plaintiffs' motion

22   be denied.

23   **STANDARD FOR ISSUING A PRELIMINARY INJUNCTION**

24   "[A] preliminary injunction is an extraordinary and drastic remedy, one that

25   should not be granted unless the movant, *by a clear showing*, carries the burden of

26   persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138

27   L. Ed. 2d 162 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary

28   Kay Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)

1  (emphasis added by Supreme Court)).  Plaintiffs seeking a preliminary injunction

2  must establish:  (1) that they are likely to succeed on the merits, (2) that they are

3  likely to suffer irreparable harm in the absence of preliminary relief, (3) that the

4  balance of equities tips in their favor, and (4) that an injunction is in the public

5  interest.  *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20, 129 S. Ct. 365,

6  374, 172 L. Ed. 2d 249 (2008).

7  Alternatively, "[a] preliminary injunction is appropriate when a plaintiff

8  demonstrates that serious questions going to the merits were raised and the balance

9  of hardships tips sharply in the plaintiff's favor."  *Alliance for the Wild Rockies v.*

10 *Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

11 Nonetheless, Plaintiffs must make a showing of all four *Winter* factors even under

12 the alternative sliding scale test.  *Id*. at 1132, 1135.

13 Plaintiffs' burden is particularly heavy when they seek to enjoin operation of a

14 statute because "it is clear that a state suffers irreparable injury whenever an

15 enactment of its people or their representatives is enjoined."  *Coalition for Econ.*

16 *Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).  "A strong factual record is

17 therefore necessary before a federal district court may enjoin a State agency."

18 *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1085 (N.D. Cal. 1997).

19 Further, in this case, Plaintiffs' seven and one-half year delay is significant.  "A

20 delay in seeking a preliminary injunction is a factor to be considered in weighing

21 the propriety of relief."  *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211,

22 1213 (9th Cir. 1984).

## ARGUMENT

I.  **PLAINTIFFS HAVE NOT MET THEIR BURDEN OF SHOWING THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS.**

   **A.   Defendants Are Immune from Suit Pursuant to the Eleventh Amendment.**

27 Plaintiffs allege that their case arises under the Constitution of the United

28 States and 42 U.S.C. § 1983.  First Amended Complaint ("Compl.") ¶ 1.  "Claims

1    under § 1983 are limited by the scope of the Eleventh Amendment." *Doe v.*

2    *Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). The Eleventh

3    Amendment bars suits against a state for all types of legal or equitable relief in the

4    absence of consent by the state or abrogation of that immunity by Congress. *Coll.*

5    *Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670,

6    119 S. Ct. 2219, 2223, 144 L. Ed. 2d 605 (1999); *Pennhurst State Sch. & Hosp. v.*

7    *Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984)

8    (citations omitted). Thus, Plaintiffs' claims against the State of California itself are

9    plainly barred by the Eleventh Amendment.

10        With respect to Plaintiffs' claims against the Governor and the Attorney

11   General, "[t]he Eleventh Amendment [also] bars a suit against state officials when

12   'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp.*,

13   465 U.S. at 101 (citation omitted). The "'general rule is that relief sought

14   nominally against an officer is in fact against the sovereign if the decree would

15   operate against the latter.'" *Id.* (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58, 83

16   S. Ct. 1052, 1053, 10 L. Ed. 2d 191 (1963) (per curiam)). "And, as when the State

17   itself is named as the defendant, a suit against state officials that is in fact a suit

18   against a State is barred regardless of whether it seeks damages or injunctive

19   relief." *Id.* at 101-02.

20        The Supreme Court recognized a limited exception to Eleventh Amendment

21   immunity in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

22   The *Ex parte Young* exception allows "suits for prospective declaratory and

23   injunctive relief against state officers, sued in their official capacities, to enjoin an

24   alleged ongoing violation of federal law." *Agua Caliente Band of Cahuilla Indians*

25   *v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000). For the *Ex parte Young* exception

26   to apply, however, the state officer must have a connection with the enforcement of

27   the allegedly unconstitutional statute. *Long v. Van de Kamp*, 961 F.2d 151, 152

28   (9th Cir. 1992). "This connection must be fairly direct; a generalized duty to

1  enforce state law or general supervisory power over the persons responsible for

2  enforcing the challenged provision will not subject an official to suit." *Los Angeles*

3  *Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citing *Long*, 961 F.2d at

4  152; *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 714 F.2d 946,

5  953 (9th Cir. 1983)).  Further, "there must be a threat of enforcement." *Long*,

6  961 F.2d at 152.  "Absent a real likelihood that the state official will employ his

7  supervisory powers against plaintiffs' interests, the Eleventh Amendment bars

8  federal court jurisdiction." *Id*.

9      The Complaint contains no allegations establishing the Governor's or the

10 Attorney General's connection, direct or otherwise, to the enforcement of section

11 25982.  The only reference to enforcement in the entire complaint is an assertion in

12 Plaintiffs' cause of action for injunctive relief that "Defendants' enforcement of

13 section 25982 will cause harm that cannot be adequately compensated in damages,"

14 and thus they seek to enjoin Defendants from enforcing section 25982.  Compl.

15 ¶ 111.  This statement appears to be based on some theoretical future enforcement

16 as there is no allegation that any defendant, let alone which defendant, has actually

17 threatened to enforce section 25982.  Thus, Plaintiffs' claims are barred by the

18 Eleventh Amendment because there is no threat of enforcement.

19     Additionally, Plaintiffs' claims are barred by the Eleventh Amendment

20 because there is no connection between the named state officers and any potential

21 enforcement.  The Legislature did not give the Governor or the Attorney General

22 any special role in administering or enforcing section 25982.  The allegations of the

23 complaint indicate they are named as defendants merely because of their general

24 duties and supervisory roles.  The Governor is named as the holder of the office

25 vested with the "supreme executive power" of the state.  Compl. ¶ 10 (quoting Cal.

26 Const. art. V, § 1).  But the Governor's general authority is an insufficient

27 connection and does not make him a proper defendant in this action.  *See Nat'l*

28 *Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847, *opinion amended on denial of*

1    *reh'g*, 312 F.3d 416 (9th Cir. 2002) (holding suit was "barred against the Governor

2    and the state Secretary of Resources, as there is no showing that they have the

3    requisite enforcement connection to Proposition 4"); *see also Weinstein v. Edgar*,

4    826 F. Supp. 1165, 1167 (N.D. Ill. 1993) (stating that if Governor's general

5    obligation to faithfully execute the laws was a sufficient connection to the

6    enforcement of challenged statute, "then the constitutionality of every statute

7    enacted by the Illinois legislature necessarily could be challenged by merely

8    naming the Governor as a party defendant").

9        Likewise, the Attorney General is sued in her official capacity apparently

10   because she is "the chief law officer of the state" and has "direct supervision over

11   every district attorney and sheriff and over such other law enforcement officers as

12   may be designated by law." Cal. Const. art. V, § 13; *see* Compl. ¶ 9. *Long*

13   supports dismissal of the Attorney General in the instant action. In *Long*, the

14   plaintiffs challenged a California statute authorizing warrantless searches of

15   automobile repair shops without probable cause after being the subject of surprise

16   searches carried out by county deputy sheriffs and members of the California

17   Highway Patrol. *Long v. Van de Kamp*, 772 F. Supp. 1141, 1142 (C.D. Cal. 1991).[1]

18   The Ninth Circuit held that "the general supervisory powers of the California

19   Attorney General" did not establish the connection with enforcement required by

20   *Ex parte Young*. *Long*, 961 F.2d at 152. There was also no threat that the statute

21   would be enforced by the Attorney General, who "ha[d] not in any way indicated

22   that he intend[ed] to enforce" the law. *Id*. Similarly, Plaintiffs have not established

23   any connection between the Attorney General and enforcement of section 25982,

24   nor a real likelihood that the Attorney General will employ her supervisory powers

25   against Plaintiffs' interests. *Id*.

26

27   _____
     [1]   The court of appeals' decision incorporated by reference the facts of the
28   case as set forth in the district court's opinion. *Long*, 961 F.2d at 152.

## B.    Plaintiffs' Claims Are Not Justiciable.

A court's role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live "cases and controversies" consistent with the powers granted to the judiciary in Article III of the Constitution.  Plaintiffs seek a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.  Compl., p. 18.  The Declaratory Judgment Act provides in pertinent part that in "a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of any appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).  The "actual controversy" requirement of section 2201 refers to the type of cases and controversies that are justiciable under Article III. *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 126-27, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604 (2007).

In a declaratory judgment action, "[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a 'case or controversy' within the meaning of Article III, and is thus insufficient to satisfy the 'actual controversy' requirement of the Declaratory Judgment Act." *Western Mining Council v. Watt*, 643 F.2d 618, 627 (9th Cir. 1981) (citations omitted). Plaintiffs cannot challenge the validity of Health and Safety Code section 25982 because they have not shown imminent or even likely prosecution for violating the statute.  Plaintiffs HVFG LLC and Hot's Restaurant Group, Inc. claim they no longer sell foie gras in California, thus they are not violating the law.  *See* Decl. of Marcus Henley in Supp. of Pls.' Mot. for Prelim. Inj. ("Henley Decl.") ¶ 17; Decl. of Sean Chaney in Supp. of Pls.' Mot. for Prelim. Inj. ("Chaney Decl.") ¶ 10. Plaintiff Gauge Outfitters, Inc. raises even more speculative claims, as it is a ski and snowboard shop and thus has never sold foie gras.  Decl. of David Craycraft in Supp. of Pls.' Mot. for Prelim. Inj. ¶¶ 1-3.  "[W]hile it is well-established that an individual need not await prosecution under a law or regulation before challenging

1    it, we require a genuine threat of imminent prosecution and not merely an

2    imaginary or speculative fear of prosecution." *Sacks v. Office of Foreign Assets*

3    *Control*, 466 F.3d 764, 772-73 (9th Cir. 2006) (citations and quotations omitted).

4    Plaintiffs' speculative claims are not justiciable under this standard.

5    **C.    California Health and Safety Code Section 25982 Is Not**
     **Unconstitutionally Vague.**

6

7    **1.    Plaintiffs cannot raise a facial challenge.**

8         Plaintiffs seek a declaratory judgment that California Health and Safety Code

9    section 25982 is unconstitutional as applied to each plaintiff and as to the sale of

10   *any* products from moulard ducks.  Pls.' Compl., p. 18.  Where a statute is

11   challenged as unconstitutionally vague in a cause of action not involving the First

12   Amendment, courts do not consider whether the statute is unconstitutional on its

13   face, but whether the statute is impermissibly vague as applied to the plaintiffs.

14   *United States v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 714, 42 L. Ed. 2d 706

15   (1975); *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001).  This is because

16   "'a plaintiff who engages in some conduct that is clearly proscribed cannot

17   complain of the vagueness of the law as applied to the conduct of others.'"  *Holder*

18   *v. Humanitarian Law Project*, 130 S. Ct. 2705, 2719, 177 L. Ed. 2d 355 (2010)

19   (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S.

20   489, 495, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362 (1982)).  Thus, although their

21   pleading does not clearly define the nature and scope of the relief that they seek,

22   Plaintiffs cannot raise a facial challenge to section 25982 on vagueness grounds.

23   **2.    Plaintiffs' as applied challenge fails.**

24         Plaintiffs have failed to allege facts sufficient to state an as-applied claim.

25   Section 25982 does not prohibit sales of all foie gras per se, but rather sales of

26   products that are the result of force feeding a bird for the purpose of enlarging its

27   liver.  Plaintiffs have not yet been charged with violating the statute, hence the law

28   has not been applied to them.  Tellingly, Plaintiffs' declarants who produce foie

gras do not argue that they are not force feeding their ducks or intentionally enlarging the ducks' livers.  *See, e.g.,* Decl. of Dominique Bolduc in Supp. of Pls. Mot. for Prelim. Inj. ("Bolduc Decl.") ¶ 6; Decl. of Benoit Cuchet in Supp. of Pls.' Mot. for Prelim. Inj. ("Cuchet Decl.") ¶¶ 2-4, 10.  Plaintiffs have failed to allege facts to support their claim, and thus their assertion that Health and Safety Code section 25982 is unconstitutionally vague as applied to them also fails.

Even if the Court were inclined to go further, section 25982 is not unconstitutionally vague.  A law is unconstitutionally vague if it does not provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."  *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222 (1972).  A law also runs afoul of the Due Process Clause if it is "'so standardless that it authorizes or encourages seriously discriminatory enforcement.'"  *Holder*, 130 S. Ct. at 2718 (quoting *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)).  Further, economic regulations and statutes with civil penalties are subject to less strict vagueness tests than other laws.  *Village of Hoffman Estates*, 455 U.S. at 498-99.  And "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *Holder*, 130 S. Ct. at 2719 (citations and quotations omitted).  Statutes are presumptively valid and not automatically invalidated simply because it is difficult to determine whether marginal offenses fall within their language.  *United States v. Nat'l Dairy Products Corp*., 372 U.S. 29, 32, 83 S. Ct. 594, 597, 9 L. Ed. 2d 561 (1963).

Here, it is clear what conduct section 25982 prohibits.  It states that "[a] product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size."  Force feeding a bird is further defined as:

> a process that causes the bird to consume more food than a
> typical bird of the same species would consume voluntarily.

1
2
3

> Force feeding methods include, but are not limited to, delivering
> feed through a tube or other device inserted into the bird's
> esophagus.

4  Cal. Health & Safety Code § 25980(b).  Plaintiffs embark upon a strained reading
5  of the statute in order to suggest it is unconstitutionally vague.  They would like the
6  Court to believe that farmers will be stuck weighing ducks' food and puzzling over
7  how much to give them; that the question is only how much food a duck eats, not
8  how it is fed.  In fact, there is nothing subtle about the conduct that section 25982
9  prohibits.  Farmers are not prohibited from leaving out more food than usual for a
10 particularly hungry duck.  Rather, California bans the sale of foie gras that is the
11 result of *force feeding* for the purpose of enlarging the bird's liver beyond a normal
12 size.  Plaintiffs focus on the "more food than a typical bird of the same species
13 would consume voluntarily" aspect of the statute and conveniently ignore the rest.
14 *See* Pls.' Br. in Supp. of Mot. for Prelim. Inj. ("Pls.' Br."), pp. 11-13.  Farmers
15 know when they are trying to enlarge a bird's liver, just as they know when they are
16 using a *process* meant to make a bird consume too much food.  A farmer who is
17 putting a tube into a bird's esophagus knows exactly what he or she is doing.  And
18 several of Plaintiffs' declarants confess to doing exactly that.  *See* Bolduc Decl. ¶ 6;
19 Decl. of Pascal Fleury in Supp. of Pls.' Mot. for Prelim. Inj. ¶ 6; Decl. of
20 Emmanuel Nassans in Supp. of Pls.' Mot. for Prelim. Inj. ¶ 7.  The legislative
21 history of section 25982 illustrates this point:

22
23
24
25
26
27
28

> Force feeding is the common method used to produce foie gras
> and is accomplished by restraining the bird and inserting a 10- to
> 12-inch metal or plastic tube into the bird's esophagus and
> delivering large amounts of concentrated meal and compressed
> air into the bird.  This process is repeated up to three times a day
> for several weeks until the liver reaches the desired size and the
> bird is slaughtered.

1   California Bill Analysis, S.B. 1520, 2003-2004 Regular Sess. (Cal. Aug. 17, 2004),

2   *available at* http://leginfo.ca.gov/pub/03-04/bill/sen/sb_1501-

3   1550/sb_1520_cfa_20040825_095126_sen_floor.html (Exhibit A to Defs.' Req. for

4   Judicial Notice in Supp. of Opp'n to Pls.' Mot. for Prelim. Inj., filed herewith

5   ("RJN")).

6       The conduct proscribed by section 25982 is not inadvertent or difficult to

7   identify.  A person of ordinary intelligence can discern what is required of them

8   based on the plain language of the statute and its definitions.  *See People v. Speegle*,

9   53 Cal. App. 4th 1405, 1410-11, 62 Cal. Rptr. 2d 384 (1997) (rejecting argument

10  that statute criminalizing depriving animal of "necessary" sustenance, drink, or

11  shelter; subjecting an animal to "needless suffering;" or failing to provide an animal

12  with "proper" food or drink was unconstitutionally vague because the terms

13  "necessary," "needless," and "proper" all gave fair notice of an objective standard).

14      Plaintiffs' assertion that "it is impossible for a farmer of moulard ducks to

15  know against which 'same species' of duck he must measure his ducks'

16  consumption" because the moulard is a hybrid is a red herring.  Pls.' Br., p. 11.

17  Plaintiffs do not allege they could meet the standard under either species, or even as

18  compared to other moulard ducks.

19      Plaintiffs also claim that they cannot know if they are selling a product that

20  violates the statute.  Pls.' Br., p. 14.  This argument fails because scienter is not

21  required to impose civil penalties for statutory violations when the statute is silent

22  as to state of mind.  *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d

23  1133, 1152 (9th Cir. 2009); *Northern Wind, Inc. v. Daley*, 200 F.3d 13, 19 (1st Cir.

24  1999).  Additionally, the statute is clear about what products cannot be sold in

25  California—those that result from force feeding a bird for the purpose of enlarging

26  its liver beyond normal size.  A seller can figure out whether its supplier is force

27  feeding a bird just by asking.

28

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION (CV-12-05735-SVW-RZ)

**D.     Health and Safety Code Section 25982 Does Not Violate the Commerce Clause.**

The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3. The Commerce Clause includes an implied limitation on the states' authority to adopt legislation that affects commerce.  This implied limitation is often referred to as the negative or dormant Commerce Clause.  *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1, 109 S. Ct. 2491, 2499, 105 L. Ed. 2d 275 (1989) (emphasis added).  The purpose of the dormant Commerce Clause is to "prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390, 114 S. Ct. 1677, 1682, 128 L. Ed. 2d 399 (1994).  However, its restrictions are "by no means absolute" and "[s]tates retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected."  *Maine v. Taylor*, 477 U.S. 131, 138, 106 S. Ct. 2440, 2447, 91 L. Ed. 2d 110 (1986) (citations and quotations omitted).  "As long as a State does not needlessly obstruct interstate trade or attempt to place itself in a position of economic isolation, it retains broad regulatory authority to protect the health and safety of its citizens and the integrity of its natural resources."  *Id*. at 151 (citations and quotations omitted).

Whether state legislation violates the dormant Commerce Clause is generally analyzed under a two-tiered approach.  *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79, 106 S. Ct. 2080, 2084, 90 L. Ed. 2d 552 (1986).  A statute is essentially per se invalid if it directly regulates or discriminates against interstate commerce or if its effect is to favor in-state economic interests over out-of-state interests.  *Id*. at 579.  On the other hand, when a statute is nondiscriminatory and has only indirect effects on interstate commerce and

1    regulates evenhandedly, courts usually examine whether the state's interest is

2    legitimate and whether the burden on interstate commerce clearly exceeds the local

3    benefits under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 847, 25

4    L. Ed. 2d 174 (1970).  *Brown-Forman Distillers Corp.*, 476 U.S. at 579.

5                    **1.    Section 25982 does not regulate extraterritorially.**

6           By its terms, section 25982 is not an extraterritorial regulation.  A statute

7    violates the Commerce Clause where it "directly controls commerce occurring

8    *wholly* outside the boundaries of the state."  *Healy v. Beer Inst.*, 491 U.S. 324, 336,

9    109 S. Ct. 2491, 2499, 105 L. Ed. 2d 275 (1989) (emphasis added).  Section 25982

10   only regulates the sale of foie gras under certain circumstances within California.  It

11   does not directly, or indirectly, control commerce occurring wholly outside of

12   California.  *See Gerling Global Reinsurance Corp. of Am. v. Low*, 240 F.3d 739,

13   746 (9th Cir. 2001) (holding state law did not violate Commerce Clause where

14   statute "on its face, does not regulate foreign insurance policies, or control the

15   substantive conduct of a foreign insurer, or otherwise affect 'the business of

16   insurance' in any other country").  For instance, in *Healy v. Beer Institute*, the

17   Supreme Court struck down a Connecticut statute that required out-of-state beer

18   shippers to post their prices for beer sold in Connecticut each month and certify that

19   the prices would be no higher than prices at which the same products were sold in

20   bordering states for the rest of the month.  491 U.S. at 326-27.  The statute violated

21   the Commerce Clause because it had the practical effect of controlling prices in

22   other states.  *Id*. at 337-40.  By contrast, section 25982 has no effect on any

23   transactions that take place outside of California.  While section 25982 may impact

24   the interstate market, it does not control out-of-state conduct.  *See Illinois Rest.*

25   *Ass'n*, 492 F. Supp. 2d at 899 ("The court finds that the fact that the Ordinance has

26   an economic effect on out-of-state foie gras production does not mean that it

27   regulates or discriminates against interstate commerce.").

28

1    Plaintiffs note that section 25984(c) states that it is the Legislature's intent, by

2    delaying the operative date of the provisions of the chapter, to allow persons

3    engaged in agricultural practices that include raising and selling force fed birds to

4    modify their business practices.  Pls.' Br., p. 18.  The delayed operative date applies

5    not only to section 25982, but also section 25981, which states that "[a] person may

6    not force feed a bird for the purpose of enlarging the bird's liver beyond normal

7    size, or hire another person to do so."  Section 25981, the production ban, only

8    applies within California.  Thus, section 25984(c) does not suggest that it was the

9    Legislature's intent to operate beyond California.  The sale ban merely reinforces

10   the in-state production ban by removing the incentive for in-state producers to force

11   feed birds in contravention of the ban.  And California also has an interest in

12   prohibiting sales involving animal cruelty within its borders.  Regardless, "the

13   legislature's stated purpose in enacting a statute is not dispositive of a dormant

14   Commerce Clause challenge."  *Gerling Global Reinsurance Corp. of Am.*, 240 F.3d

15   at 746.  "The Commerce Clause seeks to prevent extraterritorial economic 'effects,'

16   not purposes."  *Id.*  Unlike *Rocky Mountain Farmers Union v. Goldstene*, 843

17   F. Supp. 2d 1071 (E.D. Cal 2011),[2] cited by Plaintiffs, the practical effect of this

18   legislation is *not* to control conduct occurring wholly outside of California.

19   Plaintiffs' own moving papers illustrate that section 25984 has no extraterritorial

20   economic effects.  None of the declarations lodged by Plaintiffs suggest that any

21   producer outside of California has actually changed its method of producing foie

22   gras in response to this California law.

23              **2.    Section 25982 has no discriminatory effects.**

24       Health and Safety Code section 25982 also does not discriminate against

25   interstate commerce or favor in-state economic interests.  Section 25982 is facially

26   _____

         [2]  This case is currently on appeal to the Ninth Circuit and a stay of the lower
27   court's judgments and preliminary injunction has been granted.  *Rocky Mountain
     Farmers Union v. Goldstene*, Case No. 12-15131 (9th Cir.), Docket No. 54.

28

1   neutral and bans the sale of all products resulting from force feeding a bird for the

2   purpose of enlarging the bird's liver beyond normal size, regardless of origin.  "An

3   import ban that simply effectuates a complete ban on commerce in certain items is

4   not discriminatory, as long as the ban on commerce does not make distinctions

5   based on the origin of the items."  *Pacific Nw. Venison Producers v. Smitch*,

6   20 F.3d 1008, 1012 (9th Cir. 1994).  This is not legislation that protects California

7   foie gras producers at the expense of out-of-state producers.  *See id.* ("The guiding

8   principle in determining whether a state regulation discriminates against interstate

9   or foreign commerce is whether either the purpose or the effect of the regulation is

10  economic protectionism.").  In fact, the in-state foie gras producer has closed.

11  Decl. of Guillermo Gonzalez in Supp. of Pls.' Mot. for Prelim. Inj. ("Gonzalez

12  Decl.") ¶¶ 2-3.  To the extent Plaintiffs seek to rely upon evidence that two in-state

13  purchasers of duck breasts have turned to a California supplier, such evidence is

14  irrelevant.  *See* Pls.' Br., pp. 23-24.  If customers have stopped buying duck breasts

15  from Hudson Valley, it is because Hudson Valley sells foie gras.  And again,

16  Hudson Valley remains in a better position than any California seller of foie gras.

17  Thus, section 25982 in no way discriminates against interstate commerce.

18          **3.   *Pike* balancing is not required, but section 25982 serves a**
                   **legitimate local purpose and its benefits outweigh any**
19                 **burden on interstate commerce.**

20          An Illinois district court has upheld a City of Chicago ban on the sale of foie

21  gras where the State of Illinois did not even have any foie gras producers.  *Illinois*

22  *Rest. Ass'n*, 492 F. Supp. 2d. at 892-93.  In doing so, the district court held that the

23  ordinance did not regulate or discriminate against interstate commerce.  *Id.* at 901.

24  The court went on to hold that because the ordinance did not have any effect on in-

25  state interests since no foie gras was produced in Illinois, *Pike* balancing was not

26  necessary and the ordinance was found not to violate the dormant Commerce

27  Clause.  *Id.* at 904.  Similarly, Health and Safety Code section 25982 cannot have

28  any effect on in-state interests because its ban offers no benefit to any in-state foie

gras producers.  Indeed, foie gras is no longer produced in California.  *See*
Gonzalez Decl. ¶¶ 2-3.  Thus, *Pike* balancing is not required and section 25982
does not violate the dormant Commerce Clause.

 Even if the Court were to use *Pike* balancing, however, the state's interest is
legitimate and the burden on interstate commerce does not exceed the local
benefits.  *See Pike*, 397 U.S. at 142.  "A facially neutral statute may violate the
Commerce Clause if 'the burdens of the statute . . . so outweigh the putative
benefits as to make the statute unreasonable or irrational.'"  *UFO Chuting of
Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1196 (9th Cir. 2007) (quoting *Alaska Airlines
Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991) (per curiam)).  That is
not the case here.  Preventing cruelty to animals is a legitimate governmental
interest.  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520,
538, 113 S. Ct. 2217, 2229, 124 L. Ed. 2d 472 (1993); *see also United States v.
Stevens*, 130 S. Ct. 1577, 1585, 176 L. Ed. 2d 435 (2010) ("[T]he prohibition of
animal cruelty itself has a long history in American law, starting with the early
settlement of the Colonies.").  And the statute is narrowly tailored to the state's
interest.  Section 25982 bans the sale of foie gras only if it is produced by means
that are tantamount to animal cruelty.  California has a legitimate interest in
preventing sales related to animal cruelty within its borders.  Further, with respect
to balancing, "[e]ven in the context of dormant commerce clause analysis, the
Supreme Court has frequently admonished that courts should not 'second-guess the
empirical judgments of lawmakers concerning the utility of legislation.'"  *Pacific
Nw. Venison Producers*, 20 F.3d at 1017 (quoting *CTS Corp. v. Dynamics Corp. of
Am.*, 481 U.S. 69, 92, 107 S. Ct. 1637, 1651, 95 L. Ed. 2d 67 (1987)).  Therefore,
Plaintiffs have failed to establish likelihood of success on the merits of their claims.
/ / /
/ / /

### 4.    The Dormant Foreign Commerce Clause is inapplicable.

The Dormant Foreign Commerce Clause "protects the federal government's ability to speak with a single voice when regulating commerce with foreign countries." *Illinois Rest. Ass'n*, 492 F. Supp. 2d. at 905.  "Because the [law] treats domestic and foreign foie gras equally, however, the dormant Foreign Commerce Clause is inapplicable." *Id*.  Additionally, this is not a matter in which national uniformity is important and thus additional scrutiny would be appropriate. *See Pacific Nw. Venison Producers*, 20 F.3d at 1014 (noting most states and Canadian provinces ban some species of wildlife and the lists vary widely).  At least fourteen countries already ban force feeding birds to produce foie gras.  California Bill Analysis, S.B. 1520, 2003-2004 Regular Sess. (Cal. Aug. 17, 2004), *available at* http://leginfo.ca.gov/pub/03-04/bill/sen/sb_1501-1550/sb_1520_cfa_20040825_095126_sen_floor.html (Exhibit A to RJN).  Further, Plaintiffs concede that other states also have animal cruelty laws. Pls.' Br., p. 5 n.5.  Additionally, unlike cases involving *different* requirements for mud flaps, cited by Plaintiffs, there is no showing that Plaintiffs could not comply with all of the animal cruelty laws at once.  Likewise, Congress has not recognized a need for national uniformity with respect to foie gras.  The fact that foie gras is not subject to a tariff is irrelevant.

### 5.    *National Meat Ass'n v. Harris* is inapposite because it does not involve the Commerce Clause.

Plaintiffs' argument based on *National Meat Ass'n v. Harris*, 132 S. Ct. 965, 181 L. Ed. 2d 950 (2012) also fails because that case turned on federal preemption, not the Commerce Clause. *See* Pls.' Br., pp. 19-20.  Regardless, the case is distinguishable.  In *National Meat Ass'n v. Harris*, the Supreme Court held that the Federal Meat Inspection Act ("FMIA") preempted a California law dictating what slaughterhouses must do with pigs that cannot walk.  132 S. Ct. at 968.  FMIA regulates the inspection, handling, and slaughter of livestock for human

consumption. *Id.* The California law at issue prevented slaughterhouses from selling, processing, or butchering a nonambulatory animal, and required the slaughterhouse to humanely euthanize any nonambulatory animals. *Id.* at 970. In contrast, federal law and regulations allowed nonambulatory pigs to be set aside and held without euthanizing them. *Id.* at 969, 971. FMIA's preemption clause prevented a state from imposing any additional or different requirements concerning a slaughterhouse's facilities or operations. *Id.* at 970. The Court held that the California law imposed different requirements concerning the slaughterhouse's facilities or operations. *Id.* at 970, 975.

The Poultry Products Inspection Act, 21 U.S.C. § 451 et seq. ("PPIA") regulates the inspection and slaughter of poultry and the processing and distribution of poultry products to ensure that poultry is "wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451. "Poultry products" "means any poultry carcass, or part thereof; or any product which is made wholly or in part from any poultry carcass or part thereof" and thus is broad enough to include foie gras. *Id.* § 453(f). Similar to FMIA's preemption clause, PPIA prevents a state from imposing any additional or different requirements concerning a slaughterhouse's facilities or operations. *Id.* § 467(e). Unlike the California statute at issue in *National Meat Ass'n v. Harris*, section 25982 "works at a remove from the sites and activities that the [federal law] most directly governs." *Nat'l Meat Ass'n*, 132 S. Ct. at 974. Section 25982 regulates sales and not slaughterhouse activity. Meanwhile, PPIA regulates slaughterhouse activity and makes no specific mention of sales of foie gras. Therefore, section 25982 does not conflict with the PPIA.[3]

_____

[3] The materials for which Plaintiffs seek judicial notice are not remotely relevant here. A United States Department of Agriculture policy book and memo on labeling names for foie gras, a poultry inspection directive that does not refer to foie gras specifically, and the fact that fatty duck livers are not subject to tariffs are wholly unrelated to the question of whether California's animal cruelty laws are preempted under the facts of this case. Req. for Judicial Notice in Support of Pls.'
(continued…)

**6.**   ***Schollenberger* does not change the Commerce Clause analysis.**

Plaintiffs assert that section 25982 violates the Commerce Clause because it imposes a ban on food products that the federal government has deemed wholesome.  *See* Pls.' Br., p. 21.  The federal government's regulation of the safety of foie gras consumption does not preempt regulation of sales at the state level because California is not enacting legislation directed at whether foie gras is fit for consumption.  *See Illinois Rest. Ass'n*, 492 F. Supp. 2d at 896 ("Similarly, the federal government's regulation of the safety of foie gras consumption does not preempt regulation of sales at the local level because Chicago is not enacting legislation directed at whether foie gras is fit for consumption.").

*Schollenberger v. Pennsylvania*, 171 U.S. 1, 18 S. Ct. 757, 43 L. Ed. 48 (1898) cited by Plaintiffs, is not controlling.  *Schollenberger* has only been cited meaningfully by *any* court[4] once in the last 30 years, and that court rightfully pointed out that modern dormant commerce clause analysis applies to product bans, not *Schollenberger*.  *Nat'l Kerosene Heater Ass'n, Inc. v. Mass*., 653 F. Supp. 1079, 1095-96 (D. Mass. 1986).  Moreover, unlike the Pennsylvania statute at issue in *Schollenberger* that prohibited the sale of all oleomargarine, section 25982 does not totally exclude an unadulterated, healthy, and pure product from California.  *Id.* at 2, 13.  Section 25982 does not even prohibit all foie gras sales, but rather prohibits sales of foie gras produced through means constituting animal cruelty.  Congress has also not affirmatively pronounced foie gras specifically to be a proper subject of commerce.  *Cf. id.* at 8-9 (federal law specifically mentioned oleomargarine).  The

_____

(…continued)
Mot for Prelim. Inj., Exs. B-E.

[4]   The Supreme Court has only cited *Schollenberger* once since the early 1940s, and it was only to point out the number of cases that have involved dairy products.  *See W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 206 n.22, 114 S. Ct. 2205, 2218, 129 L. Ed. 2d 157 (1994) ("A surprisingly large number of our Commerce Clause cases arose out of attempts to protect local dairy farmers.").

18

statutes cited by Plaintiffs refer to poultry products generally, not foie gras in particular. *See* 21 U.S.C. § 452. Thus, *Schollenberger* is inapplicable.

## II. PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE LIKELY TO SUFFER IRREPARABLE HARM.

Plaintiffs' motion also should be denied because they cannot establish sufficient harm to outweigh the fact "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, No. 12A48, 2012 WL 3064878, at * 2 (U.S. July 30, 2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351, 98 S. Ct. 359, 54 L. Ed. 2d 439 (1977)).

Plaintiffs' alleged interim harm is lost profits. *See* Pls.' Br., p. 27. Hot's Restaurant Group, Inc.'s claims losses of a scant $6,000 per month in sales, but that number is inflated because the sales declines include products it still sells, and thus the losses are not necessarily even attributable to the foie gras ban. *See* Chaney Decl. ¶ 11 (stating Hot's continues to sell duck confit tacos and french fries made with duck fat, but sales of those products declined by $6,000 in July 2012). Meanwhile, HVFG LLC alleged that only 20% of revenues came from California sales. Henley Decl. ¶ 16. Some members of Association des Éleveurs de Canards et d'Oies du Québec asserted similar revenue ratios. Decl. of Olivier Nassans in Supp. of Pls.' Mot. for Prelim. Inj. ¶ 3; Cuchet Decl. ¶ 5. Other members alleged no harm. *See* Decl. of Bruno Giuliani in Supp. of Pls.' Mot. for Prelim. Inj. ¶ 5; Bolduc Decl.; Decl. of Emmanuel Nassans in Supp. of Pls.' Mot. for Prelim. Inj. Further, recent sales numbers were most likely inflated by last-minute sales before the ban went into effect. These showings are not sufficient to establish irreparable harm. *See California Med. Ass'n v. Douglas*, 848 F. Supp. 2d 1117, 1138 (C.D. Cal. 2012) (finding irreparable harm where substantial monetary losses would force plaintiffs to "severely curtail their services or close their businesses entirely").

Further, any lost profits are "due in part to their own failure to obtain a judicial determination of their rights and obligations at some earlier point in time." *Ventura County Christian High Sch. v. City of San Buenaventura*, 233 F. Supp. 2d 1241, 1253 (C.D. Cal. 2002) (determining public interest should receive greater weight). "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Plaintiffs' assertion that they "did not conceive of the extent of" their harm before July 1 makes no sense. *See* Pls.' Br., p. 28 n.14. Plaintiffs knew about both the statute and their California sales before then. Notably, Plaintiffs cite to declaration paragraphs that do not exist to support their claim they have diligently prosecuted this case. Pls.' Br., p. 28 n.14. Their failure to prosecute their case in a timely manner reveals the manifest absence of irreparable harm.

## III. PLAINTIFFS HAVE NOT ESTABLISHED THAT THE BALANCE OF EQUITIES TIPS IN THEIR FAVOR.

The record is clear that the equities tip dramatically against Plaintiffs. They have inexplicably delayed more than seven years in filing their complaint. Meanwhile, the state would suffer irreparable injury if section 25982 is enjoined pending a decision on the merits of Plaintiffs' specious claims. *See Coalition for Econ. Equity*, 122 F.3d at 719 ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined.").

## IV. PLAINTIFFS HAVE NOT ESTABLISHED THAT AN INJUNCTION IS IN THE PUBLIC INTEREST.

Enjoining section 25982 for the pleasure of foie gras consumers and monetary benefit of restaurants and producers who want to sell foie gras is not the type of public interest that weighs more heavily than allowing continued cruelty to animals. On the other hand, the Legislature considered information about the production of foie gras as well as the arguments of the opponents of the ban, and determined that

1   enacting section 25982 was in the public's interest.  Thus, the public interest favors

2   denying Plaintiffs' motion.

3                                          **CONCLUSION**

4        For the foregoing reasons, the Court should deny Plaintiffs' motion for a

5   preliminary injunction.

6

7   Dated:  August 27, 2012                    Respectfully submitted,

8                                              KAMALA D. HARRIS
                                               Attorney General of California
9                                              CONSTANCE L. LELOUIS
                                               Supervising Deputy Attorney General
10

11                                             */s/* STEPHANIE F. ZOOK

12                                             STEPHANIE F. ZOOK
                                               Deputy Attorney General
13                                             *Attorneys for Defendants State of*
                                               *California, Governor of California, and*
14                                             *Attorney General*

    SA2012106936
15  10942856.doc

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    21