Michael Tenenbaum, Esq. (No. 186850)
mt@post.harvard.edu
THE TENENBAUM LAW FIRM
1431 Ocean Ave., Ste. 400
Santa Monica, CA  90401
Tel     (310) 919-3194
Fax    (310) 919-3727

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; HOT'S RESTAURANT GROUP, INC., a California corporation; and GAUGE OUTFITTERS, INC., a California corporation dba ELEVATION SPORTS;<br><br>Plaintiffs,<br><br>– against –<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California; EDMUND G. BROWN, in his official capacity as Governor of California; and the STATE OF CALIFORNIA;<br><br>Defendants. | Case No. CV-12-5735-SVW (RZx)<br><br>**PLAINTIFFS' <u>REPLY</u> BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:         September 18, 2012<br>Time:        12:00 p.m.<br>Courtroom: 6<br><br>Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

SUMMARY OF REPLY BRIEF ........................................................................................ 1

    I.    Contrary to their suggestion, Defendants have been properly named, and Plaintiffs' claims are justiciable ............................................ 1

        A.    The Attorney General, Governor, and State of California are proper defendants on claims for declaratory and injunctive relief, since they are empowered to enforce section 25982 against Plaintiffs at any time ................................ 1

        B.    Plaintiffs' claims are justiciable, since Plaintiffs face a current threat of prosecution under section 25982 ....................... 3

    II.   Defendants' conclusory arguments about the meaning and effect of section 25982 do not reduce Plaintiffs' strong likelihood of success on the merits ....................................................... 4

        A.    Section 25982 incorporates a feeding restriction that is impermissibly vague, despite Defendants' bald assertion that "it is clear" ............................................................................ 5

        B.    The only practical effect of section 25982 is to try to control Plaintiffs' feeding practices outside California, and Defendants' arguments only reinforce that reality ................ 6

        C.    Defendants make no effort to counter Plaintiffs' argument on the issue of section 25982's threat to national uniformity in the market for federally-regulated poultry products ................................................................................. 8

        D.    Defendants fail to articulate a legitimate local benefit that would outweigh section 25982's massive burden on the interstate market for moulard duck products ............................. 8

            1.    Defendants' reliance on a non-binding Illinois court order concerning Chicago's ban on "foie gras" is misplaced ............................................................ 9

    III.  Defendants have submitted no facts and no valid argument to counter Plaintiffs' extensive showing of irreparable harm ....................................................................................... 10

IV. Defendants' arguments leave the balance of hardships tilted sharply in Plaintiffs' favor ................................................................. 11

V. A preliminary injunction is in the public interest, and Defendants offer no evidence or legal authority to the contrary .......... 12

CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Brockett v. Spokane Arcades, Inc.*,
    472 U.S. 491 (1985) .................................................................................. 11

*California Hosp. Ass'n v. Maxwell-Jolly*,
    776 F.Supp.2d 1129 (2011) ....................................................................... 2

*California Justice Committee v. Bowen*,
    2012 WL 2861349 (C.D. Cal. May 21, 2012) ......................................... 11

*California Medical Ass'n v. Douglas*,
    848 F.Supp.2d 1117 (C.D. Cal. 2012) ................................................ 11, 12

*California Pharm. Ass'n v. Maxwell-Jolly*,
    596 F.3d 1098 (9th Cir. 2010) .................................................................. 11

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) .................................................................................... 9

*Coalition for Econ. Equity v. Wilson*,
    122 F.3d 718 (9th Cir. 1997) .................................................................... 12

*Ex Parte Young*,
    209 U.S. 123 (1908) ............................................................................... 2, 4

*F.C.C. v. Fox Television Stations, Inc.*,
    132 S.Ct. 2307 (2012) ................................................................................ 5

*Illinois Restaurant Ass'n v. City of Chicago*,
    492 F.Supp.2d 891 (N.D. Ill. 2007) ............................................................ 9

*Independent Living Center of Southern California, Inc. v. Maxwell-Jolly*,
    572 F.3d 644 (9th Cir. 2009) .................................................................... 12

*Levine v. Fair Political Practices Com'n*,
    222 F.Supp.2d 1182 (E.D. Cal. 2002) ...................................................... 12

*Los Angeles Cnty. Bar Ass'n v. Eu*,
    979 F.2d 697 (9th Cir. 1992) ...................................................................... 2

Straight TOC

*Missouri v. Jenkins,*
  491 U.S. 274 (1989) .................................................................................... 3

*National Ass'n of Optometrists & Opticians v. Harris,*
  628 F.3d 1144 (9th Cir. 2012) ...................................................................... 9

*Nat'l Audubon Soc'y, Inc. v. Davis,*
  307 F.3d 835 (9th Cir. 2002) ................................................................... 2, 7

*Nat'l Kerosene Heater Ass'n v. Mass.,*
  653 F.Supp. 1079 (D. Mass. 1986) ............................................................. 8

*National Meat Ass'n v. Harris,*
  123 S.Ct. 965 (2012) ................................................................................... 3

*Nichols v. Brown,*
  2012 WL 1604852 (C.D. Cal. May 7, 2012) .............................................. 2

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.,*
  762 F.2d 1374 (9th Cir. 1985) .................................................................. 11

*People v. Speegle,*
  53 Cal.App.4th 1405 (Cal. Ct. App. 1997) ................................................. 5

*Pierce v. Superior Court,*
  1 Cal.2d 759 (Cal. 1934) ............................................................................ 2

*Pike v. Bruce Church, Inc.,*
  397 U.S. 137 (1970) ............................................................................. 9, 10

*Planned Parenthood of Idaho, Inc. v. Wasden,*
  376 F.3d 908 (9th Cir. 2004) ...................................................................... 2

*Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.,*
  890 F.2d 184 (9th Cir. 1993) ...................................................................... 4

*Sammartano v. First Judicial Dist. Ct.,*
  303 F.3d 959 (9th Cir. 2002) .................................................................... 12

*Schollenberger v. Com. of Pa.,*
  171 U.S. 1 (1898) ........................................................................................ 8

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**Statutes**

21 U.S.C. § 451 ..................................................................................................... 8

42 U.S.C. § 1988 ................................................................................................... 3

Cal. Gov't Code § 12511 ....................................................................................... 3

Cal. Gov't Code § 12511 ....................................................................................... 2

Cal. Gov't Code § 12524 ....................................................................................... 3

Cal. Gov't Code § 12550 .................................................................................. 2, 3

Cal. Gov't Code § 12560 ....................................................................................... 3

Cal. Health & Safety Code § 25982 .............................................................. *passim*

Cal. Health & Safety Code § 25983 ................................................................. 2, 3

Cal. Health & Safety Code § 25984 ..................................................................... 7

SUMMARY OF REPLY BRIEF

Defendants' opposition does nothing to undercut the evidence and arguments advanced by Plaintiffs in their opening papers on this motion for a preliminary injunction. Defendants do not supply *any* proof in response to Plaintiffs' evidentiary showing of irreparable harm or of the other factors germane to this motion. Instead, Defendants pin their opposition to an Illinois district court order with no precedential value and with equally little application to the statute at issue here. Defendants' arguments only further highlight the unconstitutionality of section 25982: they effectively punt on the issue of vagueness; pretend that out-of-state and foreign farmers are not forced to comport their farming practices to California's liking; pass over Congress's pronouncements of the need for national uniformity in the market for poultry products; and fail to articulate a legitimate *local* benefit that would outweigh section 25982's massive burdens on the interstate market for moulard duck products. Because Plaintiffs supplied undisputed evidence of their irreparable loss of $363,000 a month, because Defendants do not cite proof of any prejudice to tilt the balance of hardships in their favor, and because injunctive relief here promotes the public interest, this Court should grant Plaintiff's motion for a preliminary injunction.

I. **Contrary to their suggestion, Defendants have been properly named, and Plaintiffs' claims are justiciable.**

Before responding to the points in Plaintiffs' brief, Defendants first argue: (1) that their sovereign immunity somehow extends even to this suit for injunctive relief and (2) that Plaintiffs' claims are not yet ripe. These arguments are easily dismissed.

A. **The Attorney General, Governor, and State of California are proper defendants on claims for declaratory and injunctive relief, since they are empowered to enforce section 25982 against Plaintiffs at any time.**

There is no dispute that, because Defendants enjoy sovereign immunity, Plaintiffs will never be able to recover their impending financial losses. (Opp. at 2-3.) Indeed, as explained in Plaintiffs' opening brief, this alone establishes irreparable harm. "[W]here the party seeking injunctive relief is legally precluded from pursuing damages — for

- 1 -
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

example, if a claim is barred by the Eleventh Amendment — *irreparable harm is established.*" *California Hosp. Ass'n v. Maxwell-Jolly*, 776 F.Supp.2d 1129, 1140 (E.D. Cal. 2011) (all emphasis added unless otherwise indicated). Defendants further concede (Opp. at 3) that the Eleventh Amendment does not preclude injunctive relief "against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." *Ex Parte Young*, 209 U.S. 123, 160-61 (1908).

Defendants nevertheless claim that they do not have a direct enough connection with section 25982 to pose a real "threat of enforcement." (Opp. at 3-4.) This ignores Defendants' specific and far-reaching powers. As they recognize, Defendants' connection to the enforcement of section 25982 need only be "fairly direct." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Indeed, the primary question is "whether a named state official has direct authority and practical ability to enforce the challenged statute." *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846 (9th Cir. 2002). Defendants have exactly this authority and ability.

Here, section 25983(c) provides that violations of section 25982 may be prosecuted by a district attorney. Under the Government Code, the Attorney General not only has "*direct* supervision over the district attorneys of the several counties" but also — whenever she "deems it advisable" — "shall assist" a district attorney and may "take full charge of any investigation or prosecution of violations of law," in which case she "has all the powers of a district attorney." Cal. Gov't Code § 12550; Cal. Gov't Code § 12511 ("Attorney General has charge, as attorney, of all legal matters in which the State is interested"); *see also Pierce v. Superior Court*, 1 Cal.2d 759, 762 (Cal. 1934) (Attorney General "has the power to file any civil action . . . deems necessary for the enforcement of the laws of the state"). This is the same power that the Ninth Circuit has already held "demonstrates the requisite causal connection for standing purposes." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004). Just like here, "[a]n injunction against the attorney general could redress plaintiffs' alleged injuries[.]" *Id.*; *see also Nichols v. Brown*, 2012 WL 1604852

at *9 (C.D. Cal. May 7, 2012) (same re Attorney General Harris).[1]

The Governor, too, can initiate an investigation of corporate sellers of prohibited products in California. Cal. Gov't Code § 12014. Similarly, the Governor can "direct" the Attorney General to take full charge of a prosecution under section 25982 with "all the powers of a district attorney." Cal. Gov't Code § 12550. If Defendants' argument were correct, then every plaintiff challenging the constitutionality of a statewide ban on the sale of its products — like section 25982 — would have to name as defendants each of the 58 district attorneys and sheriffs in California (and presumably the city attorneys and police chiefs of the 482 incorporated cities in the state). This would be absurd.[2]

As to the State of California itself, any prosecution under section 25983(c) will be brought in the name of the People of the State of California. The state is also a proper defendant based on its respondeat superior liability where, as here, Defendants may be found liable for attorneys fees under 42 U.S.C. § 1988; *Missouri v. Jenkins*, 491 U.S. 274, 279 (1989) (holding as "settled that an award of attorney's fees [under 42 U.S.C. § 1988] ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment").

**B. Plaintiffs' claims are justiciable, since Plaintiffs face a current threat of prosecution under section 25982.**

Section 25982 took effect on July 1, 2012, a Sunday. Plaintiffs filed this action the very next court day. At the same time as they argue that Plaintiffs somehow waited too long to file, Defendants argue that it is too soon for the Court to hear what they claim is not a live "case or controversy." (Opp. at pp. 6-7.) But this Court discredited that argument at the TRO hearing several weeks ago:

---

[1] In addition, the Attorney General "has direct supervision over the sheriffs of the several counties of the State[.]" Cal. Gov't Code §§ 12560, 12524. She thus directly supervises the "peace officers" tasked with enforcing section 25982.

[2] Of course, the Attorney General is regularly — and properly — named as a defendant on claims challenging the constitutionality of laws like section 25982. *See, e.g., National Meat Association v. [Kamala D.] Harris*, 123 S.Ct. 965 (2012) (challenging constitutionality of statute regarding handling and sale of pigs; both Attorney General *and* Governor properly named defendants).

- 3 -
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

> The Court: How do those thoughts come together, and why isn't there imminent threat of enforcement? I mean, is the presumption that California passes statutes which require enforcement, and the presumption is that they won't be enforced? Do you know something I don't know, that this statute is just sort of embroidery, and no one is going to bother to enforce it?
>
> Ms. Zook: Two responses to that. The first one is that — our point is that with respect to their claims, *no, we don't think they're ripe at this point because there hasn't been a threat of enforcement*, but their position —
>
> The Court: I don't understand that at all. Can you — if a statute is on the books, your view of the law of injunctions is that unless the enforcer comes to your door and threatens you or takes other action, there's no threat of enforcement?
>
> . . .
>
> Are you debating that the statute is not designed to deal with foie gras growers?
>
> Ms. Zook: No.

(Supp. RJN Ex. F at pp. 7-9).

The Court was correct. Unless the Attorney General will stipulate that section 25982 *not* be enforced against Plaintiffs or the sale of their products, there is an actual controversy for this Court to adjudicate. *Ex parte Young*, 209 U.S. at 165 ("To await proceedings against the company in a state court, grounded upon a disobedience of the act, and then, if necessary, obtain a review in this court . . . would place the company in peril of large loss . . . if it should be finally determined that the act was valid."); *Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 187 (9th Cir. 1993) (rejecting claim of "no case or controversy" where PUC rule had not yet been enforced because rule compelled plaintiff to conform business to allegedly unconstitutional standard).

In any event, as proof that Plaintiffs' products are under a current threat, at least one prosecutor has already threatened enforcement of section 25982 against a restaurant in northern California. (*See* Supp. Tenenbaum Decl. Ex. A.)

II. **Defendants' conclusory arguments about the meaning and effect of section 25982 do not reduce Plaintiffs' strong likelihood of success on the merits.**

- 4 -

### A. Section 25982 incorporates a feeding restriction that is impermissibly vague, despite Defendants' bald assertion that "it is clear."

The very reason Plaintiffs face arbitrary prosecution under section 25982 is that its inherent vagueness makes it impossible even for a *farmer* of ordinary intelligence to ascertain how much food he may feed his ducks in order for the resulting products to be sold in California. Defendants' brief does nothing to clarify things. As to the scientifically impossible application of the term "same species" to a moulard duck — which does not belong to any species (Guy Decl. ¶¶ 4-8) — Defendants say only that farmers must "meet the standard under either species" or must compare them with "other moulard ducks." Nice try. Defendants cannot amend section 25982 by way of their brief, and even these comparisons make no sense in light of the special breeding of moulards. (Guy Decl. ¶¶ 3-4.)[3]

Declaring that "it is clear what conduct section 25982 prohibits," Defendants merely quote the statute and argue that "[f]armers know" when they are making a bird consume "too much food." (Opp. at 8-9.) Apart from this, Defendants do not address the complete absence of any measure, time period, or reference duck that a farmer is supposed to use. Defendants' citation to *People v. Speegle*, 53 Cal.App.4th 1405 (Cal. Ct. App. 1997), is neither here nor there, since the facts of that as-applied challenge — in which a woman had over 200 dogs, including seven dead ones in her freezer and 34 that had to be *euthanized* for malnutrition — left no doubt that her conduct fell within California's general animal cruelty statute. *Id.* at 1409-10. By contrast, section 25982 seeks to regulate the commercial husbandry of hundreds of thousands of ducks and geese in other states and countries and therefore requires greater "precision and guidance." *F.C.C. v. Fox Television Stations, Inc.*, 132 S.Ct. 2307, 2317 (2012).

Perhaps most puzzling, however, is Defendants' suggestion that farmers are

---

[3] Defendants claim confusion about whether this is a facial or as-applied challenge (Opp. at 7), but there can be little doubt from the First Amended Complaint that Plaintiffs challenge section 25982 only as applied to themselves and to the sale of products from moulard ducks (FAC ¶ 4), and Plaintiffs' moving papers are unmistakably clear that the preliminary injunction they seek is so limited.

somehow not allowed to hand-feed their ducks but must instead just "leav[e] out more food than usual for a particularly hungry duck." Except that's not what section 25982 says. (*See* Plaintiffs' Brief at 3.) Section 25982 only prohibits the sale of a product from a bird that was fed "more food than a typical bird of the same species would consume voluntarily." Defendants' brief still leaves us guessing as to how to determine that.

Moreover, Defendants have no answer for the California *seller* of duck and geese products who cannot reasonably know: (1) what any particular bird was fed, (2) what a "typical" bird of the same species would consume voluntarily, or (3) the true *purpose* in the mind of whoever fed the bird. Their only suggestion is that a seller can figure these out "just by asking," which ignores both the impossibility of tracing duck fat or goose feathers to a particular farm animal across the globe — and the punishing consequences of an incorrect response. (Opp. at 10.)

Finally, it is telling that section 25982 does not even mean the same thing to Defendants as it does to the sponsors, supporters, and an alleged enforcer of this law. Defendants recognize that section 25982 "does not prohibit the sales of all foie gras per se, but rather sales of products that are the result of force feeding a bird for the purpose of enlarging its liver"(Opp. at 7) — which includes the breasts, legs, fat, etc. Yet the former would-be intervenors in this action — two official "sponsors" of SB 1520, two registered supporters, and an entity claiming authority to enforce section 25982 — insisted that the law "does not and never was intended to apply to down feathers, duck meat, and other non-liver products," "does not regulate duck breasts or any other non-liver product," and "prohibits the sale of foie gras, nothing more." (Docket No. 61-1 at 1, 5, 9 n.5.) This is the very definition of ambiguity.

B.  **The only practical effect of section 25982 is to try to control Plaintiffs' feeding practices outside California, and Defendants' arguments only reinforce that reality.**

Defendants readily concede that a statute "is essentially per se invalid if it directly regulates" interstate commerce (Opp. at 11) and that it "violates the Commerce Clause where it directly controls commerce occurring wholly outside the boundaries of the

- 6 -

state" (Opp. at 12). Defendants nevertheless insist that section 25982 does not even "indirectly[] control commerce occurring wholly outside of California." (Opp. at 12.) To accept Defendants' claims, however, would require ignoring: (1) the existing ban on force feeding within California, (2) the law's "express intention" of getting farmers everywhere "to modify their business practices," (3) legislative history showing that California knew full well that section 25982 would target Hudson Valley, and (4) the evidence adduced by Plaintiffs that the only "practical effect" of section 25892 — to use the Supreme Court's test in *Healy* — is to force farmers to change the way they feed their ducks in New York and Canada if they want access to the California market.

As the bill analysis offered by Defendants shows, California knew that the effects of SB 1520 would extend beyond its borders. (Def. RJN Ex. 1 at p. 2 [identifying Hudson Valley and a smaller producer in New York].) And the Ninth Circuit authority that Defendants cite, *Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835 (9th Cir. 2002), only highlights the major constitutional defect in section 25982. In that case, California banned the sale of furs from animals trapped using certain methods. *Id.* at 842-43 & n.3. Concluding that the ban did not violate the Commerce Clause, the court held that "[a] plain reading of [the statute] *limits its application* to furs from animals *trapped inside California*; it does not apply to furs from animals trapped outside the state." *Id.* at 857. Because section 25982 is not limited to ducks and geese fed inside California, it impermissibly regulates conduct outside the state and is invalid *per se.*

California may have the right to prevent "animal cruelty within its borders" (Opp. at 13), but it has no business telling farmers in New York and Canada how to feed their ducks as a condition to selling their USDA-approved poultry products in America's largest market for them. Indeed, Defendants do not even try to distinguish the *Rocky Mountain* case (discussed more fully in Plaintiffs' opening brief). Finally — and most tellingly — Defendants say that section 25982's "sale ban merely reinforces the *in-state* production ban by removing the incentive for *in-state* producers to force feed birds in contravention of the ban" and that section 25984(c) "does not suggest

- 7 -

that it was the Legislature's intent to operate beyond California." (Opp. at 13.) If Defendants truly believed these statements and would stipulate to apply section 25982 only to the sale of products from birds fed *within* California — or if the Court were to so limit it — then this case would be over, and Plaintiffs would be able to resume their sales without fear of prosecution.

### C. Defendants make no effort to counter Plaintiffs' argument on the issue of section 25982's threat to national uniformity in the market for federally-regulated poultry products.

Defendants entirely skip over Plaintiffs' points and authorities demonstrating that section 25982 violates the Commerce Clause because it threatens inconsistent regulation of activities that require a uniform system of regulation. *See* Plaintiffs Brief at 18-21. Accordingly, Plaintiffs have nothing to reply to here.[4]

### D. Defendants fail to articulate a legitimate local benefit that would outweigh section 25982's massive burden on the interstate market for moulard duck products.

As to the nascent discriminatory effect in the market for duck breasts, Defendants simply claim — without a scintilla of proof — that the only reason Hudson Valley is starting to lose those duck breast sales to a California producer "is because Hudson Valley sells foie gras." (Opp. at 14.) This rank speculation should be rejected. And Defendants' suggestion that *Pike* balancing is not required in the absence of discrimination (*id.*) illustrates their misplaced reliance on a vacated Illinois order. It also

---

[4] Responding elsewhere to a related point, Defendants claim that the Supreme Court's undisturbed holding in *Schollenberger v. Pennsylvania*, 171 U.S. 1 (1898), is somehow "not controlling." (Opp. at 18.) Of course a district court case cannot overrule a Supreme Court decision that has stood for over a century, let alone do so *sub silentio*. *Cf. Nat'l Kerosene Heater Ass'n v. Mass.*, 653 F.Supp. 1079, 1095-96 (D. Mass. 1986) (involving "inherently dangerous" heaters). And contrary to Defendants' claim that Congress has not "affirmatively pronounced" foie gras "to be a proper subject of commerce" (Opp. at 18), that is exactly what Congress has said of *all* poultry products in the United States. 21 U.S.C. § 451 ("all articles and poultry which are regulated under this chapter are either in interstate or foreign commerce"). The extensive materials Plaintiffs have introduced show the federal government's attention to foie gras (or "fatty liver") as one of those poultry products. (RJN Ex. B-E.)

ignores the Ninth Circuit's recent reaffirmation that a court considering a state law that substantially burdens interstate commerce *must* weigh that burden against the purported local benefit. See *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1149 (9th Cir. 2012), citing *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970*).*

Defendants further ignore the huge burden that section 25982 places on Plaintiffs as well as every other seller of products from ducks and geese — ranging from foie gras and fat to pillows and pet food. They offer zero evidence in response. Instead, as the "local benefits" of section 25982, Defendants simply state that "[p]reventing cruelty to animals is a legitimate governmental interest." (Opp. at 15.) In the first place, Defendants' citations for this point are off the mark. *See, e.g., Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (involving Santeria sacrifice of animals *within the state*). But section 25982 does not protect a single duck or goose within this jurisdiction, especially where Plaintiffs' moulard ducks are bred, fed, and slaughtered entirely *outside California*. (New York and Canada have their own "animal cruelty" laws.) Even if legislating the diet of a duck or goose for the animal's comfort in another state or country were somehow a "legitimate" interest of a state, it is certainly not a "local" one and thus cannot count to outweigh the excessive burdens that section 25982 imposes on interstate commerce.

      1.    **Defendants' reliance on a non-binding Illinois court order concerning Chicago's ban on "foie gras" is misplaced.**

Defendants rely heavily on an order from the Northern District of Illinois in *Illinois Restaurant Ass'n v. City of Chicago*, 492 F.Supp.2d 891 (N.D. Ill. 2007) — cited *passim* in their brief — that considered a Chicago ordinance prohibiting the sale of "foie gras." The Chicago case is non-binding on this Court and totally inapposite here. First, the ordinance at issue in the Chicago case expressly focused on "foie gras"; in contrast, that product is never mentioned in section 25982, and both the author of SB 1520 and the Governor who signed it insisted, "This bill has nothing to do . . . with banning, uh, foie gras," and "It does not ban the food product, foie gras."

(Tenenbaum Decl. ¶¶ 2, 3 & Ex. A.)  Second, the Chicago ordinance said absolutely nothing about any feeding practice; in contrast, the *only* way in which section 25982 regulates the sale of a duck or goose product is based on how it was fed.  Third, the Chicago ordinance did not apply to any other duck products, such as the breast, legs, fat, or feathers —markets which section 25982 is burdening.  Fourth, the judge in the Chicago case refused to conduct *Pike* balancing based on precedent in the Seventh Circuit, whereas the Ninth Circuit has reiterated that, unless the burden on commerce is insubstantial, *Pike* balancing is required.  See *Nat'l Ass'n of Optometrists*, 682 F.3d at 1149, citing *Pike* at 142.  Finally, the judge's order in the Chicago case was appealed to the Seventh Circuit, and the city repealed the ordinance before the appeal could be heard; on remand, the Court of Appeals directed that the very June 12, 2007, decision on which Defendants now rely was to be *vacated "in its entirety."* (Supp. RJN Ex. H.)

### III. Defendants have submitted no facts and no valid argument to counter Plaintiffs' extensive showing of irreparable harm.

Plaintiffs have established the certainty of irreparable harm.  Combining the data in their declarations, section 25982 is having the following effect on the revenues of Hudson Valley and the Canadian farmers — who represent virtually the entire market for moulard duck products in the U.S. — from sales in California:



Plaintiffs will lose well over $4 million in just a year in the absence of injunctive relief.

These losses of "considerable revenue" are what the Ninth Circuit has recognized as constituting irreparable harm where Plaintiffs "will be unable to recover [them] due

to the State's Eleventh Amendment sovereign immunity." *California Pharm. Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1113-14 (9th Cir. 2010); *see also California Medical Ass'n v. Douglas*, 848 F.Supp.2d 1117, 1138 (C.D. Cal. 2012) (finding irreparable injury supported injunction where plaintiffs were "barred from recovering any reimbursement shortfall" due to California's sovereign immunity). Defendants' claim that losses of $6,000 a month for a restaurant like Hot's are "scant" or that the farmers are losing "only 20%" of their revenues (Opp. at 19) reflects a regrettable disregard for how businesspeople earn their living.

### IV. Defendants' arguments leave the balance of hardships tilted sharply in Plaintiffs' favor.

Defendants devote just a single paragraph to the balance of the hardships (Opp. at 20), and those six lines do nothing to tip that balance in their favor — especially in light of the irreparable harm that Plaintiffs are suffering. Indeed, Defendants fail to adduce any evidence or articulate a single notion of any hardship they will suffer as a result of the issuance of an injunction. Defendants rely on *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374 (9th Cir. 1985), for its generic statement that a "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." What Defendants don't say is that, unlike here, the provisions sought to be enjoined in that case had "been *in effect* for a number of *years*" and the defendant's "practice [had] continued unchallenged for several years." *Id.* at 1377.

By contrast, Plaintiffs here filed this action on the very first court day that section 25982 was in effect and sought a TRO just two court days later. *See California Justice Committee v. Bowen*, 2012 WL 2861349 at *2 (C.D. Cal. May 21, 2012) (finding that four months was not impermissible delay where plaintiffs tried to negotiate with Secretary of State and promptly filed action "just days after"). If Defendants were correct in their timing argument, then every challenge to the constitutionality of a state statute would have to be filed several months before it took effect — or else injunctive relief would be forever barred. *Cf., e.g., Brockett v. Spokane Arcades, Inc.*, 472 U.S.

491, 494 (1985) (noting grant of preliminary injunction where constitutional challenge filed "four days *after* the effective date of the statute").

Defendants' citation to *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997), is misleading in light of the Ninth Circuit's more recent limitation of that case. *Independent Living Center of Southern California, Inc. v. Maxwell*-Jolly, 572 F.3d 644, 658 (9th Cir. 2009) (rejecting suggestion that "merely by enjoining a state legislative act, we create a per se harm trumping all other harms"); *California Medical Ass'n*, 848 F.Supp.2d at 1139 ("Ninth Circuit has held that the injury to a state caused by the injunction of one of its statutes does not outweigh the public's interest in ensuring that state agencies comply with the law"). Here, while Plaintiffs will continue to suffer mounting losses in the millions of dollars, there is no hardship to Defendants in not enforcing section 25982 pending the outcome of this action — and they point to no evidence of any — just as they were under no hardship for the 7.5 years during which the Legislature delayed its effective date.

### V.     A preliminary injunction is in the public interest, and Defendants offer no evidence or legal authority to the contrary.

Defendants rest their entire public interest argument — to which they devote a grand total of three sentences — on their claim that "the Legislature . . . determined that enacting section 25982 was in the public's interest." (Opp. at 20-21.) Citing not a single legal authority in this section of their brief, Defendants cavalierly dismiss the pleasure of the consuming public and the income to be made not just by Plaintiffs, but by the countless restaurants, retailers, and distributors in California who wish to resell their products without fear of prosecution. Yet it is these non-parties whom the Ninth Circuit has said are the proper subjects of the public interest inquiry. *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002) ("The public interest inquiry primarily addresses impact on non-parties rather than parties."). Finally, Defendants offer no authority to overcome the holdings in Plaintiffs' cases that it is always "in the public interest to terminate the unconstitutional application" of a statute. *See, e.g., Levine v. Fair Political Practices Comm'n*, 222 F.Supp.2d 1182, 1191 (E.D. Cal. 2002).

## CONCLUSION

This Court should enjoin the enforcement of section 25982 against any Plaintiff or the sale of any products from a moulard duck.

Dated:        September 4, 2012            THE TENENBAUM LAW FIRM

_____
Michael Tenenbaum, Esq.
*Counsel for Plaintiffs*

- 13 -
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION