DAVID R. SIMON, ESQ. (SBN 145197)
3843 S. BRISTOL ST., STE 294
SANTA ANA, CA 92704
Ph. (714) 975-1728
Fax (949) 553-1767
E-mail: dsimon1027@gmail.com

BRYAN W. PEASE, ESQ. (SBN 239139)
1901 First Ave., Suite 219
San Diego, CA 92101
Telephone:    (619) 723-0369
Facsimile:    (619) 923-1001
email: bryanpease@gmail.com

Attorneys for Amicus Curiae
ANIMAL PROTECTION AND RESCUE LEAGUE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and HOT'S RESTAURANT GROUP, INC., a California corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>KAMALA J. HARRIS, in her official capacity as Attorney General of California; EDMUND G. BROWN, in his official capacity as Governor of California; and the STATE OF CALIFORNIA<br><br>　　　　　Defendants. | Case No. CV12-5735<br><br>**EX PARTE APPLICATION FOR AMICUS STATUS**<br><br>Date: Sept. 18, 2012<br>Time: 12:00 p.m.<br>Courtroom: 6<br>Judge: Hon. Steven V. Wilson |

TO THE COURT AND ALL PARTIES:

1

CV12-5735
AMICUS BRIEF

1       The Animal Protection and Rescue League ("APRL" or "Amicus"), a California 501(c)(3) nonprofit organization, respectfully submits this ex parte application to appear as amicus curiae at all stages in the proceedings before the Court in this matter.

       The purpose of this application is to refer the Court to directly controlling U.S. Supreme Court precedent that has not been referenced by any of the parties, as well as facts as to which Amicus is particularly privy.

       Additionally APRL has a legally protectable interest in the subject matter of this action. APRL was lead plaintiff in the 2003 case *APRL v. Sonoma Foie Gras*, Sonoma County Superior Court case number SCV 233687, which sought to stop force feeding in California based on violation of the state's animal cruelty law, Penal Code section 597.  APRL sued Sonoma Foie Gras for unfair business practices and survived a summary judgment motion.  A legislative compromise was then reached in which foie gras producers and sellers would have eight years to continue producing and selling livers from force fed birds in California, after which it would be illegal to do either.  Now that the producers and sellers have had the benefit of the phaseout period, they seek to take away the benefit APRL bargained for.

       **The controlling authority is *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144 (U.S. 1963), which held:**

> Specifically, the supervision of the readying of foodstuffs for market has always been deemed a matter of peculiarly local concern.
>
> …
>
> It is true that more recently we sustained a federal statute broadly regulating the production of renovated butter. But we were scrupulous in pointing out that a State might nevertheless -- at least in the absence of an express contrary command of Congress -- confiscate or exclude from market the processed butter which had complied with all the federal processing standards, "because of a higher standard demanded by a state for its consumers." A state regulation so purposed was, we affirmed, "permissible under all the authorities." n13 Cloverleaf [*145]  Butter Co. v. Patterson, 315 U.S. 148, 162.
>
> …

> Thus, while Florida may perhaps not prevent the exportation of federally certified fruit by superimposing a higher maturity standard, nothing in Cloverleaf forbids California to regulate their marketing. Congressional regulation of one end of the stream of commerce does not, ipso facto, oust all state regulation at the other end.
> (373 U.S. at 145)
>
> …
>
> While it is conceded that the California statute is not a health measure, neither logic nor precedent invites any distinction between state regulations designed to keep unhealthful or unsafe commodities off the grocer's shelves, and those designed to prevent the deception of consumers.
> (*Id*. at 146).

The Foie Gras Law was enacted not just under the state's police power to regulate public morals—in this case preventing a product of deliberate animal torture from being sold, which is an area of local concern—but also to protect public health and to prevent consumers from being deceived. A San Diego City Council resolution passed in 2008 supporting the statewide ban, attached hereto as Exhibit A, notes that foie gras is nearly 100% fat, and that the malformed proteins in it have been causally linked in the medical literature to disease in humans. Thus, research finds that human consumption of foie gras fosters amyloidosis, a process which can cause diseases like Alzheimer's, diabetes and rheumatoid arthritis – and can lead to organ failure or death.[1] Seven other city councils passed resolutions similar to San Diego's: Los Angeles, San Francisco, West Hollywood, Carlsbad, Berkeley, Solana Beach and Laguna Beach.

Foie gras producers and sellers, including the Plaintiffs in the case at bar, routinely lie to consumers about how the grossly enlarged livers are produced, claiming that the ducks "run up

---

[1] Alan Solomon, Tina Richey, et al., "Amyloidogenic potential of foie gras," PROCEEDINGS OF THE NATIONAL ACADEMY OF SCIENCES OF THE UNITED STATES OF AMERICA 104(26) (2007):10998-1101.

1  to be fed," are "hand fed," or if the consumer happens to know that ducks are force fed with long
2  metal pipes, the sellers claim the truly massive quantity of food being pumped into the duck
3  somehow "mimics migratory behavior."  The National Advertising Division of the Better
4  Business Bureau has found the main distributor for Plaintiff HVFG, LLC to have violated truth-
5  in-advertising principles in making these and other representations, including that foie gras
6  production is "humane."[2]  California certainly has an interest in protecting consumers from being
7  deceived into thinking the duck liver they are purchasing is humane.  Consumers may assume
8  that if a product is legal to sell, it is humane.  However, if ducks are force fed for purposes of
9  grossly enlarging the animals' livers, that liver is not a humane product, nor a healthy one, and
10 California has every right to ban the sale of such a product. *Florida Lime & Avocado Growers,*
11 *Inc. v. Paul*, 373 U.S. 132, 144 (U.S. 1963).

12     APRL is currently involved in litigation against Plaintiff HOT'S KITCHEN and other
13 restaurants continuing to offer foie gras through secretive means and falsely claiming that it is
14 humane, and the defendants in those cases are represented by counsel for Plaintiffs in the present
15 case.  In the news articles cited by Plaintiffs claiming the law is confusing or difficult to enforce,
16 there is no mention of any dispute over what product is actually banned.  The only confusion is
17 over whether restaurants can get away with "giving" the product away for "free" with an
18 overpriced side dish.  Enforcement agencies are erring greatly on the side of not enforcing the
19 law under such circumstances.  However, most establishments have no interest in violating the
20 law and have removed the banned product, as described in the below declaration.

21     Additional facts that may be useful to the Court are as follows in the below declaration.

22
23 Dated: Aug. 31, 2012                                      By:     /s/ Bryan Pease
                                                                    Bryan Pease
24                                                                  Attorney for Amicus
25

---

[2] *See* http://www.humanesociety.org/news/news/2009/01/better_business_bureau_foie_gras_012609.html (last visited Aug. 31, 2012).

4

CV12-5735
AMICUS BRIEF

**DECLARATION OF BRYAN PEASE**

I, Bryan Pease, declare as follows:

1) I am a resident of California, over the age of 18 years, and competent to testify as a witness. I state the following of my own personal knowledge, except those matters stated on information or belief, and as to those matters, I believe them to be true.

2) I am the Executive Director of the Animal Protection and Rescue League (APRL). I am also an attorney licensed to practice before all California courts.

3) APRL and I personally conducted animal cruelty investigations of Plaintiff HVFG, LLC in 2003, 2004 and 2011, each time showing that Plaintiff was force feeding ducks massive quantities of food with large metal pipes three times per day for 30 days to enlarge their livers to over 10 times normal size.

4) Most restaurants in California have no interest in violating the Foie Gras Law. After helping to pass this law in 2004, APRL has been actively contacting restaurants that were continuing to serve foie gras—the only product made by force feeding. APRL convinced over 100 restaurants to remove foie gras voluntarily. When the law took effect July 1, 2012, APRL staff and volunteers continued calling the 300 or so restaurants that were still serving foie gras and confirmed that virtually all of them stopped serving foie gras now that the phaseout period is over. A New York Times article corroborated APRL's findings with what the California Restaurant Association also understood to be the case. This article is attached hereto as Exhibit B.

5) The Foie Gras Law is highly specific and narrowly tailored to only target the act of forcing a bird to consume more food than the bird would voluntarily for purposes of enlarging the bird's liver beyond normal size. The producers and the restaurant bringing suit in the present case know exactly what is being prohibited, as it is clear in the law. There is a vast difference between an ordinary, compact, brown liver and a pale, white, *ten times larger* liver from a force fed duck, as can be seen in this photo:



6)   At the time the law was enacted, there was a genuine concern that foie gras producers in California would find another way to artificially bloat the ducks' livers by causing them to consume more than they ordinarily would voluntarily, including perhaps altering the duck somehow to destroy its appetite regulator. Doing something like this would make the duck no longer "typical" for its species, and thus such a process would also be banned. There is no need to compare a particular duck to other ducks or to weigh or measure food under this law. As long as the producers have not altered the duck in some way to make it no longer a typical duck, then whatever amount of food the duck eats voluntarily is by definition the amount of food a typical duck would consume without force feeding.

7)   The law defines force feeding as including the tube feeding method that was and continues to be used. It also prohibits any other method of *forcing* an animal to consume more than the animal would voluntarily. The key word in the statute is *voluntarily*. Farms can feed as much as they would like to any animal, but if they start forcing an animal to consume more than the animal wants to eat just by having food put in front of the animal, and when this is done for purposes of enlarging the bird's liver beyond normal size, the act and the product are prohibited in the state of California.

1      8)     Sonoma Foie Gras knew exactly what conduct was prohibited by the force feeding ban, which is why it closed its doors July 1, 2012.  Virtually all of the 300 restaurants that were still serving the controversial item when the ban took effect now say they are no longer serving it, also indicating they are quite clear on what products are prohibited.  Plaintiff HVFG, Inc. is one of only two factory farms left in the U.S. engaging in this bizarre and cruel practice that is far outside the mainstream of animal agriculture.

    9)     There is no danger that sellers of down feathers will be cited under the Foie Gras Law, because the law only applies to products that are the "result" of force feeding a bird for purposes of enlarging the bird's liver.  Feathers grow the same size regardless of how much a bird eats.  However, the point of foie gras production is to grossly enlarge the liver and induce a disease veterinarians refer to as hepatic lipidosis, in which fat cannot be transported out of the liver, and it grows to many times its normal size.  It is this grossly enlarged liver that is now illegal to sell in California, not the feathers, which are not the result of force feeding.  Gauge Outfitters admits that it is still selling down jackets that may or may not come from force fed ducks in other parts of the world, and there has been no hint from any law enforcement agency that they may be cited for this.

    10)     Plaintiffs in the present case are not confused at all about the law and knew exactly what it meant when it was enacted eight years ago, during which time they had the benefit of an eight year phaseout period.  They now simply want and end run around the legislature and to have this Court overturn a highly specific and duly enacted piece of legislation that protects California consumers from diseased, bloated livers from cruelly force fed ducks.

I declare under penalty of perjury the foregoing is true and correct.

Dated: August 31, 2012                        By:     _/s/ Bryan Pease_____
                                                                                   Bryan Pease

# Exhibit A



# Resolution of the City Council
## City of San Diego

### *Foie Gras*
### January 8, 2008
### Presented by Councilmember Donna Frye

**WHEREAS,** "*foie gras*," or fattened liver, is the artificially enlarged liver of a duck or goose that has been force fed twenty percent of its healthy body weight per day for two to three weeks. In order to be labeled *foie gras*, the liver must be five to ten times its normal size and nearly one hundred percent fat; and

**WHEREAS,** effective in 2012, Governor Schwarzenegger signed SB1520 into law, which will make it illegal to sell or produce foie gras in California. At least fifteen countries have banned foie gras production, and only a few still produce it. In 2006, the City of Chicago banned the sale of foie gras by a Council vote of forty-eight to one; and

**WHEREAS,** in May 2007, Zogby International conducted a random, scientific poll of San Diego adults and found that after being told how *foie gras* is produced, eighty-five percent of San Diegans want the City to ban foie gras immediately, without waiting for the statewide ban to go into effect; and

**WHEREAS,** virtually all animal protection groups recognize foie gras as inherently cruel; these groups include the Humane Society of the United States (HSUS), People for the Ethical Treatment of Animals (PETA), and the American Society for the Prevention of Cruelty to Animals (ASPCA); and

**WHEREAS,** many San Diego restaurants have voluntarily removed *foie gras* from their menus. Many chefs have noted that a ban would allow them to do this without the risk of losing business to competitors who continue serving *foie gras* without telling their customers how it is produced; and

**WHEREAS,** recent studies have discovered a link between *foie gras* consumption and Alzheimer's disease due to proteins that are similar to those that cause mad cow disease; **NOW THEREFORE,**

**BE IT RESOLVED,** by the Council of the City of San Diego, that this Council, for and on behalf of the people of San Diego, commends the Animal Protection and Rescue League (APRL) for raising awareness of the cruel practice of force-feeding ducks and geese to produce *foie gras*, commends the many San Diego restaurants that have stopped selling *foie gras* before the California statewide ban goes into effect, and encourages San Diegans to avoid supporting this extreme form of animal cruelty.



Resolution Number R-2008-4210 Approved by Council on the 8th Day of January, 2008.

# Exhibit B

The New York Times



August 12, 2012

# Some in California Skirt a Ban on Foie Gras

**By NORIMITSU ONISHI**

SACRAMENTO — Seemingly an afterthought, the last appetizer listed on the menu at Restaurant Thir13en is a brioche that, at $21, may sound overpriced even if it is "house made" and comes with strawberry rhubarb purée and a bacon chip. Accompanying it, though, are "complimentary seared foie gras and foie panna cotta."

This restaurant, not far from the State Capitol here, is one of the few in California still offering foie gras since a ban on its sale went into effect on July 1. Though some restaurants are finding clever ways to serve the fattened duck or goose liver — the law bans sales, but says nothing about giving it away — most of the 340 to 400 establishments that served it before the ban have taken it off their menus, according to restaurant owners, industry experts and animal rights supporters.

Suppliers of foie gras to California, the biggest market for the product in the United States, have halted shipments to the state. So staunch defenders of foie gras like Adam Pechal, Thir13en's owner and chef, are considering new ways to replenish their supplies.

"I'm still working off my treasury," Mr. Pechal said, explaining that he and other restaurateurs in Sacramento "stocked up big time" before the ban. "Foie freezes fantastically. That's the beauty of it. The foie gras liver, it's a beautiful product. Worst-case scenario for me, I'll just go to Tahoe and spend the week and find somebody in Nevada. It's as simple as that. I can drive an hour and a half and buy it in another state."

Few are as publicly defiant as Mr. Pechal. Most restaurateurs appear to be waiting for the outcome of two separate attempts at overturning the ban, as well as indications of whether the authorities are actually enforcing it.

In 2004, California legislators passed a law prohibiting the sale of any product derived from the force-feeding of birds to enlarge their livers — a process known as gavage, which animal rights groups criticize as cruel — but granted a seven-and-a-half-year grace period. The law is the only one of its kind in the United States.



MORE IN U.S
Efforts Continu
Read More

A similar ban in Chicago several years ago was rescinded after numerous chefs either ignored the law or found ways around it and city inspectors proved unenthusiastic about enforcing it.

Rob Black, the executive director of the Golden Gate Restaurant Association, said that of the roughly 400 restaurants in California that offered foie gras before the ban, "most are complying with the law and are not selling it. How many are giving it away? I don't know."

Not many, said Bryan Pease of the Animal Protection and Rescue League in San Diego, who was one of the leaders in the fight against foie gras. Calls by the league's members posing as diners found that about 340 restaurants in California had foie gras on their menus before the ban, mostly in the Bay Area, Los Angeles and San Diego, he said. Now fewer than a dozen offer it, he said.

"There might be some that aren't promoting it but that still have it if you go there and say a code word or something," Mr. Pease said.

Foie gras defenders did not dispute Mr. Pease's description of the ban's effects.

California's only foie gras producer, Sonoma Artisan Foie Gras, closed shop at the start of the ban. The state's other previous suppliers — foie gras farms in New York and Quebec — have seen their sales here "evaporate" since July 1, according to a lawsuit filed against the state last month by the farms and Hot's Restaurant Group in Los Angeles.

The plaintiffs argued that the ban was unconstitutional because its language was vague and it interfered with the federal government's authority to negotiate trade with foreign countries. Last month, a United States district judge in Los Angeles denied the plaintiffs' request to issue a temporary halt on the ban but is expected to take up the matter again at a hearing next month.

Though some restaurants have continued to offer foie gras openly, no establishment appears to have incurred penalties, which can run up to $1,000 per violation per day. Officials say the law is so vague that it is difficult to enforce.

"When restaurants talk about giving it away, it's obviously not the intention of the law to allow restaurants to serve it, but that's a go-around," said Rebecca Katz, a lawyer and the director of San Francisco's Animal Care and Control. "So it makes it challenging for us to figure out whether or not we can enforce."

Zeke Holst, a spokesman for Sacramento County Animal Care and Regulation, said officials were "following up" on complaints lodged against two restaurants serving foie gras here, including Thir13en.

In Los Angeles County, Evelina Villa, a spokeswoman for the Department of Animal Care and Control, said it had received no complaints about potential violators.

"With budget cuts and our department being so short-staffed, enforcement is not something we can add to our plate right now," Ms. Villa said.

Officials in Santa Clara County appear to be more assertive. Yen Dang, a deputy district attorney, said her office and the Mountain View Police Department received complaints from residents after the chef at Chez TJ, a French restaurant, pledged in a television interview to continue serving foie gras. Ms. Dang said her office sent Chez TJ a letter requesting more information and was still investigating.

Joey Elenterio, the chef at Chez TJ, said his passion about foie gras and his outspokenness in the news media had made him a target of prosecutors.

"We have a bored D.A. here," Mr. Elenterio said.

He added that he hoped to reach an agreement with prosecutors so that he could resume serving foie gras, possibly by donating the proceeds to the Coalition for Humane and Ethical Farming Standards.

The coalition, which comprises more than 100 top chefs in California, is proposing stricter standards for the production of foie gras, including cage-free birds, hand feeding and "reasonable limits on fattening." It hopes that in the next legislative session a sponsor will introduce a bill allowing foie gras production under the new guidelines, said Nathan Ballard, a spokesman for the group.

Andrew Florsheim, the owner of Goose and Gander, a Napa Valley restaurant, said that because of strong demand from diners in the weeks before the start of the ban, he offered a foie gras dish called "Senate Bill 1520" after the legislation prohibiting the product. He has since stopped, not wanting to draw the attention of prosecutors or the police, though he would like to add foie gras to his menu again in the future.

"We'll wait and see when the smoke clears," he said.