Michael Tenenbaum, Esq. (No. 186850)
*mt@post.harvard.edu*
THE TENENBAUM LAW FIRM
1431 Ocean Ave., Ste. 400
Santa Monica, CA  90401
Tel     (310) 919-3194
Fax     (310) 919-3727

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and HOT'S RESTAURANT GROUP, INC., a California corporation; | Case No. CV-12-5735-SVW (RZx) |
| | **SECOND AMENDED COMPLAINT TO DECLARE INAPPLICABLE OR INVALID AS APPLIED TO PLAINTIFFS AND TO ENJOIN ENFORCEMENT OF CALIFORNIA HEALTH & SAFETY CODE § 25982 AS VIOLATIVE OF THE SUPREMACY CLAUSE, THE COMMERCE CLAUSE, AND THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION** |
| Plaintiffs, | |
| – against – | |
| KAMALA D. HARRIS, in her official capacity as Attorney General of California; | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

## JURISDICTION

1.     This case arises under the Constitution of the United States and under 42 U.S.C. § 1983.  This court has subject-matter jurisdiction under 28 U.S.C. § 1331.

## NATURE OF THE ACTION

2.     As defined under federal law, foie gras is goose or duck liver "obtained exclusively from specially fed and fattened geese and ducks."  No State in America bans the sale of foie gras products.  Even California does not ban the sale of foie gras *per se*. Rather, effective as of July 1, 2012, California banned:  (1) the force-feeding of geese and ducks in California for the purpose of enlarging their livers beyond normal size; and (2) the sale in California of any foie gras products produced in violation of California's prohibition on force-feeding.  Indeed, as the Ninth Circuit has recently declared in this case, section 25982 of the California Health and Safety Code "bans the sale of foie gras produced through force feeding, but would not ban foie gras produced through alternative methods."  Defendant Harris herself echoed this interpretation when, in opposing en banc review, she wrote, "Section 25982 does not even prohibit all foie gras sales, but only sales of foie gras produced by force feeding."

3.     Section 25982 raises two threshold questions of statutory interpretation that are essential to the outcome of this case.  The first is whether the ban on sale in California of foie gras products produced through force feeding is and was actually intended to apply to foie gras products from ducks raised and fed entirely in other states and countries, as Plaintiffs and their customers were led to assume in light of the threats they were facing as the law came into effect in July 2012 — or whether, as Defendant Harris insisted to this Court in opposing a preliminary injunction at the outset of this action, section 25982 "merely reinforces the *in-state* production ban by removing the incentive for *in-state* producers to force feed birds in contravention of the ban," thus ensuring that "*[i]n-state* producers are doubly barred from producing and selling."  If section 25982 was not intended to ban the sale of foie gras products from ducks raised and fed entirely outside California — such as where they are raised and fed in full

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

compliance with the strict animal cruelty laws and regulatory regimes for farming in New York and Canada (where they are processed into wholesome, unadulterated, USDA-certified poultry products) — then this Court need not even resolve the larger constitutional questions that are at the heart of Plaintiffs' claims in this action.[1]

4.      The second threshold question is whether section 25982's provision that a force-fed duck product may not be "sold in California" also means that such a product may not even be *imported* into California or whether, in banning only the sale *in California* — and omitting any reference to imports (or even to offers for sale or contracts for sale), which terms appear commonly throughout countless other provisions of the California Health and Safety Code and similar California statutes — the statute does not apply where the commercial sale takes place and title passes outside the state.  The answer to this second question has become necessary because, while Defendant Harris had effectively allowed such out-of-state sales to California consumers for the nearly two years that section 25982 has been in effect, the District Attorneys she supervises in at least three counties have now threatened to prosecute Plaintiff Hudson Valley and other out-of-state sellers of the farmer-Plaintiffs' foie gras products for shipping their products to consumers in California.  (Defendant Harris is statutorily authorized to "take full charge" of these investigations, consistent with the exercise of her supervisory powers over the District Attorneys in all 58 counties.) Assuming that section 25982 even applies to foie gras products from ducks raised and fed entirely in other states and countries, the answer to this second question could

---

[1]      On the limited record available to it at the preliminary injunction stage, the Ninth Circuit opined:  "Section 25982 applies to both California entities and *out-of-state entities* and precludes sales within California of products produced by force feeding birds regardless of where the force feeding occurred.  Otherwise, California entities could obtain foie gras *produced out-of-state* and sell it in California."  Yet section 25982 is silent as to whether it was intended to apply to the products of ducks fed entirely outside California, and, as further alleged below, the legislative history of section 25982 does not reflect any intention to ban foie gras products from out-of-state farmers where the force-feeding occurred entirely outside the state.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  further magnify the burden that section 25982 places on interstate and foreign

2  commerce.

3       5.     Plaintiffs are:  (1) New York and Canadian duck farmers who sell a variety

4  of USDA-certified poultry products in interstate and foreign commerce, most notably

5  products containing foie gras, and (2) a restaurant in Hermosa Beach that, out of fear

6  of prosecution under section 25982, has not sold foie gras products since July 1, 2012.

7  To produce foie gras, the farmers specially feed their ducks by hand two to three times

8  a day in their final days before slaughter, using a tube for anywhere between two to

9  fifteen seconds.  (There is no known method of producing foie gras from ducks without

10 using a tube.)  Until section 25982 took effect on July 1, 2012, the vast majority of

11 these out-of-state farmers' sales of foie gras products were made to distributors, as most

12 foie gras is sold in restaurants, such as the one owned by Plaintiff Hot's Restaurant

13 Group, Inc., in Hermosa Beach.  If section 25982 bans the import and sale of foie gras

14 products from ducks fed entirely outside California using a tube, then it does not have

15 merely an incidental burden on Plaintiffs' businesses alone.  If so interpreted, it imposes

16 a substantial burden on interstate and foreign commerce by operating as a complete ban

17 on the sale in California of all out-of-state and imported foie gras products.

18      6.     Because sellers in California fear the massive civil penalties that section

19 25983 authorizes for violations of the ban on sale — up to $1,000 per sale per day —

20 Plaintiffs are continuing to lose significant sales with each day that section 25982

21 remains in effect.  Hudson Valley has lost approximately $1.5 million a year in sales of

22 wholesale foie gras products to California, for a loss to date of nearly $3 million, and it

23 is now threatened with prosecution even for its out-of-state sales to Californians.

24 Palmex, the leading Canadian farmer of foie gras, had approximately $750,000 in

25 annual sales of wholesale foie gras products to California before July 1, 2012, which

26 represented 25% of its U.S. sales; today it has virtually none, for a loss to date of nearly

27 $1.5 million.  And Hot's restaurant was selling as much as $6,000 of foie gras products

28 a month before the ban, as compared to zero now, for a loss to date of over $100,000.

(These figures do not even account for projected growth in sales.)  In light of Defendant Harris's immunity from suit for these mounting damages, Plaintiffs are suffering irreparable harm.

7.    Assuming that the statute was even intended to apply to the import and sale of foie gras products from ducks that are raised and fed entirely outside California — which a fair reading of its legislative history indicates it was not — section 25982 is unconstitutional on several grounds.  In the first place, section 25982 is preempted by the federal Poultry Products Inspection Act (the "PPIA").  Congress has provided that the United States Department of Agriculture's ingredient requirements for poultry products *expressly* preempt state or local laws that purport to impose any ingredient requirements "in addition to, or different than" those established by the USDA pursuant to the PPIA.  Plaintiffs' foie gras products fully satisfy the USDA's requirements, but section 25982 imposes an additional and different requirement that the duck livers which are the primary ingredients in each of Plaintiffs' foie gras products must be produced from the livers of non-force-fed ducks.  Because California's requirement for duck products is thus "in addition to, or different than" the federal requirements, section 25982 is preempted by the PPIA.

8.    Again assuming that section 25982 was even intended to apply to the import and sale of foie gras products from ducks raised and fed entirely in other states and countries, the statute is also unconstitutional as an impermissible extraterritorial regulation under the Dormant Commerce Clause *as applied* to Plaintiffs' products.  As applied to the sale of products from ducks raised and fed *in California*, section 25982 merely serves to reinforce section 25981's ban on the force-feeding of ducks here in this state.  Because Plaintiffs do not feed any ducks in California, such an application of section 25982 would have no effect on them.  Yet to the extent that section 25982 is applied to the sale of wholesome foie gras products from ducks raised and fed entirely *outside* California — where the only condition for sale depends on how the ducks are fed in *other* states and countries — then section 25982 violates the Dormant Commerce

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Clause as an attempt to control commerce in other states.  As applied to Plaintiffs, the practical effect of section 25982 would be to impose a complete ban on Plaintiffs' wholesome, unadulterated, USDA-certified duck products from sale in California based solely on conduct that takes place entirely outside the state.  Moreover, because using a tube to feed a duck in the final weeks before slaughter is the only method known to man for producing duck foie gras, and because the entire supply of foie gras in the United States is produced using a tube, the effect of section 25982 is a complete import and sales ban on foie gras.

9.     And if section 25982 were somehow to survive the foregoing challenges, it would still violate the Dormant Commerce Clause under the test set forth by the Supreme Court in *Pike v. Bruce Church, Inc.*, 39 U.S. 137, 142 (1970).  If applied to ban foie gras products from ducks that have been force-fed entirely in other states and countries, section 25982 does not just incidentally or even "substantially burden" interstate and foreign commerce in foie gras products — it places a *complete ban* on them.  It does so in the name of a purported local interest, i.e., the prevention of animal cruelty, that (while misguided but perhaps understandable as applied to products from California's *own ducks*) is neither local nor legitimate as applied to products from ducks *in other states and countries*.  Indeed, as acknowledged by California's own Department of Food and Agriculture — the state government authority most familiar with foie gras production at the time — "Production of Foi[e] Gras in California does not involve cruelty at any time," and "Foi[e] Gras production is a food production industry well established in conformity with humane animal management, safe food practices and environmentally protective provisions of State and Federal law."  In other words, California's putative local interest is illusory, and there are ready alternatives to a complete ban on the sale of force-fed foie gras products, such as point-of-sale notices to consumers that the particular foie gras product was produced by force-feeding.

10.     Finally, assuming that a peace officer or prosecutor were to try to apply the California statute to foie gras products from moulard ducks fed entirely in New

- 5 -

York and Canada, section 25982 violates the Due Process Clause because it does not provide a person of reasonable intelligence with any meaningful way of ascertaining how much food a duck may be lawfully fed and because it imposes crippling civil penalties based on the conduct and the mental state of third-party, out-of-state actors for which a California seller cannot in fairness be held strictly liable without any *scienter* requirement.

11.     Plaintiffs therefore seek a declaratory judgment:  (1) that section 25982 is inapplicable to the import and sale in California of their foie gras products from ducks raised and fed entirely in Canada or New York; (2) that section 25982 is preempted by the federal Poultry Products Inspection Act as applied to the ingredients in their foie gras products; (3) that section 25982 violates the Commerce Clause as applied to their ducks fed entirely outside California; and (4) that, as applied to the sale in California of products from out-of-state and foreign farmers of moulard ducks, section 25982 violates the Due Process Clause.  Plaintiffs also seek a preliminary and permanent injunction prohibiting enforcement of section 25982 accordingly.[2]

## THE PARTIES

12.     Plaintiff Association des Éleveurs de Canards et d'Oies du Québec (hereafter, the "Canadian farmers") is a Canadian non-profit corporation formed in 2009 to represent the interests and defend the rights of producers and exporters of foie gras and other duck products from Quebec, Canada, to the United States.  The

---

[2]     Plaintiffs' original complaint in this action sought relief from the application of section 25982 as to *all* of the products they sell from ducks that California deems to be force-fed, such as the breasts, legs, excess fat, and feathers.  In its order denying Plaintiffs' motion for a preliminary injunction, this Court analyzed duck livers, breasts, and feathers as among those presumptively subject to section 25982.  (Dkt. No. 87 at pp. 5, 14, 20.)  Nevertheless, on appeal of that order, the Ninth Circuit construed section 25982 as limited only to "liver products."  Having achieved their litigation objectives as to all of the non-liver products from force-fed ducks, Plaintiffs have omitted their prior allegations concerning those non-liver products from this Second Amended Complaint but do so without prejudice to reinstating them if necessary in this or any other action.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Canadian farmers include the province's leading producers and exporters of foie gras products and other products from moulard ducks. They account for virtually all of the production of foie gras products in Canada as well as 100% of the exports of foie gras products to the United States. The foie gras products of Canadian farmers Palmex, Inc., Élevages Périgord (1993) Inc., and Aux Champs d'Élisé were regularly sold in California until section 25982 took effect on July 1, 2012, and any of them would have standing in their own right to present the claims asserted in this action, though neither the claims asserted nor the relief requested requires that these association members participate individually in this suit. The Canadian farmers are also suffering injury as an association in the form of a continuing drain on its resources as long as section 25982 remains in effect and the association must devote its resources to trying to ascertain the scope of its application, including when its members have fed a duck or goose "more food" than the statute allows.

13.   Plaintiff HVFG LLC, which does business as Hudson Valley Foie Gras ("Hudson Valley"), is a New York farmer of moulard ducks that are raised, slaughtered, and processed into USDA-inspected poultry products in its USDA-inspected facilities in full compliance with New York and federal law. Hudson Valley is the largest producer of foie gras products and other products from moulard ducks in the United States. Hudson Valley's farm is located in a hamlet in the Town of Liberty, New York. Consistent with the laws applicable to it in the Town of Liberty and the State of New York, Hudson Valley's agricultural practices are conducted in conformity with generally accepted and sound agricultural practices.

14.   Plaintiff Hot's Restaurant Group, Inc. ("Hot's"), is a California corporation that owns Hot's Kitchen, a restaurant in Hermosa Beach, California. Until July 1, 2012, Hot's was free to sell foie gras products as part of its menu items, but it was forced to stop selling foie gras products on that date because it could not afford to risk prosecution — and literally millions of dollars in penalties — if, even without its knowledge, any of these products can be traced to a duck that is determined to have

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

been fed "more food than a typical bird of the same species would consume voluntarily" for the purpose of enlarging its liver.

15. Defendant Kamala D. Harris is the current Attorney General of California. In her official capacity under the California Constitution, the Attorney General is the chief law officer of the state and has direct supervision over every district attorney, sheriff, other law enforcement officers. Cal. Const. Art. 5, § 13. Under section 12550 of the California Government Code, Defendant Harris not only has "direct supervision over the district attorneys of the several counties" but also — whenever she "deems it advisable" — "shall assist" a district attorney and may "take full charge of any investigation or prosecution of violations of law," in which case she "has all the powers of a district attorney." Defendant Harris is also a peace officer and, as such, has direct authority to enforce section 25982 pursuant to section 25983(a) of the California Health and Safety Code.

## VENUE

16. Venue in this district is proper under 28 U.S.C. § 1391(b) because Defendant Harris maintains an office in this district and is a resident of the State of California, because the injuries giving rise to Plaintiffs' claims are taking place in this district, because a substantial part of the property that is the subject of the action is situated in this district, and because Defendant Harris is subject to the Court's personal jurisdiction in this district.

## GENERAL ALLEGATIONS

**John Burton tried (but failed) to ban the import of foie gras products into the United States.**

17. On April 8, 1975, John Burton, then a congressman from California, introduced legislation in the United States House of Representatives to "prohibit the importation of pate de foie gras made from the livers of ducks and geese which have been force-fed by mechanical means." Mr. Burton apparently recognized that, consistent with the Supremacy Clause and Commerce Clause, any ban on interstate or

foreign commerce of a wholesome poultry product containing foie gras could only properly be enacted by Congress.  His bill,  introduced in the first session of the 94th Congress as H.R. 5676, provided that, after the date of its enactment, "no pate de foie gras may be *imported* into the United States if such pate is composed in whole or part of the liver of any duck or goose which has been force-fed by mechanical means."  The bill did not attract any cosponsors and failed to even make it out of committee.

18.    The following year, on July 28, 1976, Mr. Burton introduced another bill in the United States House of Representatives, this time to "prohibit the importation of products made from the livers of ducks or geese which have been force-fed."  This bill was not limited to the product known as pâté de foie gras but applied, on its face, to all products made from the livers of force-fed ducks and geese.  Mr. Burton's bill, introduced in the second session of the 94th Congress as H.R. 14910, provided that, after the date of its enactment, "no product which is made, in whole or in part, from the liver of any duck or goose which has been force-fed may be imported into the United States."  That bill, too, failed to attract even a single cosponsor, and it never made it out of committee.

19.    Mr. Burton's first two attempts to ban foie gras products reveal that he knew full well how to draft a law that attempts to ban the *importation* of a product containing foie gras, as opposed to just its *sale*.  Mr. Burton's legislative draftsmanship is important to interpreting the scope of section 25982 of the California Health and Safety Code.

**Every foie gras product destined for human consumption is subject to extensive federal regulation.**

20.    Under the federal Poultry Products Inspection Act (the "PPIA"), all poultry animals and all poultry products intended for human consumption in America — including all duck products, such as those containing foie gras — must undergo several stages of federal inspection by the USDA.  21 U.S.C. §§ 451 *et seq*.

21.    Pursuant to the PPIA, the USDA and its Food Safety and Inspection Service

(FSIS) have issued comprehensive and detailed regulations and directives governing the ante-mortem inspection of the ducks; the premises, facilities, and operations of the establishments at which the ducks are slaughtered and processed; the post-mortem inspection of the ducks; the marking of duck products with the USDA seal; the labeling and containers of duck products; and even the definitions and standards of identity or composition of duck products.  9 C.F.R. § 381.1 *et seq.*

22.    Federal regulations further authorize the Administrator of the FSIS to "prescribe definitions and standards of identity or composition for poultry products whenever he determines such action is otherwise necessary for the protection of the public."  9 C.F.R. § 300.2(a); 9 C.F.R. § 381.155(a).

**The USDA has established a standard of identity and composition for products that contain foie gras based on negotiations with the French government.**

23.    As poultry products under the PPIA, Plaintiffs' foie gras products are subject to federal standards of identity and composition enforced by the USDA.

24.    The current USDA Food Standards and Labeling Policy Book cites a federal policy memo going back to September 1984, which explains that the USDA standards for foie gras are the result of a long-standing agreement with the French government.

25.    On September 21, 1984, the Director of the USDA's Standards and Labeling Division wrote a memo to all of the Branch Chiefs in the Standards and Labeling Division to address the following issue:  "What are the standards and labeling requirements for duck and/or goose liver 'foie gras' products?"  The Director's memo reflects the standards — set forth below — that have been in force for the past 30 years and that continue to apply today.  The Director explained how the standards were established based on a petition to the USDA made by the French government and an agreement between the United States and France:

> In 1975, representatives of the French government petitioned the USDA to adopt the French standards for foie gras products.  An agreement was

reached between our respective governments to follow these standards pending a rulemaking procedure.  Although a rulemaking was not finalized at that time, over the years the French standards were followed and applied to foie gras products.

In June of 1980, the French government and trade associations revised their 1973 standards for foie gras products and requested our renewal and approval of the new regulations.  Since the standards followed over the years for the imported product have become obsolete and the marketing and consumption of these products have become more popular, SLD has decided to follow these requirements with some modifications including the English translation of French terms, the requirements for product name qualifiers, and other general policy requirements.  The adoption of these requirements will eliminate confusion and provide a descriptive classification for these products.

26.    As for the product most commonly claimed to be a target of section 25982, i.e., foie gras, FSIS has issued ingredient standards that recognize that explicitly ducks will be specially fed to create foie gras:  "Goose liver and duck liver foie gras (fat liver) *are obtained exclusively from specially fed and fattened geese and ducks*."[3]  This language is a translation from the French government's definition of foie gras, which provides that foie gras must come "*exclusivement d'oies ou de canards, spécialement gavés*," where *gavés* means "force-fed."  (French law defines foie gras to mean the liver of a duck or goose "specially fattened by *gavage*.")

27.    The federal standards for the identity and composition of poultry products address no less than 14 approved duck and goose liver products — including the foie gras products produced by Hudson Valley and the Canadian farmers.  In addition to these foie gras products, for which the USDA sets official ingredient requirements, Hudson Valley and the Canadian farmers regularly apply for and are granted USDA approval of other foie gras products, which requires them to specify the identity and composition of the products, including the precise ingredients.

---

[3]    In addition, a specific FSIS directive instructs federal inspectors to consider fatty duck livers as wholesome, which thus renders them fit for sale in interstate commerce.

28.     Pursuant to federal law, "[p]roducts in which foie gras is used are classified into [] three groups based on the minimum duck liver or goose liver foie gras content."

29.     The first group includes Whole Duck Foie Gras (i.e., "Foie Gras de Canard Entier"), in which duck liver foie gras — as defined above — must be the only animal tissues present.

30.     The second group includes Plaintiffs' primary product, Duck Foie Gras (i.e., "Foie Gras de Canard"), as well as Block of Duck Foie Gras (i.e., "Bloc de Foie Gras de Canard").  The ingredients for these products are specified as follows:

> These products are composed of a minimum 85 percent goose liver or duck liver foie gras, although "parfaits" may contain mixtures of goose liver and/or duck liver foie gras.  These products may also contain a wrapping or stuffing consisting of the lean or fat of pork, veal, or poultry, pork liver, and/or aspic jelly.  When these ingredients are used, their presence must be indicated in a product name qualifier.  Truffles, when featured in the product name, are required at a minimum 3 percent level.

31.     The third group includes Pate of Duck Liver (i.e., "Pate de Foie de Canard"), with similar ingredient requirements as to those it the second group except that they "must contain a minimum of 50 percent duck liver and/or goose liver foie gras."

32.     None of these standards requires that the duck liver foie gras be that of a non-force-fed duck.

**Foie gras products were sold for decades in California until the provisions of SB 1520 took effect on July 1, 2012.**

33.     In the years leading up to the enactment of section 25982 in late September 2004, foie gras products had been sold for decades in California.

34.     Sonoma Foie Gras was the only farm in California that produced foie gras in the state and sold it here.  It had been doing so for 20 years until July 1, 2012.

35.     But foie gras sold in California was produced by a host of farmers outside California, primarily in New York, in Canada, and in France.

36.     In 2004, for example — i.e., the year in which John Burton introduced Senate Bill 1520 — the French foie gras producer Rougié sold over $400,000 of foie gras products in California, up from over $350,000 the year before.  That same year, Palmex, Inc., one of the Canadian farmers, sold roughly $100,000 of foie gras products in California, as it had in 2003.

37.     Plaintiff Hudson Valley had also been selling its foie gras products to California for many years.

**As a legislator in California, John Burton introduced Senate Bill 1520 to target the force-feeding of ducks *in California*.**

38.     As a California State Senator in 2004, John Burton introduced Senate Bill 1520 to target the force-feeding of ducks in California.

39.     California Senate Bill 1520, legislation authored by then Sen. John Burton to add sections 25980 – 25984 to the California Health & Safety Code.[4]

40.     Section 25982 provides: "A product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size."

41.     Section 25980(b) provides a particular definition of "force feeding" for purposes of the statute:  "Force feeding a bird means a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily."  As an example of some *methods* that may be used to carry out this process, section 25980(b) further provides:  "Force feeding methods include, but are not limited to, delivering feed through a tube or other device inserted into the bird's esophagus."

42.     When Mr. Burton first introduced the bill, the definition of force feeding was limited to what a duck or goose would naturally consume on their own.  It said: "Force feeding a bird means a process that causes the bird to consume more food than a

---

[4]     All further unspecified section references are to the California Health & Safety Code.

- 13 -

1    typical bird of the same species would consume voluntarily *while foraging*."  This

2    limitation was removed from the final version of the bill.

3        43.    Mr. Burton's focus was on the production of foie gras in California.  The

4    various legislative analyses all state:  "According to the author's office, this bill is

5    intended to prohibit the force feeding of ducks and geese for the purpose of enlarging

6    their livers beyond their normal size."

7        44.    For example, Mr. Burton described the "common method" of force

8    feeding to produce foie gras as being "accomplished by restraining the bird and

9    inserting a 10-to-12 inch metal or plastic tube into the bird's esophagus and delivering

10   large amounts of concentrated meal and compressed air into the bird."  While Sonoma

11   Foie Gras in California used essentially a variation of this method of forcing food into

12   the esophagus, this is not the method used by Plaintiff Hudson Valley, for example,

13   which does not use compressed air or any other pumping action to force food into its

14   ducks.  (It relies on basic gravity.)

15       45.    The legislative analyses of SB 1520 discuss the number of ducks *in*

16   *California* that would be affected by the bill, noting that Sonoma Foie Gras has about

17   20,000 ducks on its farm in the Central Valley and shipped between 1,000 and 1,500

18   ducks a week, selling all the duck meat, not just the livers.  The legislative analyses also

19   focused on the number of employees who would be affected by the bill, noting that

20   there were "about 14 employees at SFG with annual sales of about $1,500,000, and

21   sixty percent (60%) of its business coming from selling foie gras."

22       46.    By contrast, the legislative analyses made no more than a passing reference

23   to Plaintiff Hudson Valley and never purported to assess how many ducks might be

24   affected if section 25982's ban on sale were extended to punish farmers in New York

25   for using a feeding method that the California Legislature was preventing its own

26   farmers from using.  In the same vein, the legislative analyses did not even attempt to

27   identify any of the French producers of foie gras or consider how section 25982 might

28   apply to them.  And, despite the fact that at least one of the Canadian farmers was

- 14 -

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

selling foie gras in the United States at the time, the legislative analyses make no reference to any foie gras producer in Canada.

47.    Indeed, while Sonoma Foie Gras was invited to testify at the hearings on SB 1520 — and its president did extensively — no farmer from outside the state was invited or otherwise informed about any potential application of the legislation to out-of-state farmers.

48.    Section 25894(a) delayed the operative date of the entire statutory scheme for seven and a half years, i.e., from the effective date of the statute on January 1, 2005, until July 1, 2012.  Section 25984(c) explains the legislature's intention:

> It is the express intention of the Legislature, by delaying the operative date of provisions of this chapter pursuant to subdivision (a) until July 1, 2012, to allow a seven and one-half year period for persons or entities engaged in agricultural practices that include raising and selling force fed birds to modify their business practices.

49.    This language, which was added as an amendment prior to final passage, is the result of a deal that Mr. Burton negotiated with Sonoma Foie Gras — and with that California farm alone — to delay the effective date of section 25982 for at least seven years to allow it to plan accordingly.

50.    As the Senate Republican Floor Commentaries reflect, "The bill has now been amended to become operative in 2012 so that *Sonoma Foie Gras*" — i.e., the sole California farmer of ducks raised for foie gras — "may find alternative feeding practices to produce foie gras."  Or, as they put it more realistically:  "the amendment gives the *Sonoma farm* time to adjust."

51.    Section 25984(b) was also added along the way to provide further protection for the benefit of the one California farmer that was already producing foie gras in California.  It provide a "limited immunity" from any civil or criminal cause of action against a person who, prior to July 1, 2012, engaged in any act prohibited by SB 1520.  While it ostensibly applied to any "person or entity," the language of section 25984(b)(3) shows that it was not intended to apply to any new entrants to the

- 15 -

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

California market that were not already engaged in force feeding birds at the time the bill was enacted in 2004.  As the Senate Republican Floor Commentaries explained: "Further amendments have given *Sonoma Foie Gras* immunity from lawsuits for the next seven years."  In a letter to Governor Schwarzenegger, Sonoma Foie Gras urged him to sign SB 1520 in order to provide Sonoma Foie Gras with immunity from pending lawsuits by animal rights activists in California.

52.    Further evidence of the California Legislature's intention that SB 1520 would be operative only as to *in-state* producers of foie gras is found in the provisions of the legislation that were included in the penultimate amendment to the bill.  On June 21, 2004, the California Assembly added a subsection (d) to section 25984 which included the following language:

> Because the Legislature intends to assist individuals engaged in agricultural practices that include raising and selling force fed birds to modify their business practices, the Legislature declares its support for the following:
>
> (1)    Assistance in identifying alternate business opportunities *for California businesses* that currently rely on the sale of force fed birds.
>
> (2)    Assistance in finding alternate employment, or providing job training, for employees of *California businesses* that currently rely on the sale of force fed birds.

53.    Although this subsection was ultimately removed from the final version of the bill, this language demonstrates that the persons or entities whose agricultural practices the California Legislature was targeting in SB 1520 were not out-of-state businesses such as Hudson Valley and the Canadian farmers (who had no participation in California's legislative process) but, rather, *California* farmers.

54.    On September 29, 2004, Governor Arnold Schwarzenegger signed SB 1520 into law.

**As everyone from the author of SB 1520 to the Ninth Circuit and Defendant Harris herself has said, section 25982 does not ban the sale of foie gras *per se*.**

- 16 -

55.     Mr. Burton opened the first Senate committee hearing on SB 1520 by stating, "This bill has nothing to do, uh — despite the mail that many of us get from restaurants — with banning, uh, foie gras.  What it does is prohibit, uh, what a process of which most people, uh, consider to be an inhumane of force feeding ducks and geese for the purpose of unnaturally enlarging their liver beyond the normal size."

56.     In his signing message, then Governor Arnold Schwarzenegger wrote to the Senate, "This bill's intent is to ban the current foie gras production practice . . .  It does not ban the food product, foie gras."

57.     Indeed, as the Ninth Circuit has recently declared in this case, section 25982 "bans the sale of foie gras produced through force feeding, but would not ban foie gras produced through alternative methods."

58.     Defendant Harris herself has also taken the position that "[s]ection 25982 does not even prohibit all foie gras sales, but only sales of foie gras produced by force feeding."

**SB 1520's definition of force feeding makes it impossible for a farmer to know how to assess how much food he may feed a duck**

59.     Section 25982 notably does not prohibit the sale of a product that is the result of merely "force feeding" a bird; it only applies if the feeder did so "*for the purpose* of enlarging the bird's liver beyond normal size."

60.     In other words, recognizing that the act of inserting a tube into a duck's esophagus to feed it is not inherently cruel or harmful, a person is free to force-feed a duck for the purpose of ensuring that the duck gets sufficient nutrition or for the purpose of enlarging its breasts or legs to maximize the economic value from them — and to sell all the resulting products in California.

61.     Similarly, section 25982 does not prohibit the sale of a product from a bird that was fed for the purpose of enlarging its liver beyond normal size; it only does so if the feeder caused the bird to consume "more food than a typical bird of the same species would consume voluntarily."

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

62.   In other words, recognizing that there is nothing inherently cruel or harmful about a duck liver that has been enlarged beyond normal size, a person is free to use a tube to feed a duck standard measures of food as long as they are no more than what a typical duck of the same species would consume voluntarily — and to sell all the resulting products in California.

63.   The second sentence in section 25980(b) lists "delivering feed through a tube or other device inserted into the bird's esophagus" as an example of one of the "methods" of "force feeding."  The statute does not provide that the use of this "method" obviates the requirement in the definition of "force feeding" that the process cause the bird to consume "more food that a typical bird of the same species would consume voluntarily."

64.   Hudson Valley and the Canadian farmers have decades of experience raising and feeding ducks.  Yet they are genuinely unable to make sense of the special definition of force feeding that the California Legislature enacted as section 25980.  In particular, they cannot ascertain a meaningful measure, a relevant time period, or an appropriate reference bird or other standard of comparison that would allow them to know how much food they can feed their moulard ducks in New York and Canada in order for California to allow the resulting products to be sold here.

65.   Meanwhile, the chef and owner at Hot's has no idea how much the ducks from which the foie gras products he used to buy were made had to eat throughout their lives, and he has no better idea than the farmers do as to how much food section 25982 allows the ducks to consume in any event — or even how he could ascertain that in light of the unknowable standard of measure.

66.   Under sections 25983(a) and (b), any peace officer, humane society officer, or animal control officer may issue a citation for a violation of section 25982, which "shall require the person cited to pay a civil penalty in an amount up to one thousand dollars ($1,000) for each violation, and up to one thousand dollars ($1,000) for each

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

day the violation continues." The civil penalties are payable to the local agency that prosecutes the violation.

**John Burton claims that the putative local interest for the law is concern about animal cruelty, but this claim is belied by the state's own Department of Food and Agriculture.**

67. While Mr. Burton claimed that section 25981's ban on force feeding would eliminate animal cruelty, this claim is belied by a written report of the California's own Department of Food and Agriculture issued at the time the legislation was passed.

68. Defendant Harris has similarly tried to defend the law on the ground that, by prohibiting the use of a tube to feed a duck for the purposes of producing foie gras, the state is advancing its interest in the prevention of animal cruelty.

69. Yet contrary to what Mr. Burton believed and to what Defendant Harris has argued in this case, even the State of California itself officially recognizes that the use of force feeding to produce foie gras products does not involve cruelty to the ducks. At the time SB 1520 was under consideration, the California Department of Food and Agriculture, which is the government entity responsible for protecting the agricultural industry of the state for protecting animal health, issued an enrolled bill report to the Governor. In it, the California Department of Food and Agriculture explained, "**Production of Foi[e] Gras in California *does not involve cruelty at any time*.**" The California Department of Food and Agriculture further explained, "Foi[e] Gras production is a food production industry well established in conformity with humane animal management, safe food practices and environmentally protective provisions of State and Federal law."

70. The CDFA's enrolled bill report further pointed out, for example:

Equipment used in the feeding of birds is developed in France under stringent European Community regulations that are highly sensitive to animal welfare concerns.

Birds are not injured or impaired by the feeding equipment used. Their jaws and

- 19 -

glottis are readily opened in the wild to accommodate whole fish and other animals including reptiles.

Feeding equipment does not penetrate the stomach but empties the bolus of feed exactly where a mass of ingested feed accumulates naturally in birds.

71.     The purported benefits of SB 1520 to ducks in California are thus illusory, especially since, as applied to Plaintiffs' foie gras products, not a single duck in California is affected.

72.     No other State in the United States (and no Canadian province) bans the modern agricultural practices used to produce foie gras.

**Hudson Valley and the Canadian farmers raise moulard ducks with careful attention to their feeding and in full compliance with New York and Canadian law.**

73.     Hudson Valley and the Canadian farmers raise moulard ducks.  (None of the Plaintiffs currently produces or sells foie gras products from geese.)

74.     The moulard is a selectively-bred, sterile, hybrid progeny of two ducks from two different species (and even from two different genera):  a male strain of Muscovy duck and a female strain of Pekin duck.

75.     The Muscovy duck is of the genus *Cairina* and of the species M*oschata*.

76.     The Pekin duck is of the genus *Anas* and of the species *Platyrhynchos*.

77.     The moulard duck is impossible to classify as belonging to any single species.

78.     The moulard is specially bred for its capacity of ingestion and of fat storage in its liver.

79.     In addition to the breasts, legs, fat, deboned meat, feathers, bones, and offal — all of which go to market — one of the products that Hudson Valley and the Canadian farmers make from their moulard ducks is foie gras, the fatty liver of a specially fed duck or goose.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

80.    Foie gras is made using a method known as *gavage*, which is a term for the hand-feeding of ducks and geese.

81.    Hudson Valley and the Canadian farmers pay careful attention to the feeding of their ducks.  Each hand-fed duck is given a variable amount of food each day, depending on how many days it has been in *gavage,* its appetite, whether its crop sac is clear of the last feeding, and even the weather.

82.    As New York farmers subject to the laws of that state, Hudson Valley raises its ducks in full compliance with New York law, and no provision of New York law dictates how much food Hudson Valley may feed to its ducks — or whether it may use a tube to do so.

83.    Similarly, on their farms in Quebec, the Canadian farmers raise their ducks in full compliance with the laws of that province and of Canada, and no such law prescribes how much food a Canadian farmer may feed to its ducks — or whether it may use a tube to do so.

84.    In addition, all duck products from the Canadian farmers must be processed in Canada at establishments approved by the United States Department of Agriculture, and all are subject to USDA inspection upon entry to the United States.

**Section 25982 is causing Plaintiffs to suffer significant lost sales that they can never recover — and Plaintiff Hudson Valley is facing a current threat of prosecution even for its out-of-state sales to Californians.**

85.    Hudson Valley is the largest U.S. producer of moulard duck products, including foie gras.  Other than Sonoma Foie Gras, which operated a farm in California prior to July 1, 2012, the only domestic producers of foie gras products in the United States that regularly sold their foie gras products to California are Plaintiff Hudson Valley and one other producer in New York, La Belle Farm.

86.    Hudson Valley has lost approximately $1.5 million a year in wholesale sales of foie gras products to California, for a loss to date of nearly $3 million, and it is now threatened with prosecution even for its out-of-state sales to Californians.

87. Through three of its association members, the Canadian farmers supply 100% of Canada's imports of foie gras products to the United States and California. Palmex, the leading Canadian farmer of foie gras, had approximately $750,000 in annual wholesale sales of foie gras products to California before July 1, 2012, which represented 25% of its U.S. sales; today it has virtually none, for a loss to date of nearly $1.5 million.

88. Hot's, too, is suffering irreparable financial losses, as it has been forced to either stop selling any moulard duck products or risk an arbitrary prosecution under section 25982. Its sales of foie gras products for the month of June 2012 were $6,000, and it is has been losing those sales every month since the ban took effect.

89. In February 2014, the District Attorney of Los Angeles County, Jackie Lacey, acting in conjunction with the District Attorneys of Santa Clara County and of Monterey County (the "District Attorneys"), sent letters to Hudson Valley and to at least two out-of-state distributors of the Plaintiff farmers' foie gras products threatening to prosecute them for alleged violations of section 25982 for selling foie gras products from outside California to consumers in California.

## FIRST CAUSE OF ACTION

### Declaratory Relief — Application of Section 25982 to Foie Gras Products from Ducks Fed Entirely Outside California

90. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

91. As alleged above, there is a dispute between the parties as to whether section 25982 applies to foie gras products made from the livers of ducks that are fed entirely outside the State of California. The resolution of this dispute in Plaintiffs' favor will provide Plaintiffs relief from the uncertainty, insecurity, and controversy giving rise to this action as well as from the threat of prosecution by Defendant Harris and the District Attorneys she is supervising.

92.   Section 25981 states that "[a] person may not force feed a bird for the purpose of enlarging the bird's liver beyond normal size, or hire another person to do so," but it does not indicate where the force feeding must take place in order for the person who feeds the bird to violate the statute.  Nor does it indicate where a person who is hired to force feed a bird must do so in order to violate the statute.

93.   Similarly, section 25982 states that "[a] product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size," but it does not indicate where the force feeding must take place in order for the person who sells the product to violate the statute.

94.   In its interpretation of California statutes, the California Supreme Court applies a "presumption against extraterritoriality."  As it has recently explained, "However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history."

95.   As alleged above, neither the language, purpose, subject matter, nor history of section 25981 or section 25982 clearly expresses or reasonably implies that the California Legislature intended these statutes to operate with respect to the feeding of ducks entirely outside the State of California.  The statutes do not include any legislative findings or declaration of purpose, and they say nothing about the feeding of ducks in other States and countries.  Indeed, to the contrary, the legislative history of SB 1520 shows that it was focused on production foie gras *in California*.

96.   Defendant Harris herself has been unable to determine whether to apply section 25981 to the feeding of ducks entirely outside California, such as by Hudson Valley in New York and the Canadian farmers in Quebec.  Even as to section 25982's ban on sale, Defendant Harris has taken the position in this Court that it was aimed only at in-state producers.  Indeed, in opposition to Plaintiffs' motion for a preliminary injunction, Defendant Harris argued that California's interest in section 25982 was "in

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

prohibiting sales involving *animal cruelty within its borders*."  In Defendant Harris's words, section 25982's "sale ban merely reinforces the *in-state* production ban by removing the incentive for *in-state* producers to force feed birds in contravention of the ban," and section 25984(c) "does not suggest that it was the Legislature's intent to operate beyond California."

97.   Yet, as alleged above, Hudson Valley itself and the sellers of the Plaintiff farmers' foie gras products in California now face prosecution by Defendant Harris and the District Attorneys under section 25982 despite the fact that the ducks from which their foie gras products are made are fed entirely outside California.

98.   As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982, which depends on the scope of its application — over which this Court has subject matter jurisdiction.  A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

99.   Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

100.  Enforcement of section 25982 is already causing immediate and irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of business opportunities, diminution in value of their business, and the threat of civil penalties, and will continue to cause irreparable harm unless enjoined.

101.  Because enforcement of section 25982 will cause harm that cannot be adequately compensated in damages, Plaintiffs request that this Court provide preliminary and permanent injunctive relief enjoining Defendant Harris from enforcing section 25982 against Plaintiffs.

SECOND CAUSE OF ACTION

**Declaratory Relief — Application of Section 25982 to Imports of Foie Gras Products Where the Commercial Sale of Such Products Takes Place and Title Passes Outside the State of California**

102.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

103.   As alleged above, there is a dispute between the parties as to the application of section 25982 to imports of foie gras products from other States and countries where the commercial sale of these products takes place and title passes outside the State of California.

104.   Section 25982 provides that "[a] product may not be sold in California" if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size.  Unlike other California statutes, including other provisions of the California Health and Safety Code, section 25982 does not provide that a force-fed bird product may not be "imported" into California.  (Nor does it provide that there may not be an "offer for sale" or "contract for sale" made in California.)

105.   Despite this clear limitation of the type of transaction prohibited under section 25982, Defendant Harris and the District Attorneys she is supervising contend that section 25982 applies to imports of foie gras products.

106.   As alleged above, Hudson Valley itself and sellers of the Plaintiff farmers' foie gras products outside California now face prosecution by Defendant Harris and the District Attorneys under section 25982 when consumers in California import the Plaintiff farmers' foie gras products from outside California despite the fact that title passes and the commercial sale of these products takes place and title passes entirely outside California.

107.   As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982, which depends on the scope of its application — over which this Court has subject matter jurisdiction.  A

1  declaratory judgment will terminate and afford relief from the uncertainty, insecurity,

2  and controversy giving rise to this action.

3      108.   Plaintiffs therefore seek declaratory and further relief under 28 U.S.C.

4  §§ 2201 *et seq.* (the Declaratory Judgment Act).

5      109.   Enforcement of section 25982 is already causing immediate and

6  irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of

7  business opportunities, diminution in value of their business, and the threat of civil

8  penalties, and will continue to cause irreparable harm unless enjoined.

9      110.   Because enforcement of section 25982 will cause harm that cannot be

10 adequately compensated in damages, Plaintiffs request that this Court provide

11 preliminary and permanent injunctive relief enjoining Defendant Harris from enforcing

12 section 25982 against Plaintiffs.

## THIRD CAUSE OF ACTION

### Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Supremacy Clause — Preemption

16     111.   Plaintiffs re-allege and incorporate by reference all of the preceding

17 paragraphs.

18     112.   Under the Supremacy Clause, federal law is the supreme law of the land

19 and preempts state law where, as here, Congress expresses an intent to preempt state

20 law through explicit statutory language or where a state law stands as an obstacle to the

21 accomplishment of the full objectives of Congress.

22     113.   The federal Poultry Products Inspection Act (the "PPIA") expressly

23 prohibits states from imposing "additional" or "different" inspection, processing,

24 handling, or ingredient requirements for poultry products.  21 U.S.C. § 467e.

25     114.   Because any inspection, processing, handling, or ingredient requirement

26 imposed by section 25982 would be "additional" to or "different" from federal

27 inspection, processing, handling, and ingredient requirements, section 25982 is

28 preempted by the PPIA.

115.   Section 25982 does not ban the sale of foie gras but, rather, imposes an "additional" or different" ingredient requirement on USDA-inspected foie gras products.  While federal law allows Plaintiffs' foie gras products to be sold so long as they contain or are composed of specified percentages of goose and duck liver "obtained exclusively from specially fed and fattened geese and ducks," section 25982 imposes the additional requirement that the liver be from a non-force-fed goose or duck.

116.   Moreover, because the PPIA reflects Congress's objectives to ensure the free flow of commerce in poultry products and to "prevent and eliminate burdens upon such commerce, to effectively regulate such commerce, and to protect the health and welfare of consumers," 21 U.S.C. § 451, section 25982 stands as an obstacle to the accomplishment of these objectives.

117.   Section 25982 is therefore preempted by federal law.

118.   As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction.  A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

119.   Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

120.   Enforcement of section 25982 is already causing immediate and irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of business opportunities, diminution in value of their business, and the threat of civil penalties, and will continue to cause irreparable harm unless enjoined.

121.   Because enforcement of section 25982 will cause harm that cannot be adequately compensated in damages, Plaintiffs request that this Court provide preliminary and permanent injunctive relief enjoining Defendant Harris from enforcing section 25982 against Plaintiffs.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## FOURTH CAUSE OF ACTION

### Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Commerce Clause — Extraterritorial Regulation

122.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

123.   The Commerce Clause restricts states from regulating conduct beyond their borders.

124.   As alleged above, in forcing out-of-state farmers such as Hudson Valley and the Canadian farmers to conform their duck feeding practices to the vague and arbitrary limitation in section 25980(b) in order to sell their products in California, the practical effect of section 25982 is to regulate out-of-state and foreign conduct.  Even to the extent that the mere use of a tube to feed a duck constitutes "force feeding" under section 25980(b), the practical effect of section 25982 is to condition the sale of Plaintiffs' foie gras products in California on whether they use a tube to feed their ducks entirely outside California.  Such extraterritorial regulation violates the Commerce Clause.

125.   The Commerce Clause restricts states from enacting regulations that disrupt national uniformity and impede the free flow of goods in interstate commerce.

126.   As alleged above, section 25982 operates as a forced economic boycott of lawful, wholesome, unadulterated, USDA-approved duck products from New York and Canada.

127.   As alleged above, in prohibiting the sale in California of lawful, wholesome, unadulterated, USDA-approved duck products, section 25982 also disrupts the federal interest in national uniformity in the market for poultry products and thus violates the Commerce Clause.

128.   As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

has subject matter jurisdiction.  A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

129.   Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

130.   Enforcement of section 25982 is already causing immediate and irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of business opportunities, diminution in value of their business, and the threat of civil penalties, and will continue to cause irreparable harm unless enjoined.

131.   Because enforcement of section 25982 will cause harm that cannot be adequately compensated in damages, Plaintiffs request that this Court provide preliminary and permanent injunctive relief enjoining Defendant Harris from enforcing section 25982 against Plaintiffs.

## FIFTH CAUSE OF ACTION

### Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Commerce Clause — Substantial Burden on Commerce Exceeding Putative Local Benefits

132.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

133.   The Commerce Clause restricts states from placing excessive burdens on interstate and foreign commerce.

134.   As alleged above, in banning the sale of wholesome foie gras products from ducks that are raised fed in New York and Canada, section 25982 places substantial and excessive burdens on interstate and foreign commerce without advancing any legitimate local interest.  As alleged above — and as recognized by California's own Department of Food and Agriculture — modern methods of producing foie gras do not involve animal cruelty at any time.  Moreover, while a general interest in preventing cruelty to animals *in California* may be a legitimate local interest, no such interest supports the application of section 25982 to ducks that are fed and processed

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

into poultry commodities in *other* states and countries in full compliance with the laws in effect in those jurisdictions.

135.   As necessary to consider under *Pike v. Bruce Church, Inc.*, 39 U.S. 137, 142 (1970), California's interest in preventing animal cruelty could be just as effectively promoted — but with a lesser impact on interstate commerce — through a variety of alternatives to an outright ban on foie gras products from force-fed ducks.  Of course, to the extent that section 25982 does not apply to products from ducks fed entirely outside California, then the state can effectively ensure that no duck is force-fed in California simply by fully enforcing section 25981, which bans force feeding within the state, and by fully enforcing section 25982's ban on the sale of foie gras products from ducks *fed within California*.  (This is not difficult as a practical matter, since every foie gras product sold in the United States must be inspected by the USDA and bears a mark with the USDA seal identifying the official establishment from which it was produced.)

136.   Yet even if section 25982 were construed so as to apply to foie gras products from ducks fed entirely outside California, such as those produced by Hudson Valley and the Canadian farmers, and even assuming that the California Legislature had a legitimate local interest in doing so, there are still many other ways for the government to enable its citizens to avoid purchasing force-fed foie gras products, if they do not want to, without placing a complete ban on interstate and foreign commerce.  To take just a few examples, California could undertake to inform its population about where foie gras comes from, just as it already does in publishing materials for teachers to use in their classrooms to promote what it believes to be the benefits of buying and eating locally grown products.  Or California could require that sellers of foie gras products within the state notify consumers at the point of sale that the products were made from force-fed ducks.

137.   As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

has subject matter jurisdiction.  A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

138.   Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

139.   Enforcement of section 25982 is already causing immediate and irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of business opportunities, diminution in value of their business, and the threat of civil penalties, and will continue to cause irreparable harm unless enjoined.

140.   Because enforcement of section 25982 will cause harm that cannot be adequately compensated in damages, Plaintiffs request that this Court provide preliminary and permanent injunctive relief enjoining Defendant Harris from enforcing section 25982 against Plaintiffs.

SIXTH CAUSE OF ACTION

**Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Due Process Clause — Void for Vagueness and Imposition of Penalty without Requirement of *Scienter* for Conduct Not Involving Public Health or Safety**

141.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

142.   Section 25982 of the California Health & Safety Code, which incorporates the definition in section 25980(b), is unconstitutionally void for vagueness as applied to Plaintiffs.  Section 25982 also violates the Due Process Clause as applied to Plaintiff Hot's in particular because it unconstitutionally penalizes innocent conduct without any *scienter* requirement.

143.   As alleged above, section 25982 does not provide a person of ordinary intelligence fair notice of how to determine how much food he may cause a moulard duck to consume without violating California law.  *A fortiori*, it does not provide a person of ordinary intelligence fair notice of whether he can sell in California any

product that is the result of feeding a moulard duck.  Section 25982 is so standardless that it authorizes and encourages arbitrary enforcement.

144.   As alleged above, Hudson Valley and the Canadian farmers are unable to ascertain from section 25982 any clear standard in the form of a meaningful unit of measure, a relevant time period, or an appropriate reference bird or other standard of comparison that would allow them to know how to determine how much food they can feed their ducks in New York and Canada in order for California to allow the sale of the resulting products under this law.

145.   Moreover, because of its vagueness, section 25982 makes it impossible for Hot's (or any California seller) to know whether it may continue to sell any products from moulard ducks.

146.   This vagueness has already begun to cause Plaintiffs irreparable injury in the form of lost sales, and they will face millions more in losses if this unconstitutional law remains in effect.

147.   The vagueness of section 25982 leaves it open to entirely arbitrary enforcement by any of California's tens of thousands of peace officers, humane society officers, and animal control officers for whom the statute fails to provide the most basic precision and guidance required by the Constitution.

148.   At least one peace officer, formerly the Chief of Police in a jurisdiction in Los Angeles County where Plaintiffs' products were sold prior to July 1, 2012, believes it is virtually impossible for a local police officer to know how (or how much food) a particular duck or goose was fed, especially if the foie gras came from outside California.

149.   Section 25982 penalizes a person who sells in California any foie gras product based on the process that was used to feed the duck or goose from which it was made, even where the person has no knowledge or other *scienter* as to how the duck or goose was fed throughout its lifetime.

150.   Section 25982 further penalizes a person who sells in California any foie gras product from a duck or goose that was fed by another person — as of July 1, 2012, a person necessarily outside the state — if such other person fed the duck or goose "for the purpose" of enlarging the bird's liver beyond normal size.  As such, section 25982 unconstitutionally penalizes a California seller for the unknowable mental state of another.

151.   In banning the sale in California of duck and geese products that are the result of the feeding prohibition in SB 1520, section 25982 has as its obvious purpose the reduction in consumer demand for products from out-of-state farmers who use a feeding practice that the California Legislature disfavors.  Section 25982 thus does not involve the public health or safety of any person in California — or even of any duck or goose within the state — and cannot excuse the absence of any requirement of *scienter* on the part of the California seller before significant penalties may be imposed.

152.   As of July 1, 2012, Hot's faces civil penalties of up to $1,000 per sale per day if the duck products it sells in California are deemed to be products of ducks fed more than section 25982 allows and for the purpose of enlarging their livers.

153.   As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction.  A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

154.   Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

155.   Enforcement of section 25982 is already causing immediate and irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of business opportunities, diminution in value of their business, and the threat of civil penalties, and will continue to cause irreparable harm unless enjoined.

156.   Because enforcement of section 25982 will cause harm that cannot be adequately compensated in damages, Plaintiffs request that this Court provide

1   preliminary and permanent injunctive relief enjoining Defendant Harris from enforcing
2   section 25982 against Plaintiffs.

3                            **PRAYER FOR RELIEF**

4          WHEREFORE, Plaintiffs respectfully seek the following relief from this Court:

5          A.     A declaratory judgment, pursuant to 28 U.S.C. § 2201 *et seq.* (the
6   Declaratory Judgment Act), that section 25982 of the California Health & Safety Code:

7                 1.     Does not apply to foie gras products from ducks fed entirely outside
8   the State of California;

9                 2.     Does not apply to imports of foie gras products from outside the
10  State of California where the commercial sale of such products takes place and title
11  outside the State of California;

12                3.     Is preempted by section 467e of the federal Poultry Products
13  Inspection Act as applied to foie gras products and therefore violates the Supremacy
14  Clause;

15                4.     Violates the Commerce Clause as an unconstitutional extraterritorial
16  regulation of agricultural practices that take place entirely outside of California;

17                5.     Violates the Commerce Clause as an unconstitutional burden on
18  interstate and foreign commerce that clearly exceeds the putative local interest; and

19                6.     Is unconstitutionally vague and therefore violates the Due Process
20  Clause;

21         B.     A preliminary injunction prohibiting Defendant Harris from enforcing
22  section 25982 of the California Health & Safety Code against Plaintiffs or against the
23  sale of their foie gras products;

24         C.     A permanent injunction prohibiting Defendant Harris from enforcing
25  section 25982 of the California Health & Safety Code against Plaintiffs or against the
26  sale of their foie gras products;

27         D.     An award of reasonable attorneys fees and costs to the extent permitted by
28  law, including but not limited to under 42 U.S.C. § 1988; and

1    E.    Such other relief as the Court deems just and proper.

2

3    Dated:        April 2, 2014              THE TENENBAUM LAW FIRM

4                                            /s/ Michael Tenenbaum

5                                            _____

6                                            Michael Tenenbaum, Esq.

7                                            *Counsel for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury.

Dated:          April 2, 2014                    THE TENENBAUM LAW FIRM

/s/ Michael Tenenbaum

_____

Michael Tenenbaum, Esq.

*Counsel for Plaintiffs*

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF