Michael Tenenbaum, Esq. (No. 186850)
*mt@post.harvard.edu*
THE TENENBAUM LAW FIRM
1431 Ocean Ave., Ste. 400
Santa Monica, CA  90401
Tel     (310) 919-3194
Fax    (310) 919-3727

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and HOT'S RESTAURANT GROUP, INC., a California corporation;<br><br>                    Plaintiffs,<br><br>– against –<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California;<br><br>                    Defendant. | Case No. 2:12-cv-05735-SVW-RZ<br><br>**PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIM OF FEDERAL PREEMPTION**<br><br>Date:           July 14, 2014<br>Time:          1:30 p.m.<br>Courtroom:  6<br><br>Hon. Stephen V. Wilson |

Pursuant to L.R. 56-1, Plaintiffs Association des Éleveurs de Canards et d'Oies du Québec (the "Canadian Farmers"), HVFG LLC ("Hudson Valley"), and Hot's Restaurant Group, Inc. ("Hot's Kitchen"), submit this Statement of Uncontroverted Facts and Conclusions of Law.

## UNCONTROVERTED FACTS

1. Hudson Valley and the Canadian Farmers produce foie gras products at their facilities in New York and Quebec.  (Henley Decl. ¶ 1-3; Cuchet Decl. ¶¶ 1-3.)

2. Every one of their foie gras products is prepared in an official establishment, 21 U.S.C. § 453(p), and every one is certified as wholesome by the USDA for sale in the United States.  (Henley Decl. ¶¶ 3-4; Cuchet Decl. ¶¶ 3-5.)

3. Indeed, the PPIA and USDA regulations would forbid their sale if they were adulterated or misbranded.  21 U.S.C. § 458(a)(2); 9 C.F.R. § 381.190(b)(1).

4. While federal law authorizes the sale of "single-ingredient" poultry products and all others that conform to the product standards set forth in the USDA's Standards and Labeling Policy Book without agency label pre-approval, 9 C.F.R. § 381.133(a), (b), Hudson Valley and the Canadian Farmers often seek such USDA approval, which requires them to specify the ingredients of each.

5. For example, before one of the Canadian Farmers, Palmex, started selling its "Whole duck foie gras torchon style" in the United States, it obtained special approval from the USDA based on a listing of ingredients that specified "Duck Foie Gras" as constituting 95.35% of the product formula.  (Cuchet Decl. ¶ 5 & Ex. A.)

6. Similarly, Hudson Valley obtained USDA approval for its "Mulard Duck Foie Gras" and "Torchon of Moulard Duck Foie Gras" products based on the submission of product formulas that specified the percentage of "Mulard Duck Foie Gras" as the ingredients.  (Henley Decl. ¶¶ 5-6 & Exs. A & B.)

7. The USDA does not impose any requirement that the foie gras in Plaintiffs' products be the result of a non-force-fed duck.

8. No other State imposes such a requirement.

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT ON CLAIM OF FEDERAL PREEMPTION

9. French law — which the USDA follows for foie gras products — specifies that foie gras must be the result of *gavage*, i.e., a term used in California law for the hand-feeding of birds. See Cal. Health & Safety Code § 122320(c) (defining "hand-feeding" of birds in pet shop to mean "the process by which a bird is manually fed by a human through the use of … oral gavage"). The "revised" standards referenced in the USDA Policy Memo 076 — and adopted as the "requirements" under American law — were translated at the time to specify: "The 'foie gras' (livers) must *exclusively come from specially crammed* and suitably bleeded geese and ducks." [emphasis added].) (Tenenbaum Decl. ¶ 4 & Exs. B & C.)

10. In May 1983, i.e., a year before the USDA issued Policy Memo 076, the USDA wrote to the French Embassy "concerning the French regulations for the composition … of imported 'foie gras' products." (Tenenbaum Decl. ¶ 5 & Ex. D at p. 1.) In that letter, the USDA indicated that it will "continue to monitor all 'foie gras' products entering this country for compliance with the French regulations" and "will also continue to deny approval for any of these products which are not in compliance with these standards." (*Id.*) The Director even referred to the these preliminary decisions by the USDA "as an agreement between our two governments." (*Id.* at p. 2.)

11. In 2006, French law codified the definition of foie gras as follows: "Foie gras is a part of the protected cultural and gastronomic heritage of France. Foie gras means the liver of a duck or of a goose specially fattened by gavage." (RJN Ex. C [*Code rural et de la pêche maritime*, Art. L654-27-1] & Tenenbaum Decl. ¶ 6.)

12. The only producer of foie gras in California ceased operations in the State before § 25981 took effect on July 1, 2012. (See ECF Dkt. 51-17 [Gonzalez Decl.] at ¶¶ 2-3.)

13. Introducing SB 1520 in the California Senate on April 26, 2004, Senator John Burton intoned: "This bill has nothing to do, uh — despite the mail that many of us get from restaurants — with banning, uh, foie gras. What it does is prohibit, uh, what a process of which most people, uh, consider to be an inhumane of force feeding

ducks and geese for the purpose of unnaturally enlarging their liver beyond the normal size." (Tenenbaum Decl. ¶ 2.)

14. In his letter to the California State Senate upon signing SB 1520, Governor Arnold Schwarzenegger made clear: "This bill's intent is to ban the current foie gras production practice of forcing a tube down a bird's throat to greatly increase the consumption of grain by the bird. It does not ban the food product, foie gras." (Tenenbaum Decl. ¶ 3 & Ex. A.)

15. In her answering brief on Plaintiffs' preliminary injunction appeal, Defendant Harris argued: "Moreover, section 25982 does not ban the sale of all foie gras, but only the sale of foie gras produced by means of prohibited animal cruelty." (App. ECF Dkt. 16-1 at ECF p. 51.)

16. Plaintiffs fear prosecution of the sale of their wholesome, USDA-approved products in California so long as § 25982 remains in effect. (Cuchet Decl. ¶ 7; Henley Decl ¶ 8; Chaney Decl. ¶¶ 2-4.)

17. The District Attorneys of at least three California counties are now threatening to enforce § 25982 not only against the sale of Hudson Valley's and the Canadian Farmers' products in California but also against the offer for sale and import of those products from other States into California. (Tenenbaum Decl. ¶ 7.)

## CONCLUSIONS OF LAW

1. Congress passed the Poultry Products Inspection Act (the "PPIA") in 1957 to ensure uniform federal regulation of poultry products and to assure that poultry products distributed to the public are "wholesome, not adulterated, and properly marked labeled, and packaged." 21 U.S.C. §§ 451 *et seq.*

2. Congress declared that "poultry products are an important source of the Nation's total supply of food" and deemed all poultry products to be "in interstate or foreign commerce." *Id.*

- 3 -
PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIM OF FEDERAL PREEMPTION

3. Congress further emphasized that "regulation by the Secretary of Agriculture and cooperation by the States … are appropriate to *prevent and eliminate burdens upon such commerce*, to effectively regulate such commerce, and to protect the health and welfare of consumers." 21 U.S.C. § 451 (emphasis added).

4. Section 452 of the PPIA declares "the policy of the Congress" to provide for the inspection of poultry products and to "otherwise regulate the processing and distribution of such articles as hereinafter prescribed to prevent the movement or sale in interstate or foreign commerce of, or the burdening of such commerce by, poultry products which are adulterated or misbranded." 21 U.S.C. § 452; 9 C.F.R. § 381.1(b).

5. A poultry product is deemed "adulterated" if, *inter alia*, "any valuable constituent has been in whole or in part omitted or abstracted therefrom; or if any substance has been substituted, wholly or in part therefor." 21 U.S.C. § 453(g)(8); 9 C.F.R. § 381.1(b).

6. A poultry product is "misbranded" if, *inter alia*, "if it purports to be or is represented as a food for which a definition and standard of identity or compensation has been prescribed by regulations of the Secretary [of Agriculture] under section 457 of this title unless," *inter alia*, "it conforms to such definition and standard[.]" 21 U.S.C. § 453(h)(6), (i).

7. Under section 457 of the PPIA, the Secretary of Agriculture, "whenever he determines such action is necessary for the protection of the public, may prescribe … definitions and standards of identity or composition [f]or articles subject to this chapter[.]" 21 U.S.C. § 457(b)(2).

8. Federal regulations further reflect that the Secretary of Agriculture has delegated to the Administrator of the Food Safety and Inspection Service (the "FSIS") within the USDA "the responsibility for exercising the functions of the Secretary of Agriculture under various statutes[.]" 9 C.F.R. §§ 300.2(a), 300.4(a).

9. The PPIA provides that "[n]o person shall … sell … [or] offer for sale … any poultry products which are capable of use as human food and are adulterated or

misbranded at the time of such sale … or offer for sale." 21 U.S.C. § 458(a)(2); 9 C.F.R. § 381.190(b)(1).

10. No poultry products may be imported into the U.S. "unless they are healthful, wholesome, fit for human food, not adulterated, and contain no … ingredient which renders them unhealthful, unwholesome, adulterated, or unfit for human food" — and also comply with all other rules and regulations for poultry products produced here. 21 U.S.C. § 466(a), (d); 9 C.F.R. §§ 381.195 *et seq.*

11. The PPIA directs the Secretary of Agriculture to "promulgate such other rules and regulations as are necessary to carry out the provisions of this chapter." 21 U.S.C. § 463(b).

12. The PPIA was amended in 1968 by the passage of the Wholesome Poultry Products Act, Pub. L. No. 90-492 (Aug. 18, 1968), to include an express preemption provision:

> Marking, labeling, packaging, or *ingredient requirements* (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) *in addition to, or different than*, those made under this chapter *may not be imposed by any State* … with respect to articles prepared at any official establishment in accordance with the requirements under this chapter[.]

21 U.S.C. § 467e (emphasis added).

13. The PPIA does not "preclude any State … from making requirement or taking other action, *consistent with this chapter*, with respect to any other *matters regulated under this chapter*." 21 U.S.C. § 467e (emphasis added).

14. USDA regulations authorize the Administrator "to establish *specifications or definitions and standards of identity or composition*, covering the *principal constituents* of any poultry product with respect to which a specified name of the product or other labeling terminology may be used, whenever he determines such action is necessary to prevent sale of the product under false or misleading labeling." 9 C.F.R. § 381.155(a)(1) (emphasis added).

15. "Further, the Administrator is authorized to prescribe *definitions and standards of identity or composition* for poultry products whenever he determines such action is otherwise necessary for the protection of the public." 9 C.F.R. § 381.155(a)(1) (emphasis added).

16. Pursuant to its congressional authority, the USDA has prescribed such definitions and standards of identity or composition in its Standards and Labeling Policy Book, which establishes standards for no less than 14 poultry products containing foie gras. (*See* Request for Judicial Notice ["RJN"] Ex. A.)

17. The federal definition and standard for foie gras are: "Goose liver and duck liver foie gras (fat liver) *are obtained exclusively from specially fed and fattened geese and ducks.*" (RJN Ex. A.) The USDA's Policy Memo 076, dated September 21, 1984, written by the Director of the USDA's Standards and Labeling Division, addresses the following issue: "What are the standards and labeling requirements for duck liver and/or goose liver 'foie gras' products?" (RJN Ex. B at p. 1.) It provides that "[g]oose liver and duck liver foie gras (fat liver) *are obtained exclusively from specially-fed and fattened geese and ducks.*" (*Id.*)

18. Policy Memo 076 further explains that the standards for foie gras products have their origin in a petition from the French government and a subsequent agreement between our national governments to follow the French standards and ingredient requirements for these products:

> In 1975, representatives of the French government petitioned the USDA to adopt the French standards for foie gras products. *An agreement was reached between our respective governments to follow these standards* pending a rulemaking procedure. Although a rulemaking was not finalized at that time, *over the years the French standards were followed and applied to foie gras products.*
>
> *In June of 1980, the French government and trade associations revised their 1973 standards for foie gras products* and requested our renewal and approval of the new regulations. Since the standards followed over the years for the imported product have become obsolete and the marketing and consumption of these products have become more popular, *SLD has*

- 6 -

*decided to follow these requirements* with some modifications including the English translation of French terms, the requirements for product name qualifiers, and other general policy requirements. *The adoption of these requirements will eliminate confusion and provide a descriptive classification for these products.*

(*Id.* at p. 2 [emphasis added].)

19. The USDA classifies products in which foie gras is used into the following three classifications based on the minimum content of goose or duck liver foie gras:

(1) "Whole Goose Foie Gras" and "Whole Duck Foie Gras." "These are products in which goose liver or duck liver foie gras are the only animal tissues present."

(2) "Goose Foie Gras," "Duck Foie Gras," "Block of Goose Foie Gras," "Block of Duck Foie Gras," "Parfait of Goose Foie Gras," and "Parfait of Duck Foie Gras." "These products are composed of a minimum 85 percent goose liver or duck liver foie gras, although 'parfaits' may contain mixtures of goose liver and/or duck liver foie gras."

(3) "Pate of Goose Liver," "Pate of Duck Liver," "Galantine of Goose Liver," "Galantine of Duck Liver," "Puree of Goose Liver," and "Puree of Duck Liver." "These products must contain a minimum of 50 percent duck liver and/or goose liver foie gras and may also contain a wrapping or stuffing of the lean or fat of pork, veal, or poultry, pork liver, aspic jelly, extenders, and/or binders."

(RJN Ex. A.) There is no additional requirement that the most valuable constituent ingredient, i.e., the goose or duck liver foie gras, come from a duck that has been fed in any particular way or that has been limited to any quantity of food.

20. Section 25981 of the California Health and Safety Code provides that "[a] person may not force feed a bird for the purpose of enlarging the bird's liver beyond normal size, or hire another person to do so." Cal. Health & Safety Code § 25981.

21. In referring to "a bird," Section 25982 applies to Plaintiffs' poultry products, as § 25980(a) provides that a bird "includes, but is not limited to, a duck or goose." Cal. Health & Safety Code § 25980(a); see also 21 U.S.C. § 453(e), (f); 9 C.F.R. 381.1(b).

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIM OF FEDERAL PREEMPTION

22. Section 25982 requires that a poultry product "may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size." Cal. Health & Safety Code § 25982.

23. In the portion of its opinion discussing "The Scope of § 25982," the Ninth Circuit explained in our case: "Section 25982, however, does not prohibit foie gras. It bans the sale of foie gras produced through force feeding, but would not ban foie gras produced through alternative methods." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 n.4 (9th Cir. 2013).

24. Section 25980(b) defines "force feeding" to mean "a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily." Cal. Health & Safety Code § 25980b).

25. Section 25980(b) further provides that "[f]orce feeding methods include, but are not limited to, delivering feed through a tube or other device inserted into the bird's esophagus." Cal. Health & Safety Code § 25980b).

26. If a poultry product does not meet the special requirements of Sections 25980 and 25982, California bans its sale and imposes a penalty of up to $1,000 per sale per day. Cal. Health & Safety Code § 25983(b).

Dated: May 14, 2014

THE TENENBAUM LAW FIRM

_____

Michael Tenenbaum, Esq.

*Counsel for Plaintiffs*