1  KAMALA D. HARRIS
   Attorney General of California
2  CONSTANCE L. LELOUIS
   Supervising Deputy Attorney General
3  PETER H. CHANG
   Deputy Attorney General
4  State Bar No. 241467
   STEPHANIE F. ZOOK
5  Deputy Attorney General
   State Bar No. 238383
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 324-2512
8   Fax: (916) 324-8835
    E-mail: Stephanie.Zook@doj.ca.gov
9  *Attorneys for Defendant*

10              IN THE UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                        WESTERN DIVISION

13

14

| | |
|---|---|
| 15 **ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUEBEC, a Canadian non-profit corporation; HVFG LLC, a New York limited liability company; and HOT'S RESTAURANT GROUP, INC., a California corporation,** | CV-12-05735-SVW-RZ **ATTORNEY GENERAL'S OPPOSITION TO PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ON FEDERAL PREEMPTION CLAIM** |

15  **ASSOCIATION DES ÉLEVEURS
16  DE CANARDS ET D'OIES DU
    QUEBEC, a Canadian non-profit
    corporation; HVFG LLC, a New
17  York limited liability company; and
    HOT'S RESTAURANT GROUP,
18  INC., a California corporation,**

                              Plaintiffs,
19
20       **v.**

21  **KAMALA D. HARRIS, in her official
    capacity as Attorney General of
22  California,**

23                            Defendant.

CV-12-05735-SVW-RZ

**ATTORNEY GENERAL'S
OPPOSITION TO PLAINTIFFS'
PARTIAL SUMMARY
JUDGMENT MOTION ON
FEDERAL PREEMPTION CLAIM**

Date:         July 14, 2014
Time:         1:30 p.m.
Courtroom:    6
Judge:        The Honorable Stephen
              V. Wilson
Trial Date:   None
Action Filed: 7/2/2012

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................1

Statement of Facts.................................................................................................2

    I.     California Law ...............................................................................2

    II.    The PPIA and Its Regulatory Framework ...........................................3

Procedural History .................................................................................................4

Argument.................................................................................................................4

    I.     Legal Standard ...............................................................................4

    II.    There is No Express Preemption:  the PPIA Does Not Regulate
the Method of Raising Birds for Foie Gras Production......................5

           A.    The PPIA and Implementing Regulations Impose
Marking, Labeling, and Ingredient Requirements, Not
Requirements on Animal Feeding or Other Animal
Husbandry Practices ................................................................7

           B.    California Law Imposes No Requirement "in Addition to,
or Different than" the PPIA or Its Implementing
Regulations and is Directed Towards Activities Removed
From Slaughterhouses or Processing Facilities ......................12

    III.   There is No Field Preemption:  Congress Did Not Intend the
PPIA to Preempt the Field of Foie Gras Production Methods ...........14

    IV.   There is No Obstacle Preemption:  California's Force Feeding
Ban Does Not Frustrate the Objectives of the PPIA ..........................16

Conclusion...............................................................................................................17

# TABLE OF AUTHORITIES

**Page**

CASES

*Altria Group, Inc. v. Good*
   555 U.S. 70 (2008)..............................................................................6

*Armour and Co. v. Ball*
   468 F.2d 76 (6th Cir. 1972)....................................................11, 15

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
   729 F.3d 937 (9th Cir. 2013).................................................4, 9, 10

*Barnes v. Campbell Soup Co.*
   2013 WL 5530017 (N.D. Cal. July 25, 2013).............................12

*Campbell v. Hussey*
   368 U.S. 297 (1961)............................................................................15

*Cavel International, Inc. v. Madigan*
   500 F.3d 551 (7th Cir. 2007)..........................................13, 14

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986).............................................................................4

*Chevron U.S.A., Inc. v. Hammond*
   726 F.2d 483 (9th Cir. 1984)............................................................5

*Cipollone v. Liggett Group, Inc.*
   505 U.S. 504 (1992)........................................................................5, 7

*Clicks Billiards, Inc. v. Sixshooters, Inc.*
   251 F.3d 1252 (9th Cir. 2001) ........................................................4

*Del Real, LLC v. Harris*
   966 F. Supp. 2d 1047 (E.D. Cal. 2013)....................................13

*Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*
   476 F.3d 326 (5th Cir. 2007)...........................................7, 13, 14, 16

*Fellner v. Tri-Union Seafoods, L.L.C.*
   539 F.3d 237 (3d Cir. 2008).......................................................9, 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Florida Lime & Avocado Growers, Inc. v. Paul*
    373 U.S. 132 (1963)............................................................................ 15

*National Broiler Counsel v. Voss*
    44 F.3d 740 (9th Cir. 1994)......................................................... 11, 12

*National Meat Ass'n v. Harris*
    132 S. Ct. 965 (2012) ..................................................................... 14

*Northwestern Selecta, Inc. v. Munoz*
    106 F. Supp. 2d 223 (D. P.R. 2000) ............................................... 12

*Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*
    461 U.S. 190 (1983)...................................................................... 5, 16

*People v. Southern Pac. Co.*
    208 Cal. App. 2d 745 (Cal. Ct. App. 1962) ................................... 17

*Rice v. Santa Fe Elevator Corp.*
    332 U.S. 218 (1947)........................................................................ 14

*United States v. Stevens*
    559 U.S. 460 (2010)........................................................................ 5

*Wyeth v. Levine*
    555 U.S. 555 (2009)..................................................................... 5, 11

*Zogenix, Inc. v. Patrick*
    2014 WL 1454696 (D. Mass. Apr. 15, 2014) ................................ 17

STATUTES

California Health and Safety Code
    § 25980(b) ....................................................................................... 2
    § 25981 ............................................................................................ 2
    § 25982 ..................................................................................... passim
    § 25983(a)........................................................................................ 2
    § 25983(c)........................................................................................ 2
    § 25984(c)........................................................................................ 2

**TABLE OF AUTHORITIES**
**(continued)**

Page

Code of Federal Regulation, Title 9

    § 381.1 ..................................................................................7

    § 381.156 ..............................................................................8

    § 381.168 ..............................................................................8

United States Code, Title 21

    § 451 ..............................................................................3, 7

    § 452 ............................................................................3, 16

    § 453(f) ...............................................................................7

    § 453(p) ..............................................................................3

    § 467e ...........................................................3, 6, 7, 13, 16

COURT RULES

Federal Rules of Civil Procedure

    Rule 56(a) ...........................................................................4

OTHER AUTHORITIES

Federal Meat Inspection Act .......................................................passim

Federal Tobacco Inspection Act ........................................................15

**INTRODUCTION**

In their Second Amended Complaint, plaintiffs challenge the constitutionality of California Health and Safety Code section 25982, which narrowly protects California's legitimate interest in preventing, within its own borders, the sale of products resulting from force feeding a bird to abnormally enlarge its liver. This partial motion for summary judgment is based on plaintiffs' Third Cause of Action, claiming that section 25982 is preempted by the Poultry Products Inspection Act ("PPIA"). Defendant has moved for a dismissal of all causes of action in the Second Amended Complaint, including the preemption claim that is the subject of plaintiffs' motion. (Dckt. 116.) All causes of action, including plaintiffs' preemption claim, must be dismissed as a matter of law. Resolution of defendant's motion to dismiss, therefore, would moot this partial summary judgment motion.

Should the Court address this motion, the Court should deny it because the PPIA does not preempt section 25982, either expressly or impliedly. The PPIA concerns the inspection and labeling of poultry and poultry products at slaughterhouse and processing facilities, and contains a preemption clause that precludes states from imposing marking, labeling, or ingredient requirements in addition to or different than those of the PPIA. California's section 25982 bans the sale of foie gras obtained from birds that were force fed, imposes no marking, labeling, or ingredient requirements, and does not apply at slaughterhouse and processing facilities. Neither the PPIA nor its regulations address animal feeding practices, and as plaintiffs concede, the USDA imposes no requirement that foie gras be obtained from ducks that were force fed. To the extent that plaintiffs argue that the USDA abides by French law requiring the force feeding of birds, that argument must fail because it is not supported by admissible evidence and, furthermore, neither USDA policy nor French law can preempt state law. Only federal law has the force to preempt state law. Therefore, the Court should find that section 25982 is not preempted by the PPIA.

# STATEMENT OF FACTS

## I.   CALIFORNIA LAW

California Health and Safety Code section 25981 prohibits, in California, force feeding a bird to enlarge the bird's liver beyond normal size, or hiring another person to do so.  Meanwhile, California Health and Safety Code section 25982 provides that "[a] product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size." "Force feeding a bird" means "a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily.  Force feeding methods include, but are not limited to, delivering feed through a tube or other devices inserted into the bird's esophagus."  Cal. Health and Safety Code § 25980(b) (West 2014).  The statutes were enacted in 2004 but did not become operative until July 1, 2012, seven and one-half years later, to give foie gras producers an opportunity to modify their business practices.  *Id*. § 25984(c).

Peace officers, officers of a human society, or officers of an animal control or animal regulation department of a public agency may issue citations to anyone who violates section 25982.  *Id*. § 25983(a).  A person or entity who violates section 25982 may be prosecuted by the district attorney of the county in which a violation occurred, or the city attorney of the city in which a violation occurred.  *Id*. § 25983(c).  The statute does not expressly provide enforcement authority to the California Attorney General.

Plaintiffs' challenge is limited to section 25982, but neither statute bans foie gras.  Rather, the California law is focused on the "foie gras production practice of forcing a tube down a bird's throat to greatly increase the consumption of grain by the bird."  (Exh. A to Decl. of Tenenbaum ISO MSJ (Dckt. 118-5), at p. 6 (Schwarzenegger Signing Message).)

/ / /

/ / /

## II.   THE PPIA AND ITS REGULATORY FRAMEWORK

Congress enacted the PPIA in 1957 to "provide for the inspection of poultry and poultry products and otherwise regulate the processing and distribution of such articles . . . to prevent the movement or sale in interstate or foreign commerce of, or the burdening of such commerce by, poultry products which are adulterated or misbranded." 21 U.S.C. § 452 (2014).

The relevant preemption clause of the PPIA provides that "[m]arking, labeling, packaging, or ingredient requirements . . . in addition, or different than, those made under this chapter may not be imposed by any State . . . with respect to articles prepared by any official establishment in accordance with the requirements under this chapter. . .." *Id.* § 467e.  The PPIA preemption clause contains a savings clause: "This chapter shall not preclude any State . . . from making requirement or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter." *Id.*

The PPIA regulates the inspection of poultry and poultry products to ensure they are "wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451.  It generally addresses the inspection of the slaughter of poultry and processing of poultry products in official establishments, sanitary practices in official establishments, labeling practices, storage and handling of poultry products, and adulterated or misbranded poultry products.  21 U.S.C. § 451 et seq.

The PPIA does not deal with poultry or poultry products prior to their entering "official establishments," which the PPIA defines as any establishment at which inspection of the slaughter of poultry or the processing of poultry products is maintained.  *See id.* § 453(p).  The PPIA does not deal with animal husbandry practices, including the raising or feeding of birds.  Specifically, the PPIA does not deal with the method of feeding geese or ducks to produce foie gras.

/ / /

## PROCEDURAL HISTORY

On July 2, 2012, plaintiffs filed a Complaint seeking declaratory and injunctive relief. (Dckt. 1.)  A few days later, they filed an ex parte application for a temporary restraining order that was denied, followed by a motion for a preliminary injunction. (Dckt. 3, 35, 51.)  Before the Court ruled on the motion for preliminary injunction, plaintiffs filed a First Amended Complaint adding a claim for preemption. (Dckt. 54.)  The court denied plaintiffs' motion for a preliminary injunction (Dckt. 87), and the Ninth Circuit Court of Appeals affirmed (*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013)). Neither decision addressed the preemption issue as it had not been raised by plaintiffs. *Id.* at 950 n.8.  Plaintiffs then filed a petition for a writ of certiorari in the United States Supreme Court that is currently pending.  In the meantime, this case had been restored to this Court's active calendar and plaintiffs had filed a Second Amended Complaint. (Dckt. 107, 112.)  On May 2, 2014, defendant moved to dismiss the Second Amended Complaint in its entirety. (Dckt. 116.)  Subsequently, plaintiffs filed their Motion for Summary Judgment on Federal Preemption Claim to be heard at the same time. (Dckt. 117, 118.)

## ARGUMENT

### I.   LEGAL STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

/ / /

1    When considering issues arising under the Supremacy Clause, a court starts

2    "with the assumption that the historic police powers of the States [are] not to be

3    superseded by . . . Federal Act unless that [is] the clear and manifest purpose of

4    Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (brackets

5    and ellipses in original) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218,

6    230 (1947)).  This is particularly true where the state law concerns traditional areas

7    for state regulation, such as laws regarding animal cruelty.  *Wyeth v. Levine*, 555

8    U.S. 555, 565 (2009); *see also United States v. Stevens*, 559 U.S. 460, 469 (2010)

9    (states have a long history of regulating animal cruelty).

10    Nonetheless, preemption applies where there is express statutory text, which

11    must be narrowly construed, where state law is in actual conflict with federal law,

12    where the nature or scope of federal law "left no room for the States to supplement

13    it," or where the state law "stands as an obstacle to the accomplishment and

14    execution of the full purpose and objectives of Congress." *Cipollone*, 505 U.S. at

15    516 (citations omitted); *Pacific Gas & Elec. Co. v. State Energy Res. Conservation*

16    *& Dev. Comm'n*, 461 U.S. 190, 204 (1983) (internal quotation marks and citation

17    omitted).

18    The ultimate question is Congress's intent.  *Wyeth*, 555 U.S. at 565 ("[T]he

19    purpose of Congress is the ultimate touchstone in every pre-emption case.")

20    (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  If there is "a doubt as

21    to congressional purpose," a court "should be slow to find preemption." *Chevron*

22    *U.S.A., Inc. v. Hammond*, 726 F.2d 483, 488 (9th Cir. 1984).

23    **II.   THERE IS NO EXPRESS PREEMPTION:  THE PPIA DOES NOT REGULATE**
      **THE METHOD OF RAISING BIRDS FOR FOIE GRAS PRODUCTION**
24

25    Express preemption provisions must be narrowly construed.  *Cipollone*, 505

26    U.S. at 518 (the presumption against preemption "reinforces the appropriateness of

27    a narrow reading" of the federal act).  "[W]hen the text of an express pre-emption

28    clause is susceptible of more than one plausible reading, courts ordinarily 'accept

Attorney General's Opp. To Plaintiffs' Partial MSJ
Re Federal Preemption (CV-12-05735-SVW-RZ)

1    the reading that disfavors pre-emption.'" *Altria Group, Inc. v. Good*, 555 U.S. 70,

2    77 (2008) (citing *Bates v. Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

3         Here, plaintiffs' motion is based on their argument that section 25982

4    regulates "ingredient requirements," and is expressly preempted by the PPIA's

5    preemption clause.  The relevant excerpt of the preemption clause provides that

6    "[m]arking, labeling, packaging, or ingredient requirements . . . in addition to, or

7    different than, those made under this chapter may not be imposed by any State. . .

8    with respect to articles prepared by any official establishment in accordance with

9    the requirements under this chapter. . .." 21 U.S.C. § 467e.

10        California's section 25982 does not impose ingredient requirements on any

11   poultry products.  And section 25982 does not ban foie gras or foie gras products.

12   Rather, section 25982 bans only sales of products that use a particular method of

13   feeding birds to produce foie gras.

14        Plaintiffs' motion is based on the fundamental fallacy that foie gras obtained

15   from geese or ducks that were not force-fed is a different "ingredient" under the

16   PPIA and its implementing regulations than foie gras obtained from geese or ducks

17   that were force-fed.  It is not.  Foie gras is foie gras, whether produced by force

18   feeding or otherwise.  There is no legal distinction between foie gras obtained from

19   a bird specially fed and fattened by force feeding the bird and one obtained from a

20   bird specially fed and fattened without force feeding.  And plaintiffs have provided

21   no evidence that federal law or the USDA would treat the foie gras obtained from

22   two different feeding methods as different ingredients.

23        Furthermore, plaintiffs identify no evidence that Congress intended the PPIA

24   to govern the methods of raising or feeding poultry for any purpose, much less to

25   produce foie gras.  Therefore, the PPIA does not expressly preempt section 25982.

26   / / /

27   / / /

28   / / /

**A.    The PPIA and Implementing Regulations Impose Marking, Labeling, and Ingredient Requirements, Not Requirements On Animal Feeding or Other Animal Husbandry Practices**

The PPIA regulates the inspection of poultry and poultry products to ensure they are "wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451. "Poultry products," as defined by the PPIA, "means any poultry carcass, or part thereof; or any product which is made wholly or in part from any poultry carcass or part thereof," and is broad enough to include foie gras. *Id.* § 453(f). The PPIA regulates activities at facilities that slaughter poultry and process poultry products, and neither it nor its regulations address or deal with animal feeding methods. *See* 21 U.S.C. § 451 et seq.; 9 C.F.R. § 381.1 et seq. (2014).

The PPIA contains a preemption clause that precludes a state from imposing any additional or different requirements for "official establishments" regarding "[m]arking, labeling, packaging, or ingredient requirements." *Id.* § 467e. This preemption clause must be interpreted narrowly. In *Empacadora*, the Fifth Circuit examined the preemption clause of the Federal Meat Inspection Act ("FMIA"), which is nearly identical to that in the PPIA in relevant respects, and found it is "a narrow inspection and labeling preemption clause."[1] *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d at 334; *see also Cipollone*, 505 U.S. at 545 (The Court "says that express preemption provisions must be given the narrowest possible construction.") (Scalia J., concurring). Like with the PPIA, the title of FMIA reinforces this notion by "refer[ing] specifically to meat inspection, rather than a more comprehensive scheme of meat regulation." *Empacadora*, 476 F.3d at 334. The PPIA preemption clause expressly limits states in their ability to govern poultry inspection and labeling requirements. *See id.* at 333.

_____

[1] Plaintiffs acknowledge that the preemption provisions of the FMIA and PPIA are identical with regard to the ingredient requirement and that the FMIA and PPIA are to be construed consistently. (Plaintiffs' Br. ISO MSJ, at p. 16.)

1    Even a cursory examination of the PPIA and its implementing regulations

2  shows that the ingredient requirements that federal law impose relate to the type

3  and amount of ingredients that constitute poultry products, and how they must be

4  labeled.  For example, the poultry products inspection regulations provide that

5  poultry products labeled as "mostly white meat" must contain 66% or more light

6  meat and 34% or less dark meat.  9 C.F.R. § 381.156.  Poultry products labeled as

7  "boneless turkey breast" must contain no more than 14% skin when raw.  9 C.F.R

8  § 381.168.  In no case do the regulations impose any requirement as to how the

9  birds used to make poultry products are to be raised or fed.

10    As the Fifth Circuit found regarding the FMIA, "[t]his preemption clause

11  expressly limits states in their ability to govern meat inspection and labeling

12  requirements.  It in no way limits states in their ability to regulate what types of

13  meat may be sold for human consumption in the first place."  *Empacadora*, 476

14  F.3d at 333.  Similarly, the preemption clause of the PPIA limits states in their

15  ability to govern poultry inspection and labeling requirements but in no way limits

16  states in their ability to regulate what type of foie gras, whether obtained from birds

17  that were force fed or not, may be sold for human consumption.

18    Rather than rely on federal law, plaintiffs rely on a section of the USDA Food

19  Standards and Labeling Policy Book ("Policy Book") that provides that "Goose

20  liver and duck liver foie gras (fat liver) are obtained exclusively from specially fed

21  and fattened geese and ducks."  This policy book is inadmissible.  (*See* Attorney

22  General's Opposition to Plaintiffs' Request for Judicial Notice in Support of

23  Motion for Summary Judgment on Federal Preemption Claim, filed herewith

24  ("Def's Opp'n to RJN")).  Nonetheless, this exact argument has been rejected by

25  the Ninth Circuit.

26    In appealing this Court's denial of a preliminary injunction in this case,

27  plaintiffs argued to the Ninth Circuit that the PPIA provides a "comprehensive set

28  of detailed regulations that includes standards indicating that 'ducks will be hand-

1    fed to create foie gras.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec*, 729

2    F.3d at 950.  The Ninth Circuit rejected this argument and found that the "[t]he

3    standards to which Plaintiffs refer, however, merely state that 'Goose liver and

4    duck liver foie gras (fat liver) are obtained exclusively from specially fed and

5    fattened geese and ducks.'  It says nothing about the force feeding of geese and

6    ducks." *Id.*

7           The Policy Book, if considered, further illustrates that it is intended to address

8    labeling practices rather than animal feeding practices.  For instance, the Policy

9    Book provides that poultry products labeled as "pate of duck liver" "must contain a

10   minimum of 50 percent duck liver . . . foie gras and may also contain a wrapping or

11   stuffing of the lean or fat of pork, veal, or poultry, pork liver, aspic jelly, extenders,

12   and/or binders." (Exh. A to Plaintiffs' RJN (Dckt. 118-1), at p. 7.)  Like the federal

13   regulations, this document addresses the type and amount of ingredients, and how

14   the poultry product must be labeled, but is silent as to how the birds in poultry

15   products are to be raised or fed to create foie gras.  Plaintiffs' reliance on a 1983

16   USDA letter and a 1984 USDA policy memorandum is similarly unavailing.[2]  As

17   an initial matter, plaintiffs provide no evidence that the USDA continues to give

18   effect to the 1983 letter, particularly in light of the Policy Book, which was

19   published later and addresses the same subject.

20          More significantly, none of these documents are federal law and thus cannot

21   preempt state law.  Nothing short of federal law can preempt state law.  *Fellner v.*

22   *Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 243 (3d Cir. 2008).  While federal

23   regulations and federal agency orders that resulted from quasi-judicial agency

24   proceedings may constitute federal law, agency measures such as letters and

25   opinions that did not undergo formal administrative procedures "tending to foster

26   the fairness and deliberation that should underlie a pronouncement of [the effect of

27   _____

28          [2] The letter and memorandum are also inadmissible.  (Def.'s Opp'n to RJN.)

Attorney General's Opp. To Plaintiffs' Partial MSJ
Re Federal Preemption (CV-12-05735-SVW-RZ)

law]" lack preemptive force. *Id.* at 245 (citing *United States v. Meade Corp.*, 533 U.S. 218, 230 (2001)). Thus, the letter, policy memorandum, and Policy Book lack the force of law and cannot preempt state law.

Even if considered, the 1984 policy memorandum provides the same guideline for foie gras as the Policy Book: "Goose Liver and duck liver foie gras (fat liver) are obtained exclusively from specially-fed and fattened geese and ducks." (Exh. B to Plaintiffs' RJN (Dckt.118-1) at p. 10.) As the Ninth Circuit found, this language "says nothing about the force feeding of ducks." *Ass'n des Eleveurs de Canards et d'Oies du Quebec*, 729 F.3d at 950. Rather, consistent with the PPIA, the federal regulations, and other USDA documents that plaintiffs cite, the policy memorandum addresses labeling foie gras poultry products, rather than how foie gras is produced. For example, it provides that products labeled as "whole duck foie gras" must have duck liver as the only animal tissue present and that "duck foie gras" must be composed of a minimum of 85 percent duck liver foie gras. (Exh. B to Plaintiffs' RJN (Dckt.118-1), at p. 10.) The labeling policy applies to foie gras, whether obtained from force fed birds or non-force fed birds.

Plaintiffs take their mistaken reliance on the USDA letter and policy memorandum one step further. Plaintiffs argue that the 1984 policy memorandum reflects an "agreement" between the United States and French governments that the United States will adopt the same ingredient requirements as the France. (Plaintiffs' Br. ISO MSJ (Dckt. 118) at p. 13.) Plaintiffs then point to a 2006 French law that allegedly requires foie gras to be obtained from ducks or geese fattened by force feeding as evidence that federal law must then contain the same force feeding requirement. (*Id.* at p. 7, n.1.) Plaintiffs, however, cite no authority for their position that a 30-year old agency policy memo could, and did, incorporate into federal law a French law not enacted until some 22-years later, sufficiently to preempt state law regarding animal welfare under the Supremacy Clause. As described above, the agency policy memorandum did not, and cannot, do so.

Plaintiffs' reliance on a 1983 USDA letter that references French regulations for the "composition, denomination, and labeling of imported 'foie gras' products" falls short for the same reason.  (*See* Exh. D to Decl. of Tenenbaum (Dckt. 118-5) at p. 19.)

Plaintiffs provide no evidence that the USDA would treat foie gras obtained from birds specially fed and fattened by force feeding differently than those obtained from birds specially fed and fattened without force feeding, and provide no evidence of any legal difference between foie gras obtained by different production methods.  *See Wyeth*, 555 U.S. at 571-72 (finding no preemption in part because drug company offered no evidence that the FDA would have rejected a change to a drug label).

Plaintiffs rely heavily on *National Broiler Counsel v. Voss and Armour and Co. v. Ball* for the proposition that section 25982 is preempted because it contains different or additional requirements for sale of foie gras products than the USDA purportedly proscribes.  Those cases, however, are not applicable here as they address state laws that regulated labeling or ingredient requirements.  In fact, these cases illustrate that the PPIA's labeling and ingredient requirements regulate the type and amount of ingredients in a product and how products are to be labeled, and not how animals are to be raised.  In *Armour and Co. v. Ball*, a Michigan law prohibited the sale of sausages with protein content less than 12% and also provided that "grade 1" sausages must consist only of skeletal muscles of cattle, swine, or sheep.  468 F.2d 76, 81 (6th Cir. 1972).  Federal law, however, provided a lower percentage requirement for the protein content of sausages, and permitted sausages to contain goat meat and non-skeletal meat.  *Id.* at 81-82.  The Sixth Circuit thus found that the Michigan law was preempted by federal law because it prescribed standards that were "in addition to, or different than," those made under the regulations pertaining to sausage ingredients.  *Id.* at 84.

/ / /

1    In *National Broiler Counsel v. Voss*, the Ninth Circuit examined a state law

2    that prohibited wholesalers from *labeling* poultry and poultry products stored at or

3    above 26 degrees as "fresh." 44 F.3d 740, 742-43 (9th Cir. 1994). The Ninth

4    Circuit found that the state law was preempted by the PPIA because it imposed a

5    labeling requirement in addition to and different than federal poultry labeling

6    requirements. *Id.* at 745-46.

7    These, and other cases that plaintiffs cite, are distinguishable as they relate to

8    state laws that regulate marking, labeling, or ingredient requirements. *See, e.g.*,

9    *Northwestern Selecta, Inc. v. Munoz*, 106 F. Supp. 2d 223, 230 (D. P.R. 2000)

10   (finding that Puerto Rico's requirement that a bird's inspection date appear on

11   certificates of inspection is preempted by the PPIA's *marking* requirement, which

12   regulations set forth marking requirements on inspection certification in

13   "excruciating detail"); *Barnes v. Campbell Soup Co.*, 2013 WL 5530017, at *5

14   (N.D. Cal. July 25, 2013) (preemption found where the USDA had approved

15   defendant's *label* under the PPIA). None of the cases plaintiffs rely upon address a

16   state law that governs the sale of a product based on its method of production.

17   **B.    California Law Imposes No Requirement "In Addition to, or
          Different than" the PPIA or Its Implementing Regulations And
18        Is Directed Towards Activities Removed From Slaughterhouses
          or Processing Facilities**
19

20   In contrast to the PPIA, California's section 25982 is silent as to any and all

21   marking, labeling, or ingredient requirements such as how foie gras products should

22   be labeled or how much goose or duck liver foie gras products may contain.

23   Instead, section 25982 bans only the sales of foie gras in California produced by a

24   particular feeding method involving animal cruelty. (*See* Exh. A of Decl. of

25   Tenenbaum (Dckt. 118-5) at p. 6 ("The bill's intent is to ban the current foie gras

26   production practice of forcing a tube down a bird's throat to greatly increase the

27   consumption of grain by the bird. It does not ban the food product, foie gras.")

28   (Schwarzenegger Signing Message)).

Plaintiffs' reliance on *Del Real, LLC v. Harris*, is unavailing.  In *Del Real*, a district court held that a California law regulating container packaging "slack fill" was preempted by the FMIA and PPIA, which prohibit meat and poultry, respectively, from being sold in packages "filled [so] as to be misleading."[3]  *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1056-57, 1064 (E.D. Cal. 2013).  The court found that the California law's slack fill provisions are requirements "in addition to or different than" those set forth in the FMIA and PPIA.  *Id.* at 1064.  Here, the PPIA imposes no requirements on animal feeding practices, and section 25982 regulates nothing regulated by the PPIA.

Additionally, section 25982 is not directed towards any activity that occurs at an official establishment (i.e., slaughterhouse or processing facilities) that is regulated by the PPIA.  The PPIA preemption clause expressly provides that states may not impose ingredient requirements "in addition to, or different than," those provided by the PPIA "*with respect to articles prepared at any official establishment.*"  21 U.S.C. § 467e (emphasis added).

Federal courts have found that states may ban entire categories of meat products if the ban affects the animals prior to their entering the slaughterhouse.  In *Empacadora*, a Texas law prohibited the processing, sale, or transfer of horsemeat for human consumption.  *Empacadora*, 476 F.3d at 329.  Slaughterhouses sued and argued that the FMIA, which expressly applied to horsemeat, preempted Texas' prohibition.  The Fifth Circuit found that the Texas law was not preempted by the FMIA, which "expressly limits states in their ability to govern meat inspection and labeling requirements" but "in no way limits states in their ability to regulate what types of meat may be sold for human consumption in the first place."  476 F.3d at 333.  The Seventh Circuit in *Cavel International, Inc. v. Madigan* similarly held that an Illinois law banning the slaughter of horses for human consumption was not

---

[3] Though the facts of *Del Real* are distinguishable from the instant case, Defendant does not agree with its holding and is presently appealing that decision.

preempted by the FMIA, even though the FMIA would apply to horsemeat, if it were produced.  500 F.3d 551, 553 (7th Cir. 2007).  The Supreme Court recently distinguished these cases on the basis that a ban on butchering horses for human consumption acts at a location that is removed from the sites and activities that the FMIA most directly governs.  *National Meat Ass'n v. Harris*, 132 S. Ct. 965, 974 (2012) (finding that the FMIA regulates a broad range of activities at slaughterhouses and invalidating a state law that regulated how a slaughterhouse must handle nonambulatory pigs).  Similarly, the PPIA regulates activities at official establishments while section 25982 regulates feeding activities that occur prior to birds entering the official establishments.  Thus, the PPIA does not preempt section 25982.

The PPIA addresses ingredient requirements, specifically the type and amount of ingredients and how they must be labeled, while section 25982 addresses only sales of foie gras produced by a specific feeding method that takes place at a location removed from plaintiffs' slaughterhouses and processing facilities.  The PPIA does not expressly preempt section 25982.

## III. THERE IS NO FIELD PREEMPTION:  CONGRESS DID NOT INTEND THE PPIA TO PREEMPT THE FIELD OF FOIE GRAS PRODUCTION METHODS

The PPIA creates no scheme of federal regulation in the field of foie gras production methods "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."  *Rice*, 332 U.S. at 230.  The PPIA regulates activities at slaughterhouses and processing facilities, just as the FMIA regulates activities at slaughterhouses.  *See National Meat Ass'n*, 132 S. Ct. at 968 ("The FMIA regulates a broad range of activities at slaughterhouses . . .").  The PPIA specifically indicates that it did not intend to preempt the field of poultry commerce entirely.  *See also Empacadora*, 476 F.3d at 334 ("The FMIA specially indicates that it did not intend to preempt the field of meat commerce entirely").  Field preemption does not apply here.

Attorney General's Opp. To Plaintiffs' Partial MSJ
Re Federal Preemption (CV-12-05735-SVW-RZ)

1    Plaintiffs argue that the PPIA seeks to achieve national uniformity in the fields

2    of poultry standards and ingredients.  The field of poultry product ingredients,

3    which the PPIA occupies, however, is distinct from the field of foie gras production

4    methods, which the PPIA does not address, much less occupy.  Regarding poultry

5    product ingredients, Congress ordained "uniform national ingredient requirements."

6    *See Armour & Co.*, 468 F.2d at 84.  Regarding foie gras production methods,

7    Congress is silent.

8    However comprehensive the PPIA and federal regulations are regarding the

9    ingredient requirements for poultry products, they do not displace California's

10   control over the sale in California of foie gras obtained by certain production

11   methods.  "Congressional regulation at one end of the stream of commerce does

12   not, ipso facto, oust all state regulations at the other end." *See Florida Lime &*

13   *Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 145 (1963) (federal regulations

14   providing the minimum standards of picking, processing, and transporting

15   agricultural commodities, however comprehensive, do not displace state control

16   over distribution and retail of those commodities).

17   Plaintiffs' reliance on *Campbell v. Hussey* is misplaced.  In *Campbell v.*

18   *Hussey*, a state law provided a definition and a method of identification for "Type

19   14 tobacco" that did not conflict with the Federal Tobacco Inspection Act.  368

20   U.S. 297, 300-01 (1961).  The court nonetheless found that Congress, in creating

21   "uniform standards" for tobacco in terms type, grade, size, condition, and other

22   characteristics, preempted that field and excluded even complementary state law.

23   *Id.* at 301.  Thus, in *Campbell*, unlike here, the state law occupied the same fields as

24   the federal law.

25   The express language of the PPIA further refutes Plaintiffs' assertion that field

26   preemption applies outside the context of marking, labeling, or ingredient

27   requirements.  The PPIA preemption clause contains a savings clause, which

28   provides that the preemption clause "shall not preclude any State . . . from making

1   requirement or taking other action, consistent with this chapter, with respect to any

2   other matters regulated under this chapter."  21 U.S.C. § 467e.  This savings clause

3   expressly disclaims any Congressional intent to occupy the field beyond the

4   marking, labeling, or ingredient requirements.  *See Empacadora*, 476 F.3d at 334

5   (finding that the FMIA "specifically indicates that it did not intend to preempt the

6   field of meat commerce entirely" by way of a savings clause identical to the one in

7   the PPIA).

8   **IV.  THERE IS NO OBSTACLE PREEMPTION:  CALIFORNIA'S FORCE FEEDING**

9         **BAN DOES NOT FRUSTRATE THE OBJECTIVES OF THE PPIA**

10       Obstacle preemption applies where the state law "stands as an obstacle to the

11   accomplishment and execution of the full purposes and objectives of Congress."

12   *Pacific Gas & Elec. Co.*, 461 U.S. at 204 (internal quotation marks and citation

13   omitted).  Here, California's section 25982 does not stand as an obstacle to

14   Congress's objectives in enacting the PPIA, which are to "provide for the

15   inspection of poultry and poultry products and otherwise regulate the processing

16   and distribution of such articles" to prevent the movement or sale of adulterated or

17   misbranded poultry products.  21 U.S.C. § 452 (Congressional Declaration of

18   Policy).

19       As addressed in more detail above, section 25982 bans the sale in California of

20   foie gras produced by force feeding a bird to enlarge its liver beyond normal size.

21   It acts away from official establishments in which activity the PPIA most directly

22   governs.  It imposes no marking, labeling, or ingredient requirements.  And it does

23   not affect Congress's objective in preventing the movement or sale of adulterated or

24   misbranded poultry products.  Rather, it addresses an animal cruelty issue, which

25   the PPIA does not address.

26   / / /

27   / / /

28   / / /

Attorney General's Opp. To Plaintiffs' Partial MSJ
Re Federal Preemption (CV-12-05735-SVW-RZ)

1      *Zogenix, Inc. v. Patrick*, which plaintiffs rely upon heavily, is inapposite.[4]  In

2  *Zogenix*, the Massachusetts district court held that a state executive order that

3  prohibited the prescribing and dispensing of the FDA-approved drug Zohydro ER

4  was preempted because the state had interposed its own conclusions about the

5  drug's safety and effectiveness with those of the federal Food and Drug

6  Administration, which was charged by Congress to ensure the safety and efficacy of

7  drugs.  *Zogenix, Inc. v. Patrick*, 2014 WL 1454696, at *2 (D. Mass. Apr. 15, 2014).

8  The court found that the state order had obstructed the administrative of federal law

9  by the FDA.  Here, section 25982 does not stand in the way of Congress' objectives

10  in the PPIA and does not obstruct the USDA in its enforcement of ingredient

11  requirements.  Obstacle preemption does not apply.

<b>CONCLUSION</b>

12

13      Defendant respectfully requests that the Court deny Plaintiffs' motion for

14  partial summary judgment on their federal preemption claim.

15

16

17

18  Dated:  June 12, 2014            Respectfully submitted,

19                                 KAMALA D. HARRIS
                               Attorney General of California

20                                 CONSTANCE L. LELOUIS
                               Supervising Deputy Attorney General

21                                 PETER H. CHANG
                               Deputy Attorney General

22                                 /s/ STEPHANIE F. ZOOK

23                                 STEPHANIE F. ZOOK

24                                 Deputy Attorney General
                               *Attorneys for Defendant*

25  SA2012106936
    11377230.doc

26

27          [4] Plaintiffs also cite *People v. Southern Pac. Co.*, 208 Cal. App. 2d 745 (Cal.

28  Ct. App. 1962).  Obstacle preemption, however, was not at issue in that case.