Michael Tenenbaum, Esq. (No. 186850)
*mt@post.harvard.edu*
THE TENENBAUM LAW FIRM
1431 Ocean Ave., Ste. 400
Santa Monica, CA 90401
Tel     (310) 919-3194
Fax     (310) 919-3727

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and HOT'S RESTAURANT GROUP, INC., a California corporation; | Case No. 2:12-cv-05735-SVW-RZ |
| | **PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| Plaintiffs, | |
| – against – | |
| KAMALA D. HARRIS, in her official capacity as Attorney General of California; | Date:        July 14, 2014<br>Time:        1:30 p.m.<br>Courtroom:  6 |
| Defendant. | Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

PREFATORY NOTE RE PETITION FOR CERTIORARI ...................................... 1

THE AS-APPLIED NATURE OF THE COMPLAINT ...................................... 2

THE RELEVANT PROCEDURAL HISTORY .................................................. 4

ARGUMENT ............................................................................................................. 5

I.     Plaintiffs' Claims are Justiciable Because, As This Court Previously
       Found, the Economic Effects of § 25982 Create an Actual Case or
       Controversy ........................................................................................................ 5

II.    Each of Plaintiffs' Causes of Action Sufficiently States a Claim Upon
       Which Relief Can Be Granted ...................................................................... 7

       A.     The Legal Standard on a Motion to Dismiss Requires Only That
              The Complaint State Claims that Are Plausible on Their Face ............. 7

       B.     In the Interest of Streamlining the Resolution of Their Other
              Claims, Plaintiffs Have Stipulated to Dismiss Their First Cause of
              Action ....................................................................................................... 8

       C.     Plaintiffs Have Sufficiently Alleged a Claim for Declaratory and
              Injunctive Relief that § 25982 Does Not Apply to Products That
              are Sold Out-of-State and Shipped to Persons in California .................. 8

       D.     Plaintiffs Have Sufficiently Alleged a Claim for Declaratory and
              Injunctive Relief that § 25982 Is Preempted by the Federal Poultry
              Products Inspection Act .......................................................................... 9

       E.     Plaintiffs Have Sufficiently Alleged a Claim for Declaratory and
              Injunctive Relief that § 25982 Has the Practical Effect of
              Regulating Commerce Occurring Wholly Outside California's
              Borders and Is Thus Invalid under the Commerce Clause .................. 13

       F.     Plaintiffs Have Sufficiently Alleged a Claim for Declaratory and
              Injunctive Relief that § 25982 Imposes a Substantial Burden on
              Commerce Which Outweighs Any Purported Local Interest and
              Thus, Because It Fails Pike Balancing, Is Invalid under the
              Commerce Clause .................................................................................. 18

              1.     As Plaintiffs Allege, § 25982 Imposes a Substantial Burden
                     on Commerce ................................................................................ 18

2.  As Plaintiffs Allege, California Has No "Legitimate Local Interest" in How Farmers in Other States and Countries Feed Their Livestock ................................................................. 20

G.  Plaintiffs Have Sufficiently Alleged a Claim that § 25982 Violates the Due Process Clause, But They Wish to Preserve This Argument for Any Individual Prosecution and Have Thus Stipulated to Dismiss this Claim ........................................................................... 24

H.  If the Court Were Inclined to Grant Defendant's Motion as to Any Cause of Action, It Should Only Do So With Leave to Amend ........... 25

CONCLUSION ........................................................................................... 25

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page**

*Armour and Company v. Ball,*
    468 F.2d 76 (6th Cir. 1972)...........................................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................7

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
    729 F.3d 937 (9th Cir. 2013)............................................... *passim*

*Baldwin v. G.A.F. Seelig, Inc.,*
    294 U.S. 511 (1935)...........................................................15, 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................7

*BMW of N. Am., Inc. v. Gore,*
    517 U.S. 559 (1996)..............................................................16

*Conservation Force, Inc. v. Manning,*
    301 F.3d 985 (9th Cir.2002).................................................23

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000).............................................................17

*Daniel v. County of Santa Barbara,*
    288 F.3d 375 (9th Cir. 2002)..................................................7

*Del Real, LLC v. Harris,*
    966 F.Supp.2d 1047 (E.D. Cal. 2013)...................................11

*DeSoto v. Yellow Freight Sys., Inc.,*
    957 F.2d 655 (9th Cir. 1992).................................................25

*Edgar v. MITE Corp.,*
    9 457 U.S. 624 (1982)................................................................

*Empacadora de Carnes de Fresnillo v. Curry,*
    476 F.3d 326 (5th Cir. 2007).................................................22

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

*Ex parte Young*,
    209 U.S. 123 (1908)........................................................................6

*Florida Lime & Avocado Growers, Inc. v. Paul*,
    373 U.S. 132 (1963)..............................................................20, 23

*Foman v. Davis*,
    371 U.S. 178 (1962)......................................................................25

*Healy v. Beer Institute, Inc.*,
    491 U.S. 324 (1989)......................................................................13

*H.P. Hood & Sons, Inc. v. Du Mond*,
    336 U.S. 525 (1949)......................................................................17

*Illinois Restaurant Ass'n v. City of Chicago*,
    492 F.Supp.2d 891 (N.D. Ill. 2007) ...........................................16

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)......................................................7

*Mack v. South Bay Beer Distributors*,
    798 F.2d 1279 (9th Cir. 1986)......................................................8

*Mississippi Poultry Ass'n, Inc. v. Madigan*,
    31 F.3d 293 (11th Cir. 1994).........................................13, 19, 22

*Missouri v. Harris*,
    No. 2:14-cv-341 (E.D. Cal. *filed* Feb. 3, 2014) ..........................15

*Mullis v. United States Bankruptcy Ct.*,
    828 F.2d 1385 (9th Cir. 1987)......................................................7

*Mutual Pharm. Co., Inc. v. Bartlett*,
    133 S. Ct. 2466 (2013) ................................................................17

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012)..............................................18, 19

*Nat'l Audubon Society, Inc. v. Davis*,
    307 F.3d 835 (9th Cir. 2002)........................................................6

*Nat'l Broiler Council v. Voss*,
    44 F.3d 740 (9th Cir. 1994).................................................

- iv -

*Nat'l Foreign Trade Council v. Natsios,*
  181 F.3d 38 (1st Cir. 1999) ...................................................................17

*Nat'l Meat Ass'n v. Harris,*
  132 S.Ct. 965 (2012) ............................................................................12

*National Org. for Women, Inc. v. Scheidler,*
  510 U.S. 249 (1994)................................................................................7

*Pharmaceutical Research & Manufacturers of America v. Walsh,*
  538 U.S. 644 (2003)..............................................................................13

*Pike v. Bruce Church, Inc.,*
  397 U.S. 132 (1970)..............................................................18, 20, 23

*Rocky Mountain Farmers Union v. Corey,*
  740 F.3d 507 (9th Cir. 2014)...........................................................5, 15

*Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.,*
  890 F.2d 184 (9th Cir. 1993)..................................................................6

*Schollenberger v. Com. of Pa.,*
  171 U.S. 1 (1898)..................................................................................20

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
  806 F.2d 1393 (9th Cir. 1986)..............................................................25

*Skilstaf, Inc. v. CVS Caremark Corp.,*
  669 F.3d 1005 (9th Cir. 2012)................................................................8

*Sullivan v. Oracle Corp.,*
  51 Cal.4th 1191 (Cal. 2011)...................................................................3

*Ting v. AT&T,*
  319 F.3d 1126 (9th Cir. 2003)..............................................................11

*United States v. Locke,*
  529 U.S. 89 (2000)................................................................................11

*Valley Bank of Nev. v. Plus Sys., Inc.,*
  914 F.2d 1186 (9th Cir. 1990)..............................................................16

*Zogenix, Inc. v. Patrick,*
  2014 WL 1454696 (D. Mass. Apr. 15, 2014) ......................................11

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

**Statutes, Regulations, and Rules**

### Federal

21 U.S.C. § 451 ...................................................................................12, 19

21 U.S.C. § 453 ...........................................................................................10

21 U.S.C. § 467e .....................................................................................9, 11

9 C.F.R. § 381.1 ..........................................................................................10

Fed. R. Civ. P. 8 .........................................................................................25

### State

Cal. Comm'l Code § 2106 .............................................................................9

Cal. Comm'l Code § 2401 .............................................................................9

Cal. Health & Safety Code § 25981 ........................................................3, 21

Cal. Health & Safety Code § 25982 ....................................................... *passim*

Cal. Health & Safety Code § 11379 ..............................................................8

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

Plaintiffs Association des Éleveurs de Canards et d'Oies du Québec (the "Canadian Farmers"), HVFG LLC ("Hudson Valley"), and Hot's Restaurant Group, Inc. ("Hot's Kitchen"), submit this brief in opposition to the motion of Defendant Kamala D. Harris to dismiss Plaintiffs' Second Amended Complaint (the "complaint"). Defendant's motion should be denied because this Court has already recognized that Plaintiffs' claims are justiciable and because the complaint's well-pleaded allegations concerning the intent, operation, and effects of Section 25982 of the California Health and Safety Code are more than sufficient to state claims upon which relief may be granted. Plaintiffs' claims must be resolved through summary judgment or trial. (Plaintiffs have filed a dispositive motion for partial summary judgment on their preemption claim, which motion is set to be heard on July 14, 2014.)

## PREFATORY NOTE RE PETITION FOR CERTIORARI

Plaintiffs wish to call the Court's attention to a procedural development that, for prudential reasons, makes it advisable to delay ruling on Defendant's motion to dismiss for approximately 90 days.  On April 28, 2014, Plaintiffs filed a petition for certiorari in the U.S. Supreme Court on the following issue:

> Whether the Commerce Clause allows California to impose a complete ban on the sale of wholesome, USDA-approved poultry products from other States and countries — in this case, *foie gras* — based solely on the agricultural methods used by out-of-state farmers who raise their animals entirely beyond California's borders.

(Request for Judicial Notice [RJN] Ex. A.)

Just days ago, on May 30, 2014, no less than *thirteen States* filed an amicus brief in support of the petition, in which they explain why § 25982 is unconstitutional as applied to the products of farmers in other States and further outline the detrimental consequences to free trade in agricultural and other products among the States if the high court does not grant review of the Ninth Circuit's opinion and invalidate § 25982. (RJN Ex. B [States' amicus brief].)  In addition to these thirteen States, a Canadian trade organization representing the annual production of more than $20 billion in food products from Quebec — over half of which are exported to the U.S. — also filed an

1    amicus brief explaining that the application of § 25982 to wholesome, USDA-certified

2    agricultural products from Canada violates the Commerce Clause as to foreign

3    commerce.  (RJN Ex. C [CTAC amicus brief].)

4         Defendant's response to the petition was originally due by May 30, 2014, which

5    would have enabled the petition to be considered at one of the Supreme Court's

6    conferences this month.  (RJN Ex. A [docket].)  When the *Amici* States notified

7    Defendant that they intended to submit an amicus brief, Defendant obtained a 30-day

8    extension from the Supreme Court to file a response to Plaintiff's cert petition.  (*Id.*)

9    Accordingly, the petition will ordinarily be considered at the Supreme Court's end-of-

10   summer conference on September 29, 2014, with an order thereon expected the

11   following Monday, October 6, 2014.  (*See* SCOTUSblog "Petitions We're Watching,"

12   http://www.scotusblog.com/ case-files/petitions-were-watching/.)

13        That thirteen States in the U.S., as well as entire food industries in Canada, have

14   urged the Supreme Court to grant cert and overturn the Ninth Circuit in this case

15   demonstrates that Plaintiffs have raised serious questions under the Commerce Clause

16   about the constitutionality of § 25982 as applied to the wholesome, USDA-approved

17   poultry products from out-of-state farmers.  In light of these developments, Plaintiffs

18   believe this Court should defer ruling on Defendant's motion until after October 6, 2014.

19                **THE AS-APPLIED NATURE OF THE COMPLAINT**

20        Defendant's moving papers made no effort to summarize the relevant allegations

21   of the complaint, though doing so would have made clear that Plaintiffs have amply

22   alleged valid claims for declaratory and injunctive relief.  The Canadian Farmers and

23   Hudson Valley sold foie gras products for years in California prior to July 1, 2012,

24   when § 25982 took effect.  (SAC ¶¶ 33-37.)  Since then, Plaintiffs have suffered

25   millions of dollars in lost sales because California sellers of such products — e.g., the

26   farmer Plaintiffs' distributor and restaurant customers — face the threat of prosecution

27   and crippling penalties based solely on how much food the ducks were fed, or by what

28   method, in New York and Canada.  (SAC ¶¶ 59-63, 86-88.)  Without alleging every

fact known to Plaintiffs concerning either the legislative history or the operative effect of the statute, the complaint outlines the ways in which — as applied to Plaintiffs' wholesome, USDA-certified products from ducks fed entirely outside California — § 25982 is preempted by the federal Poultry Products Inspection Act and impermissibly burdens interstate and foreign commerce under the Dormant Commerce Clause.

The complaint includes key allegations as to how § 25982 operates *as applied* to the out-of-state farmer Plaintiffs and to the sale in California of products from ducks raised entirely in other States and countries. To understand how the application of § 25982 to Plaintiffs and their products is unconstitutional, it is critical for the Court to recognize what Plaintiffs are *not* challenging about § 25981 and § 25982. California has every right to prevent what it perceives to be cruel treatment of the animals within its borders. Plaintiffs therefore do not challenge the constitutionality of the ban on force feeding in § 25981 (though there is nothing "cruel" about that practice, as California's own Department of Food and Agriculture has attested [RJN Ex. D ("Production of Foi[e] Gras in California does not involve cruelty at any time.")]).

In the same vein, Plaintiffs do not challenge *every* application of § 25982's ban on the sale of products that are the result of force feeding. (Plaintiffs note that Defendant herself has insisted since the outset of this case, § 25982 "merely reinforces the *in-state* production ban by removing the incentive for *in-state* producers to force feed birds in contravention of the ban," thus ensuring that "*[i]n-state* producers are doubly barred from producing and selling." (Dckt. 57 at ECF p. 20, lns. 9-11; 9th Cir. Dckt. 16-1 at ECF p. 47.)) Rather, the *only* application of § 25982 that Plaintiffs challenge as unconstitutional is its ban on the sale of poultry products in California where the force feeding has taken place entirely outside California.[1]

---

[1]     The Court may note that Plaintiffs are filing this opposition four days later than stipulated under the parties' expanded briefing schedule. Plaintiffs apologize to the Court (and have apologized to Defendant) for the brief delay. As set forth below, Plaintiffs have used the additional time to streamline this litigation by, *inter alia*, stipulating, with Defendant's cooperation, to dismiss two of the six causes of action

- 3 -

## THE RELEVANT PROCEDURAL HISTORY

Plaintiffs filed this action on July 2, 2012, i.e., the first court day on which § 25982 was in effect.  Plaintiffs sought a temporary restraining order and preliminary injunction to enjoin the enforcement of § 25982 against the sale of products from the farmer Plaintiffs' moulard ducks, which they raise entirely outside California.  The Court found that "Plaintiffs are likely to suffer irreparable harm if a preliminary injunction is not granted" because they are suffering substantial lost sales for which they can never recover damages against the sovereign Defendants.  (Dckt. 87 at p. 7.) The Court nevertheless denied Plaintiffs' request for provisional injunctive relief based on its conclusion that, on the (limited) record before it, Plaintiffs had not raised serious questions going to the merits.[2]

Plaintiffs appealed the denial of the preliminary injunction, and proceedings in this Court were ordered stayed pending resolution of Plaintiffs' appeal to the Ninth Circuit.  (Dckt. 95.)  A panel of the Ninth Circuit affirmed the denial of the preliminary injunction.  (Dckt. 104.)  After holding Plaintiffs' petition for rehearing en banc until it issued its denial of another petition for hearing en banc in a case raising the issue of extraterritorial regulation — a case in which seven judges on the Ninth Circuit issued a lengthy dissent explaining, "Now, the dormant Commerce Clause has been rendered toothless in our circuit, and we stand in open defiance of controlling Supreme Court precedent" — the Ninth Circuit denied Plaintiffs' petition.  (Dckt. 103; *see Rocky Mountain Farmers Union v. Corey*, 740 F.3d 507, 519 (9th Cir. 2014).

---

without prejudice.  Plaintiffs take full responsibility for this short delay, which they trust will be more than offset by the savings in time and resources as a result of the elimination of those claims from this action.

[2]     Shortly after filing their preliminary injunction motion, Plaintiffs filed a First Amended Complaint that included a cause of action for federal preemption, but Plaintiffs did not base that motion on preemption grounds, so this Court has not yet ruled on that issue.  (Dckt. 87 at p. 16, n.3; *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 950 n.8 (9th Cir. 2013).

ARGUMENT

I.    **Plaintiffs' Claims are Justiciable Because, As This Court Previously Found, the Economic Effects of § 25982 Create an Actual Case or Controversy.**

Defendant moves to dismiss Plaintiffs' entire complaint under FRCP 12(b)(1) based on her claim that "Plaintiffs' claims are not justiciable" in that the complaint "does not satisfy the 'case or controversy' requirement of Article III."  (Motion at ECF p. 15, lns. 12-13 & ECF p. 16, lns. 24-25.)  Yet, as this Court has previously explained, this case presents an actual case or controversy that is ripe for adjudication.  Plaintiffs challenge the constitutionality of § 25982 as applied to their USDA-approved products from ducks raised entirely outside the state because the California statute continues to cost Plaintiffs millions in lost sales.  (SAC ¶¶ 6, 66, 152.)  If the Court resolves this action in Plaintiffs' favor, their products may once again be sold in California without being subject to prosecution, thus ending an unconstitutional legislative boycott that has now been in effect for some two years.  This is (and has always been) a live dispute.

There is no doubt that Plaintiffs' claims are justiciable.  The gist of Defendant's argument is her coy claim that she has not already filed charges against Plaintiffs for violating § 25982.  As she again attempts to do today, Defendant tried to argue back in the summer of 2012 (in opposition both to Plaintiffs' application for a TRO and Plaintiffs' motion for a preliminary injunction) that Plaintiffs' claims were not yet ripe.  (*E.g.*, Dckt. 57 at ECF p. 13.)  But this Court recognized the fallacy in her position:

| | |
|---|---|
| The Court: | How do those thoughts come together, and why isn't there imminent threat of enforcement?  I mean, is the presumption that California passes statutes which require enforcement, and the presumption is that they won't be enforced?  Do you know something I don't know, that this statute is just sort of embroidery, and no one is going to bother to enforce it? |
| Ms. Zook: | Two responses to that. The first one is that — our point is that with respect to their claims, no, we don't think they're ripe at this point because there hasn't been a threat of enforcement, but their position — |
| The Court: | I don't understand that at all.  Can you — if a statute is on the books, your view of the law of injunctions is that unless the enforcer comes to your door and threatens you or takes other action, there's no threat of enforcement? |

- 5 -

…
Are you debating that the statute is not designed to deal with foie gras growers?

Ms. Zook:    No.

(Dckt. 71-1 [Transcript] at ECF p. 3, ln. 20 – ECF p. 5, ln. 13.)  *See Ex parte Young*, 209 U.S. 123, 165 (1908) ("To await proceedings against the company in a state court, grounded upon a disobedience of the act, and then, if necessary, obtain a review in this court … would place the company in peril of large loss … if it should be finally determined that the act was valid."); *Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 187 (9th Cir. 1993) (rejecting claim of "no case or controversy" where PUC rule had not yet been enforced because rule compelled plaintiff to conform business to allegedly unconstitutional standard).[3]

This Court has already recognized that Defendant's justiciability argument "lacks merit."  (*See* Dckt. 87 at ECF pp. 10-11.)  Quoting the Ninth Circuit in *National Audubon Society, Inc. v. Davis*, 307 F.3d 835, 836 (9th Cir. 2002) — on "almost identical" facts — this Court observed that the trappers' claim in that case was ripe because the "*gravamen of the suit is economic injury rather than threatened prosecution.*" (*Id.*)  Moreover, the "prudential" requirements of Article III — fitness for judicial resolution and the hardship suffered by the trappers — were satisfied because the trappers' economic injury would continue "[f]or so long as they refrained from trapping. *Id.* at 857.  As this Court concluded, "Plaintiffs are in exactly the same situation that the trappers in *Davis* were.  Each day, they are losing sales because of Section 25982.  Moreover, this is not a case in which specific facts from an enforcement action would aid resolution.  Thus, Plaintiffs' claims are ripe and this Court properly has jurisdiction." (Dckt. 87 at ECF p. 11.)  Accordingly, Defendant's motion to dismiss under FRCP 12(b)(1) must be denied.

---

[3]    Plaintiffs have specifically alleged that their products "now face prosecution by Defendant Harris." (SAC ¶¶ 4, 91, 97, 106.)

## II. Each of Plaintiffs' Causes of Action Sufficiently States a Claim Upon Which Relief Can Be Granted.

The substantive allegations in Plaintiffs' complaint more than sufficiently state claims upon which the declaratory and injunctive relief Plaintiffs seek can, and should, be granted. Defendant's motion under FRCP 12(b)(6) must be denied.

### A. The Legal Standard on a Motion to Dismiss Requires Only That The Complaint State Claims that Are Plausible on Their Face.

The Court is certainly familiar with the well-known legal standard on this motion, which requires that it view the complaint in the light most favorable to Plaintiffs and resolve all doubts in their favor. More specifically, on a motion to dismiss under FRCP 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all allegations of material fact as true — and construe the allegations in the light most favorable to the plaintiff. *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002).

While a court need not accept a pleader's legal conclusions as true, the court must "draw all reasonable inferences in favor of the plaintiff." *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005). The court will "presume that general allegations embrace those specific facts that are necessary to support the claim." *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994). Here, Plaintiffs' complaint presents an as-applied challenge, which makes it highly fact-dependent and much less suitable to resolution on a FRCP 12(b)(6) motion than on a motion for summary judgment.

The court may also consider facts which may be judicially noticed, *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987), as well as matters of public record, including pleadings, orders, and other papers filed with the court, *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986); *see also Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1024 n.9 (9th Cir. 2012) (citation and quotation omitted) (noting that "court may take judicial notice of matters

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  of public record without converting a motion to dismiss into a motion for summary

2  judgment, as long as the facts noticed are not subject to reasonable dispute").

### B. In the Interest of Streamlining the Resolution of Their Other Claims, Plaintiffs Have Stipulated to Dismiss Their First Cause of Action.

Plaintiffs' complaint includes a first cause of action for declaratory relief concerning the intended application of § 25982 to foie gras products from ducks that were fed entirely outside the State of California.  At the preliminary injunction stage, the Ninth Circuit declined to construe § 25982 "by restricting the statute to 'sales of products from ducks that have been force fed in California.'"  *Ass'n des Eleveurs*, 729 F.3d at 953.[4]  In the interest of conserving judicial resources and streamlining the resolution of their other claims, Plaintiffs have stipulated with Defendant that the complaint be deemed amended to dismiss this cause of action without prejudice.  (Dckt. 128.)

### C. Plaintiffs Have Sufficiently Alleged a Claim for Declaratory and Injunctive Relief that § 25982 Does Not Apply to Products That are Sold Out-of-State and Shipped to Persons in California.

Plaintiffs' second cause of action seeks a declaration that § 25982 does not apply to a sale consummated entirely out-of-state where the product is ultimately shipped to an address in California.  As alleged, § 25982 only prohibits a product from being "sold *in* California" — unlike countless other provisions of California statutes that go further in prohibiting products from being "imported" or even "offered for sale" or "contracted for sale" in this State.  (SAC ¶¶ 4, 103-107.)  *Cf., e.g.,* Cal. Health & Safety Code § 11379 (punishing "every person who transports, imports into this state, sells, furnishes, administers, or gives away" controlled substances).  It does not prohibit sales that take place outside the State merely because a product is shipped to someone in California.  (SAC ¶¶ 106.)  *See also* Cal. Comm'l Code § 2106(1) ("A 'sale' consists

_____

[4]     The Ninth Circuit opined:  "Section 25982 applies to both California entities and out-of-state entities and precludes sales within California of products produced by force feeding birds regardless of where the force feeding occurred.  Otherwise, California entities could obtain foie gras produced out-of-state and sell it in California."  *Ass'n des Eleveurs*, 729 F.3d at 949.

in the passing of title from the seller to the buyer for a price (Section 2401).") and § 2401(2)(a) ("If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and *place of shipment*.").

Defendant's *sole* argument in seeking to dismiss this claim is that, according to her, "there is no live controversy between the Attorney General and Plaintiffs" over the application of § 25982 to such imports. Yet the complaint squarely alleges not only that prosecutors are threatening Plaintiffs for "selling foie gras products from outside California to consumers in California" (SAC ¶ 89) but also that "*Defendant Harris* and the District Attorneys she is supervising contend that section 25982 applies to imports of foie gras products" and that "sellers of the Plaintiff farmers' foie gras products outside California *now face prosecution by Defendant Harris* and the District Attorneys under section 25982 when consumers in California import the Plaintiff farmers' foie gras products from outside California despite the fact that title passes and the commercial sale of these products takes place and title passes entirely outside California" (SAC ¶¶ 105, 106). For the reasons stated in section I, above, Defendant's argument should be summarily rejected, as this is a live controversy between Plaintiffs and Defendant, and her motion to dismiss must be denied as to this cause of action.

## D. Plaintiffs Have Sufficiently Alleged a Claim for Declaratory and Injunctive Relief that § 25982 Is Preempted by the Federal Poultry Products Inspection Act.

As Plaintiffs have alleged, § 25982 is both expressly and impliedly preempted by the federal Poultry Products Inspection Act (the "PPIA") — specifically by 21 U.S.C. § 467e — because it imposes an "additional" or "different" ingredient requirement on covered poultry products, e.g., those containing foie gras, for which federal standards of identity and composition have been established by the USDA pursuant to the PPIA. (SAC ¶¶ 113-115; *see also* ¶¶ 7, 20-32, 55-58, and 111-121.) As everyone from the author of § 25982 to Defendant herself — and even the Ninth Circuit — has

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   emphasized, § 25982 does not ban foie gras.  (SAC ¶¶ 55-58.)  Rather, as they insist,

2   § 25982 allows foie gras products to be sold as long as the most valuable constituent

3   ingredient — the liver "obtained *exclusively* from specially fed and fattened geese and

4   ducks" — is obtained from a non-force-fed duck (assuming that were even possible,

5   which it is not).  (*Id.*; SAC ¶¶ 5, 8, 26; 21 U.S.C. § 453(g)(8); 9 C.F.R. § 381.1(b)

6   [deeming poultry products "adulterated" if "any valuable constituent has been in whole

7   or in part omitted or abstracted therefrom; or if any substance has been substituted,

8   wholly or in part therefor".)  Yet this requirement that foie gras products may be sold

9   in commerce in California only if they are made from non-force-fed duck livers is

10  plainly "in addition to, or different than" the ingredient requirements established by the

11  USDA pursuant to the PPIA — and therefore expressly preempted.  (SAC ¶ 7.)[5]

12        Defendant nevertheless claims that § 25982 should somehow escape federal

13  preemption because it was purportedly motivated by a concern for preventing animal

14  cruelty.  In a jumbled, 32-line paragraph, Defendant argues variously that: (1) "[t]here

15  is no *evidence* that Congress intended to preempt state regulation of or relating to local

16  sales involving animal cruelty"; (2) § 25982 "is silent as to how foie gras should be

17  *labeled* or *how much* goose or duck liver it may contain"; and (3) the PPIA "regulates

18  *slaughterhouse* activity and neither it nor its regulations make specific mention of sales

19  of foie gras or animal cruelty." (Motion at ECF pp. 19-20 [emphasis added].)[6]

20  ────────────────

[5]        This requirement is no different from a state law that would prohibit the sale of
21  any other USDA-inspected poultry product, such as chicken cordon bleu — for which
    there is also a federal standard of identity and composition — unless it was made from
22  cage-free chicken breast.  Neither the PPIA nor any federal regulations contain any such
    requirement, and thus it would be "in addition to, or different than" the ingredient
23  requirements established pursuant to federal law — and thus expressly preempted.

24
[6]        While courts often begin federal preemption analysis with a presumption against
25  preemption, they do so only where Congress has legislated in an area of traditional state
    police power.  By contrast, as the Ninth Circuit has held, "[W]hen the State regulates in
26  an area where there has been a history of significant federal presence, the presumption
    [against preemption] usually does not apply[.]" *Ting v. AT&T*, 319 F.3d 1126, 1136
27  (9th Cir. 2003), citing *United States v. Locke*, 529 U.S. 89, 108 (2000).  Here, Congress
    has long regulated the ingredients in poultry products, and Plaintiffs only seek
28

- 10 -

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

In the first place, there need be no "evidence" at this stage, where Defendant's FRCP 12(b)(6) motion is based on the pleadings; in any event, California's motivation for a statute is irrelevant where the statute is expressly preempted by federal law.  And contrary to what Defendant suggests, regardless of how "cruel" a State may believe some poultry products to be, Congress has clearly stated that "ingredient requirements … in addition to, or different than, those made under this chapter may not be imposed by any State … with respect to articles prepared at any official establishment in accordance with the requirements under" the PPIA.  21 U.S.C. § 467e.  Where, as here, Congress's manifest intention was to create *uniform* requirements in the field of poultry products, the purported motivation of a state law that imposes an "additional" or "different" requirement — or that otherwise stands as an obstacle — is of no moment. *Armour & Co. v. Ball*, 468 F.2d 76, 83-84 (6th Cir. 1972).

Michigan may well have had its reasons for wanting to impose a "higher standard" on sausage sold in that state, and California may well have had its reasons for wanting to say when poultry products could be sold as "fresh" or regulate slack fill in poultry product packaging, but those laws were nonetheless found preempted in each of those cases. *Id*. at 85 (finding both express and field preemption under identical "ingredient" preemption language as in PPIA); *National Broiler Council v. Voss*, 44 F.3d 740 (9th Cir. 1994) (finding preemption under PPIA); *Del Real, LLC v. Harris*, 966 F.Supp.2d 1047, 1064 (E.D. Cal. 2013) (finding preemption because, under "plain language in the preemption provision, which *National Meat* found to 'sweep broadly,' [California's] slack-fill provisions are 'requirement[s] in addition to or different than' those set forth in the FMIA and PPIA," even if non-conflicting); *see also Zogenix, Inc. v. Patrick*, 2014 WL 1454696 (D. Mass. Apr. 15, 2014) (finding obstacle preemption of

_____

declaratory and injunctive relief from § 25982 *as applied* to USDA-approved poultry products from ducks raised entirely in Plaintiffs' home state and country, i.e., New York and Canada — where the California Legislature has *no* police power.

- 11 -

1    state ban on FDA-approved pain relief product, despite Massachusetts' concern about

2    potential for abuse, because it would limit availability of federally-approved product).

3        Moreover, with her references to how foie gras may be "labeled" and to activity

4    in poultry "slaughterhouses," Defendant misses the fundamental point about

5    "ingredient" preemption, as Plaintiffs' complaint does not even rely on the PPIA's

6    separate preemption language concerning labeling or slaugheterhouses.  A similar red

7    herring is Defendant's argument that "[i]t is not *impossible* to comply with both" the

8    PPIA and § 25982 because "[n]othing in the PPIA *requires* a state to allow sales of foie

9    gras that involve animal cruelty."  (Motion at ECF p. 19, lns. 24-27 [emphasis added].)[7]

10   Plaintiffs did not even allege "impossibility" as a ground for conflict preemption but,

11   rather, allege both that § 25982 is expressly preempted and that it stands as an

12   "obstacle" to the accomplishment of Congress's objectives in ensuring the availability

13   of poultry products under the PPIA — i.e., to "prevent and eliminate burdens upon

14   such commerce, to effectively regulate such commerce, and to protect the health and

15   welfare of consumers," 21 U.S.C. § 451.  (SAC ¶¶ 112-116.)

16       As the Eleventh Circuit has observed in reviewing the history of the PPIA,

17   "Congress thus subjected all domestic poultry production sold in interstate commerce

18   _____

19   [7]    Defendant cites to two cases involving the slaughter of horses.  Yet the soundness
     of those cases is in question in light of the U.S. Supreme Court's recent opinion in *Nat'l*
20   *Meat Ass'n v. Harris*, 132 S.Ct. 965 (2012).  There, in a case involving a California
     statute that sought to prevent both the slaughter of non-ambulatory pigs and the sale of
21   their meat on animal cruelty grounds, Defendant and the Ninth Circuit expressly relied
     on the two horsemeat cases in claiming that "states are free to decide which animals
22   may be turned into meat."  *Id.* at 973-74.  The Supreme Court responded, "We think
     not," and unanimously held the statute to be preempted.  Among many other reasons,
23   the horsemeat cases are also easily distinguishable because, as the Seventh Circuit noted
     in *Cavel*, horses are animals whose lives a state may have an interest in prolonging,
24   *Cavel*, 500 F.3d at 556, whereas Plaintiffs' out-of-state ducks are bred for the purpose
25   of being turned into meat — something that California has not expressed any interest in
     preventing even in California.  In any event, Defendant's reliance on the horse-slaughter
26   cases is misplaced for purposes of ingredient preemption under the PPIA because —
27   unlike for products containing foie gras — the USDA had not prescribed the ingredients
     for any product containing horsemeat.
28

1    to a single, federal program with *uniform* standards." *Mississippi Poultry Ass'n, Inc. v.*

2    *Madigan*, 31 F.3d 293, 295-96 (11th Cir. 1994) (emphasis added) ("The PPIA created

3    one uniform regulatory scheme for the national market[.]").  Defendant made no effort

4    to address the allegations of *ingredient* preemption in Plaintiffs' complaint, and she

5    should not be able to cook up a response for the first time in her reply brief.  The Court

6    may fully consider this issue in connection with Plaintiffs' pending motion for partial

7    summary judgment on their preemption cause of action.[8]  Defendant's motion to

8    dismiss Plaintiffs' claim under the Supremacy Clause should be denied.

9         E.    **Plaintiffs Have Sufficiently Alleged a Claim for Declaratory and**
              **Injunctive Relief that § 25982 Has the Practical Effect of Regulating**
10            **Commerce Occurring Wholly Outside California's Borders and Is Thus**
              **Invalid under the Commerce Clause.**
11

12        Plaintiffs have also validly alleged that § 25982 violates the Commerce Clause in

13   that — as applied to Plaintiffs' wholesome, USDA-inspected products from out-of-state

14   farmers who raise their ducks entirely in other States and countries — it has the

15   practical effect of regulating commerce occurring wholly beyond California's borders.

16   "The Commerce Clause … precludes the application of a state statute to commerce that

17   takes place wholly outside of the State's borders, whether or not the commerce has

18   effects within the State." *Healy v. Beer Institute, Inc.*, 491 U.S. 324 , 336 (1989).[9]

19   _____

20   [8]    Plaintiffs' preemption claim is the subject of a separate, 25-page brief (and other
     judicially noticeable materials) in support of Plaintiffs' pending motion for partial
21   summary judgment, which more fully addresses this important subject in the space it
     deserves.  Plaintiffs respectfully refer the Court to that pending motion for further
22   authorities in support of this cause of action.  (*See* ECF Dkt. Nos. 118 & 118-1.)

23   [9]    In an attempt to avoid the rule in *Healy* that leads to a victory for Plaintiffs in
     this case, Defendant claims that the "U.S. Supreme Court recently explained that *Healy*
24   and cases like it are limited to price control laws that dictate the price of a product or
     tie the price of in-state products to out-of-state prices." (Motion at ECF p. 22, lns. 16-
25   18, citing *Pharmaceutical Research & Manufacturers of America v. Walsh*, 538 U.S.
     644 (2003).)  Not so.  Under the statute in *Walsh*, drug manufacturers were required to
26   negotiate a "rebate agreement" with Maine or have their drugs be subject to "prior
     authorization."  The statute did nothing to ban or even penalize manufacturers for their
27   out-of-state production practices, and the Supreme Court said nothing to limit (let alone
28

1   Plaintiffs are not the only ones who recognize that California has exceeded its authority

2   by seeking to impose its special notion of farm animal welfare on animals in other

3   States and countries.  As noted above, thirteen other States — spanning from Montana

4   to South Carolina — have filed an amicus brief in the U.S. Supreme Court emphasizing

5   how § 25982 is unconstitutional in its application to farmers outside California.  And

6   so did a Canadian trade organization representing billions of dollars of food product

7   exports to the United States.

> Without commenting on the wisdom of this prohibition, *Amici* States do not
> question California's exercise of its police power over the treatment of
> livestock *within its borders*.  *Amici* States would likewise not want any other
> state to dictate livestock production methods of *Amici* States' livestock
> producers.  A state's power to protect its own flora and fauna is a matter of
> that state's sovereignty.
>
> But Amici States take exception to the application of § 25982 to products
> from poultry animals raised entirely *outside* California. To the extent §
> 25982 bans the sale of agricultural products produced entirely *outside
> California* such a ban is  unconstitutional.

15   (RJN Ex. B at p. 5 [emphasis in original].)  With an order expected less than 90 days

16   from the date on which Defendant's motion is currently set to be heard, Plaintiffs

17   believe that this Court should defer ruling on her motion until after the Supreme Court

18   considers Plaintiffs' cert petition on this important issue of extraterritorial regulation.

19        In her motion to dismiss, Defendant says that § 25982 does not regulate

20   extraterritorially because it "only regulates the sale of foie gras *under certain*

21   *circumstances* within California."  (Motion at ECF p. 22, lns. 6-8 [emphasis added].)

22   But, especially without a single foie gras duck farmer in California, those "certain

23   circumstances" are the force feeding of ducks in *other* States and countries — which

24   California has no police power to regulate.  If § 25982 is not invalidated as applied to

26   overrule) *Healy*.  From the standpoint of an economic actor's competitive advantage,

27   there is no meaningful difference between an extraterritorial regulation of the price at

which a product is sold and an extraterritorial regulation of the methods by which it is

produced.  *See also Edgar v. MITE Corp.*, 457 U.S. 624 (1982) (striking Illinois law as

28   extraterritorial regulation in case having nothing to do with price controls).

- 14 -

1    products from ducks fed entirely outside California, then any State could just as easily

2    dictate the "circumstances" under which any product must be produced.  Consider:  "A

3    product may not be sold in California if it is the result of [insert the conduct of out-of-

4    state businesses that the legislature might like to regulate, e.g., housing farm animals in

5    cages or not providing workers the same "suitable seating" that California's IWC Wage

6    Orders require]."  As Judge Smith and six of his colleagues on the Ninth Circuit

7    recently wrote, laws like § 25982 represent "California's clear attempt to project its

8    authority into other states."  *Rocky Mountain Farmers Union v. Corey*, 740 F.3d 507,

9    519 (9th Cir. 2014) (dissenting from denial of *en banc* review); *see also Baldwin v.*

10   *G.A.F. Seelig, Inc.*, 294 U.S. 511, 524 (1935) (explaining that State may not "condition

11   importation upon proof of a satisfactory wage scale in factory or shop").[10]

12        The complaint properly alleges:  "As applied to Plaintiffs, the practical effect of

13   section 25982 would be to impose a complete ban on Plaintiffs' wholesome,

14   unadulterated, USDA-certified duck products from sale in California based solely on

15   conduct that takes place entirely outside the state."  (SAC ¶ 8.)  The conduct that

16   California says the out-of-state Plaintiffs may not engage in if they want access to the

17   California market, i.e., force feeding, has nothing to do with preventing cruelty to any

18   duck in California as it occurs "wholly outside the boundaries" of this State.  *Healy*,

19   491 U.S. at 336.  In other words, "the practical effect of section 25982 is to condition

20   the sale of Plaintiffs' foie gras products in California on whether they use a tube to feed

21   their ducks entirely outside California."  (SAC ¶ 124.)  Yet, as the Supreme Court has

22   held, the "Commerce Clause ... precludes the application of a state statute to commerce

23   that takes place wholly outside of the State's borders, whether or not the commerce has

24

25   [10]    As a real-time illustration of how such extraterritorial regulation offends other
     States and violates the Dormant Commerce Clause, Missouri and five other egg-
26   producing States have recently sued Defendant over California's attempt to require out-
     of-state poultry farmers "to comply with California's minimum cage-size requirements
27   *in their own states* if they want to sell their eggs to California consumers."  *See* Dckt.
     54, p. 1, in *Missouri v. Harris*, No. 2:14-cv-341 (E.D. Cal. *filed* Feb. 3, 2014).
28

effects within the State." *Edgar v. MITE Corp.*, 9 457 U.S. 624, 642-43 (1982); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 (1996) ("[A] State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States."). Section 25982 is thus unconstitutional as applied to Plaintiffs.

Defendant's motion cites to *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1192 (9th Cir. 1990), for its statement that "the commerce clause does not exist to protect a business's right to do business according to whatever rules it wants." But Defendant misses that point. In *Valley Bank*, the Nevada law simply permitted Nevada banks in ATM networks to charge a customer an ATM fee for a transaction that he makes at an ATM *in Nevada*, so it is hardly surprising that the fact that the funds might have to be issued from a customer's out-of-state bank (even one that is in a network that has agreed not to charge ATM fees) does not violate the Commerce Clause. *Id.* at 1191. Here, by contrast, the conduct that causes the sale of foie gras to violate § 25982 is the feeding of ducks, which feeding takes place entirely in New York and Canada.[11]

Finally, Defendant argues: "A foie gras producer may force feed a bird outside California without violating section 25982; the producer just cannot sell the product inside California." (Motion at ECF p. 23, lns. 7-9.) Defendant sees this as little more than "encouraging out-of-state producers to change their production methods." (*Id.* at lns. 17-19.) But the Supreme Court has repeatedly rejected this argument. For example, in *Baldwin*, the Supreme Court rejected New York's argument that the State's

---

[11]   Defendant cites to an order from *Illinois Restaurant Ass'n v. City of Chicago*, 492 F.Supp.2d 891 (N.D. Ill. 2007), a case involving a Chicago ordinance that expressly prohibited the sale of "foie gras" in restaurants. Contrary to what Defendant says, and quite apart from the fact that the ordinance said absolutely nothing about feeding practices, the order in that case is *not* "good law." It was appealed to the Seventh Circuit, and the city repealed the ordinance before the appeal could be heard; on remand, the Court of Appeals directed that the very June 12, 2007, order on which Defendant now relies was to be *vacated* "*in its entirety.*" (*See* Dckt. 71-3.) (Defendant had similarly presented this vacated order to the Court at the preliminary injunction stage, but this Court properly made no reference to it.)

milk law was not extraterritorial since a noncompliant out-of-state producer could "keep his milk or drink it, but sell it [within New York] he may not." *Baldwin*, 294 U.S. at 521; *cf. Mutual Pharm. Co., Inc. v. Bartlett*, 133 S. Ct. 2466, 2477-78 (2013) (explaining when a State exceeds its regulatory authority, it is not saved by the ability of regulated parties to cease the regulated activity).

As Justice Jackson eloquently explained, "[E]very farmer … shall be encouraged to produce by the certainty that he will have free access to every market in the Nation, that … no foreign state will by customs duties or regulations exclude them." *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539 (1949).  Despite California's desire to force farmers in other States to change their ways or face exclusion from its market, the Constitution does not allow any State to ban the products of other States based on conduct that occurs wholly beyond its borders.  In *National Foreign Trade Council v. Natsios*, 181 F.3d 38 (1st Cir. 1999), *aff'd sub nom. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000), in an effort to express disapproval of the treatment of human beings in Burma, a Massachusetts statute provided that state government agencies could purchase products from a company that did business with Burma only if the company's bid was 10% lower than all other companies.  *Id.* at 45-46.  The First Circuit struck down the law as a violation of the Commerce Clause.  "Massachusetts may not regulate conduct wholly beyond its borders.  Yet the Massachusetts Burma Law — by conditioning state procurement decisions on conduct that occurs in Burma — does just that."  *Id.* at 69.  The same goes for California here.

While § 25982 may be applied to the sale of products from ducks that were *force fed in California*, Plaintiffs have alleged that — as applied to their wholesome, USDA-approved duck products from ducks fed "wholly outside" California — the "practical effect" of the statute is exactly the kind of extraterritorial regulation that the Dormant Commerce Clause and basic principles of federalism prohibit.  *See National Audubon Soc'y, Inc. v Davis*, 307 F.3d 835, 857 (9th Cir. 2002) (finding no impermissible "direct regulation" because California ban on sale of furs from animals trapped in "inhumane"

- 17 -

leghold traps was *limited* "to furs from animals trapped inside California; it does not apply to furs from animals trapped outside the state. ... That is, trappers acquiring furs outside of California by means of leghold traps face *no restriction* on selling such furs in California." [emphasis added]).  Accordingly, Defendant's motion to dismiss the fourth cause of action must be denied.

### F.   Plaintiffs Have Sufficiently Alleged a Claim for Declaratory and Injunctive Relief that § 25982 Imposes a Substantial Burden on Commerce Which Outweighs Any Purported Local Interest and Thus, Because It Fails *Pike* Balancing, Is Invalid under the Commerce Clause.

Even if it were somehow not found to have an impermissible extraterritorial effect, § 25982 would also fail the Supreme Court's balancing test in *Pike v. Bruce Church, Inc.*, 397 U.S. 132 (1970).  Here is the test as recently reiterated by the Ninth Circuit:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld *unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits*.  If a legitimate local purpose is found, then the question becomes one of degree.  And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*National Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1149 (9th Cir. 2012), citing *Pike*, 397 U.S. at 142.  The Ninth Circuit requires that the burden be "substantial."  *Id.* at 1148.  (And, notably, the appeal in *Optometrists* came after the Ninth Circuit had remanded to the district court for a decision on the *evidence* relevant to *Pike* balancing, such that the case was resolved on summary judgment.  *Id.* at 1150.)

### 1.   As Plaintiffs Allege, §25982 Imposes a Substantial Burden on Commerce.

Section 25982 creates a complete ban on an entire category of USDA-approved poultry products — products that Congress has said should circulate in an interstate market in which the PPIA was enacted precisely to "prevent and eliminate burdens

upon such commerce." 21 U.S.C. § 451.[12]  Defendant nevertheless claims that *Pike* balancing is unnecessary because she views the burden on commerce as insubstantial. Defendant's argument lacks merit.  Here, Plaintiffs have alleged that § 25982 "does not just incidentally or even 'substantially burden' interstate and foreign commerce in foie gras products — it places a complete ban on them." (SAC ¶ 9.)  (As the complaint alleges, and as this Court must accept as true, "using a tube to feed a duck in the final weeks before slaughter is the only method known to man for producing duck foie gras, and because the entire supply of foie gras in the United States is produced using a tube, the effect of section 25982 is a complete import and sales ban on foie gras." [SAC ¶ 8.])[13]  Plaintiffs have also now alleged literally millions of dollars in annual lost foie gras product sales in the wholesale market alone (SAC ¶¶ 6, 86-88), to say nothing of the many multiples more at the distributor and retail levels.

It would be one thing if, say, California were to require farmers to identify their foie gras products as being the result of force feeding.  That would burden interstate

---

[12]    Defendant claims that "the foie gras market is not inherently national and does not require a uniform system of regulation."  (Motion at ECF p. 24, lns. 16-18.)  That claim is just plain wrong.  As at least one federal Court of Appeals has explained, "The PPIA created one *uniform regulatory scheme* for the *national* market," and "Congress thus subjected all domestic poultry production sold in interstate commerce to a single, federal program with *uniform* standards."  *Mississippi Poultry Ass'n, Inc. v. Madigan*, 31 F.3d 293, 295-96 (11th Cir. 1994) (emphasis added).

[13]    Defendant quotes the Ninth Circuit's opinion in *Optometrists* in arguing that no substantial burden on commerce exists "merely because a non-discriminatory regulation precludes a preferred, more profitable method of operation in a retail market."  (Motion at ECF p. 25, lns. 5-8.)  But that out-of-context quote has nothing to do with our case.  In the first place, the rest of the cited paragraph from *Optometrists* includes the condition that such a regulation "does not otherwise impair the free flow of materials and products across state borders" — something section 25982 is already doing today.  *Optometrists*, 682 F.3d at 1154-55.  Moreover, the "method of operation" at issue in *Optometrists* was the *method of retail operation* in California, i.e., opticians offering prescription eyewear at the same locations where eye examinations are performed.  That is very different from what is at stake in this case, where the *agricultural method* at issue is employed back on Plaintiffs' farms some 3,000 miles outside California.

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

commerce, but it would at least allow the product to reach the California market.  By contrast, as Defendant interprets it, § 25982 creates a *total* ban on all foie gras products that are produced using a tube to feed the ducks, which is to say all foie gras products.  This is something California may not do.  *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963) ("That no State may completely exclude federally licensed commerce is indisputable[.]");  *Schollenberger v. Com. of Pa.*, 171 U.S. 1, 14 (1898) ("[W]e yet deny the right of a state to absolutely prohibit the introduction within its borders of an article of commerce which is not adulterated, and which in its pure state is healthful.").  And it does not matter that the market for a product such as foie gras, which Congress has declared to be in interstate commerce, may not be as large as that for, say, fried chicken — especially where a state statute walls off the largest interstate market for it, i.e., California's.  The market for a single specialty drug to treat a rare disease would represent only a small fraction of the broader health care or pharmaceuticals market, but no one could fairly argue that one State's *complete* ban on such a drug would not place a "substantial" burden on interstate commerce.

### 2.   As Plaintiffs Allege, California Has No "Legitimate Local Interest" in How Farmers in Other States and Countries Feed Their Livestock.

If a State regulation burdens commerce, the Supreme Court's test in *Pike* says that a court must assess the degree to which the burden outweighs the State's "legitimate local purpose" or "local interest."  *Pike*, 397 U.S. at 142.  Here, Defendant asserts that the ban on sale in § 25982 is aimed at preventing cruelty to animals in California.  But the Court should be mindful of the limitations of that assertion.  As applied to the products of ducks that are *force fed in California*, § 25982 does arguably serve California's interest in removing the incentive for anyone to force feed a duck *in California* by banning the sale of the resulting product.  Indeed, that is all that Defendant has maintained from the inception of the case, i.e., that § 25982 "merely

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

1   reinforces the *in-state* production ban by removing the incentive for *in-state* producers

2   to force feed birds in contravention of the ban," thus ensuring that "*[i]n-state* producers

3   are doubly barred from producing and selling." (Dckt. 57 at ECF p. 20, lns. 9-11; 9th

4   Cir. Dckt. 16-1 at ECF p. 47 [emphasis added].)

5           But Plaintiffs do not challenge the application of § 25982 to the sale of products

6   from any ducks that may still be force fed *in California* (an unlikely scenario in light of

7   § 25981's ban on force feeding, as a result of which the only California farm shut down

8   [SAC ¶34]). Rather, Plaintiffs challenge the constitutionality of § 25982 only *as*

9   *applied* to the sale of products from *ducks fed wholly outside California.* In this

10  application, it cannot be said that the California Legislature's purported interest in

11  preventing what it perceives to be animal cruelty is a "local" one, since the force feeding

12  of those ducks takes place many thousands of miles beyond California's borders. (SAC

13  ¶¶ 9, 134.) Regardless of California's high-minded concern, the treatment of animals in

14  *other* States and countries is within the local police power of those other sovereign

15  States and countries to regulate — as they do*, see* N.Y. Agric. & Markets Law § 353

16  and Criminal Code of Canada, R.S.C. 1985, c. C-46 § 445.1 — and not for legislators

17  in California to dictate under penalty of a state-imposed boycott. *See Natsios*, 181 F.3d

18  at 69.[14]

19          In *Edgar v. MITE Corp.*, 457 U.S. 624 (1982), the Supreme Court struck down

20  as unconstitutional under the Dormant Commerce Clause an Illinois statute that

21  purported to apply to all tender offers made to shareholders of Illinois corporations.

22  Like § 25982 here, the statute imposed various requirements on the terms of such

23  offers, regardless of where they were made. But the high court had no trouble

24

25  _____

    [14]     In other words, the essence of Plaintiffs' Dormant Commerce Clause challenge is

26  that, regardless of California's high-minded concern, a State can no more ban the sale

    of a product based solely on the method employed by producers to feed their farm

27  animals in barns in *other* States and countries than it could ban the sale of a product

    based solely on the method employed by producers to feed their human employees in

28  cafeterias in those other States and countries.

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

1  recognizing that, even though the offers affected the ownership of shares of Illinois

2  corporations, Illinois had no legitimate interest as to any offers made outside Illinois.

3  As it held, "While protecting local investors is plainly a legitimate state objective, the

4  State has no legitimate interest in protecting nonresident shareholders." *Id.* at 644.  If,

5  as the Supreme Court held in *Edgar*, a State has no legitimate interest in protecting

6  nonresident human shareholders, then, *a fortiori*, it has no legitimate interest in

7  "protecting" nonresident farm animals.

8        Even more fatal to Defendant's motion are the allegations in  Plaintiffs'

9  complaint that California's own Department of Food and Agriculture expressly found

10  that "Production of Foi[e] Gras in California does not involve cruelty at any time," and

11  "Foi[e] Gras production is a food production industry well established in conformity

12  with humane animal management, safe food practices and environmentally protective

13  provisions of State and Federal law."  (SAC ¶¶ 9, 69.)  Faced with this devastating

14  conclusion by the California government agency most familiar with foie gras

15  production at the time of SB 1520, Defendant makes a passing reference to a

16  generalized state interest in "providing for public health and morals."  (Motion at ECF

17  p. 26, lns. 2-3.)  But the Court should take that with a grain of salt (or two).  In the first

18  place, California has never claimed that foie gras poses any threat to public health; after

19  all, it is certified as wholesome and unadulterated by the USDA.  (SAC ¶ 3.)  And

20  second, the suggestion that California bans the sale of the liver of a foie gras duck out

21  of some heightened sense of "morality" while at the same time welcoming the sale of

22  every other part of that very same force-fed duck (e.g., its breasts, legs, fat, down

23  feathers, etc.) is so untenable as to invite derision.  Defendant also cites to *Cavel Int'l,*

24  *Inc. v. Madigan*, 500 F.3d 551 (7th Cir. 2007), and to *Empacadora de Carnes de*

25  *Fresnillo v. Curry*, 476 F.3d 326 (5th Cir. 2007), in support of her claim that "circuit

26  courts have also consistently upheld state laws ridding a state's own market of products

27  based on animal cruelty concerns."  (Motion at ECF p. 26, ln. 26 – p. 27, ln. 4.)  But

28

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

neither of these horsemeat cases says even a word about "cruelty." (*See also* footnote 7 *supra.*)

\*   \*   \*

Thus, on one side of the *Pike* balance is the substantial burden imposed by a total ban on millions of dollars in interstate and foreign commerce in wholesome, federally-approved poultry products. *Cf. Pike*, 397 U.S. at 140 (affirming district court's grant of permanent injunction in favor of cantaloupe growers because Arizona edict that would have required one-time $200,000 capital expenditure "constitutes an unlawful burden on interstate commerce"). On the other, while no one questions California's power to prevent actual animal cruelty *in California*, the State has no legitimate local interest in alleviating any discomfort felt by farm animals that are fed and turned into meat entirely in other States and countries. (A permanent injunction preventing the enforcement of § 25982 against the sale of products from Plaintiffs' out-of-state ducks would still enable California to fulfill its notion of preventing animal cruelty *in California* by enforcing that statute against the sale of any foie gras products from any in-state producer who might escape prosecution under § 25981.)[15] Section 25982 thus imposes an unconstitutional burden on commerce as applied to products from Plaintiffs' out-of-state ducks. *See also Conservation Force, Inc. v. Manning*, 301 F.3d 985, 998 (9th Cir.2002) ("The Commerce Clause … was included in the Constitution to prevent state governments from imposing burdens on unrepresented out-of-state interests merely to assuage the political will of the state's represented citizens.").

Accordingly, Defendant's motion to dismiss Plaintiffs' Dormant Commerce Clause claims must be denied, and this case should proceed to trial. *See Florida Lime &*

---

[15]    And even if California could be said to have a "legitimate local interest" in influencing its citizens to avoid purchasing poultry liver products from ducks fed entirely in other States and countries, Plaintiffs have alleged several alternatives for doing so — "with a lesser impact on interstate activities" — such as point-of-sale notices to consumers that the particular foie gras product was produced by force feeding. (*See* SAC ¶¶ 9, 135-136 [e.g., public education or point-of-sale notifications].)

PLAINTIFFS' BRIEF IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    *Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 154 (1963) (remanding to district court

2    for new trial of Commerce Clause contentions because applying California avocado

3    maturity requirements on avocados from Florida "might impose[] an unconstitutional

4    burden on commerce" and "might also constitute an illegitimate attempt to control the

5    conduct of producers beyond the borders of California").

6          **G.    Plaintiffs Have Sufficiently Alleged a Claim that § 25982 Violates the**
          **Due Process Clause, But They Wish to Preserve This Argument for**
7          **Any Individual Prosecution and Have Thus Stipulated to Dismiss this**
          **Claim.**
8

9          Plaintiffs' sixth cause of action is for a declaration that § 25982 is void for

10   vagueness and that it additionally violates the Due Process Clause because it punishes a

11   seller in California, under strict liability, with unlimited civil penalties of $1,000 per

12   sale per day *not* because he or she has harmed any animal here (or elsewhere) but,

13   rather, based solely on: (1) how much food a farmer in another State or country has

14   fed his duck or goose (and/or by what method), and (2) what that farmer's unknowable

15   true "purpose" was in doing so. While Plaintiffs continue to contend that § 25982 —

16   which punishes one man for the extraterritorial conduct and mental state of another —

17   is unconstitutionally vague and violates California sellers' due process rights, Plaintiffs

18   believe that the fundamental arguments they have raised under the Due Process Clause

19   will be better addressed in any individual prosecution that may arise under § 25982.[16]

20   (Plaintiffs also believe that reserving these arguments for future consideration in

21   another case will better enable this Court and the parties to focus their resources on the

22   critical issues raised by Plaintiffs' Supremacy Clause and Commerce Clause claims.)

23   Plaintiffs have therefore stipulated with Defendant that the complaint be deemed

24

25   [16]    Plaintiffs note that the vagueness in § 25982 is such that even this Court and the
    Ninth Circuit did not agree on it scope in terms of the various products of a duck to
26   which it applies. This Court referred to the sale of the "liver, breast, or feather" of a
    force-fed bird as subject to prosecution (Dckt. 87 at ECF p. 14, ln. 12-16), whereas the
27   Ninth Circuit panel said that § 25982 does not prohibit the sale of "non-liver products"
    from force-fed birds. *Ass'n des Eleveurs*, 729 F.3d at 945.
28

- 24 -

amended to dismiss this cause of action without prejudice.  (Dckt. 123.)

**H.    If the Court Were Inclined to Grant Defendant's Motion as to Any Cause of Action, It Should Only Do So With Leave to Amend.**

Under FRCP 8(a), a pleading that states a claim for relief need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  In that spirit, while it does not reflect every material fact known to Plaintiffs (and while it refrains from attaching Plaintiffs' evidence), Plaintiffs' complaint includes ample allegations to support each of their claims for declaratory and permanent injunctive relief.  If the Court nevertheless were to find any aspect of any of Plaintiffs' causes of action insufficient to state a claim, it should afford Plaintiffs an opportunity to amend to the extent they are able to cure any potential deficiency in pleading.  Indeed, a court should "freely give" leave to amend, Fed. R. Civ. P. 15(a), *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("this mandate is to be heeded"), "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992), quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Plaintiffs have only previously amended their pleadings *sua sponte* to include new claims; this motion thus represents the first time their complaint has been subject to judicial review.  To the extent that the Court may be inclined to believe that any cause of action has not been adequately pleaded, Plaintiffs respectfully request that they be given leave to amend.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied as to each cause of action.

Dated:      June 13, 2014            THE TENENBAUM LAW FIRM

_____

Michael Tenenbaum, Esq.
*Counsel for Plaintiffs*

- 25 -