1  Michael Tenenbaum, Esq. (No. 186850)
2  *mt@post.harvard.edu*
   THE TENENBAUM LAW FIRM
3  1431 Ocean Ave., Ste. 400
   Santa Monica, CA  90401
4  Tel    (310) 919-3194
5  Fax    (310) 919-3727

6  *Counsel for Plaintiffs*

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      WESTERN DIVISION

11

12  ASSOCIATION DES ÉLEVEURS DE          Case No. 2:12-cv-05735-SVW-RZ
    CANARDS ET D'OIES DU QUÉBEC, a
13  Canadian nonprofit corporation; HVFG
    LLC, a New York limited liability      **PLAINTIFFS' RESPONSES TO**
14  company; and HOT'S RESTAURANT         **DEFENDANT'S OBJECTIONS TO**
    GROUP, INC., a California             **EVIDENCE IN SUPPORT OF**
15  corporation;                          **MOTION FOR SUMMARY**
                                          **JUDGMENT ON FEDERAL**
16                                        **PREEMPTION CLAIM**
17                      Plaintiffs,
                                          **[ORAL ARGUMENT REQUESTED]**
18        – against –

19                                        Date:         November 24, 2014
    KAMALA D. HARRIS, in her official     Time:         1:30 p.m.
20  capacity as Attorney General of       Courtroom:  6
    California;
21
                                          Hon. Stephen V. Wilson
22                      Defendant.

23

24

25

26

27

28

Plaintiffs Association des Éleveurs de Canards et d'Oies du Québec, HVFG LLC, and Hot's Restaurant Group, Inc., submit these responses to Defendant's objections to certain evidence that Plaintiffs submitted in support of their motion for summary judgment based on federal preemption.  As the Court will note, Defendant — who did not submit any evidence of her own in response to Plaintiffs' motion for summary judgment — has lodged excessive, meritless, unnecessarily time-consuming, and in some places even frivolous objections to Plaintiffs' evidence.  For the reasons provided below (and for others that the Court would find obvious on their face even in the absence of these responses), all of Defendant's objections should be OVERRULED.

RESPONSES TO DEFENDANT'S OBJECTIONS TO DECLARATION OF BENOIT CUCHET

1.     Cuchet Decl., p. 1, lines 12-21, ¶ 3:

"The production of the Canadian Farmers' poultry products for sale in the United States and the importation of our products are governed by the Poultry Products Inspection Act.  Before Palmex or any other Canadian Farmer may sell its poultry products into the United States, federal law — i.e., the law of the United States — requires that we meet all requirements of the United States Department of Agriculture (the "USDA").  All of the Canadian Farmers' poultry products, including products containing foie gras, are (and must be) prepared at an "official establishment," and a USDA inspector is present in the official establishment at which our products are prepared here in Canada.  We of course comply with all of the applicable laws of the United States as well as those of Québec and of Canada."

Defendant's Objection(s)

"Calls for a legal conclusion.  Determining what laws apply to the sale of these products and whether the law has been complied with are legal questions.  Benoit Cuchet is not a legal expert and cannot opine on these issues."

Plaintiffs' Response

Mr. Cuchet states that he is the General Manager of a Canadian company, Palmex, which produces products containing foie gras for sale to the United States. (Cuchet Decl. ¶¶ 1-3.)  Mr. Cuchet is not required to be a "legal expert" or opine on "legal questions" in order to be able to provide competent testimony to the facts set

- 1 -

forth above about the very business he manages.  To take a simple example, the manager of a bar in Los Angeles does not need to be a "legal expert" or opine on "legal questions" to competently testify that his bar may not sell alcoholic beverages to people under the age of 21, to say that his bar is subject to inspection by the Department of Alcoholic Beverage Control, or to say that the bar complies with that law.  Here, Mr. Cuchet simply states that the Canadian Farmers' poultry products are regulated by the USDA, to which he testifies from personal knowledge, just as he has personal knowledge that these products are prepared at an "official establishment" where a USDA inspector is present.  As the General Manager of one of the Canadian Farmers, and the First Vice-President of their association, Mr. Cuchet states that he knows that the Canadian Farmers must comply with all the requirements that the USDA imposes in order to sell their products in the United States (as they do).  Mr. Cuchet's statements are based on his personal experience, and he does not purport to opine on a pure question of law or otherwise draw a conclusion on an ultimate legal issue in this case.

Defendant's objection should be OVERRULED.

2.    **Cuchet Decl., p. 2, lines 4-12, ¶ 5 and Ex. A:**

"While many of our products are generically approved because they comply with the standards and ingredient requirements in the USDA's Food Standards and Labeling Policy Book, Palmex has applied to the USDA for approval of many of the foregoing processed products, which required a detailed identification of the ingredients in each, and all of Palmex's products are certified wholesome and approved for sale by the USDA.  As an example, a true and correct copy of the USDA's approval of the ingredients in Palmex's 'Whole Duck Foie Gras Torchon Style' (with the specific percentages of the additional, non-foie gras ingredients redacted for trade secret purposes) is attached hereto as Exhibit A."

**Defendant's Objection(s)**

"Calls for a legal conclusion.  Determining what laws apply to these products and whether the law has been complied with are legal questions.  Benoit Cuchet is not a legal expert and cannot opine on these issues.

- 2 -

1
2
3
4

"Lacks foundation.  Fed. R. Evid. 602.  The attached document appears to be a November 21, 2002 request for label approval.  Thus, it only establishes that the USDA at one time granted label approval subject to compliance with applicable laws and regulations.  (Cuchet Decl., Ex. A.) There is no foundation for why this approval was granted or the import of this approval.

5
6
7
8

"Irrelevant.  The Food Standards and Labeling Policy Book is irrelevant to the preemption question because policy statements, agency manuals, and enforcement guidelines all lack the force of law and therefore cannot preempt California law.  *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000); *S. Pac. Transp. Co. v. Pub. Util. Comm'n of State of Or.*, 9 F.3d 807, 812 n.5 (9th Cir. 1993)."

9

### Plaintiffs' Response

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Mr. Cuchet states that he is the General Manager of a Canadian company, Palmex, which produces products containing foie gras for sale to the United States.  (Cuchet Decl. ¶¶ 1-3.)  Mr. Cuchet is not required to be a "legal expert" or opine on "legal questions" in order to be able to provide competent testimony to the facts set forth above about the very business he manages.  (In the interest of avoiding duplication, Plaintiffs respectfully refer the Court to their response to Defendant's objection in No. 1, above.)  It does not require a "legal conclusion" for Mr. Cuchet, based on his personal experience, to say that his company's products are approved by the USDA because they comply with the USDA's standards and ingredient requirements — or to say that his company has applied to the USDA for approval of many of the processed products he identifies in paragraph 4 of his declaration, which required the company to provide a detailed identification of the ingredients in each.  It likewise does not call for a "legal conclusion" for the General Manager of a company to state that the company's products are certified and approved for sale by the USDA, any more than it calls for a "legal conclusion" for the general manager of an automaker to testify that his company's vehicles are certified and approved for sale by the Department of Transportation.

28

PLAINTIFFS' RESPONSES TO DEFENDANT'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON FEDERAL PREEMPTION CLAIM

Mr. Cuchet's attachment of an example of the USDA's actual approval of the ingredients in his company's "Whole Duck Foie Gras Torchon Style" does not somehow "lack foundation."  Defendant's arguments that "it only establishes that the USDA at one time granted label approval subject to compliance with applicable laws and regulations" and that "[t]here is no foundation for why this approval was granted or the import of this approval" are non-sequiturs and, at best, would go only to the weight of this evidence.

Finally, it makes no sense for Defendant to argue that this evidence — which goes to the very heart of the federal preemption issue that is the subject of this motion — is somehow "irrelevant."  While a particular USDA product approval may not itself provide the legal basis for preemption (since the Poultry Products Inspection Act and the USDA regulations provide the preemptive force for Plaintiffs to prevail here), the document itself is entirely relevant as evidence of federal preemption.  Moreover, in granting the plaintiffs' motion for summary judgment on preemption grounds, the Ninth Circuit in *National Broiler Council v. Voss*, 44 F3d 740 (9th Cir. 1994), held that a federal agency's interpretation of its own regulations — including even its own policy memos — "should be given *controlling* weight."  *Id.* at 747 (emphasis added).

Defendant's objection should be OVERRULED.


## RESPONSES TO DEFENDANT'S OBJECTIONS TO DECLARATION OF MARCUS HENLEY

**3.    Henley Decl., p. 1, lines 10-21, ¶ 2:**

"Before Hudson Valley or any other producer may sell its poultry products within the United States, federal law requires that we comply with various regulations concerning our facilities, our operating procedures, the ducks before they are slaughtered, the ducks after they are slaughtered, the marking of duck products with a USDA seal, the labeling and containers of the duck products, and the ingredient requirements for our products containing foie gras, including the definitions and standards of identity or composition of these products. The production and sale of our products in the United States are governed by the federal Poultry Products Inspection Act. 21 U.S.C. §§ 451 et seq. and by regulations issued by the United States

- 4 -

Department of Agriculture (the 'USDA'). We of course comply with all of the laws of the United States as well as those of New York. (No New York law dictates how much food we may feed our ducks.)"

### Defendant's Objection(s)

"Calls for a legal conclusion.  Determining what laws apply to the sale of these products and whether the law has been complied are legal questions. Marcus Henley is not a legal expert and cannot opine on these issues."

### Plaintiffs' Response

Defendant's objection to this evidence is the same as she made to the similar paragraph in Mr. Cuchet's declaration, and it should be OVERRULED for the same reasons noted above.  Mr. Henley states that he is the Operations Manager of Hudson Valley and "oversee[s] every aspect of Hudson Valley's operations," including the "processing into products for sale throughout the United States."  (Henley Decl. ¶ 1.) Mr. Henley is not required to be a "legal expert" or opine on "legal questions" in order to be able to provide competent testimony to the facts set forth above about the very business he manages and oversees.  To take a simple example, the manager of a bar in Los Angeles does not need to be a "legal expert" or opine on "legal questions" to competently testify that his bar may not sell alcoholic beverages to people under the age of 21, to say that his bar is subject to inspection by the Department of Alcoholic Beverage Control, or to say that the bar complies with that law.  Here, Mr. Henley simply states that Hudson Valley's poultry products are regulated by the USDA, to which he testifies from personal knowledge, just as he has personal knowledge of all of the aspects of his operations that he explains the USDA requires Hudson Valley to comply with.  (In paragraph 3, he explains that a USDA inspector is on site at Hudson Valley's operations at all relevant times.)  When Mr. Henley states that no New York law dictates how much food Hudson Valley may feed their ducks, that statement simply reflects his personal knowledge to that effect, just like the operations manager of an all-you-can-eat restaurant may testify that he is unaware of any law that dictates how much food the restaurant may offer its guests.  Mr. Henley's statements are based on

PLAINTIFFS' RESPONSES TO DEFENDANT'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON FEDERAL PREEMPTION CLAIM

his personal experience, and he does not purport to opine on a pure question of law or otherwise draw a conclusion on an ultimate legal issue in this case.

Defendant's objection should be OVERRULED.

## 4.     Henley Decl., p. 1, lines 22-26, ¶ 3:

"Hudson Valley is a USDA-approved official establishment (USDA Establishment No. P-17966) in Sullivan County, New York, and has a USDA inspector on site at all relevant times. Every one of our foie gras products is prepared, as it is required to be, in our official establishment. And every one is certified as wholesome by the USDA for sale in the United States."

### Defendant's Objection(s)

"Calls for a legal conclusion. The term "official establishment" is defined by federal law and "means any establishment as determined by the Secretary at which inspection of the slaughter of poultry, or the processing of poultry products, is maintained under the authority of this chapter." 21 U.S.C. § 453(p). Marcus Henley is not a legal expert and cannot opine on these issues.

"Lacks foundation/Vague. Fed. R. Evid. 602. Plaintiffs have not established what official establishment their foie gras is prepared at or what they mean by "prepared," which is not defined by statute. Plaintiffs' assertion that their foie gras products are "certified as wholesome by the USDA" also lacks any foundation."

### Plaintiffs' Response

Defendant's objections border on the frivolous.  It does not "call[] for a legal conclusion" for the Operations Manager of a federally regulated "official establishment" to state that it is an "official establishment" (which Mr. Henley does while even providing the official USDA Establishment Number).  To take a simple example, just because federal law may define the word "aircraft" does not mean that only a "legal expert" — as opposed to, say, the pilot or operations manager of an airline — may testify that the company operates an "aircraft."  Mr. Henley's statements are based on his personal experience, and he does not purport to opine on a pure question of law or otherwise draw a conclusion on an ultimate legal issue in this case.

PLAINTIFFS' RESPONSES TO DEFENDANT'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON FEDERAL PREEMPTION CLAIM

Similarly, Defendant's claim that Mr. Henley's statement lacks foundation or is "vague" is silly.  Contrary to Defendant's claim, Mr. Henley states that every one of Hudson Valley's foie gras products is prepared in Hudson Valley's official establishment, and he even included the official USDA Establishment Number for Hudson Valley's facility.  Mr. Henley further states from personal experience running Hudson Valley's poultry processing facility that all of the company's products containing foie gras are "certified as wholesome by the USDA" since, in addition to having a USDA inspector on site at all relevant times (Henley Decl. ¶ 3), he explains that he personally oversees not only the slaughter but the "processing into products for sale," which provides the foundation for him to say that each of Hudson Valley's products bears a USDA certification that it is wholesome.

Defendant's objections should be OVERRULED.

**5.   Henley Decl., p. 2, lines 2-6, ¶ 4:**

"Hudson Valley applied to the USDA for approval of each of the foregoing products (or otherwise has met the standards set forth in the USDA's Food Standards and Labeling Policy Book, in which case no separate application for approval was necessary), which required a detailed identification of the ingredients in each, and each of the foregoing products has been specifically approved for sale by the USDA."

**Defendant's Objection(s)**

"Calls for a legal conclusion.  Determining what laws apply to these products and whether the law has been complied with are legal questions. Marcus Henley is not a legal expert and cannot opine on these issues.

"Irrelevant. The Food Standards and Labeling Policy Book is irrelevant to the preemption question because policy statements, agency manuals, and enforcement guidelines all lack the force of law and therefore cannot preempt California law. *Christensen*, 529 U.S. at 587; *S. Pac. Transp. Co.*, 9 F.3d at 812 n.5."

**Plaintiffs' Response**

Defendant's objections again border on the frivolous.  It does not "call[] for a legal conclusion for a person such as Mr. Henley to testify from his personal knowledge

PLAINTIFFS' RESPONSES TO DEFENDANT'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON FEDERAL PREEMPTION CLAIM

that the company whose operations he manages "applied to the USDA for approval" of various products," that the application process "required a detailed identification of the ingredients in each," and that each of those products "has been specifically approved for sale by the USDA.  Such testimony no more requires a "legal conclusion" than for any seller of food products to testify — from personal knowledge — that he obtained government approval for each of his products following an application process that required a detailed identification of their ingredients.  Mr. Henley's statements are based on his personal experience, and he does not purport to opine on a pure question of law or otherwise draw a conclusion on an ultimate legal issue in this case.

Furthermore, as explained in response to no. 2 above, Hudson Valley's compliance with the USDA's Food Standards and Labeling Policy Book is not only "relevant" but is at the heart of the federal preemption issue that is the subject of this motion.  Hudson Valley's products are made with federally-approved foie gras that the USDA requires as the primary ingredient in its products, and these policies are reflected in the agency's own Food Standards and Labeling Policy Book — which is of central relevance here.  In granting the plaintiffs' motion for summary judgment on preemption grounds, the Ninth Circuit held in *National Broiler Council v. Voss*, 44 F3d 740 (9th Cir. 1994), that a federal agency's interpretation of its own regulations — including even its own policy memos — "should be given *controlling* weight."  *Id.* at 747 (emphasis added).

Defendant's objections should be OVERRULED.

## 6.   Henley Decl., p. 2, lines 8-14, ¶ 5 & Ex. A:

"Hudson Valley has received approvals from the USDA for each of the foregoing products (or otherwise has met the standards set forth in the USDA's Food Standards and Labeling Policy Book, in which case no separate application for approval is necessary), or else the products could not be sold in the United States. As an example, a true and correct copy of the USDA's approval of the ingredients in Hudson Valley's "Mulard Duck Foie Gras" — on a form that requires producers to "[l]ist the ingredients by percent or weight" and to "provide complete processing procedures" — is

attached hereto as Exhibit A."

**Defendant's Objection(s)**

"Calls for a legal conclusion. Determining what laws apply to these products and whether the law has been complied with are legal questions. Marcus Henley is not a legal expert and cannot opine on these issues.

"Lacks foundation. Fed. R. Evid. 602. The attached document appears to be a March 18, 2005 request for label approval. Thus, it only establishes that the USDA at one time granted label approval subject to compliance with applicable laws and regulations. (Henley Decl., Ex. A.) There is no foundation for why this approval was granted or the import of this approval.

"Irrelevant. The Food Standards and Labeling Policy Book is irrelevant to the preemption question because policy statements, agency manuals, and enforcement guidelines all lack the force of law and therefore cannot preempt California law. *Christensen*, 529 U.S. at 587; *S. Pac. Transp. Co.*, 9 F.3d at 812 n.5."

**Plaintiffs' Response**

It does not "call[] for a legal conclusion for a person who oversees all of the operations of a business that produces USDA-regulated products to state from personal knowledge, as Mr. Henley does, to state that his company "has received approvals from the USDA" for each of the products he identifies. Mr. Henley does not need to be a "legal expert" to testify simply that Hudson Valley has received such approvals from the USDA.

Mr. Henley's attachment of an example of a foie gras product approval that Hudson Valley has received does not "lack foundation." Defendant's arguments that "it only establishes that the USDA at one time granted label approval subject to compliance with applicable laws and regulations" and that "[t]here is no foundation for why this approval was granted or the import of this approval" are non-sequiturs and, at best, would go only to the weight of this evidence.

Finally, it makes no sense for Defendant to argue that this evidence — which goes to the very heart of the federal preemption issue that is the subject of this motion — is somehow "irrelevant." While a particular USDA product approval may not itself

- 9 -

provide the legal basis for preemption (since the Poultry Products Inspection Act and the USDA regulations provide the preemptive force for Plaintiffs to prevail here), the document itself is entirely relevant as evidence of federal preemption.  Moreover, in granting the plaintiffs' motion for summary judgment on preemption grounds, the Ninth Circuit held in *National Broiler Council v. Voss*, 44 F3d 740 (9th Cir. 1994), that a federal agency's interpretation of its own regulations — including even its own policy memos — "should be given *controlling* weight."  *Id.* at 747 (emphasis added).

> Defendant's objections should be OVERRULED.

**7.    Henley Decl., p. 2, lines 15-18, ¶ 6 & Ex. B:**

"As a second example, a true and correct copy of the USDA's approval of the ingredients in Hudson Valley's "Torchon of Moulard Duck Foie Gras" is attached hereto (with the specific percentages of the additional, non-foie gras ingredients redacted for trade secret purposes) as Exhibit B."

**Defendant's Objection(s)**

"Calls for a legal conclusion.  Determining what laws apply to these products and whether the law has been complied with are legal questions. Marcus Henley is not a legal expert and cannot opine on these issues.

"Lacks foundation. Fed. R. Evid. 602. The attached document appears to be a March 4, 2011 request for label approval. Thus, it only establishes that the USDA at one time granted label approval subject to compliance with applicable laws and regulations. (Henley Decl., Ex. B.) There is no foundation for why this approval was granted or the import of this approval."

<u>Plaintiffs' Response</u>

Defendant's objections to this evidence are totally frivolous.  It does not "call[] for a legal conclusion" for a declarant to attach a true and correct copy of an approval he received from a federal agency in the course of serving as the Operations Manager of the very business that applied for the agency's approval.  All Mr. Henley states is that he is attaching the USDA's approval of the ingredients in one of Hudson Valley's foie gras products — and the document itself is stamped by the USDA as "Approved." Defendant's objection should be OVERRULED.

Moreover, this document does not "lack[] foundation."  Mr. Henley's declaration states that he has overseen every aspect of Hudson Valley's operations for nearly 13 years, which obviously includes the year 2011, in which (the document shows) Hudson Valley received this approval from the USDA.  Indeed, the application itself bears Mr. Henley's signature.  The remainder of Defendant's objection is not fairly based on a purported lack of foundation but, instead, goes merely to the *weight* she wishes to ascribe to this evidence.

Defendant's objections should be OVERRULED.

## RESPONSES TO DEFENDANT'S OBJECTIONS TO DECLARATION OF SEAN CHANEY

**8.    Chaney Decl., p. 1, lines 14-16, ¶ 2**

"All the foie gras products I purchased were USDA-approved as wholesome, as indicated by the USDA mark on the products' packaging."

**Defendant's Objection(s)**

"Lacks foundation. Fed. R. Evid. 602. The declaration attaches no such examples. The other declarations submitted by Plaintiffs indicate that the USDA has at some point permitted a label that states 'Inspected for Wholesomeness.' (Henley Decl., Ex. A.)"

**Plaintiffs' Response**

This is yet another meritless objection.  Mr. Cheney states from personal experience that all of the foie gras products he purchased bore a USDA mark on their packaging to indicate that they were USDA-approved as wholesome.  That Mr. Chaney did not attach the packaging from the products does not mean that his statement "lacks foundation" when it is based on his personal observation.  Indeed, Defendant recognizes that other declarations indicate that the actual USDA label on all foie gras products states "Inspected for Wholesomeness."  And this is not meaningfully different from Mr. Chaney's testimony that all of the foie gras products he purchased were USDA-approves as "wholesome."

- 11 -

Defendant's objection should be OVERRULED.

## 9.   Chaney Decl., p. 1, lines 17-20, ¶ 3

"I am aware that § 25983(b) of the California Health and Safety Code provides that a citation issued for an alleged violation of § 25982 that could require the payment of a penalty of up to $1,000 for each violation and for each day the violation continues."

### Defendant's Objection(s)

"Calls for a legal conclusion. Determining the penalties for a violation of California Health and Safety Code section 25982 is a legal question. Sean Chaney is not a legal expert and cannot opine on this issue. Furthermore, a citation 'shall require the person cited to pay a civil penalty in an amount up to one thousand dollars ($1,000) for each violation, and up to one thousand dollars ($1,000) for each day the violation continues.' Cal. Health & Safety Code§ 25983(b)."

### Plaintiffs' Response

This objection is frivolous.  Mr. Cheney states his awareness of the penalty provided in section § 25983(b) of the California Health and Safety Code, and he fairly paraphrases that statute.  This does not "call for a legal conclusion" any more than it would for any citizen to say that he is aware of a particular statutory penalty and to paraphrase the statute in doing so.  Indeed, Defendant herself, in quoting the statute as part of her objection, reveals that Mr. Cheney's awareness of the penalty provision is accurate.

Defendant's objection should be OVERRULED.


## RESPONSES TO DEFENDANT'S OBJECTIONS TO DECLARATION OF MICHAEL TENENBAUM

## 10.   Tenenbaum Decl., p. 1, line 17 – p. 2, ln. 2, ¶ 4 & Exs. B and C

"In November 2013, I traveled to the Embassy of France in Washington, D.C., and met with [the] Deputy Agricultural Counselor to request copies of the documents exchanged between the USDA and the French government in the 1980s in connection with the 'revised' standards for foie gras products that France had issued in June of 1980 and had submitted to the USDA for adoption as the requirements for approval of foie gras products in the

- 12 -

United States. A true and correct copy of the relevant pages of the French regulations reflecting the revised standards for foie gras products, which I obtained from the French Embassy, is attached hereto as Exhibit B. A true and correct copy of the contemporaneous English translation of those pages from 1980, which I also obtained from the French Embassy, is attached hereto as Exhibit C. For the Court's ease of reference, I have highlighted the requirements for the 'composition' of foie gras by placing a red box around the relevant language. As the Court will note, the requirement states: 'The 'foie gras' (livers) must exclusively come from specially crammed and suitably bleeded geese and ducks."

### Defendant's Objection(s)

"The declarant lacks personal knowledge, does not set forth facts that would be admissible in evidence, and is not competent to testify on these matters. Fed. R. Civ. P. 56(c)(4).

"Lacks foundation. The declarant has failed to set forth any facts establishing that he has personal knowledge of these issues. Fed. R. Evid. 602. Plaintiffs' counsel has no personal knowledge of whether these documents were actually exchanged between the USDA and France, their import, or whether the purported English translation was contemporaneous or true and correct.

"Lacks authentication. These documents have not been properly authenticated. *See* Fed. R. Evid. 901(a), 902(3).

"Hearsay. Fed. R. Evid. 801(c), 802. Plaintiffs' counsel suggests these are accurate documents by stating he requested them from the Embassy of France. Plaintiffs' counsel has no personal knowledge of their authenticity. Thus, any suggestion that they are accurate is hearsay.

"Translations must be properly authenticated and shown to be made by a qualified translator. *See* Fed. R. Evid. 604, 702, 901; *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659 (N.D. Cal. 1994). Here, there is no indication who made the translation. Plaintiffs have failed to lay a proper foundation for the admission of this translation.

"Irrelevant. These documents are irrelevant to the preemption question because opinion letters, policy statements, agency manuals, and enforcement guidelines all lack the force of law. *Christensen*, 529 U.S. at 587; *S. Pac. Transp. Co.*, 9 F.3d at 812 n.5."

### Plaintiffs' Response

The declarant cannot be said to lack personal knowledge of his *own* meeting with the Deputy Agricultural Counselor at the Embassy of France in Washington or the

1    purpose of that meeting.  The declarant does not purport to have personal knowledge
2    of the exchange of these French regulations and their contemporaneous translation
3    between the U.S. and French governments, but the foundation for that fact comes from
4    the letter from the USDA in Exhibit D to the declaration, which refers to the USDA's
5    review of the "French regulations which were promulgated in June of 1980" (i.e., those
6    dates as such on the first page of Exhibit B).

7         The French regulations and their contemporaneous translation are properly
8    authenticated under FRE 901(b)(7)(B) and, alternatively, FRE 901(b)(8).  These
9    constitute "a purported public record or statement [that] is from the office where items
10   of this kind are kept" — in other words, French agricultural regulations for foie gras
11   products kept in the office of the Deputy Agricultural Counselor at the Embassy of
12   France.  Alternatively, each of these documents is properly authenticated as an
13   "ancient" document within the meaning of FRE 901(b)(8), since it is in a condition that
14   creates no suspicion about its authenticity, it was in a place where it would likely be if
15   authentic (i.e., a French government office charged with agricultural affairs), and "is at
16   least 20 years old when offered."  (It is, in fact, over 34 years old.)

17        Defendant's "hearsay" objection is, as she describes it, simply an attempt to
18   recast her unsuccessful "authentication" objection and should be overruled for the
19   reasons stated immediately above.  In any event, these provisions of French law are also
20   a proper subject of judicial notice under FRE 201 and FRCP 44.1.

21        Defendant's "translation" objection should likewise be overruled.  FRCP 44.1
22   provides that, [i]n determining foreign law, the court may consider *any* relevant
23   material or source, including testimony, whether or not . . . admissible under the
24   Federal Rules of Evidence."  Here, there is no reason for the Court not to consider these
25   documents, since Defendant has not identified any evidentiary basis for questioning the
26   motive of the translator back in the early 1980s — on whose translation the USDA
27   evidently relied.  (Tenenbaum Decl. Ex. D.)  The Court may properly consider this
28   source of foreign law.

PLAINTIFFS' RESPONSES TO DEFENDANT'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON FEDERAL PREEMPTION CLAIM

Finally, where, as here, the USDA's own Food Standards and Labeling Policy Book and its own Policy Memo (No. 76) explain that the agency's specifications for the required ingredients in foie gras products sold in the United States were based on the French standards provided to the USDA in the early 1980s, those standards — as retrieved from the French Embassy and as kept in their original form — are of course *relevant* in a case where federal preemption applies to bar a State from imposing any different or additional requirements on the "ingredients" in such poultry products.

Defendant's objections should be OVERRULED.

## 11.   Tenenbaum Decl., p. 2, lines 3-12, ¶ 5 & Ex. D

"During that meeting, I also obtained from the French Embassy a copy of a letter dated May 17, 1983, from the Director of the USDA's Standards and Labeling Division to the French Embassy in Washington, D.C., which followed the USDA's 'thorough review' of the French regulations for the composition of imported foie gras products and which set out the USDA's proposed 'arrangement between our respective governments in regard to these items.' In that letter, the USDA indicated that it will 'continue to monitor all 'foie gras' products entering this country for compliance with the French regulations' and 'will also continue to deny approval for any of these products which are not in compliance with these standards.' A true and correct copy of this letter is attached hereto as Exhibit D."

### Defendant's Objection(s)

"The declarant lacks personal knowledge, does not set forth facts that would be admissible in evidence, and is not competent to testify on these matters. Fed. R. Civ. P. 56(c)(4).

"Lacks foundation. The declarant has failed to set forth any facts establishing that he has personal knowledge regarding this letter. Fed. R. Evid. 602. Additionally, the letter does not specify which French regulations were followed. It appears that the regulations related to labeling only and even then were modified by the Standards and Labeling Division. (Tenenbaum Decl., Ex. D.) The letter also states it was "preliminary" only. (*Id.*, p. 2.)

"Lacks authentication. This document has not been properly authenticated. *See* Fed. R. Evid. 901(a), 902(3).

"Irrelevant. This document is irrelevant to the preemption question because opinion letters, policy statements, agency manuals, and enforcement

guidelines all lack the force of law and therefore cannot preempt California law. *Christensen*, 529 U.S. at 587; *S. Pac. Transp. Co.*, 9 F.3d at 812 n.5."

**Plaintiffs' Response**

The declarant cannot be said to lack personal knowledge of his having obtained this document during his own meeting with the Deputy Agricultural Counselor at the Embassy of France in Washington.  The declarant does not purport to have personal knowledge of the statements made by the Director of the USDA's Standards and Labeling Division in his letter to the French Embassy.  Rather, the letter, as quoted in part in the declaration but as attached in full, speaks for itself, and Defendant raised no hearsay objection to it — which would have had to be overruled anyway under the "ancient document" exception of FRE 803(16) because this document is more than 20 years old.  The remainder of Defendant's "foundation" argument is obviously an attack on the weight of this evidence, which Defendant was free to make in her brief.

This document is properly authenticated as an "ancient" document pursuant to FRE 901(b)(8), since it is in a condition that creates no suspicion about its authenticity, it was in a place where it would likely be if authentic (i.e., the French Embassy to which it was sent, which stamped the correspondence as received by its "Service Commercial" on May 18, 1983), and "is at least 20 years old when offered."  (It is, in fact, over 31 years old.)

Finally, where a case involves federal preemption based on the ingredient requirements promulgated by the USDA for foie gras products, a memo from the Director of the USDA's Standards and Labeling Division to the French Embassy explaining that his office is "willing to follow the French regulations which were promulgated in June of 1980" as to the ingredients in those products and that, with only the slight modifications he outlines, this arrangement should serve as "an agreement between our two governments," the Director's correspondence is undoubtedly *relevant* to this action.

Defendant's objections should be OVERRULED.

PLAINTIFFS' RESPONSES TO DEFENDANT'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON FEDERAL PREEMPTION CLAIM

12.    **Tenenbaum Decl., p. 2, lines 13-21, ¶ 6**

"I am reasonably proficient in French. I have reviewed Article L654-27-1 of France's *Code rural et de la pêche maritime* (which is attached as Exhibit C to Plaintiffs' Request for Judicial Notice) and discussed it with several native French speakers. That statute is most accurately translated as follows: 'Foie gras is a part of the protected cultural and gastronomic heritage of France. Foie gras means the liver of a duck or of a goose specially fattened by *gavage*.' (*Gavage* is the practice of hand-feeding using a tube to deposit food into the bird's 'crop' or the expandable base of the bird's esophagus, which is used to temporarily store food prior to digestion. *See, e.g.*, ECF Dkt. 51-9 [Fleury Decl.] at ¶ 6.)."

**Defendant's Objection(s)**

Translations must be properly authenticated and shown to be made by a qualified translator. *See* Fed. R. Evid. 604, 702, 901; *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659 (N.D. Cal. 1994). The statement that Plaintiffs' counsel is "reasonably proficient" in French is insufficient as it does not describe his qualifications or expertise regarding language translations. *See Jack*, 854 F. Supp. at 659. Plaintiffs have failed to lay a proper foundation for the admission of this translation.

**<u>Plaintiffs' Response</u>**

The declarant states that he is reasonably proficient in French to translate this simple provision of French law, and Defendant does not identify any discrepancy in Plaintiffs' provided translation. Under FRCP 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." In any event, Plaintiffs have filing a declaration from a certified translator that expressly confirms the accuracy of the declarant's original translation. *See* Dkt. 137 [Declaration of an official translator for the Superior Court of California].

Defendant's objection should be OVERRULED.

Dated:       November 10, 2014          THE TENENBAUM LAW FIRM

_____

Michael Tenenbaum, Esq.
*Counsel for Plaintiffs*