FILED
CLERK, U.S. DISTRICT COURT

Jan 7, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: _____PMC_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and HOT'S RESTAURANT GROUP, INC., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> KAMALA D. HARRIS, in her official capacity as Attorney General of California; et al. <br><br> Defendants. | CASE NO. 2:12-cv-5735-SVW-RZ <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS [116] AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PREEMPTION CLAIM [117] AND PARTIAL JUDGMENT AS TO PREEMPTION CLAIM |

I.      **INTRODUCTION**

        This action for declaratory and injunctive relief touches upon a topic impacting

gourmands' stomachs and animal-rights activists' hearts: foie gras.  Plaintiffs Association des

Éleveurs de Canards et D'Oies du Québec (the "Canadian Farmers"), HVFG LLC ("Hudson

Valley"), and Hot's Restaurant Group, Inc. ("Hot's")[1] argue that California's sales ban on liver

from force-fed birds, Cal. Health & Safety Code § 25982, runs afoul of federal law and the

Constitution.  Plaintiffs assert, *inter alia*, that the Poultry Products Inspection Act ("PPIA"), 21

U.S.C. §§ 451–470, preempts § 25982.  This issue boils down to one question: whether a sales

_____

[1]  Plaintiff Gauge Outfitters, Inc. voluntarily dismissed its claim on October 9, 2012.  (Dkt. 89.)

1    ban on products containing a constituent that was produced in a particular manner is an

2    "ingredient requirement" under the PPIA.

3         Presently before this Court are Defendant's motion to dismiss, (Dkt. 116), and Plaintiffs'

4    motion for partial summary judgment as to their preemption claim, (Dkt. 118).  For the reasons

5    discussed below, this Court GRANTS Plaintiff's motion for partial summary judgment and

6    DENIES Defendant's motion to dismiss.

7    **II.     FACTS AND PROCEDURAL HISTORY**

8         The Canadian Farmers and Hudson Valley produce foie gras—a delicacy made from

9    fattened duck liver.  (Second Amended Complaint ("SAC") ¶¶ 12–13.)  Hot's operates a

10   restaurant in California that formerly sold foie gras products.  (SAC ¶ 14.)  Plaintiffs' foie gras

11   products are produced using *gavage*—a method of feeding a bird through a tube inserted in its

12   esophagus.  *See* (SAC ¶¶ 44, 80.)

13        California Health and Safety Code § 25982 was enacted as part of a statutory scheme

14   aimed at the practice of force feeding birds.  Section 25981, which is not at issue in this case,

15   prohibits force feeding a bird for the purpose of enlarging its liver.  Cal. Health & Safety Code §

16   25981.  Section 25982 reinforces this ban by prohibiting the sale in California of products that

17   are "the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal

18   size."[2]  Cal. Health & Safety Code § 25982.  Section 25980(b) defines "force feeding" as "a

19   process that causes the bird to consume more food than a typical bird of the same species would

20   consume voluntarily."  Cal. Health & Safety Code § 25980.  It states that "[f]orce feeding

21   methods include, but are not limited to, delivering feed through a tube or other device inserted

22   into the bird's esophagus."  (*Id.*)

23        Plaintiffs assert that § 25982 has caused them to lose millions of dollars worth of foie

24   gras product sales in California.  (SAC ¶¶ 86–88.)  They further assert that the District Attorneys

25   of Los Angeles, Santa Clara, and Monterey Counties threatened to prosecute Hudson Valley and

26   at least two out-of-state distributors of Plaintiffs' foie gras products for violating § 25982 by

27

28   [2]  Solely for concision's sake, the Court abbreviates the sales ban's scope as "force-fed bird
     livers."  The use of this or similar abbreviations throughout this opinion is not meant as a
     construction of the statutory language.

1   selling foie gras products from outside California to California consumers.  (SAC ¶ 89.)

2       Plaintiffs filed this lawsuit on July 2, 2012—the day after § 25982 became operative.

3   (Dkt. 1.)  On September 28, 2012, this Court denied Plaintiffs' motion for a preliminary

4   injunction because Plaintiffs failed to show a likelihood of success on the merits of their

5   vagueness or commerce clause challenges.  (Dkt. 87: Order at 11–28.)  The Court also rejected

6   defendant Kamala Harris's ("Harris") contentions that the Eleventh Amendment barred

7   Plaintiffs' suit and that the case was not ripe.

8       On appeal, the Ninth Circuit affirmed this Court's determination that Harris is not

9   entitled to Eleventh Amendment immunity.  *Association des Éleveurs de Canards et D'Oies du*

10  *Québec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).  The Ninth Circuit stated in dicta that

11  instead of asserting Eleventh Amendment immunity, "a state official who contends that he or she

12  will not enforce the law may challenge plaintiff's Article III standing based on an 'unripe

13  controversy'"—an argument not then before that Court.  *Id.* at 944.  The Ninth Circuit also held

14  that § 25982's scope was limited to liver products produced as a result of force feeding a bird for

15  the purpose of enlarging its liver.  *Id.* at 945–46.  Finally, the Ninth Circuit affirmed this Court's

16  holding that Plaintiffs failed to show a likelihood of success on the merits of their due process

17  and commerce clause claims.  *Id.* at 946–53.

18      On April 2, 2014, Plaintiffs filed their SAC.  (Dkt. 112.)  Plaintiffs' SAC asserts claims

19  for: (1) declaratory relief regarding the application of § 25982 to imports of foie gras products

20  where the commercial sale of such products takes place and title passes outside of the state of

21  California; (2) declaratory relief that § 25982 is preempted by the PPIA; (3) declaratory relief

22  that § 25982 violates the Commerce Clause because it is an extraterritorial regulation; and (4)

23  declaratory relief that § 25982 violates the Commerce Clause because its substantial burden on

24  interstate commerce exceeds its putative local benefits.[3]  (Dkt. 112.)

25  **III.    DISCUSSION**

26          **A.    JUSTICIABILITY**

27  _____

28  [3]  Plaintiffs voluntarily dismissed their claims for declaratory relief regarding the application of §
    25982 to foie gras products from ducks fed entirely outside of California and under the Due
    Process Clause.  (Dkts. 123, 128.)

1   Defendant argues that the Court should dismiss Plaintiffs' case under Federal Rule of

2   Civil Procedure 12(b)(1) because Plaintiffs lack Article III standing, because the case is not ripe,

3   and because it fails to present a "case of actual controversy" as required by the Declaratory

4   Judgment Act, 28 U.S.C. § 2201.[4]

5   **1.    Legal Standard Under Federal Rule of Civil Procedure 12(b)(1)**

6   A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the

7   Court's subject matter jurisdiction to hear the claims alleged. Fed. R. Civ. P. 12(b)(1).  A Rule

8   12(b)(1) motion may be asserted either as a facial challenge to the complaint or a factual

9   challenge. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial

10   challenge, the moving party asserts that the allegations contained in the complaint are

11   insufficient on their face to invoke federal jurisdiction.  *Id.*; *Warren v. Fox Family Worldwide,*

12   *Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  When reviewing a facial challenge, the court is

13   limited to the allegations in the complaint, the documents attached thereto, and judicially

14   noticeable facts. *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3rd Cir. 2000).

15   The court must accept the factual allegations as true and construe them in the light most

16   favorable to the plaintiff.  *Id.*

17   Regardless of the type of motion asserted under Rule 12(b)(1), the plaintiff always bears

18   the burden of showing that federal jurisdiction is proper.  *See Kokkonen v. Guardian Life Ins.*

19   *Co. of America*, 511 U.S. 375, 376-78 (1994); *Valdez v. United States*, 837 F. Supp. 1065, 1067

20   (E.D. Cal. 1993), *aff'd* 56 F.3d. 1177 (9th Cir. 1995).  "In effect, the court presumes *lack* of

21   jurisdiction until plaintiff proves otherwise."  Schwarzer, Tashima & Wagstaffe, California

22   Practice Guide:  Federal Civil Procedure Before Trial § 9:77.10 (Rutter Group 2011) (citing,

23   *inter alia*, *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989))

24   (emphasis in original).  "The proponents of subject-matter jurisdiction bear the burden of

25   establishing its existence by a preponderance of the evidence." *Remington Lodging &*

26   *Hospitality, LLC v. Ahearn*, 749 F. Supp. 2d 951, 955-956 (D. Alaska 2010) (citing *United States*

27

28   [4]  While Defendant frames her argument as one of "justiciability," Plaintiffs' opposition frames it as one of ripeness.  The Court therefore addresses both ripeness and standing.

4

1     *ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir. 1999)).

2              **2.**      **Legal Standard Under Article III**

3                 <u>a.</u>     <u>Standing</u>

4        "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

5 threshold requirement imposed by Article III of the Constitution by alleging an actual case or

6 controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). In order to have standing

7 to seek injunctive relief, the plaintiff must show "the reality of the threat of repeated injury," *id.*

8 at 107 n.8, and a "real or immediate threat . . . that he will again be wronged," *id.* at 111. The

9 plaintiff cannot rely on mere "conjecture" or "speculation" regarding a threat of injury. *Id.* at

10 108.

11        To establish Article III standing:

12        First, the plaintiff must have suffered an injury in fact, the violation of a
          protected interest that is (a) concrete and particularized, and (b) actual or
13        imminent. Second, the plaintiff must establish a causal connection between
          the injury and the defendant's conduct. Third, the plaintiff must show a
14        likelihood that the injury will be redressed by a favorable decision.

15 *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (internal quotations, citations, and

16 alterations omitted).

17                 <u>b.</u>     <u>Ripeness</u>

18        The standing inquiry also overlaps with the constitutional and prudential doctrine of

19 ripeness. "[I]njunctive and declaratory judgment remedies are discretionary, and courts

20 traditionally have been reluctant to apply them . . . [except] in the context of a controversy 'ripe'

21 for judicial resolution." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). "A claim is

22 not ripe for adjudication if it rests upon contingent future events that may not occur as

23 anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998)

24 (internal quotations omitted). In particular, the doctrine "requires us to evaluate both the fitness

25 of the issues for judicial decision and the hardship to the parties of withholding court

26 consideration." *Abbott Laboratories*, 387 U.S. at 149.

27             **3.**      **Legal Standard Under the Declaratory Judgment Act**

28        The Declaratory Judgment Act provides that a federal court may issue a declaratory

1  judgment in "a case of actual controversy . . . whether or not further relief is sought."  28 U.S.C.

2  § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).  "[T]he phrase 'case

3  of actual controversy' in the Act refers to the type of 'Cases' and 'controversies' that are

4  justiciable under Article III."  *MedImmune*, 549 U.S. at 126 (quoting *Aetna Life Ins. Co. v.*

5  *Haworth*, 300 U.S. 227, 240) (1937)).  The test is "whether the facts alleged, under all the

6  circumstances, show that there is a substantial controversy, between parties having adverse legal

7  interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

8  *Id.* at 127.  An actual controversy must exist at all stages of review.  *Preiser v. Newkirk*, 422 U.S.

9  395, 401 (1975).

10                **4.     Application**

11        The thrust of Defendant's argument is that the case is not justiciable because she has not

12  personally threatened to prosecute Plaintiffs under § 25982.  Instead, the only alleged threats of

13  enforcement were made by county district attorneys—and Defendant claims that their actions

14  cannot be attributed to her.  In other words, Defendant argues that Plaintiffs' claims are not

15  justiciable because they sued the wrong defendant.

16        The California Constitution obligates Defendant "to see that the laws of the State are

17  uniformly and adequately enforced."  Cal. Const. art. V, § 13.  Nevertheless, Defendant's

18  supervisory authority over local district attorneys is somewhat limited.  *See id.*; Cal. Gov. Code §

19  12550.  If the Attorney General believes that a district attorney is not adequately enforcing the

20  law, she may step in and institute enforcement proceedings herself.  Cal. Const. Art. V, § 13.

21  She may also require district attorneys to make written reports and may take charge of an

22  investigation or prosecution where necessary.  Cal. Gov. Code § 12550.  However, she does not

23  have the ability to force a district attorney to act or to adopt a particular policy.  *Goldstein v. City*

24  *of Long Beach*, 715 F.3d 750, 756 (9th Cir. 2013) *cert. denied sub nom. Cnty. of Los Angeles,*

25  *Cal. v. Goldstein*, 134 S. Ct. 906, 187 L. Ed. 2d 778 (2014).

26        Nevertheless, the parties do not dispute that under certain circumstances Defendant has

27  the ability to institute enforcement proceedings under § 25982.  Moreover, aside from any

28  enforcement authority conferred by the California Constitution, Defendant is at least empowered

1   to enforce § 25982 by virtue of being a peace officer.  (Dkt. 87: Order at 9.)

2          Defendant seeks to have her pâté and eat it, too.  Defendant asserts that she has no

3   present intention to exercise her authority to enforce § 25982.  She thus argues that Plaintiffs'

4   claims are therefore not justiciable as to her.  However, at the hearing held on July 14, 2014, she

5   refused to stipulate that she would never bring enforcement proceedings under § 25982.

6   Defendant cannot credibly claim that there is no cognizable risk of her prosecuting Plaintiffs for

7   violating § 25982 while simultaneously reserving her right to enforce it.

8          As this Court previously found, Plaintiffs are in the same position as the trappers who

9   challenged California's ban on certain animal traps and poisons in *National Audubon Society,*

10  *Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002).  In *Davis*, the Ninth Circuit reversed the district

11  court's holding that the trappers lacked standing because there was no "genuine threat of

12  imminent prosecution." *Id.* at 855.  The Ninth Circuit first found that the trappers did not need to

13  show a genuine threat of imminent prosecution because their asserted injury was financial loss

14  caused by ceasing certain animal trapping practices to avoid violating the challenged ban.  *Id.* at

15  855–56.  The Court next found that several factors indicated that this economic injury was

16  caused by the enactment of the challenged proposition:

17          (1) the newness of the statute; (2) the explicit prohibition against trapping
            contained in the text of Proposition 4 [the challenged law]; (3) the state's
18          unambiguous press release mandating the removal of all traps banned under
            Proposition 4; (4) the amendment of state regulations to incorporate the
19          provisions of Proposition 4; and (5) the prosecution of one private trapper
            under Proposition 4.

20  *Id.* at 856.  The Court also found that the trappers' injury was redressable because they would

21  resume using the banned traps if the proposition was declared unenforceable.  *Id.*

22          Plaintiffs assert that they have lost millions of dollars because they were forced to either

23  cease sales of their foie gras products in California or face prosecution.  As in *Davis*, "the

24  gravamen of [Plaintiffs'] suit is economic injury rather than threatened prosecution."  *Id.* at 856.

25          Also as in *Davis*, Plaintiffs' injury was caused by § 25982.  The statute is relatively

26  new—it only became effective in July 2012.  It expressly prohibits the sale of liver products

27  produced as a result of force feeding a bird for the purpose of enlarging its liver.  Additionally,

28  local district attorneys have threatened to prosecute Hudson Valley and other similar foie gras

producers under § 25982.  Even assuming *arguendo* that these threats are not attributable to Defendant, they illustrate the causal relationship between § 25982 becoming operative and Plaintiffs' economic injury from ceasing sales in California.  Moreover, Defendant is both obligated to ensure that § 25982 is adequately enforced and authorized to enforce it herself.  Defendant's recent refusal to stipulate that she won't enforce § 25982 reinforces the conclusion that a causal relationship exists.

Plaintiffs' injury is redressable.  They assert that they sold their foie gras products in California before the sales ban and that they lost significant revenue as a result of stopping.  Presumably they would resume their sales if § 25982 were declared unenforceable.  Moreover, at the very least a declaratory judgment or injunction against Defendant would prevent her from using her own authority to enforce § 25982 against Plaintiffs.  Plaintiffs' need for certainty that Defendant won't prosecute them for selling their foie gras products is understandable—particularly given Defendant's coy reservation of the right to enforce § 25982.  Plaintiffs thus have standing to assert their claim.

Additionally, this is not a case where more facts surrounding enforcement will assist the Court.  Plaintiffs "injury is established, and the legal arguments are as clear as they are likely to become."  *Davis*, 307 F.3d at 857.  In relevant part, Plaintiffs assert that the PPIA preempts § 25982.  This is purely a question of statutory interpretation; its resolution would not vary based on the specific facts surrounding enforcement.  The potential hardship to Plaintiffs also favors adjudication.  They will continue to lose revenue by ceasing sales of their foie gras products in California unless and until the sales ban is declared invalid.  Plaintiffs' claim against Defendant is thus ripe.  *Id.*

For the same reasons, Plaintiffs satisfy the Declaratory Judgment Act's "case of actual controversy" requirement.  *See Valley View Health Care, Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1042 (E.D. Cal. 2014) (finding declaratory relief appropriate where a state enforcement agency and private entities disputed whether a state law was preempted).

For the aforementioned reasons, the Court finds that Plaintiffs' claims are justiciable.  The Court therefore DENIES Defendant's motion to dismiss Plaintiffs' complaint under Rule

1    12(b)(1).[5]

2    **B.    PREEMPTION**

3       Plaintiffs move for partial summary judgment on their claim that the PPIA preempts §

4    25982.

5       **1.    Legal Standard for a Motion for Summary Judgment**

6       Federal Rule of Civil Procedure 56 requires summary judgment for the moving party

7    when the evidence, viewed in the light most favorable to the nonmoving party, shows that there

8    is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a

9    matter of law.  Fed. R. Civ. P. 56(a); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th

10   Cir. 1997).

11       The moving party bears the initial burden of establishing the absence of a genuine issue

12   of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  On an issue for

13   which the moving party does not have the burden of proof at trial, the moving party may satisfy

14   this burden by "'showing'—that is, pointing out to the district court—that there is an absence of

15   evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Once the moving

16   party has met its initial burden, the nonmoving party must affirmatively present admissible

17   evidence and identify specific facts sufficient to show a genuine issue for trial.  *See id.* at 323-24;

18   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A scintilla of evidence or evidence

19   that is not significantly probative does not present a genuine issue of material fact.  *Addisu v.*

20   *Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

21       **2.    Express Preemption**

22       Under the Supremacy Clause of the Constitution, Congress has the power to preempt

23   state law.  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013) *cert. denied sub*

24   *nom. Arizona v. Valle Del Sol, Inc.*, 134 S. Ct. 1876, 188 L. Ed. 2d 911 (2014).  Preemption may

25   be express or implied.  *See id.*  Express preemption "arises when the text of a federal statute

26   explicitly manifests Congress's intent to displace state law."  *Id.* (quoting *United States v.*

27

28   [5]  As discussed below, the Court also denies Defendant's motion to dismiss the complaint under
     Federal Rule of Civil Procedure 12(b)(6).

1  *Alabama*, 691 F.3d 1269, 1281 (11th Cir.2012)).

2       The PPIA regulates the distribution and sale of poultry and poultry products.  *Nat'l*

3  *Broiler Council v. Voss*, 44 F.3d 740, 743 (9th Cir. 1994) (per curiam).  This includes foie gras

4  and other products made "wholly or in part from any [goose or duck] carcass or part thereof."

5  *See* 21 U.S.C. §§ 453(e) & (f).

6       The PPIA expressly preempts states from imposing:

7       [m]arking, labeling, packaging, or ingredient requirements (or storage or
        handling requirements . . . [that] unduly interfere with the free flow of
8       poultry products in commerce) in addition to, or different than, those made
        under this chapter [the PPIA] with respect to articles prepared at any official
9       establishment in accordance with the requirements under this chapter[.][6]

10  21 U.S.C. § 467e.  This clause sweeps broadly.  *See Nat'l Meat Ass'n v. Harris*, 132 S. Ct. 965,

11  970 (2012) (finding that the nearly identical preemption provision set forth in the Federal Meat

12  Inspection Act ("FMIA") sweeps broadly).  An "official establishment" is "any establishment as

13  determined by the Secretary at which inspection of the slaughter of poultry, or the processing of

14  poultry products, is maintained under the authority of this chapter."  21 U.S.C. § 453(p).  Thus,

15  the PPIA preempts § 25982 if a sales ban on poultry products resulting from force feeding a bird

16  imposes an ingredient requirement that is in addition to or different than those imposed by the

17  PPIA.

18       Plaintiffs' foie gras products are prepared at official establishments.[7]  (Henley Decl. ¶¶

19  3–4; Henley Decl., Exs. A &B; Cuchet Decl. ¶¶ 3–5; Cuchet Decl., Ex. A.)  Defendant argues

20  that § 25982 regulates a feeding process occuring before Plaintiffs' birds enter an official

21

22  ───────────────
    [6]  Another portion of that clause which is not at issue in this case preempts additional or different
23  requirements "with respect to premises, facilities and operations of any official establishment[.]"
    21 U.S.C. § 467e  There is also a savings clause permitting states to impose recordkeeping
24  requirements that are not inconsistent with the Act and to issue regulations "consistent with this
    chapter, with respect to any other matters [aside from those expressly preempted] regulated under
25  this chapter."  *Id.*

26  [7]  The Court rejects Defendant's assertion that Plaintiffs failed to submit sufficient evidence
    showing that their foie gras products are prepared at official establishments.  Plaintiffs submitted
27  testimony that their products are "prepared" at "official establishments" along with United States
    Department of Agriculture ("USDA") approval documents indicating an "establishment number"
28  and describing the "processing procedures."  (Henley Decl. ¶ 3–4; Henley Decl., Exs. A &B;
    Cuchet Decl. ¶¶ 3–5; Cuchet Decl., Ex. A.)  Taken together, this evidence is sufficient to establish
    that Plaintiffs' foie gras products are prepared at official establishments.

1    establishment.  Defendant thus asserts that § 25982 does not apply with respect to an article

2    produced at an official establishment.  Defendant further argues that § 25982 regulates a process

3    rather than an "ingredient" because it regulates the manner of producing the fattened bird livers

4    rather than the use of a particular ingredient. .

5         The Court recognizes that "[t]he line between regulating the sale of a finished product

6    and establishing product standards will not always be easy to draw.  Any finished product can be

7    described in terms of its components or method of manufacture."  *U.S. Smokeless Tobacco Mfg.*

8    *Co. LLC v. City of New York*, 708 F.3d 428, 434-35 (2d Cir. 2013).  Nevertheless, here the line is

9    clear: Section 25982 expressly regulates only the sale of products containing certain types of foie

10   gras products—i.e. foie gras from force-fed birds.[8]  Section 25982 does not ban the practice of

11   force feeding; this practice is the subject of a separate provision.

12        Additionally, it does not matter whether foie gras obtained from force-fed birds is a

13   different product from non-force-fed bird foie gras.  It is undisputed that the PPIA and its

14   implementing regulations do not impose any requirement that foie gras be made with liver from

15   non-force-fed birds.  Thus, Plaintiffs' foie gras products may comply with all federal

16   requirements but still violate § 25982 because their products contain a particular

17   constituent—force-fed bird's liver.  Accordingly, § 25982 imposes an ingredient requirement in

18   addition to or different than the federal laws and regulations.[9]  *See Nat'l Broiler Council*, 44 F.3d

19   at 745 (finding that a California law imposed a labeling requirement in addition to the PPIA

20   where "plaintiffs' members can label [certain specified] poultry products . . . as 'fresh' and

21   comply with all federal labeling requirements but not comply with the California Act"); *Armour*

22   *& Company v. Ball*, 468 F.2d 76, 83–85 (6th Cir. 1972) (holding that the FMIA's analogous

23   preemption provision preempted Michigan's sales ban on Grade 1 sausage containing non-

24   _____

25   [8]  The Court assumes, but does not decide, that foie gras may be produced without force feeding
     birds to enlarge their livers.  Nevertheless, the Court would find that § 25982 imposes an
26   ingredient requirement regardless of whether foie gras can be produced without force feeding.

27   [9]  For similar reasons the Court need not address whether the USDA's definitions and standards
     regarding foie gras products set forth in its Standards and Labeling Policy Book or Policy Memo
28   076 regarding foie gras product standards is admissible.  Moreover, the fact that § 25982 is
     phrased as a prohibition rather than an affirmative requirement does not exclude it from the
     PPIA's preemptive sweep.  *See Nat'l Broiler Council*, 44 F.3d at 745.

1   striated muscle meat because it imposed requirements in addition to or different than the federal

2   requirements).

3                  a.     *National Meat Association v. Harris*

4        Defendant asserts that Plaintiffs' preemption argument is foreclosed by the Supreme

5   Court's reasoning in *National Meat Association v. Harris***.** In *National Meat* the Court

6   considered whether the FMIA preempts California's statute regulating the treatment and sale of

7   nonambulatory swine. In addressing that issue the Court applied only the first sentence of the

8   preemption clause, which preempts requirements within the FMIA's scope "with respect to

9   premises, facilities and operations of any establishment . . . in addition to, or different than those

10   made under this [Act]." *Nat'l Meat Ass'n*, 132 S. Ct. at 969 (quoting 21 U.S.C. § 678)

11   (alterations in original). The California statute at issue barred: (1) selling or buying

12   nonambulatory animals for human consumption; (2) producing meat for human consumption

13   from nonambulatory animals; and (3) selling meat for human consumption from nonambulatory

14   animals. *Id.* at 970. It also imposed a host of other requirements regarding the treatment of

15   nonambulatory animals. *Id.* The plaintiff was a trade association representing meatpackers and

16   processors, including operators of swine slaughterhouses. *Id.*

17        The Court rejected the argument that the statute was not preempted because it applied

18   only to animals that would not be turned into meat. *Id.* at 973. The Court found that the FMIA's

19   scope included animals not destined to become meat for human consumption. *Id.* The Court

20   distinguished cases holding that the FMIA does not preempt bans on slaughtering horses for

21   human consumption, stating that those cases applied "at a [distance] from the sites and activities

22   that the FMIA most directly governs." *Id.* at 974. According to the Court, unlike the California

23   statute before it, the horse-butchering bans prevented horses from ever being delivered to,

24   inspected at, or handled by a slaughterhouse. *Id.*

25        Additionally, the Court considered whether the sales ban on meat from nonambulatory

26   animals avoided preemption because it applied only after the slaughterhouse's activities

27   concluded. The Court rejected this argument, relying on a functional interpretation of the sales

28   ban as it functioned within the statute as a whole. *Id.* at 972–73. The Court found that the sales

1    ban helped to implement and enforce the statute's other requirements directly regulating

2    activities on Slaughterhouse's premises by ensuring that slaughterhouses remove nonambulatory

3    swine from their production process. *Id.* at 972.  The Court thus stated that the sales

4    ban"functions as a command to slaughterhouses to structure their operations in the exact way the

5    remainder of [the California statute] mandates." *Id.* at 973.  Based on this functional

6    interpretation, the Court found that the sales ban was preempted as an additional or different

7    requirement with respect to the premises, facilities, or operation of an FMIA-covered

8    establishment. *Id.*  According to the Court, if the sales ban weren't preempted "then any State

9    could impose any regulation on slaughterhouses just by framing it as a ban on the sale of meat

10   produced in whatever way the State disapproved. That would make a mockery of the FMIA's

11   preemption provision."

12        *National Meat*'s application to this case is far from clear.  On its face, the California ban

13   on sales of meat from nonambulatory pigs appears analogous to California's ban on sales of foie

14   gras from force-fed birds.  Additionally, the need to prevent states from avoiding preemption via

15   strategic legislative drafting applies with equal force to § 25982.  Thus, if the nonambulatory pig

16   sales ban is preempted by the FMIA then § 25982 should also be preempted by the analogous

17   PPIA.

18        However, the Court's functional approach to statutory construction suggests that § 25982

19   should be understood as a ban on force-feeding birds rather than as a sales ban.  Under this

20   reading, Defendant might be correct that § 25982 does not impose an ingredient requirement

21   because it regulates a process.  If so, then § 25982 would not be preempted.

22        However, this result would turn the Supreme Court's reasoning on its head: Instead of

23   hindering crafty draftsmanship, this analysis would use a functional approach to enable states to

24   creatively avoid preemption.  Under this analysis, any state would be able to avoid preemption of

25   ingredient and labeling requirements by purporting to regulate the process of producing an

26   ingredient rather than directly regulating the ingredient's use.

27        As this discussion illustrates, there is a critical distinction between *National Meat* and the

28   case at bar: *National Meat* considered a different portion of the preemption clause than the one

1   here at issue.[10]  Much of the Court's analysis relied on the fact that the statute expressly preempts

2   regulations with respect to "premises, facilities and operations" of covered establishments.  It did

3   not consider the portion of the FMIA's preemption clause applicable to ingredient and labeling

4   requirements.  Thus, much of the Court's analysis does not apply to the case at bar.

5        In particular, the distinction that the Court drew between the California nonambulatory

6   animal statute and a horse-slaughtering ban is not helpful in the context of Plaintiffs' case.  It

7   may be true that, like a horse-slaughtering ban, § 25982 regulates only activities that occur apart

8   from official establishments' operations.  However, this fact is irrelevant to the question of

9   whether § 25982 imposes an additional or different ingredient requirement.  In contrast to the

10  operations and premises clause, the clause dealing with ingredient and labeling requirements

11  inherently contemplates preempting regulations applicable outside of the operations and facilities

12  of official establishments.  By stating that it applies "with respect to articles prepared at any

13  official establishment," 21 U.S.C. § 467e, the statute makes clear that it applies beyond the

14  activities actually conducted by or at an official establishment.

15       Additionally, unlike in *National Meat*, § 25982's sales ban appears in a separate statue

16  from the ban on the act of force feeding birds.  While this division would be unimportant if it

17  were purely formalistic, Plaintiffs' case illustrates that the divide is functional.  Plaintiffs only

18  assert that the sales ban applies to their foie gras products.  They do not challenge the conduct

19  ban, nor do they argue that the conduct ban applies to their force-feeding of birds outside of

20  California.  In contrast, the plaintiff in *National Meat* challenged both the conduct and sales

21  bans, and was apparently impacted by both.[11]  Thus, unlike in *National Meat*, it makes little

22  sense here to consider § 25982 alongside § 25981 and thus to interpret § 25982 as the functional

23  equivalent of § 25981's conduct ban.

24       Given this ambiguity regarding whether or how *National Meat* applies to Plaintiffs' case,

25

26  [10]  Both the FMIA and PPIA contain preemption clauses with a section applicable to operations
    and another applicable to ingredients and labeling.  *See* 21 U.S.C. § 467e; 21 U.S.C. § 678.

27

28  [11]  *See Nat'l Meat Ass'n v. Brown*, 599 F.3d 1093, 1096–97 (9th Cir. 2010) *rev'd sub nom. Nat'l Meat Ass'n v. Harris*, 132 S. Ct. 965 (2012) (stating that some of the plaintiff organization's members claimed the statute "would prevent the slaughter of approximately 2.5% of their pigs").

the Court concludes that the best approach is to apply *National Meat's* reasoning to reach a result consistent with the goals that the Supreme Court embraced.  The Court therefore concludes that *National Meat* requires the Court, in deciding Plaintiffs' express preemption claim, to prevent California from circumventing the PPIA's preemption clause (or as *National Meat* said, from "mak[ing] a mockery" of it) through creative drafting.  Thus, California cannot regulate foie gras products' ingredients by creatively phrasing its law in terms of the manner in which those ingredients were produced.

For the aforementioned reasons, the Court finds that the PPIA expressly preempts § 25982.  The Court therefore GRANTS Plaintiffs' motion for partial summary judgment.[12]

**IV.    ORDER**

1.  For the aforementioned reasons, the Court GRANTS Plaintiffs' motion for partial summary and ENTERS JUDGMENT in favor of Plaintiffs on their third cause of action concerning preemption.  The Court therefore PERMANENTLY ENJOINS AND RESTRAINS Defendant and her agents, servants, employees, representatives, successors, and assigns from enforcing California Health and Safety Code § 25982 against Plaintiffs' USDA-approved poultry products containing foie gras.

2.  For the aforementioned reasons, the Court DENIES Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: January 7, 2015

_____
STEPHEN V. WILSON
United States District Judge

---

[12]  In light of this holding, the Court need not reach any of the other arguments raised in the parties' motions.

15