Michael Tenenbaum, Esq. (No. 186850)
*mt@post.harvard.edu*
THE OFFICE OF MICHAEL TENENBAUM, ESQ.
1431 Ocean Ave., Ste. 400
Santa Monica, CA  90401-2136
Tel    (424) 246-8685
Fax    (424) 203-4285

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and SEAN "HOT" CHANEY, an individual;<br><br>Plaintiffs,<br><br>– against –<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California;<br><br>Defendant. | Case No. 2:12-cv-05735-SVW-RZ<br><br>**FOURTH AMENDED COMPLAINT TO DECLARE INVALIDITY AND ENJOIN ENFORCEMENT OF CALIFORNIA HEALTH & SAFETY CODE § 25982 FOR VIOLATION OF THE SUPREMACY CLAUSE AND THE COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION**[*]<br><br>**DEMAND FOR JURY TRIAL** |

[*] This pleading amends Plaintiffs' First Cause of Action pursuant to the Court's order of January 13, 2020, and, to preserve Plaintiffs' appellate rights, retains the *unamended* claims from Plaintiffs' Third Amended Complaint as to which leave to amend was not granted.  *See, e.g., City and County of San Francisco v. U.S. Dept. of Transp.*, 2013 WL 772652, No. C 12-0711 RS, at *2 (N.D. Cal. Feb. 28, 2013) (noting inclusion in amended complaint of claims as to which leave to amend not granted and explanation that claims were repleaded to preserve appellate rights).  Defendant thus need not move to dismiss the unamended claims.

## JURISDICTION

1.     This case arises under the Constitution of the United States and under 42 U.S.C. § 1983.  This court has subject-matter jurisdiction under 28 U.S.C. § 1331.

## NATURE OF THE ACTION

2.     As defined by the United States Department of Agriculture ("USDA") pursuant to its authority under the federal Poultry Products Inspection Act (the "PPIA"), 21 U.S.C. §§ 451 *et seq.*, to establish the "specifications or definitions and standards of identity or composition" for "the principal constituents of any poultry product," foie gras is the liver "obtained exclusively from specially fed and fattened geese and ducks." No State in America bans the sale of foie gras products — except for California.  As of July 1, 2012, California banned:  (1) the force-feeding of geese and ducks in California for the purpose of enlarging their livers beyond normal size; and — in a separate statute — (2) the sale in California of a poultry product "if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size."  Cal. Health & Safety Code §§ 25981, 25982.  The Ninth Circuit has interpreted section 25982 such that the only products that it bans are poultry liver products.

3.     California's definition of "force feeding" means "a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily," and "[f]orce feeding methods include, but are not limited to, delivering feed through a tube[.]"  Cal. Health & Safety Code § 25980(b).  By conditioning the sale of foie gras products in California on the process, method, or agricultural practice that is used to raise the birds from which the poultry ingredients are obtained, section 25982 violates the dormant Commerce Clause as applied to Plaintiffs' foie gras products where the force feeding of their ducks takes place entirely outside California, i.e., in Canada and New York.  Indeed, Plaintiffs' poultry products that are the subject of this action are from ducks that are bred, hatched, raised, slaughtered, and processed into finished poultry products entirely beyond California's borders.  Section 25982 is thus an unconstitutional extraterritorial regulation, and it does not just place a burden

FOURTH AMENDED COMPLAINT

1   on foreign and interstate commerce but creates a blockade to it — with zero effect on

2   the welfare (or even the comfort) of any duck in California.

3       4.      To produce the foie gras used in their foie gras products, the farmer-

4   Plaintiffs specially feed and fatten their ducks by hand two to three times a day in their

5   final days before slaughter, using a tube for anywhere between two to ten seconds.

6   Because it is impossible to produce foie gras products in accordance with federal

7   requirements — i.e., using liver "obtained exclusively from specially fed and fattened

8   geese and ducks" — without violating California's requirement that a poultry product

9   not be "the result of force feeding a bird" (as California defines "force feeding"),

10  section 25982 not only imposes additional and different requirements on the ingredients

11  in the Plaintiffs' poultry products but also functions as a complete ban on the most

12  valuable constituent in Plaintiffs' poultry products.  And, because it is impossible to

13  produce foie gras without force feeding, it is impossible for the farmer-Plaintiffs to

14  produce USDA-approved foie gras products for sale in California without violating

15  section 25982.  Under the Supreme Court's preemption jurisprudence, where it is

16  impossible for a private party to comply with both federal law and state law, the state

17  law — i.e., section 25982 here — is preempted, and it is no answer that Plaintiffs can

18  choose to stop selling their USDA-approved poultry products containing force-fed foie

19  gras in California.

20      5.      Plaintiffs are:  (1) duck farmers in Canada and New York who sell a

21  variety of USDA-approved poultry products in interstate and foreign commerce, most

22  notably poultry products containing foie gras, and (2) the executive chef from Hot's

23  Restaurant Group, Inc., which operated Hot's Kitchen in Hermosa Beach, a restaurant

24  that sold foie gras products before section 25982 went into effect and again after

25  January 7, 2015 — when enforcement of section 25982 was enjoined as a result of the

26  permanent injunction issued by this Court on that date.  Chef Chaney sold foie gras

27  products during the period when enforcement of section 25982 was enjoined by this

28  Court, but, out of fear of prosecution, he has refrained from selling foie gras products

since January 8, 2019, when this Court's injunction was vacated by a ruling from the Ninth Circuit (whose mandate took effect on that date). Because, by virtue of their power to enforce section 25982, Defendant and the prosecutors and peace officers he supervises in California are similarly forcing all sellers of the farmer-Plaintiffs' poultry products to either stop selling foie gras products or face prosecution in California, the farmer-Plaintiffs are again suffering lost sales and, as of January 2019, have been forced to stop selling in California — and the farmer-Plaintiffs have, in fact, stopped selling their foie gras products here.

6.     Section 25982 raises an initial question of statutory interpretation as to which Plaintiffs seek relief: Does section 25982's provision that a force-fed foie gras product may not be "sold in California" also mean that such a product may not even be *imported* into California? Or, in banning only the sale *in California* — and omitting any reference to "imports" (or even to offers for sale or contracts for sale), which terms appear commonly throughout countless other provisions of the California Health and Safety Code and similar California statutes — is section 25982 inapplicable where the sale takes place, by virtue of the passing of title, *outside* the state? The answer to this question is necessary because, while Defendant's predecessor had effectively allowed such out-of-state sales to California consumers during the time that she was not enjoined from enforcing section 25982, Defendant Becerra has never given any assurance that he will not enforce section 25982 against out-of-state sellers of the farmer-Plaintiffs' foie gras products, and, until this Court issued its permanent injunction against enforcement of section 25982 on January 7, 2015, the District Attorneys whom Defendant supervises in at least three counties were threatening to prosecute Plaintiff HVFG LLC and other out-of-state sellers of the farmer-Plaintiffs' foie gras products having their products shipped from outside California to consumers in California. (Defendant Becerra is statutorily authorized to "take full charge" of these investigations, consistent with the exercise of his supervisory powers over the District Attorneys in all 58 counties, and, under California's constitution, has the duty "to

prosecute any violations of law … and shall have all the powers of a district attorney" whenever he believes the law is not being adequately enforced.)  In light of their fear of prosecution, the farmer-Plaintiffs and other out-of-state sellers of their products have been forced to stop selling their foie gras products for shipping to California (and Plaintiffs indeed have stopped making such sales).  If section 25982 were to apply to such imports, such application would further magnify the burden that section 25982 places on interstate commerce and on foreign commerce.

7.     Until section 25982 took effect on July 1, 2012, and again from January 7, 2015, until January 8, 2019 (i.e., during the time when enforcement of section 25982 was enjoined as a result of the permanent injunction issued by this Court), the farmer-Plaintiffs' foie gras products were freely sold throughout the United States, including in California.  Now that enforcement of section 25982 is no longer permanently enjoined, sellers of the farmer-Plaintiffs' foie gras products again face prosecution.  Because sellers in California fear the massive civil penalties that section 25983[1] authorizes for violations of section 25982 — up to $1,000 per sale per day — Plaintiffs are again losing significant sales with each day that section 25982 is not enjoined.  During the period in which the ban was in effect and not enjoined, i.e., from July 1, 2012, to January 7, 2015, Hudson Valley lost approximately $1.5 million per year in sales of wholesale foie gras products to California, for a loss of over $3.5 million, and now not only are sellers of its products in California again threatened with prosecution but it faces such threats even for its out-of-state sales shipped to Californians.  Palmex, the leading Canadian farmer of foie gras, lost approximately $750,000 in annual sales of wholesale foie gras products to California before July 1, 2012, which represented 25% of its U.S. sales, for a loss of nearly $2 million, and its products, too, now again face prosecution.  And Hot's was selling as much as $6,000 of foie gras products a month before the ban, for a loss of over $100,000 while the ban was in effect and not

---

[1]     All unspecified section references are to the California Health & Safety Code.

enjoined; without an injunction to protect him, Chef Chaney is now forced to refrain from selling foie gras products and will continue to lose valuable sales as a result. In light of Defendant Becerra's immunity from suit for the lost sales they will suffer if the ban is not enjoined, Plaintiffs are suffering irreparable harm.

8.     Section 25982 is unconstitutional on several grounds. In the first place, section 25982 is preempted in multiple ways. Congress has provided in the PPIA that the federal ingredient requirements for poultry products expressly preempt state laws that purport to impose any ingredient requirements "in addition to, or different than" those made under the PPIA. 21 U.S.C. § 467e. Plaintiffs' poultry products containing foie gras fully satisfy all of USDA's requirements, but section 25982 imposes an additional and different requirement that the duck livers which are the primary ingredients in each of Plaintiffs' foie gras products must have been obtained from the livers of non-force-fed ducks. California's requirement for duck products is thus "in addition to, or different than" the federal requirements.

9.     Indeed, the force-fed duck liver in Plaintiffs' USDA-approved poultry products is not only the principal ingredient but also the most valuable constituent, and section 25982's requirement that it be omitted would render these products adulterated under the PPIA. 21 U.S.C. § 453(g)(8) (deeming product "adulterated" if "any valuable constituent has been in whole or in part omitted or abstracted therefrom; or if any substance has been substituted, wholly or in part therefor").

10.     Moreover, as a result of the force feeding, lipogenesis, i.e., the synthesis of fatty acids, exceeds secretion, resulting in the specially fattened liver that is necessary to qualify as foie gras. As a matter of biochemistry, the liver obtained from a force-fed duck is physically and chemically different than the liver obtained from a duck that has not been force-fed. As Plaintiffs will prove to the legal standard at trial, while Defendant's predecessor argued that section 25981's ban on force feeding means that "[f]armers are not prohibited from leaving out more food than usual for a particularly hungry duck," it is physically impossible to produce foie gras without force feeding.

11.   Section 25982 is therefore preempted under the doctrine of impossibility preemption, since it is physically impossible for Plaintiffs to include in their poultry products the duck liver foie gras that they must obtain exclusively from specially fed and fattened ducks in order for them to comply with federal law while at the same time being forced to exclude that foie gras from their poultry products in order to avoid prosecution under California law.

12.   The PPIA provides concurrent jurisdiction to the States to act "consistent with the requirements under [the PPIA] … over articles required to be inspected under [the PPIA] *for the purpose of preventing* the distribution for human food purposes of any such articles *which are adulterated*."  Enforcement of section 25982 against Plaintiffs' foie gras products further undermines this limited grant of authority by causing Plaintiffs' poultry products to be adulterated.  And longstanding case law holds that Congress intended to occupy the field of poultry product *ingredients* and to unmistakably ordain the sole standards to ensure national uniformity.

13.   As applied to the import and sale of Plaintiffs' foie gras products from ducks raised and fed entirely in other states and countries, section 25982 is also unconstitutional as an impermissible extraterritorial regulation under the dormant Commerce Clause.  As applied to the sale of products from ducks raised and fed *in California*, section 25982 merely serves to reinforce section 25981's ban on the force-feeding of ducks here in this state, as Defendant has previously argued in this case.  Indeed, Defendant's predecessor argued to this Court:  "The sale ban merely reinforces the in-state production ban by removing the incentive for in-state producers to force feed birds in contravention of the ban."  Because Plaintiffs do not raise or feed any ducks in California, such an application of section 25982 would have no effect on them.  Yet, to the extent that section 25982 is applied to the sale of wholesome foie gras products from ducks raised and fed entirely *outside* California — where the only condition for sale depends on how the ducks are fed in *other* states and countries — then section 25982 violates the dormant Commerce Clause as an attempt to control

- 6 -

commerce in other states.  And the Ninth Circuit has now held that the direct purpose of section 25982 is to actually regulate feeding practices:  "Section 25982 … simply seeks to prohibit a feeding method that California deems cruel and inhumane [and] therefore addresses … how animals are treated long before they reach the slaughter-house gates.")  As applied to Plaintiffs, the practical effect of section 25982 would be to impose a complete ban on Plaintiffs' wholesome, unadulterated, USDA-certified duck products from sale in California based solely on conduct that takes place entirely outside the state — and outside the United States — namely in Canada and New York. Moreover, because using a tube to feed a duck in the final weeks before slaughter is the only method known to man for producing duck foie gras, and because the entire supply of foie gras in the United States is produced using a tube, the actual effect of section 25982 is a complete import and sales ban on wholesome, USDA-approved foie gras products.

14.    And if section 25982 were somehow to survive the foregoing challenges, it would still violate the Dormant Commerce Clause under the test set forth by the Supreme Court in *Pike v. Bruce Church, Inc.*, 39 U.S. 137, 142 (1970).  If applied to ban foie gras products from ducks that have been force-fed entirely in other states and *countries*, section 25982 does not just incidentally or even "substantially burden" interstate and foreign commerce in foie gras products — it places a *complete ban* on them.  It does so in the name of a purported local interest, i.e., the prevention of animal cruelty, that (while misguided but perhaps a way of reinforcing California's ban on the force feeding of its *own ducks*) is neither local nor legitimate as applied to products from ducks that are raised entirely *in other states and countries*.  Indeed, as acknowledged by California's own Department of Food and Agriculture — the state government authority most familiar with foie gras production at the time — "Production of Foi[e] Gras in California does not involve cruelty at any time," and "Foi[e] Gras production is a food production industry well established in conformity with humane animal management, safe food practices and environmentally protective

provisions of State and Federal law." In other words, California's putative local interest is illusory, and there are ready alternatives to a complete ban on the sale of force-fed foie gras products, such as limiting the application of section 25982 to foie gras products from birds force-fed in California or point-of-sale notices to consumers that the particular foie gras product was produced by force-feeding.

15.   Section 25982 imposes a substantial burden on interstate and foreign commerce by operating as a complete ban on the sale in California of all out-of-state and imported foie gras products. Moreover, if section 25982 is interpreted to ban even the import of foie gras products where the sale of those products takes place entirely outside California and the product is shipped here, then the ban has an even more substantial burden on interstate commerce.

16.   Plaintiffs therefore seek a declaratory judgment and permanent injunction against the enforcement of section 25982 as applied to their USDA-approved poultry products containing foie gras, as requested at the conclusion of this pleading.

### THE PARTIES

17.   Plaintiff Association des Éleveurs de Canards et d'Oies du Québec (hereafter, the "Canadian farmers") is a Canadian non-profit corporation formed in 2009 to represent the interests and defend the rights of producers and exporters of foie gras and other duck products from Quebec, Canada, to the United States. The Canadian farmers include the province's leading producers and exporters of foie gras products and other products from moulard ducks, who raise, slaughter, and process moulard ducks into USDA-inspected poultry products in USDA-inspected facilities in full compliance with Quebec and Canadian law. Indeed, while not intended as a regulation, the Canadian farmers — with the support of the Quebec government agency for "Agriculture, Pêcheries et Alimentation" ("Agriculture, Fisheries, and Food") and the direct participation of Canadian government officials — have published a "Guide d'elevage de canards" (a "Duck Production Guide") that includes specific requirements for the force feeding of ducks, such as that "[f]eed quantities given to each duck must

- 8 -

match the duck's intake capacity" and that force feeding equipment must be "used so it does not cause injury or pain to the animals."  The Canadian farmers account for virtually all of the production of foie gras products in Canada as well as 100% of the exports of foie gras products to the United States.  The foie gras products of Canadian farmers such as Palmex, Inc., Élevages Périgord (1993) Inc., and Aux Champs d'Élisé François Inc. were regularly sold in California until section 25982 took effect on July 1, 2012, and again after enforcement of section 25982 was enjoined by this Court on January 7, 2015, and any of the current members of the Canadian farmers would have standing in their own right to present the claims asserted in this action, though neither the claims asserted nor the relief requested requires that these association members participate individually in this suit.  The Canadian farmers are also suffering injury as an association in the form of a continuing drain on its resources as long as section 25982 remains in effect and the association must devote its resources to trying to ascertain the scope of its application and educate its members as to the status of enforcement of section 25982 against the members' products.

18.    Plaintiff HVFG LLC, which does business as Hudson Valley Foie Gras ("Hudson Valley"), is a New York farmer of moulard ducks that are raised, slaughtered, and processed into USDA-inspected poultry products in its USDA-inspected facilities in full compliance with New York and federal law.  Hudson Valley is the largest producer of foie gras products from moulard ducks in the United States.  Hudson Valley's farm is located in a hamlet in the Town of Liberty, New York.  Consistent with the laws applicable to it in the Town of Liberty and the State of New York, Hudson Valley's agricultural practices are conducted in conformity with generally accepted and sound agricultural practices.  Indeed, section 76-1 of the Code of the Town of Liberty expresses the town's "general purpose and intent … to permit the continuation of agricultural practices," i.e., "[t]hose practices necessary for the on-farm production, preparation and marketing of agricultural commodities," and, "[i]n order to maintain a viable farming economy in the Town of Liberty, it is necessary …

to allow agricultural practices inherent to and necessary for the business of farming to proceed and be undertaken free of unreasonable and unwarranted interference or restriction."

19.     Plaintiff Sean "Hot" Chaney is the former executive chef of Hot's Restaurant Group, Inc., a California corporation that until last year operated Hot's Kitchen, a restaurant in Hermosa Beach, California.  Until July 1, 2012, Hot's was free to sell foie gras products as part of its menu items, but it was forced to stop selling foie gras products after that date because it could not afford to risk prosecution — and literally millions of dollars in penalties — if, even without its knowledge, any of these products could be traced to a duck that was determined to have been fed "more food than a typical bird of the same species would consume voluntarily" for the purpose of enlarging its liver.  Hot's sold foie gras again after January 7, 2015, when this Court permanently enjoined enforcement of section 25982.  Although Hot's closed Hot's Kitchen in January 2018, Chef Chaney continued to provide catering and private chef services for events at which he has sold foie gras products — but, out of fear of prosecution, he has refrained from selling foie gras products since January 8, 2019, when this Court's injunction was vacated by a ruling from the Ninth Circuit (whose mandate took effect on that date).

20.     Defendant Xavier Becerra is the current Attorney General of California, having succeeded the previous defendant Attorney General of California, Kamala D. Harris, on January 24, 2017.  In his official capacity under the California Constitution, the Attorney General is the chief law officer of the state and has direct supervision over every district attorney, sheriff, other law enforcement officers.  Cal. Const. Art. 5, § 13. Under section 12550 of the California Government Code, Defendant Becerra not only has "direct supervision over the district attorneys of the several counties" but also — whenever he "deems it advisable" — "shall assist" a district attorney and may "take full charge of any investigation or prosecution of violations of law," in which case he "has all the powers of a district attorney."  Defendant Becerra is also a peace officer

1  and, as such, has direct authority to enforce section 25982 pursuant to section 25983(a)

2  of the California Health and Safety Code.

3  VENUE

4      21.    Venue in this district remains proper under 28 U.S.C. § 1391(b) because

5  Defendant Becerra maintains an office in this district and is a resident of the State of

6  California, because the injuries giving rise to Plaintiffs' claims are taking place in this

7  district, because a substantial part of the property that is the subject of the action is

8  situated in this district, and because Defendant Becerra is subject to the Court's

9  personal jurisdiction in this district.

10  GENERAL ALLEGATIONS

11  **John Burton tried (but failed) to ban the import of foie gras products into the
12  United States.**

13      22.    On April 8, 1975, John Burton, then a congressman from California,

14  introduced legislation in the United States House of Representatives to "prohibit the

15  importation of pate de foie gras made from the livers of ducks and geese which have

16  been force-fed by mechanical means."  Mr. Burton apparently recognized that,

17  consistent with the Supremacy Clause and Commerce Clause, any ban on interstate or

18  foreign commerce of a wholesome poultry product containing foie gras could only

19  properly be enacted by Congress, i.e., not by a state.  His bill,  introduced in the first

20  session of the 94th Congress as H.R. 5676, provided that, after the date of its

21  enactment, "no pate de foie gras may be *imported* into the United States if such pate is

22  composed in whole or part of the liver of any duck or goose which has been force-fed

23  by mechanical means."  The bill did not attract any cosponsors and failed to even make

24  it out of committee.

25      23.    The following year, on July 28, 1976, Mr. Burton introduced another bill

26  in the United States House of Representatives, this time to "prohibit the importation of

27  products made from the livers of ducks or geese which have been force-fed."  This bill

28  was not limited to the product known as pâté de foie gras but applied, on its face, to all

products made from the livers of force-fed ducks and geese.  Mr. Burton's bill, introduced in the second session of the 94th Congress as H.R. 14910, provided that, after the date of its enactment, "no product which is made, in whole or in part, from the liver of any duck or goose which has been force-fed may be imported into the United States."  That bill, too, failed to attract even a single cosponsor, and it never made it out of committee.

24.     Mr. Burton's first two attempts to ban foie gras products reveal that he knew full well how to draft a law that attempts to ban the *importation* of a product containing foie gras, as opposed to just its *sale*.  Mr. Burton's legislative draftsmanship is important to interpreting the scope of section 25982 of the California Health and Safety Code.

**Every foie gras product destined for human consumption is subject to extensive federal regulation.**

25.     Under the PPIA, all poultry animals and all poultry products intended for human consumption in America — including all duck products, such as those containing foie gras — must undergo several stages of federal inspection by USDA.  21 U.S.C. §§ 451 *et seq.*

26.     Pursuant to the PPIA, USDA and its Food Safety and Inspection Service ("FSIS") have issued comprehensive and detailed regulations and directives governing the ante-mortem inspection of the ducks; the premises, facilities, and operations of the establishments at which the ducks are slaughtered and processed; the post-mortem inspection of the ducks; the marking of duck products with the USDA seal; the labeling and containers of duck products; and even the definitions and standards of identity or composition of duck products.  9 C.F.R. § 381.1 *et seq.*

27.     Federal regulations further authorize the Administrator of the FSIS to "prescribe definitions and standards of identity or composition for poultry products whenever he determines such action is otherwise necessary for the protection of the public."  9 C.F.R. § 300.2(a); 9 C.F.R. § 381.155(a).

28.   While the PPIA does not broadly occupy "the field of poultry products," it does evidence Congress's intent to preempt the field of poultry product *ingredients*.

29.   As the Sixth Circuit has held in citing the identical preemption language in the Federal Meat Inspection Act (the "FMIA") as Congress included in the PPIA, "The Federal Act itself manifests a congressional intent to prescribe uniform standards of identity and composition," and "the congressional purpose to standardize identity and composition of meat food products would be defeated if states were free to require ingredients, however wholesome, which are not within the Secretary's standards." Moreover, the Sixth Circuit has held that, "Thus, by prohibiting a state's imposition of … ["]ingredient requirements" which are "in addition to, or different than [those made by the Secretary]," Congress has "unmistakably … ordained" that the Federal Act fixes the sole standards. *["I]ngredient requirements" prescribed by the Secretary completely preempt this field of commerce.* [¶] [A] state would not be permitted to prevent the distribution in commerce of any article that "conforms" to the "definition and standard of identity or composition." Thus, Congress is ordaining uniform national ingredient requirements prescribed by the Secretary." *Armour & Co. v. Ball*, 468 F.2d 76, 84 (6th Cir. 1972) (emphasis added).

30.   And the Fifth Circuit recognized in *Miss. Poultry Ass'n v. Madigan*, 31 F.3d 293 (5th Cir. 1994), that "Congress thus subjected all domestic poultry production sold in interstate commerce to a single, federal program with uniform standards." *Id.* at 295-96 (emphasis removed). As the Fifth Circuit explained, "The PPIA created one uniform regulatory scheme for the national market," and "the PPIA maintain[s] uniformity regarding the interstate sale of domestic poultry products." *Id.* at 296 (emphasis added).

31.   As the Supreme Court said in *National Meat Ass'n v. Harris*, 565 U.S. 452, 459 (2012) about the virtually identical preemption clause in the FMIA, the federal statute "prevents a State from imposing any additional or different — even if non-conflicting — requirements."

**The USDA has established a standard of identity and composition for products that contain foie gras based on negotiations with the French government.**

32.    As poultry products under the PPIA, Plaintiffs' foie gras products are subject to federal standards of identity and composition enforced by the USDA.

33.    The current USDA Food Standards and Labeling Policy Book cites a federal policy memo going back to September 1984, which explains that the USDA standards for foie gras are the result of a long-standing agreement with the French government.

34.    On September 21, 1984, the Director of the USDA's Standards and Labeling Division wrote a memo to all of the Branch Chiefs in the Standards and Labeling Division to address the following issue: "What are the standards and labeling requirements for duck and/or goose liver 'foie gras' products?" The Director's memo reflects the standards — set forth below — that have been in force for the past 30 years and that continue to apply today. The Director explained how the standards were established based on a petition to the USDA made by the French government and an agreement between the United States and France:

> In 1975, representatives of the French government petitioned the USDA to adopt the French standards for foie gras products. An agreement was reached between our respective governments to follow these standards pending a rulemaking procedure. Although a rulemaking was not finalized at that time, over the years the French standards were followed and applied to foie gras products.
>
> In June of 1980, the French government and trade associations revised their 1973 standards for foie gras products and requested our renewal and approval of the new regulations. Since the standards followed over the years for the imported product have become obsolete and the marketing and consumption of these products have become more popular, SLD has decided to follow these requirements with some modifications including the English translation of French terms, the requirements for product name qualifiers, and other general policy requirements. The adoption of these requirements will eliminate confusion and provide a descriptive classification for these products.

35.     As for the product that is the target of section 25982, i.e., foie gras, FSIS has issued ingredient standards that recognize that explicitly ducks will be specially fed and fattened to create foie gras:  "Goose liver and duck liver foie gras (fat liver) *are obtained exclusively from specially fed and fattened geese and ducks.*"[2]  This language is a translation from the French government's definition of foie gras, which provides that foie gras must come "*exclusivement d'oies ou de canards, spécialement gavés*," where *gavés* means "force-fed."  (French law defines foie gras to mean the liver of a duck or goose "specially fattened by *gavage*.")

36.     The federal standards for the identity and composition of poultry products address no less than 14 approved duck and goose liver products — including the foie gras products produced by Hudson Valley and the Canadian farmers.  In addition to these foie gras products, for which USDA sets official ingredient requirements, Hudson Valley and the Canadian farmers regularly apply for and are granted USDA approval of other foie gras products, which requires them to specify the identity and composition of the products, including the precise ingredients.

37.     Pursuant to the federal standards, "[p]roducts in which foie gras is used are classified into [] three groups based on the minimum duck liver or goose liver foie gras content."

38.     The first group includes Whole Duck Foie Gras (i.e., "Foie Gras de Canard Entier"), in which duck liver foie gras — as defined above — must be the only animal tissues present.

39.     The second group includes Plaintiffs' primary product, Duck Foie Gras (i.e., "Foie Gras de Canard"), as well as Block of Duck Foie Gras (i.e., "Bloc de Foie Gras de Canard").  The ingredients for these products are specified as follows:

These products are composed of a minimum 85 percent goose liver or duck liver foie gras, although "parfaits" may contain mixtures of goose liver and/or duck

---

[2]     In addition, a specific FSIS directive instructs federal inspectors to consider fatty duck livers as wholesome, which thus renders them fit for sale in interstate commerce.

liver foie gras.  These products may also contain a wrapping or stuffing consisting of the lean or fat of pork, veal, or poultry, pork liver, and/or aspic jelly.  When these ingredients are used, their presence must be indicated in a product name qualifier.  Truffles, when featured in the product name, are required at a minimum 3 percent level.

40.    The third group includes Pate of Duck Liver (i.e., "Pate de Foie de Canard"), with similar ingredient requirements as to those it the second group except that they "must contain a minimum of 50 percent duck liver and/or goose liver foie gras."

41.    None of these standards requires that the duck liver foie gras be obtained from a non-force-fed duck.

42.    Indeed, USDA imposes no requirements on the use of a poultry ingredient based on the bird's diet; USDA explicitly allows poultry products, including Plaintiff's poultry products, to be produced with duck liver foie gras regardless of how the duck was fed.

**Foie gras products were sold for decades in California until the provisions of SB 1520 took effect on July 1, 2012.**

43.    In the years leading up to the enactment of section 25982 in late September 2004, foie gras products had been sold for decades in California.

44.    Sonoma Foie Gras was the only farm in California that produced foie gras in the state and sold it here.  It had been doing so for 20 years until July 1, 2012, when it was forced to cease production as a result of section 25981 taking effect.

45.    But foie gras sold in California was produced by a host of farmers outside California, primarily in New York, in Canada, and in France.

46.    In 2004, for example — i.e., the year in which John Burton introduced Senate Bill 1520 — the French foie gras producer Rougié sold over $400,000 of foie gras products in California, up from over $350,000 the year before.  That same year, Palmex, Inc., one of the Canadian farmers, sold roughly $100,000 of foie gras products in California, as it had in 2003.

47.     Plaintiff Hudson Valley had also been selling its foie gras products to California for many years.

**As a legislator in California, John Burton introduced Senate Bill 1520 to target the force-feeding of ducks *in California*.**

48.     As a California State Senator in 2004, John Burton introduced Senate Bill 1520 to target the force-feeding of ducks in California.

49.     California Senate Bill 1520, legislation authored by then Sen. John Burton to add sections 25980 – 25984 to the California Health & Safety Code.

50.     Section 25982 provides: "A product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size."

51.     Section 25980(b) provides a particular definition of "force feeding" for purposes of the statute:  "Force feeding a bird means a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily."  As an example of some *methods* that may be used to carry out this process, section 25980(b) further provides:  "Force feeding methods include, but are not limited to, delivering feed through a tube or other device inserted into the bird's esophagus."

52.     When Mr. Burton first introduced the bill, the definition of force feeding was limited to what a duck or goose would naturally consume on its own.  It said: "Force feeding a bird means a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily *while foraging*."  This limitation was removed from the final version of the bill.  Nevertheless, in response to Plaintiffs' argument in this case that the statutory definition of "force feeding" provides no ascertainable measure of how much food is "more food," Defendant's predecessor could not say and so argued:  "Farmers are not prohibited from leaving out more food than usual for a particularly hungry duck."

53.   Mr. Burton's focus was on the production of foie gras in California.  The various legislative analyses all state:  "According to the author's office, this bill is intended to prohibit the force feeding of ducks and geese for the purpose of enlarging their livers beyond their normal size."

54.   For example, Mr. Burton described the "common method" of force feeding to produce foie gras as being "accomplished by restraining the bird and inserting a 10-to-12 inch metal or plastic tube into the bird's esophagus and delivering large amounts of concentrated meal and compressed air into the bird."  While Sonoma Foie Gras in California used essentially a variation of this method of forcing food into the esophagus, this is not the method used by Plaintiff Hudson Valley, for example, which does not use compressed air or any other pumping action to force food into its ducks.  (It relies on basic gravity.)

55.   The legislative analyses of SB 1520 discuss the number of ducks *in California* that would be affected by the bill, noting that Sonoma Foie Gras has about 20,000 ducks on its farm in the Central Valley and shipped between 1,000 and 1,500 ducks a week, selling all the duck meat, not just the livers.  The legislative analyses also focused on the number of employees who would be affected by the bill, noting that there were "about 14 employees at SFG with annual sales of about $1,500,000, and sixty percent (60%) of its business coming from selling foie gras."

56.   By contrast, the legislative analyses made no more than a passing reference to Plaintiff Hudson Valley and never purported to assess how many ducks might be affected if section 25982's ban on sale were extended to punish farmers in New York for using a feeding method that the California Legislature was preventing its own farmers from using.  In the same vein, the legislative analyses did not even attempt to identify any of the French producers of foie gras or consider how section 25982 might apply to them.  And, despite the fact that at least one of the Canadian farmers was selling foie gras in the United States at the time, the legislative analyses make no reference to any foie gras producer in Canada.

57.     Indeed, while Sonoma Foie Gras was invited to testify at the hearings on SB 1520 — and its president did so extensively — no farmer from outside the state was invited or otherwise informed about any potential application of the legislation to out-of-state farmers.

58.     Section 25894(a) delayed the operative date of the entire statutory scheme for seven and a half years, i.e., from the effective date of the statute on January 1, 2005, until July 1, 2012.  Section 25984(c) explains the legislature's intention:

> It is the express intention of the Legislature, by delaying the operative date of provisions of this chapter pursuant to subdivision (a) until July 1, 2012, to allow a seven and one-half year period for persons or entities engaged in agricultural practices that include raising and selling force fed birds to modify their business practices.

59.     This language, which was added as an amendment prior to final passage, is the result of a deal that Mr. Burton negotiated with Sonoma Foie Gras — and with that California farm alone — to delay the effective date of section 25982 for at least seven years to allow it to plan accordingly.

60.     As the Senate Republican Floor Commentaries reflect, "The bill has now been amended to become operative in 2012 so that *Sonoma Foie Gras*" — i.e., the sole California farmer of ducks raised for foie gras — "may find alternative feeding practices to produce foie gras."  Or, as they put it more realistically:  "the amendment gives the *Sonoma farm* time to adjust."

61.     Section 25984(b) was also added along the way to provide further protection for the benefit of the one California farmer that was already producing foie gras in California.  It provides a "limited immunity" from any civil or criminal cause of action against a person who, prior to July 1, 2012, engaged in any act prohibited by SB 1520.  While it ostensibly applied to any "person or entity," the language of section 25984(b)(3) shows that it was not intended to apply to any new entrants to the California market that were not already engaged in force feeding birds at the time the bill was enacted in 2004.  As the Senate Republican Floor Commentaries explained:

"Further amendments have given *Sonoma Foie Gras* immunity from lawsuits for the next seven years." In a letter to Governor Schwarzenegger, Sonoma Foie Gras urged him to sign SB 1520 in order to provide Sonoma Foie Gras with immunity from pending lawsuits by animal rights activists in California.

62.     Further evidence of the California Legislature's intention that SB 1520 would be operative only as to *in-state* producers of foie gras is found in the provisions of the legislation that were included in the penultimate amendment to the bill. On June 21, 2004, the California Assembly added a subsection (d) to section 25984 which included the following language:

> Because the Legislature intends to assist individuals engaged in agricultural practices that include raising and selling force fed birds to modify their business practices, the Legislature declares its support for the following:
>
> (1)     Assistance in identifying alternate business opportunities *for California businesses* that currently rely on the sale of force fed birds.
>
> (2)     Assistance in finding alternate employment, or providing job training, for employees of *California businesses* that currently rely on the sale of force fed birds.

63.     Although this subsection was ultimately removed from the final version of the bill, this language demonstrates that the persons or entities whose agricultural practices the California Legislature was targeting in SB 1520 were not out-of-state businesses such as Hudson Valley and the Canadian farmers (who had no participation in California's legislative process) but, rather, *California* farmers.

64.     On September 29, 2004, Governor Arnold Schwarzenegger signed SB 1520 into law.

FOURTH AMENDED COMPLAINT

Everyone from the author of SB 1520 to the Ninth Circuit and Defendant's prede-cessor herself has claimed that section 25982 does not ban the sale of foie gras *per se* — but this ignores the fact that it is impossible to produce foie gras in conformity with the federal standard without violating section 25982.

65.    Mr. Burton opened the first Senate committee hearing on SB 1520 by stating, "This bill has nothing to do, uh — despite the mail that many of us get from restaurants — with banning, uh, foie gras.  What it does is prohibit, uh, what a process of which most people, uh, consider to be an inhumane of force feeding ducks and geese for the purpose of unnaturally enlarging their liver beyond the normal size."

66.    In his signing message, then Governor Arnold Schwarzenegger wrote to the Senate, "This bill's intent is to ban the current foie gras production practice . . .  It does not ban the food product, foie gras."

67.    Indeed, as the Ninth Circuit previously stated in this case, section 25982 "bans the sale of foie gras produced through force feeding, but would not ban foie gras produced through alternative methods."

68.    Defendant Becerra's predecessor herself also took the position in this case that "[s]ection 25982 does not even prohibit all foie gras sales, but only sales of foie gras produced by force feeding."

69.    But the reality is that section 25982 prohibits the sale of a federally-approved poultry product in California if is the result of — or contains an ingredient produced by — the *only* method in existence for producing foie gras.  Indeed, section 25982 prohibits the sale of federally-approved poultry products in California that are the result of the *only* method ever known to man for producing the poultry ingredient foie gras.  The fattened duck liver that constitutes foie gras cannot be produced by a method other than force-feeding as California defines it, i.e., using a process that causes them to "consume more food than a typical bird of the same species would consume voluntarily."

70.    It impossible to produce foie gras products in accordance with federal requirements — i.e., using liver "obtained exclusively from specially fed and fattened

geese and ducks" — without violating California's requirement that a poultry product not be "the result of force feeding a bird" (as California defines it).  In other words, based on California's definition of force feeding in section 25980(b), it is impossible to produce foie gras from non-force-fed ducks.  Section 25982 thus operates not only to impose a requirement on the physical components that Plaintiffs' poultry products contain, which requirement is different than and in addition to the federal standards; section 25982 operates as a complete ban on the principal ingredient in Plaintiffs' federally-approved poultry products.

71.    USDA itself has even recognized, in a case to which Defendant Becerra referred the Ninth Circuit, that an "attempt to maintain a distinction between force-fed foie gras and non-force fed foie gras is untenable as any product labeled 'foie gras' is almost certainly the product of a force-feeding process."

**SB 1520 allows the sale of products from force fed birds depending on the purpose of the force feeding and the amount of food that a farmer causes a bird to consume.**

72.    Section 25982 notably does not prohibit the sale of a product that is the result of merely "force feeding" a bird; it only applies if the feeder did so "*for the purpose* of enlarging the bird's liver beyond normal size."

73.    In other words, recognizing that the act of inserting a tube into a duck's esophagus to feed it is not inherently cruel or harmful, a person is free to force-feed a duck for the purpose of ensuring that the duck gets sufficient nutrition or for the purpose of enlarging its breasts or legs to maximize the economic value from them — and to sell all the resulting products in California.

74.    Similarly, section 25982 does not prohibit the sale of a product from a bird that was fed for the purpose of enlarging its liver beyond normal size; it only does so if the feeder caused the bird to consume "more food than a typical bird of the same species would consume voluntarily."

75.    In other words, recognizing that there is nothing inherently cruel or

harmful about a duck liver that has been enlarged beyond normal size, a person is free to use a tube to feed a duck as long as the person does not cause the duck to consume "more food" than what a typical duck of the same species would consume voluntarily — and to sell all the resulting products in California.

76.     The second sentence in section 25980(b) lists "delivering feed through a tube or other device inserted into the bird's esophagus" as an example of one of the "methods" of "force feeding."  The statute does not provide that the use of this "method" obviates the requirement in the definition of "force feeding" that the process cause the bird to consume "more food that a typical bird of the same species would consume voluntarily."

77.     Under sections 25983(a) and (b), any peace officer, humane society officer, or animal control officer may issue a citation for a violation of section 25982, which "shall require the person cited to pay a civil penalty in an amount up to one thousand dollars ($1,000) for each violation, and up to one thousand dollars ($1,000) for each day the violation continues."  The civil penalties are payable to the local agency that prosecutes the violation.

**John Burton claims that the putative local interest for the law is concern about animal cruelty, but this claim is belied by the state's own Department of Food and Agriculture.**

78.     While Mr. Burton claimed that section 25981's ban on force feeding would eliminate animal cruelty, this claim is belied by a written report of the California's own Department of Food and Agriculture issued at the time the legislation was passed.

79.     Defendant has similarly defended the law on the ground that, by prohibiting the use of a tube to feed a duck for the purposes of producing foie gras, the state is advancing its interest in the prevention of animal cruelty.

80.     Yet contrary to what Mr. Burton believed and to what Defendant has argued in this case, even the State of California itself officially recognizes that the use of force feeding to produce foie gras products does not involve cruelty to the ducks.  At

the time SB 1520 was under consideration, the California Department of Food and Agriculture, which is the government entity responsible for regulating the agricultural industry of the state for the protection of animal health, issued an enrolled bill report to the Governor.  In it, the California Department of Food and Agriculture explained, "*Production of Foi[e] Gras in California does not involve cruelty at any time.*" The California Department of Food and Agriculture further explained, "Foi[e] Gras production is a food production industry *well established in conformity with humane animal management*, safe food practices and environmentally protective provisions of State and Federal law."

81.    The California Department of Health's enrolled bill report further pointed out, for example:

> Equipment used in the feeding of birds is developed in France under stringent European Community regulations that are highly sensitive to animal welfare concerns.
>
> Birds are not injured or impaired by the feeding equipment used. Their jaws and glottis are readily opened in the wild to accommodate whole fish and other animals including reptiles.
>
> Feeding equipment does not penetrate the stomach but empties the bolus of feed exactly where a mass of ingested feed accumulates naturally in birds.

82.    The purported benefits of SB 1520 to ducks in California are thus illusory — especially since, as applied to Plaintiffs' foie gras products, not a single duck within California's police power is affected by the sale of foie gras from ducks raised and fed entirely in New York or Canada.

83.    No other State in the United States and no Canadian province (nor Canada itself) bans the modern agricultural practices used to produce foie gras.

**Hudson Valley and the Canadian farmers raise moulard ducks with careful attention to their feeding and in full compliance with New York and Canadian law.**

84.  Hudson Valley and the Canadian farmers raise moulard ducks.  (None of the Plaintiffs produces or sells foie gras products from geese.)

85.  The moulard is a selectively-bred, sterile, hybrid progeny of two ducks from two different species (and even from two different genera):  a male strain of Muscovy duck and a female strain of Pekin duck.

86.  The Muscovy duck is of the genus *Cairina* and of the species M*oschata*.

87.  The Pekin duck is of the genus *Anas* and of the species *Platyrhynchos*.

88.  The moulard duck is impossible to classify as belonging to any single species.

89.  The moulard is specially bred for its capacity of ingestion and of fat storage in its liver.

90.  In addition to the breasts, legs, fat, deboned meat, feathers, bones, and offal — all of which go to market — one of the products that Hudson Valley and the Canadian farmers make from their moulard ducks is foie gras, the fatty liver of a specially fed duck or goose.

91.  Foie gras is made using a method known as *gavage*, which is a term for the hand-feeding of ducks and geese.

92.  As this Court observed in its preliminary injunction ruling:  "From SB 1520's legislative history and the declarations submitted by the parties, it appears that foie gras is the only product sold that requires a bird to be force-fed[.]"

93.  Hudson Valley and the Canadian farmers pay careful attention to the feeding of their ducks.  Each hand-fed duck is given a variable amount of food each day, depending on how many days it has been in *gavage,* its appetite, whether the base of its esophagus (referred to as its crop sac) is clear of the last feeding, and even the weather.

94.     As New York farmers subject to the laws of that state, Hudson Valley raises its ducks in full compliance with New York law, and no provision of New York law dictates how much food Hudson Valley may feed to its ducks — or whether it may use a tube to do so.

95.     Similarly, on their farms in Quebec, the Canadian farmers raise their ducks in full compliance with the laws of that province and of Canada, and no such law prescribes how much food a Canadian farmer may feed to its ducks — or whether it may use a tube to do so.

96.     In addition, all duck products from the Canadian farmers must be processed in Canada at establishments approved by the United States Department of Agriculture, and all are subject to USDA inspection upon entry to the United States.

**Hudson Valley and at least one of the Canadian farmers have obtained federal approval to include as the principal ingredient in their foie gras products the liver of a moulard duck that has been fed in a way that would violate section 25982.**

97.     In the spring of 2017, Hudson Valley and Palmex each applied for federal approval to market their foie gras products using labels that clearly demonstrate that the principal ingredient in them, i.e., the duck liver foie gras approved by USDA, is obtained from ducks that have been fed, using a tube, more food than the ducks would consume voluntarily.

98.     In their applications to USDA, Hudson Valley and Palmex each provided detailed information concerning the hand-feeding practices that are used to produce the duck liver ingredients that they include in their foie gras products, including the amount of food the ducks are fed and the fact that the feeding is performed by oral gavage, with pictures showing the use of a feeding tube.

99.     Hudson Valley provided evidence to USDA that the duck liver foie gras it includes as an ingredient in its foie gras products is obtained from ducks that are hand-fed (using a tube) for a minimum of 11 days and at least 6.8 kilograms of feed during that period.

100.   Palmex (through its subsidiary, Aurpal Inc. in Quebec) provided evidence to USDA that the duck liver foie gras it includes as an ingredient in its foie gras products is obtained from ducks that are hand-fed (using a tube) for a minimum of 7 days and at least 4.2 kilograms of dry grain.

101.   In the case of Hudson Valley, USDA approved the inclusion in its foie gras products of duck liver foie gras obtained from ducks that "are individually hand-fed for not less than 11 days before processing, and not less than 6.8 kg of grain during that period, for the purpose of enlarging the duck's liver, by gavage in the French tradition." Hudson Valley added that this minimum feeding is necessary for the ducks to develop a liver large enough to be recognized and properly labeled as foie gras.

102.   In the case of Palmex, USDA approved the inclusion in its foie gras products of duck liver foie gras obtained from ducks that "are individually tube fed by hand for not less than 7 days before processing, and not less than 4.2 kg of dry grain during that period, for the purpose of enlarging the duck's liver, by gavage in the French tradition."  Palmex added that this minimum feeding is necessary for the livers to be graded as foie gras.

103.   Thus, there can be no question that the foie gras that Hudson Valley and the Canadian farmers such as Palmex include as the principal ingredient in their foie gras products is federally approved as having been obtained from ducks that are hand-fed with a tube.  Moreover, the amount of food that the ducks are fed, as specified to USDA, is more than those ducks would consume voluntarily during the periods specified.

104.   There can also be no question that, because section 25982 prohibits the sale of a poultry product results from feeding a duck these amounts with a tube, Hudson Valley and the Canadian farmers such as Palmex cannot comply with both the requirements under federal law that their foie gras products include the respective foie gras ingredients approved by USDA while at the same time excluding those ingredients to avoid a violation of section 25982.

105.   Since approximately May 2017 (but only until the mandate in this case issued on January 8, 2019), Plaintiffs' foie gras products have been sold in California containing the foie gras ingredients described above as approved by USDA and properly labeled as such.  Yet, with the Court's permanent injunction no longer in place, the sale of Plaintiffs' foie gras products is now threatened with prosecution in California under section 25982 if those products include the duck liver foie gras ingredients that have been specifically approved by the federal government.

**Section 25982 is causing Plaintiffs to again suffer significant lost sales that they can never recover from Defendant — and Plaintiff Hudson Valley is again facing a threat of prosecution even for out-of-state sales of its products to Californians.**

106.   Hudson Valley is the largest U.S. producer of moulard duck products, including foie gras.  Other than Sonoma Foie Gras, which operated a farm in California prior to July 1, 2012, the only domestic producers of foie gras products in the United States that regularly sold their foie gras products to California are Plaintiff Hudson Valley and one other producer in New York.

107.   Sonoma Foie Gras was the only farm that raised ducks for foie gras in California as of July 1, 2012.  As a result of its closure of its farm on or around that date in the face of section 25981 (which banned the force feeding of birds in California), there have not been any ducks (or geese, for that matter) raised for foie gras in California since July 1, 2012.

108.   Between July 1, 2012, and January 7, 2015 (when this Court enjoined enforcement of section 25982), Hudson Valley lost approximately $1.5 million a year in wholesale sales of foie gras products to California as a result of section 25982, and it has again been losing sales since January 8, 2019 (when the Ninth Circuit's mandate took effect and vacated this Court's permanent injunction in favor of Plaintiffs), for a loss to date of approximately $5 million.  (Hudson Valley bases this on its sales of foie gras products to California before July 1, 2012, and from January 7, 2015, to January 8, 2019.)  Hudson Valley is now again threatened with prosecution even for out-of-

state sales of its products to Californians.   Hudson Valley's lost sales are unrecoverable because Defendant Becerra is immune from damages.

109.   Through three of its association members, the Canadian farmers supply 100% of Canada's imports of foie gras products to the United States and California. Between July 1, 2012, and January 7, 2015, Palmex, the leading Canadian farmer of foie gras, lost approximately $750,000 a year in wholesale sales of foie gras products to California as a result of section 25982, and it has again been losing sales since January 8, 2019 (when the Ninth Circuit's mandate took effect and vacated this Court's permanent injunction in favor of Plaintiffs), for a loss to date of approximately $3 million — which represented 25% of its U.S. sales.  (Palmex bases this on its sales of foie gras products to California before July 1, 2012, and from January 7, 2015, to January 8, 2019.)  The Canadian farmers are now again threatened with prosecution even for out-of-state sales of their products to Californians.   The Canadian farmers' lost sales are unrecoverable because Defendant Becerra is immune from damages.

110.   Like Hot's between July 1, 2012, and January 7, 2015, which lost thousands of dollars a month in sales of foie gras products as a result of section 25982, Chef Chaney is suffering irreparable harm, since he is now forced to either stop selling any foie gras products or risk prosecution under section 25982, and his lost sales are unrecoverable because Defendant Becerra is immune from damages.

111.   In February 2014, the District Attorney of Los Angeles County, acting in conjunction with the District Attorneys of Santa Clara County and of Monterey County (the "District Attorneys"), sent letters to Hudson Valley and to at least two out-of-state distributors of the Plaintiffs' foie gras products threatening to prosecute them for alleged violations of section 25982 based on sales of foie gras products that are shipped to persons in California after title has passed from a seller *outside* the State of California.  The District Attorneys stopped threatening Hudson Valley and the out-of-state distributors only when this Court issued a permanent injunction against enforcement of section 25982; now that the injunction has been vacated by the Ninth

Circuit, Hudson Valley and the distributors of Plaintiffs' foie gras products again face the threat of prosecution by the District Attorneys and by Defendant Becerra himself. Indeed, Defendant Becerra is statutorily authorized to "take full charge" of these investigations, consistent with the exercise of his supervisory powers over the District Attorneys in all 58 counties.  As the Ninth Circuit held in this case in 2013:  "Pursuant to Article V, § 13 of the California Constitution,  the Attorney General not only has "direct supervision over every district attorney," but also has the duty "to prosecute any violations of law ... [and] shall have all the powers of a district attorney," whenever []he believes that the law is not being adequately enforced."  Cal. Const. art. V, § 13. 729 F.3d at 943.

## FIRST CAUSE OF ACTION

### Declaratory Relief — Unenforceability of Section 25982 Against Out-of-State Sales of Foie Gras Products Shipped to Persons in California After Title Passes from a Seller Outside the State of California

112.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

113.   As alleged above, there is a dispute between the parties regarding the enforceability of section 25982 against out-of-state sales of foie gras products that are shipped to persons in California after title has passed from a seller *outside* the State of California.

114.   Section 25982 provides that a subject poultry product "may not be sold in California" if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size.  Unlike various other California statutes, including other provisions of the California Health and Safety Code, section 25982 prohibits a poultry product from being "sold in California" but does not provide that a poultry product may not be imported into California after title has passed from a seller outside the state.  (Nor does it provide, for example, that there may not be an "offer for sale" or "contract for sale" made in California.)

115.   Despite this clear limitation on the type of transaction prohibited under section 25982, Defendant and the District Attorneys he is supervising have taken the position that section 25982 applies to out-of-state sales of foie gras products that are shipped to persons in California after title has passed from a seller *outside* the State of California.

116.   Hudson Valley makes its foie gras products available for purchase throughout the United States.  As a result of the Ninth Circuit's mandate (on January 8, 2019) vacating this Court's permanent injunction against the enforcement of § 25982, however — and the threats of prosecution it faces from Defendant and the District Attorneys — Hudson Valley does not currently sell any of its foie gras products in California.  Indeed, as it continues to face these threats, and while it disputes Defendant's view of what it means for a product to be "sold in California" under § 25982, Hudson Valley is currently forced to refrain from even shipping the foie gras products it sells in New York to recipients in California.  With a declaratory judgment from this Court making clear that § 25982 does not apply to Hudson Valley's out-of-state sales of foie gras products that are shipped to persons in California after title has passed *outside* the State of California, Hudson Valley would promptly resume those sales.

117.   More specifically, Hudson Valley itself makes its foie gras products available for purchase through its website (hudsonvalleyfoiegras.com) and through orders it receives by email, telephone, and fax.  Any person from virtually anywhere in the world can complete an order through Hudson Valley's website.  The website collects a credit card billing address and a shipping address, but it cannot determine whether the purchaser is actually in California or not at the time of his or her purchase (nor would such fact even be relevant under the Uniform Commercial Code's provisions concerning where a sale takes place).

118.   To the extent it may even be relevant, Hudson Valley's website is hosted by a third-party hosting business on a server located outside California.  When a

- 31 -

FOURTH AMENDED COMPLAINT

purchaser completes an order through the website, his or her credit card payment is processed through a third-party processor that is located outside California.  Hudson Valley receives the purchaser's payment at its bank in Sullivan County, New York.

119.   When it receives a completed order for a foie gras product through its website (or by email, telephone, or fax), Hudson Valley personnel in Sullivan County, New York, fulfill the order from Hudson Valley's facilities in Sullivan County, New York.  Hudson Valley physically delivers the product to a third-party shipping company, typically UPS or FedEx, and typically for overnight delivery, at its facilities in Sullivan County, New York.  The shipping company thereafter transports the product to the recipient designated by the purchaser, which, until as recently as January 2019, included recipients in California.

120.   Under Hudson Valley's sales policy, its prices do not include shipping fees, which are computed on a per-order basis.  As part of each transaction for the sale of a foie gras product through its website (or by email, telephone, or fax), Hudson Valley undertakes to send the product to the buyer, but Hudson Valley itself is not required to deliver them at their destination.  Instead, Hudson Valley undertakes to have the product shipped to the buyer or the buyer's designated recipient.  As explained above, Hudson Valley fulfills this undertaking by physically delivering the product to a third-party shipping company in Sullivan County, New York.

121.   Hudson Valley does not contract with its purchasers to alter the rule in section 2-401 of New York's Uniform Commercial Code Law.

122.   In addition to being sold by Hudson Valley in New York and shipped to recipients in California, the foie gras products produced by Plaintiffs — both Hudson Valley and members of the Canadian farmers, such as Palmex — have also been sold through numerous third-party sellers that are similarly *not* located in California but that have (before January 8, 2019) shipped to recipients in California and that have been forced to refrain from doing so based on Defendant's and the District Attorneys'

FOURTH AMENDED COMPLAINT

threats of prosecution under § 25982.  These sales similarly take place through the out-of-state sellers' websites as well as through orders placed by email, telephone, and fax.

123.   For example, leading third-party sellers of Hudson Valley's foie gras products are located in Florida, Nevada, and New Jersey.  Similarly, leading third-party sellers of the Canadian farmers' foie gras products are located in New Jersey and Pennsylvania.  Like Hudson Valley itself, these sellers all operate and accept orders through their websites outside California (or through emails or telephone calls directed to them outside California).

124.   Like Hudson Valley itself, these sellers' personnel outside California fulfill the orders from their facilities outside California.  They physically deliver the foie gras products to third-party shipping companies, typically UPS or FedEx (and in some cases the United States Postal Service), at their facilities outside California.  The shipping companies thereafter transport the product to the recipients designated by the purchasers, which, until as recently as January 2019, included recipients in California.

125.   Based on information and belief, as part of each transaction for the sale of a foie gras product through their websites (or by email or telephone), these sellers undertake to send the products to the buyers, but the sellers themselves are not required to deliver them at their destination.  Instead, the sellers undertake to have the products shipped to the buyers or the buyers' designated recipients.  As explained above, these sellers fulfill this undertaking by physically delivering the products to third-party shipping companies outside California.

126.   Based on information and belief, these sellers of Plaintiffs' foie gras products do not contract with their purchasers to alter the rule in section 2-401 of New York's Uniform Commercial Code Law or of the similar provisions of the Uniform Commercial Codes in the jurisdictions outside California in which they sell.

127.   As alleged above, Hudson Valley itself and sellers of Plaintiffs' foie gras products outside California now face prosecution under section 25982 by Defendant and the District Attorneys when these products are shipped to persons in California

after title has passed from a seller outside California despite the fact that, under California's own version of the Uniform Commercial Code, title passes, and therefore as a matter of law the sale of these products takes place, entirely outside California. Cal. Comm. Code §§ 2106(1), 2401(2)(1).

128.   As alleged herein, an actual controversy has arisen and now exists regarding a matter over which this Court has subject-matter jurisdiction — the constitutionality of section 25982 — which depends on the scope of its application, including whether section 25982 is enforceable against out-of-state sales of Plaintiffs' foie gras products, such as those described above, that are shipped to persons in California after title has passed from a seller *outside* the State of California.

129.   For the sake of clarification, Plaintiffs do not seek a determination as to any of the three "hypotheticals" imagined by the Court in its order of January 13, 2020, and Plaintiffs do not believe that there is a dispute between the parties regarding the enforceability of § 25982 in those examples.  As to a purchase of a foie gras product by one spouse made while outside California for the other spouse who remains in California, which the first spouse presents to her on his return to California, Plaintiffs do not believe that Defendant intends to enforce § 25982 against what in that example would be a sale that has plainly taken place *outside* California under the Uniform Commercial Codes of every state, since title passed when the seller delivered the product to the first spouse outside California.  As to a buyer who drives outside California to buy a foie gras product in a store outside California ("with the contract signing and exchange of payment taking place in the store") but who has the entire shipment delivered to California, Plaintiffs similarly do not believe that Defendant intends to enforce § 25982 against what in that example would also be a sale that has plainly taken place *outside* California under the Uniform Commercial Codes of every state, since title passed when the seller delivered the product to the buyer in the store outside California (whether the buyer himself then shipped it back to California himself or paid the store to do so).  And as to a seller in California who delivers foie gras to a

buyer in California through a sale that is "effectuated via an online transaction occurring out-of-state," Plaintiffs would not dispute for purposes of this cause of action (and based on the incomplete facts) that Defendant could enforce § 25982 against what in that example would be a sale in California, since title would have passed in California under California's Commercial Code.

130.   A declaratory judgment as to the enforceability of section 25982 against such out-of-state sales will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this cause of action.  Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

131.   The threat of enforcement of section 25982 against such out-of-state sales is again causing immediate and irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of business opportunities, diminution in value of their businesses, and the threat of civil penalties, and will continue to cause irreparable harm unless enjoined.

132.   Because enforcement of section 25982 is causing harm that cannot be adequately compensated by the recovery of damages against Defendant, Plaintiffs request that this Court provide preliminary and permanent injunctive relief enjoining Defendant from enforcing section 25982 against out-of-state sales of Plaintiffs' foie gras products, such as those described above, where such products are shipped to persons in California after title has passed from a seller to a purchaser *outside* the State of California.

## SECOND CAUSE OF ACTION

### Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Supremacy Clause — Preemption Based on Impossibility of Compliance with Both Federal Law and Section 25982

133.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

134.   Under the Supremacy Clause, federal law is the supreme law of the land

- 35 -

and preempts state law where, as here, Congress expresses an intent to preempt state law through explicit statutory language.  The PPIA reflects Congress's objectives to protect the free flow of commerce in poultry products and to "prevent and eliminate burdens upon such commerce, to effectively regulate such commerce, and to protect the health and welfare of consumers."  21 U.S.C. § 451.  The whole point of the federal regime is to ensure the supply of wholesome, unadulterated poultry products to American consumers, as Congress has declared that declared all poultry regulated under the PPIA to be in interstate and foreign commerce and further declared that "[p]oultry and poultry products are an important source of the Nation's total supply of food."  21 U.S.C. § 451.  Congress reiterated in 21 U.S.C. § 452 that it is the policy of the Congress to regulate the "processing and distribution" of poultry products to prevent "the burdening of such commerce by poultry products which are adulterated" and to achieve this objective "through uniform inspection standards and uniform applications thereof."

135.   By placing a burden on the distribution in California of Plaintiffs' wholesome, unadulterated, USDA-inspected poultry products, including by subjecting them to different inspection standards to determine the physical presence of foie gras from force-fed ducks — indeed, by imposing a total ban on wholesome, unadulterated, USDA-inspected poultry products that contain foie gras — section 25982 stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

136.   Furthermore, under 21 U.S.C. § 467e, the PPIA provides concurrent jurisdiction to the States not for the purpose of imposing requirements as to the ingredients in poultry products but only "consistent with the requirements under [the PPIA] … over articles required to be inspected under [the PPIA] *for the purpose of preventing* the distribution for human food purposes of any such articles *which are adulterated* or misbranded and are outside of such an establishment, or, in the case of imported articles which are not at such an establishment, after their entry into the

United States."  Yet, as applied to Plaintiffs' poultry products containing foie gras, section 25982 conflicts with this express federal objective, since section 25982 requires that foie gras products distributed for human food purposes in California *not* contain the most valuable constituent in them, i.e., the livers obtained from force fed ducks. Under the PPIA's definitions of adulteration, section 25982 is thus at cross-purposes with the PPIA because, instead of preventing foie gras products from being adulterated, section 25982's prohibition on the inclusion of their most valuable constituent actually would render them adulterated.

137.  The PPIA expressly prohibits states from imposing "additional" or "different" requirements on the ingredients in poultry products that are prepared at official establishments in accordance with the requirements of the PPIA.  "[I]ngredient requirements (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any official establishment in accordance with the requirements under" the PPIA.  21 U.S.C. § 467e.

138.  An "official establishment" is "any establishment as determined by the Secretary [of Agriculture] at which inspection of the slaughter of poultry, or the processing of poultry products, is maintained under the authority of" the PIA.  All of Plaintiffs' foie gras products are prepared at official establishments.

139.  The PPIA authorizes the Secretary of Agriculture to prescribe definitions and standards of identity or composition for poultry products.  As the Solicitor General of the United States has observed, such definitions and standards of identity or composition promote uniformity in federally-inspected poultry products by establishing "the principal constituents of any poultry product with respect to which a specified name of the product or other labeling terminology may be used."  9 C.F.R. § 381.155(a)(1).

140.  As alleged above, USDA has prescribed the standards for Plaintiffs' foie gras products, and neither the PPIA nor any federal regulation imposes any requirement

that the principal ingredient in these products, i.e., the liver "obtained exclusively from specially fed and fattened geese and ducks," *not* be the result of force feeding as defined under section 25980(b) of the California Health and Safety Code.

141.   Section 25982 — which allows the sale of foie gras products that do not contain force-fed foie gras as an ingredient but which penalizes their sale if they do contain such an ingredient — therefore imposes an "additional" or different" require-ment on the ingredients in Plaintiffs' USDA-inspected poultry products.  In other words, while federal law allows Plaintiffs' foie gras products to be sold so long as they contain or are composed of specified percentages of goose and duck liver "obtained exclusively from specially fed and fattened geese and ducks," section 25982 imposes the additional and different requirement that the duck liver ingredient have been obtained from a non-force-fed goose or duck.  It therefore functions as an ingredient requirement, since a requirement imposed on the provenance of an ingredient is an ingredient requirement nonetheless.

142.   Furthermore, as a result of the force feeding, lipogenesis, i.e., the synthesis of fatty acids, exceeds secretion, resulting in the specially fattened liver that is necessary to qualify as foie gras.  As a matter of biochemistry, the liver obtained from a force-fed duck is physically and chemically different than the liver obtained from a duck that has not been force-fed.  Section 25982 prohibits the sale of poultry products that are the result of force feeding a bird, i.e., that contain liver derived from a force-fed duck, while allowing the sale of poultry products that contain liver derived from a non-force-fed duck.  Federal law contains no such prohibition or requirement — and in fact has for decades permitted the sale of poultry products that contain duck liver foie gras from force-fed ducks.  Section 25982 thus imposes requirements regarding the physical and chemical components that a poultry product may contain which are different than or in addition to the federal standards.

143.   Indeed, it is because of the physical presence in a poultry product prepared at an official establishment of the liver from a force-fed duck that section 25982 bans

the sale of the product.

144.  Section 25982 requires that Plaintiffs' foie gras products be made from different physical components than federal law allows:  federal law allows — in fact, requires — foie gras products to be made from liver "obtained exclusively from specially fed and fattened geese and ducks," while section 25982 prohibits the inclusion of this physical component as ingredients in poultry products if sold in California and instead allows only liver that has not been enlarged by force-feeding to be included.

145.  Moreover, section 25982 requires that Plaintiffs' foie gras products be made from different animals than federal law allows:  federal law allows foie gras products to be made from the livers of ducks that were force-fed, while section 25982 prohibits the livers obtained from such animals as ingredients in poultry products and instead requires that foie gras products be made from the livers of different ducks that were not force-fed (which is impossible).

146.  By penalizing sellers of foie gras products that contain any liver that is the result of force feeding, section 25982 requires that foie gras products consist of zero percent liver from a force-fed duck.

147.  In view of the requirements for the preparation of Plaintiffs' foie gras products under the PPIA and the prohibition under section 25982, is impossible for Plaintiffs to comply with both federal and state law.  Under the PPIA and USDA regulations, Plaintiffs have been approved to sell poultry products that contain foie gras obtained from ducks that have been fed more food than they would consume voluntarily and, in any event, from ducks that have been fed using a tube.  These products include, for example, Hudson Valley's Moulard Duck Foie Gras and Palmex's Flash Frozen Duck Foie Gras.  And federal law authorizes the farmer-Plaintiffs to include the foie gras approved for these products as ingredients in their other foie gras products.

148.  As alleged above, the foie gras that Hudson Valley and the Canadian farmers such as Palmex include as the principal ingredient in their foie gras products is

federally approved as having been obtained from ducks that are hand-fed with a tube, and the amount of food that the ducks are fed, as specified to USDA, is more than those ducks would consume voluntarily during the periods specified.  Plaintiffs have been selling these foie gras products in California (at least until last month) and are required under the PPIA to include the foie gras as specified to USDA or face prosecution under federal law for selling an adulterated poultry product.

149.   At the same time, under section 25982, Plaintiffs would need to remove this very foie gras from their poultry products or face prosecution under California law for selling a product that "is the result of" force feeding.

150.   There can thus be no question that Plaintiffs cannot comply with both the requirements under federal law that their foie gras products include the respective foie gras ingredients approved by USDA while at the same time excluding those ingredients to avoid a violation of section 25982.

151.   It is no answer to this cause of action to tell Plaintiffs that they may avoid prosecution under section 25982 if they simply "stop selling" their foie gras products in California.  The Supreme Court has squarely held that is pre-emption cases "presume that an actor seeking to satisfy both his federal- and state-law obligations is not required to cease acting altogether in order to avoid liability":  "We reject this "stop-selling" rationale as incompatible with our pre-emption jurisprudence." *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 570 U.S. 472, 488 (2013).

152.   As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction.  A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

153.   Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

154.   The threat of enforcement of section 25982 is again causing immediate and irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of

- 40 -

business opportunities, diminution in value of their business, and the threat of civil penalties, and will continue to cause irreparable harm unless enjoined.

155.   Because the threat of enforcement of section 25982 is causing harm that cannot be adequately compensated by the recovery of damages against Defendant, Plaintiffs request that this Court provide preliminary and permanent injunctive relief enjoining Defendant from enforcing section 25982 against the sale of Plaintiffs' foie gras products.

**THIRD CAUSE OF ACTION**

**Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Commerce Clause — Extraterritorial Regulation**

156.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs.

157.   The Commerce Clause restricts states from regulating conduct beyond their borders.

158.   As alleged above, in forcing out-of-state farmers such as Hudson Valley and the Canadian farmers to conform their duck feeding practices to section 25980(b) as a condition of selling their products in California, the practical effect of section 25982 is to regulate out-of-state and foreign conduct.  Even to the extent that the mere use of a tube to feed a duck constitutes "force feeding" under section 25980(b), the practical effect of section 25982 is to condition the sale of Plaintiffs' foie gras products in California on whether they use a tube to feed their ducks entirely outside California.  Such extraterritorial regulation violates the Commerce Clause.

159.   The Ninth Circuit has now held that "[s]ection 25982 … prohibits what California finds to be a cruel *feeding practice*," that "[t]he legislation does not ban foie gras itself, but rather *the practice of producing* foie gras by force-feeding," that California's law was "designed to rectify what the state considered an inhumane *feeding practice*," that "California's legislature intended to ban not foie gras itself, but rather the *practice of producing foie gras*," that section 25982 "seeks to prohibit a feeding

- 41 -

method," and that "[s]ection 25982 therefore addresses … how animals are treated long before they reach the slaughterhouse gates."

160.   If the Ninth Circuit's explication of the subject of section 25982's regulatory effect is accurate, then it cannot be denied that section 25982 regulates agricultural *practices* where Plaintiffs feed their ducks, i.e., in New York and Canada — far beyond California's borders.

161.   The Commerce Clause restricts states from enacting regulations that disrupt national uniformity and impede the free flow of goods in interstate commerce. Here, section 25982 operates as a total ban on the sale and import of foie gras.

162.   As alleged above, section 25982 operates as a forced economic boycott of lawful, wholesome, unadulterated, USDA-approved duck products from New York and Canada.

163.   As alleged above, in prohibiting the sale in California of lawful, wholesome, unadulterated, USDA-approved duck products, section 25982 also disrupts the federal interest in national uniformity in the market for poultry products and thus violates the Commerce Clause.

164.   As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction.  A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

165.   Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

166.   Enforcement of section 25982 is already causing immediate and irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of business opportunities, diminution in value of their business, and the threat of civil penalties, and will continue to cause irreparable harm unless enjoined.

167.   Because enforcement of section 25982 will cause harm that cannot be adequately compensated in damages, Plaintiffs request that this Court provide

- 42 -

1  preliminary and permanent injunctive relief enjoining Defendant from enforcing section

2  25982 against Plaintiffs.

3                          FOURTH CAUSE OF ACTION

4  Declaratory Relief — 42 U.S.C. § 1983 — Violation of the Commerce Clause —

5      Substantial Burden on Commerce Exceeding Putative Local Benefits

6        168.   Plaintiffs re-allege and incorporate by reference all of the preceding

7  paragraphs.

8        169.   The Commerce Clause restricts states from placing excessive burdens on

9  interstate and foreign commerce.

10       170.   As alleged above, in banning the sale of wholesome foie gras products

11  from ducks that are raised fed in New York and Canada, section 25982 places

12  substantial and excessive burdens on interstate and foreign commerce without

13  advancing any legitimate local interest.  Indeed, it does not just burden interstate

14  commerce in foie gras products; it imposes the most substantial burden of all by

15  completely banning them from the California market, resulting in the loss of millions of

16  dollars in wholesale sales by Plaintiffs and many multiples more by the distributors,

17  retailers, and restaurants that sell Plaintiffs' foie gras products.  In comparison, as

18  alleged above — and as recognized by California's own Department of Food and

19  Agriculture — modern methods of producing foie gras do not involve animal cruelty at

20  any time.  Moreover, while a general interest in preventing cruelty to animals *in*

21  *California* may be a legitimate local interest, no such interest supports the application of

22  section 25982 to ducks that are fed and processed into poultry commodities in *other*

23  states and countries in full compliance with the laws in effect in those jurisdictions.

24       171.   As necessary to consider under *Pike v. Bruce Church, Inc.*, 39 U.S. 137,

25  142 (1970), California's interest in preventing animal cruelty could be just as effectively

26  promoted — but with a lesser impact on interstate commerce — through a variety of

27  alternatives to an outright ban on foie gras products from force-fed ducks.  Of course,

28  to the extent that section 25982 does not apply to products from ducks fed entirely

outside California, then the state can effectively ensure that no duck is force-fed in California simply by fully enforcing section 25981, which bans force feeding within the state, and by fully enforcing section 25982's ban on the sale of foie gras products from ducks *fed within California*.  (This is not difficult as a practical matter, since every foie gras product sold in the United States must be inspected by the USDA and bears a mark with the USDA seal identifying the official establishment from which it was produced.)

172.   Yet even if section 25982 were construed so as to apply to foie gras products from ducks fed entirely outside California, such as those produced by Hudson Valley and the Canadian farmers, and even assuming that the California Legislature had a legitimate local interest in doing so, there are still many other ways for the government to enable its citizens to avoid purchasing force-fed foie gras products, if they do not want to, without placing a *complete ban* on interstate and foreign commerce.  To take just a few examples, California could undertake to inform its population about where foie gras comes from, just as it already does in publishing materials for teachers to use in their classrooms to promote what it believes to be the benefits of buying and eating locally grown products.  Or California could require that sellers of foie gras products within the state notify consumers at the point of sale that the products were made from force-fed ducks.

173.   As alleged above, an actual controversy has arisen and now exists regarding a matter — the constitutionality of section 25982 — over which this Court has subject matter jurisdiction.  A declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

174.   Plaintiffs therefore seek declaratory and further relief under 28 U.S.C. §§ 2201 *et seq.* (the Declaratory Judgment Act).

175.   Enforcement of section 25982 is already causing immediate and irreparable injury to Plaintiffs, including but not limited to lost sales, lost profits, loss of business opportunities, diminution in value of their business, and the threat of civil penalties, and will continue to cause irreparable harm unless enjoined.

176.   Because enforcement of section 25982 will cause harm that cannot be adequately compensated in damages, Plaintiffs request that this Court provide preliminary and permanent injunctive relief enjoining Defendant from enforcing section 25982 against Plaintiffs.

*   *   *

187.   In addition to the foregoing causes of action, Plaintiffs believe that their allegations also state other claims upon which relief can be granted, such as claims for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for:  violation of the Supremacy Clause based on express preemption of "addition[al]" or "different" requirements imposed on ingredients in poultry products prepared in accordance with the PPIA; violation of the Supremacy Clause based on conflict or obstacle preemption given that the PPIA allows only those state regulations that are "consistent with the requirements under [the PPIA] … over articles required to be inspected under [the PPIA] *for the purpose of preventing* the distribution for human food purposes of any such articles *which are adulterated*," whereas section 25982, by requiring the exclusion of force-fed foie gras, requires the adulteration of Plaintiffs' USDA-approved poultry products; and violation of the Supremacy Clause based on preemption of the field of poultry product ingredients.  While these separate and additional claims were separately alleged in Plaintiffs' proposed Third Amended Complaint, and while Plaintiffs maintain that these claims — containing new factual allegations and based on legal theories not addressed by the Ninth Circuit in this action — are not barred by the rule of mandate or law of the case, *Plaintiffs do not include those separate and additional claims here in order to comply with the Court's order of February 27, 2019*.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully seek the following relief from this Court:

A.   A declaratory judgment, pursuant to 28 U.S.C. § 2201 *et seq.* (the Declaratory Judgment Act), that section 25982 of the California Health & Safety Code:

1. Is unenforceable against out-of-state sales of Plaintiffs' foie gras products that are shipped to persons in California after title has passed from a seller outside the State of California, such as where, as described above, out-of-state sellers accept orders for foie gras products outside California and deliver foie gras products to shippers outside California for delivery to a shipping address in California;

2. Is preempted by the Poultry Products Inspection Act as applied to the Plaintiffs' USDA-approved foie gras products and therefore violates the Supremacy Clause, including based on the impossibility for Plaintiffs to comply with both the requirements of the federal PPIA (and its regulations) and the prohibition in section 25982;

3. Violates the Commerce Clause as an unconstitutional extraterritorial regulation of agricultural practices that take place entirely outside of California; and

4. Violates the Commerce Clause as an unconstitutional burden on interstate and foreign commerce that clearly exceeds the putative local interest.

B. A preliminary injunction prohibiting Defendant from enforcing section 25982 of the California Health & Safety Code against Plaintiffs or against the sale of their foie gras products;

C. A permanent injunction prohibiting Defendant from enforcing section 25982 of the California Health & Safety Code against Plaintiffs or against the sale of their foie gras products;

D. An award of reasonable attorneys fees and costs to the extent permitted by law, including but not limited to under 42 U.S.C. § 1988; and

E. Such other relief as the Court deems just and proper.

Dated:      February 4, 2020          THE OFFICE OF MICHAEL TENENBAUM, ESQ.

/s/ Michael Tenenbaum

_____

Michael Tenenbaum, Esq.
*Counsel for Plaintiffs*

# DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury.

Dated:        February 4, 2020          THE OFFICE OF MICHAEL TENENBAUM, ESQ.

/s/ Michael Tenenbaum

_____

Michael Tenenbaum, Esq.
*Counsel for Plaintiffs*

FOURTH AMENDED COMPLAINT