Michael Tenenbaum, Esq. (No. 186850)
*mt@post.harvard.edu*
THE OFFICE OF MICHAEL TENENBAUM, ESQ.
1431 Ocean Ave., Ste. 400
Santa Monica, CA  90401-2136
Tel    (424) 246-8685
Fax    (424) 203-4285

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and SEAN "HOT" CHANEY, an individual; <br><br>    Plaintiffs, <br><br> – against – <br><br> XAVIER BECERRA, in his official capacity as Attorney General of California; <br><br>    Defendant. | Case No. 2:12-cv-05735-SVW-RZ <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF** <br><br><br> Date:        April 13, 2020 <br> Time:        1:30 p.m. <br> Courtroom: 10A <br><br> Hon. Stephen V. Wilson <br><br> <u>ORAL ARGUMENT REQUESTED</u> |

1

## NOTICE OF MOTION AND MOTION

2
TO DEFENDANT AND HIS ATTORNEY OF RECORD:

3
      PLEASE TAKE NOTICE that, on April 13, 2020, at 1:30 p.m., or as soon

4
thereafter as counsel may be heard before the Honorable Stephen V. Wilson in

5
courtroom 10A of the above-entitled court, located at 350 W. 1st St., Los Angeles, CA

6
90012, Plaintiffs Association des Éleveurs de Canards et d'Oies du Québec (the

7
"Canadian Farmers"), HVFG LLC ("Hudson Valley"), and Sean "Hot" Chaney will

8
and hereby do move this Court under Rule 56 of the Federal Rules of Civil Procedure

9
for an order granting summary judgment against Defendant Xavier Becerra (in his

10
official capacity as Attorney General of California) on Plaintiffs' First Cause of Action

11
for a declaration that California Health & Safety Code § 25982's prohibition on foie

12
gras products "sold in California" does not apply to products sold outside California,

13
even if the products are shipped to addresses in California.

14
      This motion is and will be made on the principal grounds that:  (1) there is an

15
actual controversy between the parties based on Defendant's threat of enforcement of

16
§ 25982 against the out-of-state sales of Plaintiffs' foie gras products when the products

17
are ultimately shipped to addresses in California after title has already passed to the

18
recipient outside California; and (2) the plain language of § 25982, the absence of any

19
special definition of "sold in California" that would extend to sales outside California,

20
the lack of any actual evidence of legislative intent to do so, the Commercial Code's

21
default rules for where a sale of goods is deemed to take place, the Legislature's

22
decision not to include any of the statutory terms it does when it seeks to ban products

23
from even being transported or shipped to California, the presumption against

24
extraterritoriality, and the doctrine of constitutional avoidance all support a

25
construction of § 25982 that is limited to foie gras products that are actually "sold in

26
California" — and that does not punish the sale of products in other States, even if the

27
products are ultimately shipped to addresses in California.

28
      Plaintiffs' motion is and will be based upon the following Memorandum of

1   Points and Authorities; upon the accompanying Statement of Uncontroverted Facts and
2   Conclusions of Law; upon the accompanying Declarations of Nikola Smatrakalev,
3   Marcus Henley, Sean Chaney, Andy Wertheim, Laurel Pine, and Michael Tenenbaum;
4   upon the pleadings and papers on file in this action; and upon such other evidence or
5   argument as may be presented to the Court in connection with the hearing on the
6   motion.

7        This motion is made following the conference of counsel pursuant to L.R. 7-3,
8   which took place on February 11, 2019 (as well as related communications on other
9   dates).

10  Dated:      March 16, 2020              Respectfully submitted,

11                                          */s/ Michael Tenenbaum*
12                                          Michael Tenenbaum, Esq.
                                            THE OFFICE OF MICHAEL TENENBAUM, ESQ.
13                                          *Counsel for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF MOTION ....................................................1

THE RELEVANT FACTUAL AND LEGAL BACKGROUND......................................3

I. Plaintiffs Hudson Valley and the Canadian Farmers Produce Federally-Approved Poultry Products — Notably, Products that Contain Foie Gras — for Sale and Transport in Interstate and Foreign Commerce ........................3

II. Plaintiffs' Foie Gras Products Are Regularly Sold By Sellers Outside California — Through Out-of-State Websites and Telephone Orders — Who Seek to Ship Plaintiffs' Products to Recipients in California ......................4

III. Section 25982 Bans Poultry Products from Being "Sold in California" If They Result from Force Feeding a Bird — But It Does Not Even Purport to Ban their Shipment to or Consumption by Recipients in California ............9

IV. Defendant and the District Attorneys He Supervises are Threatening to Prosecute Out-of-State Sellers of Plaintiffs' Foie Gras Products for Sales Outside California if the Products Are Sent to Addresses Here ........................11

ARGUMENT............................................................................................................13

I. Plaintiffs Are Entitled to a Declaratory Judgment that § 25982 Does Not Apply to Sales of Their Foie Gras Products that Take Place Outside California, Even if the Product is Sent to a Recipient in California .................13

    A. Plaintiffs Satisfy the Legal Standard for Declaratory Relief ...................13

    B. Plaintiffs Have Submitted Evidence of Concrete Facts Enabling this Court to Declare Whether § 25982 Applies When Their Foie Gras Products Are Sold Outside California and Sent Here .............................14

    C. Section 25982 Applies Only to a Product Actually "Sold in California" — Not to Products Sold Outside the State But Sent Here — and the Court Should Declare That in Its Judgment .................16

        1. The Plain Language of § 25982 Is Limited to Products "Sold in California"................................................................................16

        2. Unlike Other Statutes, § 25982 Does Not Include Any Special or More Expansive Definition of the Term "Sold in California"....................................................................................17

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

3.    There Is No *Actual* Evidence of Legislative Intent to Extend to Out-of-State Sales ...................................................................18

4.    Absent a Special Definition, California Courts Look to the Commercial Code's Default Rule for Where a Sale of Goods Is Deemed to Take Place ..............................................................18

5.    The Legislature Knows Full Well How to Proscribe the Conduct Defendant Is Now Threatening to Punish — Such as the Shipment, Distribution, or Delivery of Foie Gras Products — But It Chose Not to Prohibit That Activity...............................20

6.    Applying § 25982 to Sales from Out-of-State Sellers Would Violate the Presumption Against Extraterritoriality ......................21

7.    Declaring § 25982 Applicable Only to Products Sold by Sellers *in California* Respects the Doctrine of Constitutional Avoidance ..................................................................................22

D.    Extending the Application of § 25982 to the Sale of Plaintiffs' Products Outside California Based on Their Shipment to an Address in California Would Lead to Absurd Results — and Would Only Magnify the Statute's Burden on Interstate and Foreign Commerce........................................................................23

CONCLUSION ...................................................................................................25

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................. 8

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Becerra*,
       870 F.3d 1140 (9th Cir. 2017)................................................................ 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............................................................ 8

*City of Fontana v. Cal. Dep't of Tax & Fee Admin.*,
       17 Cal.App.5th 899 (Cal. Ct. App. 2017)......................................... 14

*City of South San Francisco v. Board of Equalization*,
       232 Cal.App.4th 707 (Cal. Ct. App. 2014)....................................... 14

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*,
       485 U.S. 568 (1988).................................................................................. 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................. 8

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ........................... 17

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)...................................... 8

*Mysel v. Gross*, 70 Cal.App.3d Supp. 10 (Sup. Ct. App. Dep't 1977) .................... 15

*People v. Garcia*, 2 Cal.5th 792 (2017) .................................................................. 17

*Sam Francis Fdn. v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015)......................... 17

## Statutes, Regulations, and Rules

28 U.S.C. § 2201   .................................................................................................. 13

Fed. R. Civ. P. 56   ................................................................................................. 12

Fed. R. Civ. P. 57   ................................................................................................. 12

Cal. Bus. & Prof. Code § 22761 ..................................................................... 17, 20

Cal. Comm. Code § 1104 ...................................................................................... 20

Cal. Comm. Code § 2102 ............................................................................... 19, 20

Cal. Comm. Code § 2106 ......................................................................... 19

Cal. Comm. Code § 2401 ......................................................................... 19

Cal. Corp. Code § 25008 ......................................................................... 21

Cal. Food & Agric. Code § 27519.5 ....................................................... 20

Cal. Health & Safety Code § 11107.2 ..................................................... 21

Cal. Health & Safety Code § 25981 ........................................................ 24

Cal. Health & Safety Code § 25982 ................................................... *passim*

Cal. Health & Safety Code § 25990 ........................................................ 17

Cal. Health & Safety Code § 25991 ........................................................ 17

Cal. Health & Safety Code § 25996 ........................................................ 20

Cal. Pen. Code § 597z ............................................................................. 21

Cal. Rev. & Tax Code § 25135 ............................................................... 21

Md. Sen. Bill 625 (Feb. 3, 2020) ........................................................... 21

Md. Sen. Bill 626 (Feb. 3, 2020) ........................................................... 21

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# INTRODUCTION AND SUMMARY OF MOTION

Section 25982 of the California Health and Safety Code prohibits Plaintiffs' foie gras products from being "sold in California."  It does not prohibit them from being "sold in other States."  It does not prohibit them from being "shipped to California."  It does not prohibit them from being "received in California" — or, for that matter, "possessed in California" or "enjoyed in California."  Indeed, as acknowledged both in Defendant's most recent filing in this case and in this Court's recent order, everyone reads § 25982 as preventing foie gras products from being "sold *within* California." (Dkt. 214 [Def. Mot. to Dismiss] at p. 1, ln. 5 (emphasizing California's interest in preventing sales "within its own borders") & p. 5, ln. 18 (same); Dkt. 212 [Order 1/14/20] at p. 4 (emphasis in original).)

Yet, in spite of this limit in the very text of § 25982, Defendant and the District Attorneys he supervises continue to threaten to prosecute sales of Plaintiffs' foie gras products that take place in *other* States, merely because the products are ultimately delivered by a third-party shipper to a recipient in California.  As a result, out-of-state sellers of Plaintiffs foie gras products — including Plaintiff HVFG itself — fear prose-cution and crippling penalties of $1,000 per sale per day if they fulfill an online or telephone order from a purchaser anywhere in the world with a California shipping address, and Plaintiffs therefore continue to suffer lost sales.  There is no question that, "[t]hrough its responsive pleadings, California has demonstrated that it would seek to enforce § 25982 against such a sale," as this Court has observed (Dkt. 212 at p. 8), which is why Plaintiffs require a declaratory judgment in this controversy and seek a permanent injunction against enforcement of § 25982 as to these sales.

This Court's recent order stated that, "[f]or this Court to properly grant declara-tory relief, Plaintiffs must present declarations or other evidence which establish suffi-cient facts" for the Court to decide the matter — and this motion attaches declarations with concrete evidence of the sales at issue, which Plaintiff does not expect will be con-troverted.  (Dkt. 212 at p. 9.)  The most obvious example of such sales — in fact, the

- 1 -

1  paradigmatic sale described in Plaintiffs' declarations — is the everyday sale of Plain-
2  tiffs' products through a website operated by an out-of-state seller who receives and ful-
3  fills an order outside California, delivering it to a shipper such as FedEx or UPS to be
4  sent to an address that — but for Defendant's threat of enforcing § 25982 — would
5  include an address in California.  The only question for the Court to answer in order to
6  resolve the parties' dispute is whether § 25982's ban on foie gras products being "sold
7  in California" somehow also prohibits products sold *outside* California from even
8  being sent here.  And the only sensible construction of that term is that it does not.

9      Neither § 25982 nor any provision of the bill that placed it in the code contains
10  any definition of the term "sold in California" — let alone any definition of "sale" that
11  would expand it beyond the plain meaning of that term.  Nor is there evidence in the
12  legislative history of § 25982 that the Legislature intended to reach sales consummated
13  beyond California's borders.  Instead, as California courts have recognized, the statute's
14  silence on the definition of "sale" leaves in place the default rule in California's Com-
15  mercial Code, which provides that a product is "sold" in the place where the seller
16  transfers title by tendering the product to a shipper.  Had the Legislature actually
17  wanted § 25982 to prohibit even the subsequent shipment or delivery of foie gras
18  products sold in other States — as Defendant now claims it does — the Legislature
19  knew full well how to say that (as it has elsewhere in the Health and Safety Code and in
20  countless other statutes, as shown in the examples in this brief) but chose not to.

21      Plaintiffs are not seeking to "circumvent" the law but, rather, need to ensure
22  that, when sellers of their products comply with it to the letter, their sales are not pun-
23  ished by Defendant and the California prosecutors he supervises.  In literally arguing
24  that § 25982 applies to "all sales of force-fed foie gras products purchased from an out-
25  of-state seller that are delivered to a buyer in California" (Dkt. 214 at p. 5, lns. 15-17),
26  Defendant would make scofflaws of sellers of Plaintiffs' wholesome, federally-approved
27  poultry products in other States and would turn common carriers and shipping compa-
28  nies into their conspirators.  Defendant's interpretation is unhinged from the text or

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

purpose of the statute itself and would lead to absurd results — not to mention impose an even more substantial burden on interstate commerce.

## THE RELEVANT FACTUAL AND LEGAL BACKGROUND

### I.   Plaintiffs Hudson Valley and the Canadian Farmers Produce Federally-Approved Poultry Products — Notably, Products that Contain Foie Gras — for Sale and Transport in Interstate and Foreign Commerce.

Under the federal Poultry Products Inspection Act (the "PPIA"), a "poultry product" is "any product which is made wholly or in part from any poultry carcass or part thereof." 21 U.S.C. § 453(f). There is no dispute that Plaintiffs' products made from foie gras — which the United States Department of Agriculture defines as the "fat liver … obtained exclusively from specially fed and fattened geese and ducks" — are poultry products. *See* Dkt. 202-2 at Ex. A (definition from USDA's Food Standards and Labeling Policy Book). Moreover, federal regulations under the PPIA provide that "all organs and other parts of carcasses which are found to be not adulterated shall be *passed for human food*." 9 C.F.R. § 381.79 (emphasis added).

Congress passed the PPIA in 1957 to make federal inspection "mandatory for all poultry products intended for distribution in interstate commerce." 60 Fed. Reg. 6774, 6776 (Feb. 3, 1995). Congress declared that "poultry products are an important source of the Nation's total supply of food." 21 U.S.C. § 451. As relevant to Plaintiff Association des Éleveurs de Canards et d'Oies du Québec (the "Canadian Farmers"), USDA regulations under the PPIA further provide that "poultry products may be *imported*" if they were processed in Canada. 9 C.F.R. §§ 381.195(c), 318.196(b) (emphasis added). They also expressly provide that, only upon compliance with the applicable regulations, "imported poultry products which have been inspected, passed, and marked under this subpart may be *transported in commerce*." 9 C.F.R. § 381.208(c) (emphasis added).[1]

---

[1]   The PPIA and its implementing regulations reflect the Constitution's guarantee of free trade among the States: "Our system, fostered by the Commerce Clause, is that every farmer and every craftsman shall be encouraged to produce by the Nation, that no home embargoes will withhold his exports, and no foreign state will by … regulations exclude them." *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539 (1949).

## II. Plaintiffs' Foie Gras Products Are Regularly Sold By Sellers Outside California — Through Out-of-State Websites and Telephone Orders — Who Seek to Ship Plaintiffs' Products to Recipients in California.

Plaintiff HVFG LLC ("Hudson Valley") and the Canadian Farmers are producers and sellers of foie gras products produced and sold from their federally-regulated official establishments in, respectively, Sullivan County, New York, and Quebec, Canada. (Henley Decl. ¶¶ 1-3; Smatrakalev Decl. ¶¶ 1-3.)  Neither Hudson Valley nor the Canadian Farmers (all of whose products are imported into the United States) feed a single duck in California.  (Henley Decl. ¶ 6; Smatrakalev Decl. ¶¶ 2, 5.)  All of the foie gras products sold by Hudson Valley in the United States are the result of raising ducks in New York in full compliance with New York and federal law.  (Henley Decl. ¶ 6.) The same is true for the Canadian Farmers under the laws of Canada and Quebec. (Smatrakalev Decl. ¶ 5.)  All of Hudson Valley's and the Canadian Farmers' products are certified as wholesome by the USDA for sale in commerce in the United States. (Henley Decl. ¶ 2; *e.g.*, Smatrakalev Decl. ¶¶ 2-3.)[2]

Hudson Valley's foie gras products are available for sale throughout the United States.  (Henley Decl. ¶ 7.)  Its foie gras products are sold to consumers both by Hudson Valley itself and by third-party sellers.  (*Id.*)  Palmex exports poultry products to the United States, including foie gras products made by its subsidiary in Quebec, Aurpal Inc.  (Smatrakalev Decl. ¶¶ 1-2, 6.)  Its foie gras products are sold to distributors outside California by Palmex itself and sold to consumers by third-party sellers.  (*Id.* at ¶¶ 3, 6.)  However, since this Court's injunction against enforcement of § 25982 was vacated in January 2019, sellers of Hudson Valley's and Palmex's foie gras products who are located *within* California (e.g., restaurants) have been forced to stop selling them to purchasers in California out of fear of prosecution, and both Hudson Valley and Palmex consequently suffered a dramatic decline in its sales of foie gras products.

---

[2]    The Canadian Farmers, i.e., the Association des Éleveurs de Canards et d'Oies du Québec, represent the interests of association's members, including Aurpal Inc., a wholly owned subsidiary of Palmex, Inc. ("Palmex") in Marieville, Québec, that processes foie gras products for Palmex.  (Smatrakalev Decl. ¶ 1.)

(Henley Decl. ¶ 8; Smatrakalev Decl. ¶ 7.)  Moreover, as described in Plaintiffs' declarations, even sellers of Hudson Valley's and Palmex's foie gras products who are located *outside* California (e.g., Hudson Valley itself and countless online sellers of its and the Canadian Farmers' foie gras products) have likewise been forced to stop even *shipping* their products to recipients in California out of fear of prosecution under § 25982 in light of how Defendant and the California prosecutors he supervises have threatened to apply it.  (*See* Henley Decl. ¶¶ 15, 19; Smatrakalev Decl. ¶¶ 8, 10.)

As a typical example of these remote sales, Hudson Valley makes its foie gras products available for purchase through its own website (hudsonvalleyfoiegras.com) as well as through orders it receives by email, telephone, and fax.  (*Id.* ¶ 10.)  Any person from virtually anywhere in the world can complete an order through Hudson Valley's website.  The website collects credit card billing and shipping addresses, but Hudson Valley cannot determine the purchaser's actual location (e.g., whether he or she is in California or not) at the time of his or her purchase.  (*Id.*)  Hudson Valley's website is hosted by a third-party hosting business on a server located outside California.  (*Id.* ¶ 11.)  When a purchaser completes an order through the website, his or her credit card payment is processed through a third-party processor that is located outside California.  (*Id.*)  Hudson Valley receives the purchaser's payment at its bank in Sullivan County, New York.  (*Id.*)

When it receives an order for a foie gras product through its website (or by email, telephone, or fax), Hudson Valley personnel in Sullivan County, New York, fulfill the order from Hudson Valley's facilities in Sullivan County, New York.  (*Id.* ¶ 12.)  Hudson Valley physically delivers the product to a third-party shipping company, typically UPS or FedEx, and typically for overnight delivery, at its facilities in Sullivan County, New York.  (*Id.*)  The shipping company thereafter transports the product to the recipient designated by the purchaser, which, until as recently as January 2019, included recipients in California.  (*Id.*)

Under Hudson Valley's sales policy, its prices do not include shipping fees, which are computed on a per-order basis.  (*Id.* ¶ 13.)  As part of each transaction for the sale of foie gras products through its website (or by email, telephone, or fax), Hudson Valley undertakes to have the product sent to the purchaser's designated recipient, but Hudson Valley itself is not required to deliver them at their destination.  (*Id.*)  Instead, Hudson Valley undertakes only to physically deliver the product to a third-party shipping company, which it does in Sullivan County, New York.  (*Id.*)  Hudson Valley does not contract with its purchasers to alter the rule in section 2-401 of New York's Uniform Commercial Code Law — or the similar commercial code sections of any other State.  (*Id.* ¶ 14.)  In any event, out of fear of prosecution, Hudson Valley's website does not allow customers to select an address in California for shipping if the order contains foie gras products, and its current policy is to not send foie gras products to addresses in California.  (*Id.* ¶ 18.)

In addition, *other* sellers of Hudson Valley's and the Canadian Farmer's foie gras products who are located *outside* California, such as D'Artagnan, Inc., in New Jersey, Laurel Pine, Living Luxury, LLC ("Laurel Pine"), in Nevada — like Hudson Valley itself and like many other sellers who are outside California but who accept orders through their websites, fulfilling and shipping foie gras products from outside California — have been forced to stop even shipping Hudson Valley's foie gras products to recipients in California.  (Henley Decl. ¶ 15; Smatrakalev Decl. ¶ 8; Wertheim Decl. ¶¶ 1-4; Pine Decl. ¶¶ 1-4.)

D'Artagnan regularly sells foie gras products for shipment all over the United States, including — at various points during the four years that this Court's permanent injunction against enforcement of § 25982 was in effect (i.e., until January 2019) — to purchasers who provided shipping addresses in California.  (Id. ¶ 2.)  D'Artagnan maintains an Internet website, which is one of the primary channels through which it accepts orders for its products for shipping to recipients outside New Jersey.  (*Id.* ¶ 3.)  For foie gras products (as for most others), when a purchaser places an order through

1   D'Artagnan's website from anywhere in the world, D'Artagnan receives it at its office in

2   New Jersey and promptly proceeds to fulfill it.  (*Id.*)  (D'Artagnan has no way of

3   knowing the customer's actual location at the time of his or her order.)  (*Id.*)

4   D'Artagnan also receives the credit card payment for the order through a processor

5   located outside California that transmits the payment to D'Artagnan's bank in New

6   Jersey.  (*Id.*)  D'Artagnan fulfills the order by placing the products for shipment, via

7   FedEx, at one of its warehouses in either New Jersey, Illinois, Colorado, Georgia, or

8   Texas.  (D'Artagnan has no warehouses in California from which any foie gras

9   products are shipped.)  (*Id.*)  Though D'Artagnan encourages customers to use its

10  website, D'Artagnan also accepts orders by telephone (again, with no way of knowing

11  the customer's actual location at the time of his or her order).  (*Id.*)  D'Artagnan's

12  policy and practice is not to enter into any special contract with the purchaser

13  concerning the location where title to the products passes.  (*Id.*)

14      Similarly, Laurel Pine regularly sells foie gras products for shipment from Nevada

15  all over the United States, including — at various points during the four years that this

16  Court's permanent injunction against enforcement of § 25982 was in effect (i.e., until

17  January 2019) — to purchasers who provided shipping addresses in California.  (Pine

18  Decl. ¶ 2.)  Laurel Pine maintains an Internet website, which is one of the primary

19  channels through which it accepts orders for its products for shipping to recipients

20  outside Nevada.  (*Id.* ¶ 3.)  For foie gras products (as for most others), when a

21  purchaser places an order through Laurel Pine's website from anywhere in the world,

22  Laurel Pine receive it at its office in Nevada and promptly proceeds to fulfill it.  (*Id.*)

23  Laurel Pine has no way of knowing the customer's actual location at the time of his or

24  her order.  (*Id.*)  Laurel Pine also receives the credit card payment for the order through

25  a processor located outside California that transmits the payment to Laurel Pine's bank

26  in Nevada.  (*Id.*)  Laurel Pine fulfills the order by placing the products for shipment,

27  typically via FedEx, at its facility in Nevada.  Laurel Pine has no facilities in California

28  from which any foie gras products are shipped.  (*Id.*)  Laurel Pine's policy and practice

1  is not to enter into any special contract with the purchaser concerning the location

2  where title to the products passes.  (*Id.*)  In fact, the order confirmation email sent by

3  Laurel Pine's website recites that title to a purchased product passes at the time of

4  shipment from its facility in Nevada, which is the rule under the commercial codes of

5  both Nevada and California.  (*Id.*)

6      In light of the uncertainty surrounding the application of California's foie gras

7  ban to out-of-state sellers, and especially given the threats of prosecution these sellers

8  have faced directly from various District Attorneys in California and have learned

9  about against other out-of-state sellers, sellers such as D'Artagnan and Laurel Pine have

10 not since January 2019 shipped any foie gras products to customers — no matter where

11 they may be located at the time of the sale — who provide a California shipping

12 address.  (Wertheim Decl. ¶ 4; Pine Decl. ¶ 4.)  In fact, they have been forced to inform

13 customers that they must either change their shipping address to a state other than

14 California or to remove any foie gras products from their order — out of fear that

15 California will attempt to enforce its ban against it even for these sales (with penalties

16 up to $1,000 per sale).  (*Id.*; *id.*)

17     Hudson Valley and Palmex are regularly in contact with sellers of their foie gras

18 products and have been in discussions about this very issue with them since January

19 2019.  (Henley Decl. ¶ 15.; Smatrakalev Decl. ¶ 8.)  Given California's demonstrated

20 threat of enforcing § 25982 against even these sellers' out-of-state sales, Hudson Valley

21 has been forced as of January 2019 not only to stop making its foie gras products

22 available for sale *within* California but also to stop shipping them to recipients in

23 California and even to stop making its foie gras products available for sale by other

24 sellers located *outside* California for shipment to addresses in California.  (*Id.*; *id.*)  As

25 they await relief from this Court, Hudson Valley and the Canadian Farmers continue to

26 face tens of thousands of dollars per month in lost sales of their foie gras products as a

27 result of Defendant's threatened enforcement of § 25982 against these out-of-state

28 sales.  (Henley Decl. ¶ 19; Smatrakalev Decl. ¶ 10.)

Finally, Plaintiff Sean Chaney, the former executive chef at Hot's Kitchen in Hermosa Beach, California, used to buy foie gras products from sellers outside California, including directly from Hudson Valley. (*Id.* ¶ 3.) Although Chef Chaney closed Hot's Kitchen in January 2018, he continued to provide catering and private chef services for events at which he has sold foie gras products — but, out of fear of prose-cution, he has refrained from selling foie gras products since January 8, 2019, when this Court's injunction was vacated by a ruling from the Ninth Circuit. (*Id.* ¶ 4.)

Chef Chaney would still like to purchase foie gras products to prepare and serve for his friends and family in California (and for himself, of course), since § 25982 only prohibits foie gras products from being "sold in California" but does not prohibit them from being received, possessed, prepared, served, consumed, or enjoyed here. (*Id.* ¶ 5.) Insofar as there are no longer any sellers of foie gras products in California, Chef Chaney has attempted to purchase foie gras from sellers located outside California for shipment to him here, including from Hudson Valley. (*Id.*) But these sellers have informed him that they will not even *ship* foie gras products to addresses in California out of fear that California will attempt to enforce its ban against them. (*Id.*)

Similarly, Chef Chaney fears that, even if he were somehow able to purchase foie gras products from an out-of-state seller by way of an Internet or telephone order whereby the out-of-state seller places the products with a delivery service such as FedEx or UPS for shipment to him or one of his friends or family members in California (whether he places the order from here in California or from anywhere outside the state), he could face prosecution to the extent that California has demonstrated in this case that it would seek to enforce § 25982 against such a sale. (*Id.* ¶ 6.)

III.  **Section 25982 Bans Poultry Products from Being "Sold in California" If They Result from Force Feeding a Bird — But It Does Not Even Purport to Ban their Shipment to or Consumption by Recipients in California.**

Section 25982 provides: "A product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal

size."  Cal. Health & Safety Code § 25982.  Yet, while it plainly bans foie gras pro-
ducts from being "sold in California," it says nothing about banning such products
from being "shipped to California" or "transported in California" or "delivered in
California," let alone "offered for sale" or "enjoyed with friends and family" in
California.  Indeed, everyone from the author of § 25982 to the governor who signed it
to Defendant's predecessor in this case has stated that *§ 25982 does not ban foie gras*.
When he introduced the bill, Senator John Burton said:  "This bill has nothing to do …
with banning, uh, foie gras."  (Dkt. 118-5 [Tenenbaum Decl. 5/14/2014 at ¶ 2].)  In his
signing statement, Governor Schwarzenegger wrote that the bill's "intent is to ban the
current foie gras production practice"; as he emphasized, "It does not ban the food
product, foie gras."  (*Id.* at ¶ 3 & Ex. A.)

        Even Defendant concedes that § 25982 is about preventing sales in California
and not about any other prohibition with respect to foie gras.  In the very first line of
his motion to dismiss, Defendant says that California's interest is in "preventing, *within
its own borders*, the sale of products resulting from force feeding a bird[.]"  (Dkt. 214
at p. 3 (emphasis added).  And he later reiterates, "Section 25982 proscribes, *within
the state's borders*, the sale of products resulting from force feeding a bird."  (Dkt. 214
at p. 5, lns. 18-19.)  This is hardly a new angle from Defendant.  As Defendant insisted
at the outset of this case, § 25982's "sale ban merely reinforces the in-state production
ban by removing the incentive for *in-state* producers to force feed birds," thus ensuring
that "*[i]n-state* producers are doubly barred from producing and selling."  (Dkt. 57 at
ECF p. 20, lns. 9-11; 9th Cir. Dkt. 16-1 at ECF p. 47 (emphasis added to both).)

        This Court's order from January noted the same:  "Assuming foie gras cannot be
produced without force-feeding, § 25982 still only bans foie gras *sales in California*.
It does not prevent *any* conduct outside of California; it prevents products that are a
result of certain conduct (even out-of-state) from being sold *within* California."  (Dkt.
212 at p. 4 (all emphasis in original).)

It should be clear that the Legislature's intention (and everyone's admitted understanding thereof, including Defendant's and this Court's) is that § 25982 only makes it unlawful for a foie gras product to be "sold in California" — but otherwise allows such products not only to be dreamt about but to be eaten, gifted, possessed, offered for sale, and even shipped to and received in California.

## IV. Defendant and the District Attorneys He Supervises are Threatening to Prosecute Out-of-State Sellers of Plaintiffs' Foie Gras Products for Sales Outside California if the Products Are Sent to Addresses Here.

Although § 25982 only prohibits foie gras products from being "sold in California," Defendant and the California prosecutors he supervises have continued to threaten Plaintiffs and other out-of-state sellers of their products over sales that take place outside California merely because a product is ultimately sent to someone in California. (Henley Decl. ¶¶ 16-19; Smatrakalev Decl. ¶¶ 8-9; Pine Decl. ¶ 4; Wertheim Decl. ¶ 4; Chaney Decl. ¶¶ 4-6; Tenenbaum Decl. ¶ 3.)  In his motion to dismiss, Defendant takes the position that "Section 25982 applies to all sales in California, including *all sales* of force-fed foie gras products *purchased from an out-of-state seller that are delivered to a buyer in California*."  (Dkt. 214 at 5 (emphasis added).)

Similarly, prior to the issuance of this Court's injunction in January 2015 (and starting as far back as February 2014), at least three county District Attorneys offices in California (Los Angeles, Monterey, and Santa Clara Counties) were threatening Hudson Valley and other out-of-state sellers of its foie gras products for even sending these products to anyone in California.  (Henley Decl. ¶ 16; Tenenbaum Decl. ¶ 3.) Prosecutors from each of these offices took the position that, even if these out-of-state sellers consummated a sale of a foie gras product outside California such that the product was delivered to the shipper, and thus title passed outside California, this would somehow result in the product being "sold in California" for purposes of § 25982 if the product was shipped to anyone in California.  (Tenenbaum Decl. ¶ 3; Henley Decl. ¶ 16.)

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    The same three prosecutors that threatened Hudson Valley have since sought to

2    enforce § 25982 against a major online seller of Hudson Valley's and the Canadian

3    Farmers' products.  Even since § 25982 took effect in 2012, Hudson Valley's products,

4    as well as those of the Canadian Farmers, have been sold by various sellers on Ama-

5    zon.com, most of whom are located outside California.  (*Id.* ¶ 17.)  Yet, in November

6    2018 — at a time when this Court's permanent injunction against enforcement of

7    § 25982 was still in effect —  the District Attorneys offices for Los Angeles, Monterey,

8    and Santa Clara Counties actually filed an action against Amazon.com, Inc., over its

9    sales of foie gras products.  (Henley Decl. ¶ 17; Dkt. 202-2, Ex. C [Stipulated Judg-

10   ment].)  These prosecutors obtained a stipulated judgment under which Amazon paid

11   $90,000 in civil penalties and now may not even "offer for sale" a foie gras product in

12   California, which was specially defined to include "making a product available to be

13   purchased and shipped into the State of California."  (*Id.*)  And, under the California

14   Government Code, Defendant himself has "direct supervision over the district attorneys

15   of the several counties of the State," but he did nothing to restrain these prosecutors.

16   Needless to say, California's actions against Amazon, one of the world's largest

17   retailers, have heightened Plaintiffs' fear of prosecution under § 25982.  (Henley Decl.

18   ¶¶ 17-18; Smatrakalev Decl. ¶ 8, n.2 and ¶ 9.)

19    It is beyond dispute that Plaintiffs' fear of prosecution from Defendant and the

20   prosecutors he supervises under § 25982 stems from Defendants' conduct, as this Court

21   recently noted:  "Plaintiffs assert that the law should be read not to capture

22   circumstances where an offending product is 'shipped to the California consumer from

23   an out-of-state location, [but] title passed out of state . . . .'  []  Through its responsive

24   pleadings, California has demonstrated that it would seek to enforce § 25982 against

25   such a sale."  (Dkt. 212 at p. 8.)  Plaintiffs thus face prosecution from Defendant and

26   the prosecutors he supervises if Plaintiffs or any of the countless out-of-state sellers who

27   sell their products ship to recipients in California, and Plaintiffs and these sellers have

28   thus been forced to adopt a policy (in addition to refraining from selling *in* California)

- 12 -

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

of not even sending foie gras to addresses in California.  (Henley Decl. ¶¶ 16-19; Smatrakalev Decl. ¶¶ 8-9; Wertheim Decl. ¶ 4; Pine Decl. ¶ 4.)

ARGUMENT

**I.    Plaintiffs Are Entitled to a Declaratory Judgment that § 25982 Does Not Apply to Sales of Their Foie Gras Products that Take Place Outside California, Even if the Product is Sent to a Recipient in California.**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

**A.    Plaintiffs Satisfy the Legal Standard for Declaratory Relief.**

The legal standard on a claim for declaratory relief is well-known to this Court. Fed. R. Civ. P. 57.  "In a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.

Since January 2019, out-of-state sellers of Plaintiffs' USDA-approved foie gras products, including Hudson Valley itself, have been forced to refrain from even having their products *shipped* to addresses in California, under threat of being prosecuted by Defendant and the prosecutors he supervises as if these products were somehow being "sold in California." (Henley Decl. ¶¶ 15, 18; Wertheim Decl. ¶ 4; Pine Decl. ¶ 4.)  (In the case of Chef Chaney, as a result of this threat, out-of-state sellers have declined to sell and ship to him, and, even if they did, he fears prosecution for his participation in such products' being deemed to have somehow been "sold in California."  Cheney Decl. ¶ 6.))  As this Court ruled in January, "Plaintiffs assert that the law should be read not to capture circumstances where an offending product is 'shipped to the California consumer from an out-of-state location, [but] title passed out of state . . . .' *Id.*  Through its responsive pleadings, California has demonstrated that it would seek to enforce § 25982 against such a sale."  (Dkt. 212 at p. 8.)

"The dilemma posed by that coercion — putting the challenger to the choice between abandoning his rights or risking prosecution — is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate."  *MedImmune, Inc. v.*

- 13 -

*Genentech, Inc.*, 549 U.S. 118, 128-29 (2007).  Plaintiffs thus satisfy the legal standard for declaratory relief — and further establish below the nature of the declaratory judgment that this Court should issue.

**B.    Plaintiffs Have Submitted Evidence of Concrete Facts Enabling this Court to Declare Whether § 25982 Applies When Their Foie Gras Products Are Sold Outside California and Sent Here.**

In January, this Court denied summary judgment on Plaintiffs' claim for declaratory relief because "[t]he exact circumstances of the sale (including how, when, and where title is passed or the goods are delivered) are not properly before us because they have not been presented with sufficient specificity."  (Dkt. 212 at p. 8.)  The Court invited Plaintiffs to adduce additional facts:  "For this Court to properly grant declaratory relief, Plaintiffs must present declarations or other evidence which establish sufficient facts for the Court to determine Plaintiffs' proposed course of action."  (*Id.* at 9.)  The declarations Plaintiffs now submit in support of this motion provide the Court with precisely the evidence it needs to determine whether § 25982 applies to out-of-state sales of Plaintiffs' foie gras products that are sent to addresses in California — and to conclude that § 25982 does not.

For starters, Plaintiffs' evidence demonstrates that Hudson Valley — which is located in Sullivan County, New York — receives orders for foie gras products through its website, which is hosted on a server outside California.  (Henley Decl. ¶¶ 10-11.) The website can be accessed from anywhere in the world (including from California). (*Id.*)  It collects both a credit card billing address and a shipping address, but Hudson Valley cannot determine from any information it collects whether the purchaser is actually in California or not at the time of purchase.  (*Id.*)  When Hudson Valley receives a completed order for a foie gras product through its website (or by email, telephone, or fax), Hudson Valley's personnel fulfill the order from its facilities in New York.  (*Id.* ¶ 12.)  Hudson Valley physically delivers the product to a third-party shipping company, typically UPS or FedEx, and typically for overnight delivery, at its facilities in Sullivan County, New York.  (*Id.*)  The shipping company thereafter

- 14 -

transports the product to the recipient designated by the purchaser, which, until as recently as January 2019, included recipients in California. (*Id.*)

The same goes for other non-California sellers of Plaintiffs' foie gras products. Plaintiffs' evidence demonstrates that foie gras products produced by both Hudson Valley and the Canadian Farmers (including those sold by Palmex), are regularly sold in the same manner by third-party sellers outside California, such as D'Artagnan and Laurel Pine, among others across the country from Nevada to Florida. (Henley Decl. ¶¶ 7, 15; Smatrakalev Decl. ¶¶ 6, 8.) These sales take place through the out-of-state sellers' websites as well as through orders placed by email, telephone, and fax — all outside of California. (Smatrakalev Decl. ¶¶ 6-8; Pine Decl. ¶¶ 2-3; Wertheim Decl. ¶¶ 2-3.) The sellers' personnel outside California fulfill the orders from their facilities outside California. (*Id.*) For instance, Laurel Pine (which sells Palmex's foie gras products) fulfills orders at its facility in Nevada and physically delivers the foie gras products to a third-party shipping company, typically FedEx, at Lauren Pine's facility in Nevada. (Smatrakalev Decl. ¶ 8; Pine Decl. ¶ 3.) Likewise, D'Artagnan fulfills orders at its facility in New Jersey and physically delivers the foie gras products to FedEx in New Jersey. (Wertheim Decl. ¶ 3.) The shipping companies thereafter transport the products to recipients designated by the purchasers, which, until as recently as January 2019, included recipients in California. (Smatrakalev Decl. ¶¶ 6-8; Pine Decl. ¶¶ 2-3; Wertheim Decl. ¶¶ 2-3.) These out-of-state sellers of Plaintiffs' foie gras products had shipped to recipients in California while this Court's permanent injunction against enforcement of § 25982 was in effect but (since January 2019) have been forced to refrain from doing so based on threats of prosecution. (Smatrakalev Decl. ¶¶ 8-9; Wertheim Decl. ¶¶ 2, 4; Pine Decl. ¶¶ 2, 4.)[3]

---

[3] Because it is impossible for remote sellers to know either the purchaser's actual physical location at the time of purchase or the identity of the recipient at the designated shipping address, Defendant's expansive reading of § 25982 would encompass even purchases made over the Internet by a purchaser outside California for shipment to a colleague, friend, or relative in California — i.e., under circumstances where foie gras products are sent to gift recipients who did not purchase the foie gras themselves.

These facts establish the exact situation for which Plaintiffs' First Cause of Action seeks declaratory relief:  does § 25982 apply to Plaintiffs' foie gras products sold through out-of-state sellers such as Hudson Valley, D'Artagnan, and Laurel Pine, when:  (1) the seller receives an order through a website hosted outside California (or by email, telephone, or fax to the seller outside California); (2) the seller's personnel outside California fulfill the order from its facilities outside California by physically delivering the products to a third-party shipping company, such as UPS or FedEx, outside California (and thus, absent an agreement to the contrary, title passes outside California); and (3) as relevant to this case, the shipping company thereafter transports the products to the purchaser's designated recipient in California.[4]

C.   **Section 25982 Applies Only to a Product Actually "Sold in California" — Not to Products Sold Outside the State But Sent Here – and the Court Should Declare That In Its Judgment.**

There are at least seven compelling reasons for this Court to declare that § 25982 does not apply to Plaintiffs' wholesome foie gras products sold in commerce by out-of-state sellers *outside* California, even if they are sent to addresses here.

1.   **The Plain Language of § 25982 Is Limited to Products "Sold in California."**

First, the plain language of § 25982 demonstrates that it prohibits a subject foie gras product from being "sold *in California*."  The term does not prohibit any products from being sold anywhere outside California.  And the dictionary defines

---

[4]     As for Plaintiff Sean Chaney, out of fear of prosecution under § 25982, he has refrained from selling foie gras in California since January 2019, as described above. (Chaney Decl. ¶ 4.)  Chef Chaney would still like to purchase foie gras products outside of California to prepare for family, friends, and himself, and would like to have them shipped to himself in California. (*Id.* ¶ 5.)  However, various sellers outside of California, including Hudson Valley, have informed him that they will not even ship foie gras products to addresses in California out of fear that § 25982 will be enforced against their out-of-state sales. (*Id.*)  Chef Chaney fears that, even if he were able to find a non-California seller of foie gras products who would ship such products to him in California, *he* would face prosecution under § 25982 for his participation in such products' being deemed to have somehow been "sold in California." (*Id.* ¶ 6.)

1  "sale" as "the act of selling — specifically:  the *transfer of ownership of and title* to

2  property from one person to another for a price."  *See, e.g.,* https://www.merriam-

3  webster.com/ dictionary/sale (emphasis added).  On its face and under its plain mean-

4  ing, § 25982 thus bars "the transfer of ownership of and title to" certain foie gras

5  products only if those acts take place "*in California*."

6
         2.    **Unlike Other Statutes, § 25982 Does Not Include Any Special or**
7              **More Expansive Definition of the Term "Sold in California."**

8        Second, § 25982 does not include any special definition of the term "sold in

9  California" that would extend it to sales *outside* California — whereas that particular

10  term itself and the term "sale" are specially defined in numerous other statutes.  For

11  example, the same term — "sold in California" — is specially defined in section 22761

12  of the Business and Professions Code, regulating smartphones, as follows:  "'Sold in

13  California,' or any variation thereof, means that the smartphone is sold at retail from a

14  location within the state, or the smartphone is sold *and shipped to an end-use con-*

15  *sumer at an address within the state*."  Cal. Bus. & Prof. Code § 22761(a)(4).

16        Indeed, examples abound even in the same Health and Safety Code in which

17  § 25982 appears.  Section 25990 provides that a "business owner or operator shall not

18  knowingly engage in the *sale within the state*" of pork from pigs raised in a certain

19  manner, Cal. Health & Safety Code § 25990(b), and section 25991 provides a special

20  definition of "sale" for that statute:  "For purposes of this section, a sale *shall be*

21  *deemed to occur at the location* where the buyer *takes physical possession of an*

22  *item* covered by Section 25990."  Cal. Health & Safety Code § 25991(o).  Likewise,

23  section 14950 of the Health and Safety Code section 14950, part of the California

24  Cigarette Fire Safety and Firefighter Protection Act, provides that "sale" or "sell"

25  "means *any transfer,* exchange, or barter, *in any manner* or by any means whatever,

26  or *any agreement* for these purposes."  Cal. Health & Safety Code § 14950(10).  *See*

27  *also, e.g.*, Cal. Health & Safety Code § 24532(a) ("As used in this chapter [regulating

28  the sale of bunk beds], 'sale' or 'sell' means remanufacturing, retrofitting, selling,

*contracting to sell or resell*, leasing, subletting, or otherwise placing in the stream of commerce."); Cal. Health & Safety Code § 108042(k) ("Sell" or "sale" in product recall statute "means a transfer for consideration of title or of the right to use, by lease or sales contract, *including*, but not limited to, *transactions conducted through* sales outlets, catalogs, or *the Internet or any other similar electronic means*."). In sharp contrast, the Legislature assigned no such special or expansive meanings to be applied to foie gras products.

### 3. There Is No *Actual* Evidence of Legislative Intent to Extend to Out-of-State Sales.

Third, there is no *actual* evidence of any legislative intent to the contrary. Nothing in Senate Bill 1520 (2004) or the statute's legislative history addressed "sales" other than in passing, let alone evinced an intent to reach sales in other States. While Defendant makes much of the Ninth Circuit's conjecture that the Legislature must have intended to "discourage the consumption of products produced by force feeding birds and prevent complicity in a practice that it deemed cruel to animals," that language was pulled from thin air, without a single citation to any California source or authority. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 952 (9th Cir. 2013). Instead, the Ninth Circuit compared § 25982 to a statute banning the slaughter of horsemeat for human consumption — whereas § 25982 does not ban either the slaughter of ducks or the consumption of their fattened livers. Indeed — putting aside the fact that nothing in S.B. 1520 even purports to ban the "consumption" of foie gras from force-fed birds — this divination of the Legislature's intention runs directly contrary to statements made by even the legislator who introduced the bill, Senator John Burton, that "[t]his bill has nothing to do ... with banning, uh, foie gras." (Dkt. 118-5 [Tenenbaum Decl. 5/14/2014 at ¶ 2].)

### 4. Absent a Special Definition, California Courts Look to the Commercial Code's Default Rule for Where a Sale of Goods Is Deemed to Take Place

- 18 -

Fourth, the California Commercial Code provides a default rule to determine the place of sale where, as here, a statute does not further define a "sale." The California Courts of Appeal have applied the UCC's definition of "sale" to situations where, as here, a product is shipped to a California consumer from an out-of-state seller: "The State Tax Law … does not set forth any rule for determining the point at which title passes. Since the sales at issue in this appeal were negotiated at retailers in a California city *but had to be shipped to the California consumer from an out-of-state location, title passed out of state* under section 2401[(2)]." *City of South San Francisco v. Board of Equalization*, 232 Cal.App.4th 707, 728 (Cal. Ct. App. 2014) (emphasis added); *see also City of Fontana v. Cal. Dep't of Tax & Fee Admin.*, 17 Cal.App.5th 899, 905 (Cal. Ct. App. 2017) (noting that state board "did not exceed its authority 'by using section 2401[(2)]'" to determine location of sale).

Section 2106 of the Commercial Code defines a "sale" (not unlike the dictionary does): "A 'sale' consists in the passing of title from the seller to the buyer for a price (Section 2401)." Cal. Comm. Code § 2106. Section 2401, in turn, provides: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods … and in particular …(a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment[.]" Cal. Comm. Code 2401(a)(2).

Defendant has suggested (e.g., in his motion to dismiss) that the UCC does not apply because section 2102 of the UCC provides that "Division 2 'does not impair or repeal any statute regulating sales to consumers' or 'any specified classes of buyers.'" (Dkt. 214 at 7 (citing UCC § 2102).) Defendant takes this to mean that the UCC "cannot properly be used to interpret section 25982" because section 2102 makes the UCC inapplicable to instances in which another statute regulates *what* may be sold to consumers. *Id.* This argument misunderstands section 2102's limitation on the applicability of the UCC to consumer transactions. As the official California Code

Comment to section 2102 clarifies, that provision was intended to "exclude certain special statutes pertaining to sales to *unique groups of buyers*."  Cal. Code Comment to Cal. Comm. Code § 2102 (emphasis added); *see Mysel v. Gross*, 70 Cal.App.3d Supp. 10, 14 n.2 (Sup. Ct. App. Dep't 1977) (citing code comment and rejecting argument that this "impair or repeal" phrase rendered code inapplicable since statute at issue "applie[d] to all contracts of sale").

By contrast, § 25982 is not a special statute pertaining to sales to unique groups of buyers; it applies to all sales of foie gras products in California, regardless of the type of buyer.  Moreover, the rule as to impairment or repeal actually operates in the exactly the opposite direction from that argued by Defendant:  the Commercial Code provides that "*no part of it shall be deemed to be impliedly repealed by subsequent legislation*" — such as § 25982 — "if such construction can reasonably be avoided." Cal. Comm. Code § 1104 (emphasis added).  Unlike Defendant, Plaintiffs offer a construction that comports with the plain language of § 25982, the UCC, and, as explained in more detail below, constitutional principles.

> **5.   The Legislature Knows Full Well How to Proscribe the Conduct Defendant Is Now Threatening to Punish — Such as the Shipment, Distribution, or Delivery of Foie Gras Products — But It Chose Not to Prohibit That Activity.**

Fifth, it is obvious that the Legislature decided *not* to include any of the *other* statutory terms it knows how to use when it seeks to ban products from even being shipped to California, such as bans on shipping, distribution, or physical delivery to a consumer.  *E.g.*, Cal. Bus. & Prof. Code § 22761(a)(4) ( "'Sold in California,' or any variation thereof, means that the smartphone is sold at retail from a location within the state, or the smartphone is *sold and shipped to an end-use consumer at an address within the state*."); Cal. Food & Agric. Code § 27519.5 ("'Shipped egg' means an egg that is produced outside the State of California and *shipped into the state* for purposes of resale or use by a direct user."); Cal. Health & Safety Code § 25996 (providing that certain shelled eggs "shall not be sold or *contracted for sale for human consumption*

in California"); Cal. Health & Safety Code § 11107.2(d)(3)-(4) ("Sell" or "sale" of prohibited nonodorized butane means "to furnish, give away, exchange, transfer, *deliver,* surrender, distribute, or supply, in exchange for money or any other consideration"; "seller" means any person ... that sells nonodorized butane *to any customer within this state*."); Cal. Pen. Code § 597z(a)(2) ("For the purposes of this section, the sale of a dog or dogs shall not be considered complete ... unless and until the seller physically transfers the dog or dogs to the purchaser."); Cal. Rev. & Tax Code § 25135(a) ("Sales of tangible personal property are in this state if: (1) The property is *delivered or shipped* to a purchaser ...within this state regardless of the f.o.b. point or other conditions of the sale."); Cal. Corp. Code § 25008 (defining sale of security to include when "the security is *delivered to the purchaser in this state*").

Legislatures know exactly how to extend a ban to out-of-state sales of animal products that are transported into their states.  In Maryland, for example, two bills introduced last month define a "retail pet store" to include one that sells household pets "by internet transaction," Md. Sen. Bill 625 (Feb. 3, 2020) (available at http://mgaleg. maryland.gov/2020RS/bills/sb/sb0625f.pdf), and prohibit the "transport into or within the State, by common carrier or other for-hire transportation service, [of] cats or dogs for sale or transfer in the State," Md. Sen. Bill 626 (Feb. 3, 2020) (available at http://mgaleg.maryland.gov/2020RS/bills/sb/sb0626f.pdf).  While Defendant would like this Court to read such expansive provisions into § 25982, the California Legislature said nothing of the sort when it prohibited a product from simply being "sold in California."  The Legislature's choice not to do so with respect to § 25982 compels this Court to conclude that a "sale" under § 25982 does not include a transaction in which an out-of-state sells and transfers title to foie gras products outside California, even if the products are shipped to a recipient in California.

### 6. Applying § 25982 to Sales from Out-of-State Sellers Would Violate the Presumption Against Extraterritoriality.

Sixth, interpreting § 25982's ban on foie gras products "sold in California" as

applying only to sales that actually take place within California — and not those consummated in other States — will satisfy an important canon of statutory interpretation.  The California Supreme Court applies a "presumption against extraterritoriality" to California statutes.  "However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) (cleaned up).  There is nothing in § 25982 (or the provisions enacted with it) that suggests that the Legislature intended to reach Plaintiffs' foie gras products sold in other States — even if a product is sent to someone in California.

### 7. Declaring § 25982 Applicable Only to Products Sold by Sellers *in California* Respects the Doctrine of Constitutional Avoidance.

Seventh, under the "doctrine of constitutional avoidance," statutes should not be construed to raise constitutional issues "if any other possible construction remains available." *People v. Garcia*, 2 Cal.5th 792, 804 (2017).  This canon "reflects the prudential concern that constitutional issues not be needlessly confronted." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).  In this case, two of Plaintiffs' causes of action (which will ultimately be the subject of a Ninth Circuit appeal) arise under dormant Commerce Clause doctrine and depend on the burden that § 25982 imposes on interstate and foreign commerce.  The doctrine of constitutional avoidance provides yet another reason for this Court to declare that § 25982's ban on products "sold in California" does not apply to products sold in other States — i.e., when title passes outside California from an out-of-state seller to a buyer at the time and place of shipment outside California — as such a declaration will avoid magnifying the burden that § 25982 already imposes on interstate commerce.

*       *       *

All of the foregoing support a construction of § 25982 that is limited to circumstances where foie gras products are actually "sold in California"— and that does not punish the sale of products in *other* States, even if they are ultimately shipped to addresses in California.  As the United States Supreme Court held in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 573 (1996), one State "does not have the power, however, to punish [a private business] for conduct that was lawful where it occurred and that had no impact on [that State] or its residents.  Nor may [that State] impose sanctions on [the business] in order to deter conduct that is lawful in other jurisdictions."  Plaintiffs' interpretation ensures that § 25982 does not let California impose civil penalties on out-of-state sellers of wholesome, unadulterated USDA-approved poultry products for sales that take place outside California — where they are entirely legal — merely because those products are ultimately sent to a recipient in California.

### D.   Extending the Application of § 25982 to the Sale of Plaintiffs' Products Outside California Based on Their Shipment to an Address in California Would Lead to Absurd Results — and Would Only Magnify the Statute's Burden on Interstate and Foreign Commerce.

Finally, while Defendant has claimed that "absurd results" would ensue if this Court adopts the UCC's default rule for determining the place of sale under § 25982 — or if the Court does not otherwise expand the term "sold in California" to mean "sold outside California but shipped here" — it is actually Defendant's position that would create a host of absurdities.  Defendant's view is that § 25982 applies to "all sales of force-fed foie gras products purchased from an out-of-state seller that are delivered to a buyer in California."  (Dkt. 214 at p. 5, lns. 15-17.)  Under this view, the act of delivery to a buyer in California is what would trigger application of the statute, such that third-party delivery companies such as FedEx and UPS (or even the Post Office) would become accomplices to violations of § 25982.  Moreover, it is hard to imagine that the Legislature intended to allow a Californian to purchase foie gras products outside California and physically carry them back here himself (or have a friend bring or ship them to him) while making it unlawful for him to use the convenience of a common

1   carrier to deliver them for him.

2           While States certainly have police power over farmers and farm animals within

3   their borders — as well as the power to regulate the *in-state* sales of products from

4   those animals — what is absurd is the attempt by a State such as California to prohibit

5   even the *shipment* by out-of-state sellers to recipients in California of wholesome

6   poultry products that are sold *outside* California based solely on the way a farm animal

7   was fed *outside* California.  *Cf. Sam Francis Fdn. v. Christies, Inc.*, 784 F.3d 1320,

8   1323 (9th Cir. 2015) (applying California law to sales by California resident that take

9   place outside of California is an unconstitutional extraterritorial regulation).  And what

10  would further be absurd is a result in this case that transmogrifies the term "sold in

11  California" in § 25982 to include even the interstate *shipment* of a wholesome poultry

12  product produced in another State from animals raised in another State — and sold by

13  a seller in another State — merely because that wholesome product is shipped to a

14  recipient in California.  As Plaintiffs have pointed out in their pending motion for

15  reconsideration (Dkt. 215) to be heard concurrently with this motion, another

16  chambers of this Court just recently recognized that the allegation that "California has

17  no legitimate local interest in farming conditions in other state" is sufficient to suggest

18  "the absence of any benefits that would justify [a ban on sale of food products from

19  animals raised outside California] alleged burden on interstate commerce."  *North*

20  *American Meat Institute v. Becerra*, No. 2:19-cv-08569-CAS (FFMx), 2020 WL

21  919153 at *3 (C.D. Cal. Feb. 24, 2020).  *See* Dkt. 215.

22                                          *    *    *

23          If California had intended for § 25982 to sweep as widely as Defendant now

24  claims it did, then the Legislature could — and would — have said as much.  California

25  banned the force feeding of ducks in California, Cal. Health & Safety Code § 25981,

26  and made it unlawful for a resulting liver product to be "sold in California."  The

27  Legislature never made it unlawful for foie gras to be "delivered" or "sent" or

28  "shipped" or "transported" to California in connection with a sale *outside* the state —

even though the Legislature has those terms in its lexicon and regularly uses them in other statutes.  Based on all the points above, the only sensible way to read § 25982 is that the prohibition on a foie gras product being "sold in California" does not include products that have been sold by an out-of-state seller and delivered to a shipping company *outside* California, even if the products are sent to an address in California.

## CONCLUSION

For the foregoing reasons, this Court should:  (1) grant Plaintiffs' motion for summary judgment on their First Cause of Action for Declaratory Relief; (2) issue a judgment declaring § 25982 unenforceable against sales of Plaintiffs' foie gras products by out-of-state sellers that are shipped to addresses in California (i.e., after title has passed from a seller *outside* the State of California), and more particularly where, as described above, *out-of-state* sellers accept Internet or other remote orders for foie gras products *outside* California and deliver foie gras products to shippers *outside* California for shipment to addresses in California; and (3) issue a permanent injunction restraining Defendant from enforcing § 25982 against such sales of Plaintiffs' foie gras products.

Dated:        March 16, 2020              Respectfully submitted,

                                          */s/ Michael Tenenbaum*
                                          Michael Tenenbaum, Esq.
                                          THE OFFICE OF MICHAEL TENENBAUM, ESQ.
                                          *Counsel for Plaintiffs*