Michael Tenenbaum, Esq. (No. 186850)
mt@post.harvard.edu
THE OFFICE OF MICHAEL TENENBAUM, ESQ.
1431 Ocean Ave., Ste. 400
Santa Monica, CA  90401-2136
Tel    (424) 246-8685
Fax    (424) 203-4285

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and SEAN "HOT" CHANEY, an individual;<br><br>Plaintiffs,<br><br>– against –<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California;<br><br>Defendant. | Case No. 2:12-cv-05735-SVW-RZ<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:        April 13, 2020<br>Time:        1:30 p.m.<br>Courtroom: 10A<br><br>Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF OPPOSITION ......................................... 1

THE RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ................... 2

ARGUMENT....................................................................................................... 3

I.     The Legal Standard on a Motion to Dismiss Requires the Court to Accept
       Plaintiffs' Factual Allegations as True and to Determine Whether They
       State a Claim for Declaratory Relief as a Matter of Law................................. 3

II.    Plaintiffs Have Sufficiently Alleged a Claim for a Declaratory Judgment
       that § 25982 Does Not Apply to Sales of Their Foie Gras Products that
       Take Place Outside California, Even if a Product is Sent to a Recipient in
       California............................................................................................................ 4

       A.     Plaintiffs Satisfy the Legal Standard for a Declaratory Relief Claim....... 4

       B.     Plaintiffs' Complaint Alleges Concrete Facts Enabling This Court
              to Declare Whether § 25982 Applies When Their Foie Gras
              Products Are Sold Outside California and Shipped Here ...................... 5

       C.     Section 25982 Applies Only to a Product Actually "Sold in
              California"—Not to Products Sold Outside the State But Sent
              Here—And Defendant Provides No Sensible Reasons to Rule
              Otherwise. ............................................................................................ 8

              1.     The Plain Language of § 25982 Is Limited to Products "Sold
                     in California".............................................................................. 8

              2.     Unlike Other Statutes, § 25982 Does Not Include Any
                     Special or More Expansive Definition of the Term "Sold in
                     California"................................................................................... 8

              3.     There Is No Actual Evidence of Legislative Intent to Extend
                     § 25982 to Out-of-State Sales. ................................................. 10

              4.     Absent a Special Definition, California Courts Look to the
                     Commercial Code's Default Rule for Where a Sale of Goods
                     Is Deemed to Take Place. ......................................................... 12

              5.     The Legislature Knows Full Well How to Proscribe the
                     Conduct Defendant Is Now Threatening to Punish — Such

as the Shipment, Distribution, or Delivery of Foie Gras Products — But It Chose Not to Prohibit That Activity. ............ 14

6.    Applying § 25982 to Sales from Out-of-State Sellers Would Violate the Presumption Against Extraterritoriality ................... 15

7.    Declaring § 25982 Applicable Only to Products Sold by Sellers in California to Buyers in California Respects the Doctrine of Constitutional Avoidance........................................ 15

D.    Extending the Application of § 25982 to the Sale of Plaintiffs' Products Outside California Based on Their Shipment to an Address in California — As Defendant Proposes — Would Lead to Absurd Results and Would Only Magnify the State's Burden on Interstate and Foreign Commerce. ....................................... 16

CONCLUSION ................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 4

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Becerra*,
    870 F.3d 1140 (9th Cir. 2017) ................................................................. 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................... 4

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 573 (1996) ........................... 16

*City of Fontana v. Cal. Dep't of Tax & Fee Admin.*,
    17 Cal.App.5th 899 (Cal. Ct. App. 2017) ............................................... 12

*City of South San Francisco v. Board of Equalization*,
    232 Cal.App.4th 707 (Cal. Ct. App. 2014) ............................................. 12

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*,
    485 U.S. 568 (1988) ................................................................................ 15

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ............. 5

*Mysel v. Gross*, 70 Cal.App.3d Supp. 10 (Sup. Ct. App. Dep't 1977) ........ 13

*North American Meat Institute v. Becerra*,
    No. 2:19-cv-08569-CAS, 2020 WL 919153 (C.D. Cal. Feb. 24, 2020) ......... 18

*People v. Garcia*, 2 Cal.5th 792 (2017) ....................................................... 15

*Sam Francis Fdn. v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) ........... 18

*Sharkey v. O'Neal*, 778 F.3d 767 (9th Cir. 2015) ......................................... 4

*Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) ............................ 15

*W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011) ....... 5

**Statutes, Regulations, and Rules**

28 U.S.C. § 2201  ............................................................................................ 4

Fed. R. Civ. P. 8  ............................................................................................. 3

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Fed. R. Civ. P. 12 ................................................................................................. 3

Fed. R. Civ. P. 57 ................................................................................................. 4

Cal. Bus. & Prof. Code § 22761 ...................................................................... 9, 13

Cal. Comm. Code § 1104 ..................................................................................... 13

Cal. Comm. Code § 2102 ................................................................................ 12, 13

Cal. Comm. Code § 2106 ..................................................................................... 12

Cal. Comm. Code § 2401 ..................................................................................... 12

Cal. Corp. Code § 25008 ...................................................................................... 14

Cal. Food & Agric. Code § 27519.5 ...................................................................... 13

Cal. Health & Safety Code § 108042 ...................................................................... 9

Cal. Health & Safety Code § 11107.2 .................................................................... 14

Cal. Health & Safety Code § 14950 ........................................................................ 9

Cal. Health & Safety Code § 24532 ........................................................................ 9

Cal. Health & Safety Code § 25982 ................................................................. *passim*

Cal. Health & Safety Code § 25990 ........................................................................ 9

Cal. Health & Safety Code § 25991 ........................................................................ 9

Cal. Health & Safety Code § 25996 ...................................................................... 14

Cal. Pen. Code § 597z .......................................................................................... 14

Cal. Rev. & Tax Code § 25135 .............................................................................. 14

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION AND SUMMARY OF OPPOSITION

Section 25982 of the California Health and Safety Code provides that "[a] product may not be *sold in California* if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size" (emphasis added). As the Court certainly knows, the parties are locked in a long-running controversy in light of Defendant's continuing threats to enforce § 25982 against the sale of Plaintiffs' foie gras products. Defendant contends that the California ban applies even to sales consummated *outside* California by out-of-state sellers if foie gras products are so much as shipped or received here.

The Court's recent order on Plaintiffs' First Cause of Action for declaratory relief made no determination of the phrase "sold in California" as used in § 25982, let alone as applied when Plaintiffs' foie gras products are sold by sellers outside California but sent to recipients here. The Court declined to issue a declaratory judgement at that time, explaining that "[t]he exact circumstances of the sale (including how, when, and where title is passed or the goods are delivered) are not properly before us because they have not been presented with sufficient specificity." (Dkt. 212 at 8.) The Court granted Plaintiffs leave to amend their declaratory relief claim, which they have done.

Plaintiffs' Fourth Amended Complaint provides precisely the factual allegations this Court needs to determine whether § 25982 applies to the sales of Plaintiffs' foie gras products at issue in this case. Plaintiffs have clearly and specifically alleged that they and out-of-state sellers of their products in New York, New Jersey, Nevada, and other States receive orders through the Internet (or by telephone or email), fulfill those orders from their non-California facilities, and deliver their products to shippers (e.g., FedEx or UPS) outside California, who then transport the products to the recipient's address — which, until Plaintiffs were forced to refrain from doing so out of fear of prosecution under § 25982, was often in California (and which would resume if this Court grants the declaratory and injunctive relief Plaintiffs seek).

This Court should now resolve the question of whether § 25982 applies to such

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

sales — the answer to which should be that the statute does *not* extend to them and was never intended to reach those sales.  Put simply, Defendant's motion to dismiss must fail because:  (1) Defendant attempts to re-write § 25982 so as to broaden it beyond anything the Legislature *actually enacted*; and (2) Defendant makes it sound as if Plaintiffs' *only* argument is that § 25982 is somehow *exclusively* governed by the Uniform Commercial Code.  That California's Commercial Code includes a default rule — defining the location of a sale as the place where title is transferred and designates that place as the location where the seller delivers to a shipper (which matches the dictionary's definition) — is just one among seven broader arguments that favor Plaintiffs' legal position on this claim.

Plaintiffs' claim for declaratory relief is further supported by:  the plain language of § 25982; the absence of any special or more expansive definition of the term "sold in California" that would extend to delivery from outside California; the lack of any actual evidence of legislative intent to include such transactions; the Legislature's decision not to include any of the statutory terms it does when it seeks to ban products from even being transported or shipped to California; the presumption against extraterritoriality; and the doctrine of constitutional avoidance.  These all support a construction of § 25982 that is limited to foie gras products that are actually "sold in California" — and that does not punish the sale of products in other States, even if the products are ultimately shipped to addresses in California.

Accordingly, the Court should deny Defendant's motion to dismiss — and should grant Plaintiffs' cross-motion for summary judgment on this cause of action.

## THE RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The procedural background of this action is well-known to the Court.  Plaintiffs thus provide here only a brief recitation of the developments relevant to this motion.  Plaintiffs filed this action on July 2, 2012, challenging the constitutionality and application of § 25982.  (Dkt. 1.)  Plaintiffs have amended their complaint at several points — but only *once* following a ruling on a motion to dismiss.  Most recently, Defendant

moved to dismiss Plaintiffs' Third Amended Complaint, and Plaintiffs filed an opposition and a cross-motion for summary judgment. (Dkt. 202, 205.)[1] On January 14, 2020, this Court issued an order granting Defendant's motion and denying Plaintiffs' motion. (Dkt. 212.) In its order, the Court permitted Plaintiffs to amend their cause of action for declaratory relief. (*Id.* at p. 9.)

On February 4, 2020, Plaintiffs filed their Fourth Amended Complaint ("4AC"), which sets forth their amended cause of action for declaratory relief. The 4AC includes a host of more specific allegations — as set forth more fully in Section II.B *infra* — regarding the manner in which Plaintiffs' foie gras products are sold outside of California but shipped to recipients here. Whether through other sellers or by Hudson Valley itself, Plaintiffs' allegations crystallize the issue to be decided by the Court, especially as Defendant continues to threaten to enforce § 25982 against the sale of Plaintiffs' products by out-of-state sellers who so much as cause foie gras products to be shipped to recipients in California. (Dkt. 213 at ¶¶ 112-132.)

## ARGUMENT

### I. The Legal Standard on a Motion to Dismiss Requires the Court to Accept Plaintiffs' Factual Allegations as True and to Determine Whether They State a Claim for Declaratory Relief as a Matter of Law.

A motion to dismiss challenges the legal sufficiency of the claims in the complaint. Fed. R. Civ. P. 12(b)(6). A complaint "that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[1] Defendant's motion incorrectly recites that, in the most recent exchange of dispositive motions, "Plaintiffs moved for partial summary judgment on their Commerce Clause and 'impossibility preemption' claims." (Dkt. 214 at 3:13-14.) The claims that were actually the subject of Plaintiffs' motion for summary judgment did not include their Commerce Clause claim but, rather, included both their claim for impossibility preemption and their claim for declaratory relief as to the application of § 25982 to out-of-state sales.

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party*." Sharkey v. O'Neal*, 778 F.3d 767, 768 n.1 (9th Cir. 2015).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## II.   Plaintiffs Have Sufficiently Alleged a Claim for a Declaratory Judgment that § 25982 Does Not Apply to Sales of Their Foie Gras Products that Take Place Outside California, Even if a Product is Sent to a Recipient in California.

### A.   Plaintiffs Satisfy the Legal Standard for Declaratory Relief Claim.

The legal standard on a claim for declaratory relief is well-known to this Court. Fed. R. Civ. P. 57.  "In a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  Plaintiffs' First Cause of Action squarely alleges "a case of actual controversy" as required for this Court to provide the declaratory relief Plaintiffs seek.  28 U.S.C. § 2201; Fed. R. Civ. P. 57.  The amended complaint alleges that "Hudson Valley itself and sellers of Plaintiffs' foie gras products outside California now face prosecution under § 25982 by Defendant … when the[ir] products are shipped to persons in California after title has passed from a seller outside California[.]"[2]  (4AC ¶ 127.)

---

[2]     Defendant's Motion suggests that Plaintiffs' "First Cause of Action can only be asserted by Hudson Valley, because Plaintiffs Canadian Association and Chaney do not allege that they sell force-fed foie gras products from outside California to buyers in California."  Mot. at 5 n.3.  Defendant's objections misunderstand Plaintiffs' allega-tions and the relief sought.  The claim for declaratory relief asks this Court to declare § 25982 unenforceable as applied to out-of-state sales of foie gras products that are "shipped to persons in California after title has passed from a seller outside the State of California, such as where, as described above, out-of-state sellers accept orders for foie gras products outside California and deliver foie gras products to shippers outside California for delivery to a shipping address in California."  (4AC, Prayer for Relief ¶ A1.)  The relief sought plainly embraces the controversy alleged with respect to each Plaintiff, including Chef Chaney as a former seller and ready buyer of out-of-state foie

As this Court ruled in January, "Plaintiffs assert that the law should be read not to capture circumstances where an offending product is 'shipped to the California consumer from an out-of-state location, [but] title passed out of state ….' *Id.* Through its responsive pleadings, California has demonstrated that it would seek to enforce § 25982 against such a sale." (Dkt. 212 at p. 8 (modifications in original).)

"The dilemma posed by that coercion — putting the challenger to the choice between abandoning his rights or risking prosecution — is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007). Plaintiffs thus satisfy the legal standard for declaratory relief.

## B. Plaintiffs' Complaint Alleges Concrete Facts Enabling This Court to Declare Whether § 25982 Applies When Their Foie Gras Products Are Sold Outside California and Shipped Here.

In January, this Court granted Defendant's motion to dismiss Plaintiffs' First Cause of Action — while granting Plaintiffs leave to amend — because "[t]he exact circumstances of the sale (including how, when, and where title is passed or the goods are delivered) are not properly before us because they have not been presented with sufficient specificity." (Dkt. 212 at p. 8.) The Court invited Plaintiffs to adduce additional facts in the form of an ***evidentiary*** submission: "For this Court to properly grant declaratory relief, Plaintiffs must present declarations or other evidence which establish sufficient facts for the Court to determine Plaintiffs' proposed course of action." (*Id.* at p. 9.) Plaintiffs have done so in connection with their cross-motion for summary judgment. (Dkts. 218-1, 216.) In any event, Plaintiffs' Fourth Amended Complaint now provides the Court with sufficient allegations to determine whether

---

gras products (4AC ¶¶ 5, 19) (i.e., a "person" in California to whom foie gras would be shipped) and the Canadian Farmers as an organization representing its members whose foie gras products are sold outside of California and would be shipped to recipients in California if lawful, (*id.* ¶ 17). *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 483 (9th Cir. 2011) ("It is common ground that an organization can assert the standing of its members.") (internal edits omitted).

§ 25982 applies to out-of-state sales of Plaintiffs' foie gras products that are sent to addresses in California — and to conclude that § 25982 does not.

To begin with, Plaintiffs' Fourth Amended Complaint specifically alleges that Hudson Valley, which is based in New York, receives orders for foie gras through its website, which is hosted on a server outside California. (4AC ¶ 117-118.)  The website can be accessed from anywhere in the world (including California). (*Id.* ¶ 117.)  It collects both a credit card billing address and a shipping address, but Hudson Valley cannot determine from any information it collects whether the purchaser is actually in California or not at the time of purchase. (*Id.*)  "When it receives a completed order for a foie gras product through its website (or by email, telephone, or fax), Hudson Valley personnel in Sullivan County, New York, fulfill the order from Hudson Valley's facilities in Sullivan County, New York.  Hudson Valley physically delivers the product to a third-party shipping company, typically UPS or FedEx, and typically for overnight delivery, at its facilities in Sullivan County, New York.  The shipping company thereafter transports the product to the recipient designated by the purchaser, which, until as recently as January 2019, included recipients in California." (*Id.* ¶ 119.)  It bears repeating that Hudson Valley raises its ducks and turns them into wholesome poultry products for sale in commerce in full compliance with New York and federal law. (*Id.* ¶¶ 18, 94.)

The same goes for other non-California sellers of Plaintiffs' foie gras products, such as those from the Canadian Farmers — who also raise their ducks in full compliance with the laws of Quebec and of Canada. (*Id.* ¶¶ 17, 95.)  Plaintiffs' Fourth Amended Complaint alleges that "the foie gras products produced by both Hudson Valley and members of the Canadian Farmers, such as Palmex — have also been sold through numerous third-party sellers that are similarly not located in California but that have (before January 8, 2019) shipped to recipients in California and that have been forced to refrain from doing so based on Defendant's and the District Attorneys' threats of prosecution under § 25982." (*Id.* ¶ 122.)  "These sales similarly take place

through the out-of-state sellers' websites as well as through orders placed by email, telephone, and fax"—all outside California.  (*Id.*)

As common examples, Plaintiffs explain that "leading third-party sellers of the Canadian Farmers' foie gras products are located in New Jersey and Pennsylvania.  Like Hudson Valley itself, these sellers all operate and accept orders through their websites outside California (or through emails or telephone calls directed to them outside California."  (*Id.* ¶ 123.)  "Like Hudson Valley itself, these sellers' personnel outside California fulfill the orders from their facilities outside California.  They physically deliver the foie gras products to third-party shipping companies, typically UPS or FedEx (and in some cases the United States Postal Service), at their facilities outside California. The shipping companies thereafter transport the product to the recipients designated by the purchasers, which, until as recently as January 2019, included recipients in California."  (*Id.* ¶ 124.)  These out-of-state sellers of Plaintiffs' foie gras products had shipped to recipients in California while this Court's permanent injunction against enforcement of § 25982 was in effect but (since January 2019) have been forced to refrain from doing so based on threats of prosecution from Defendant and the District Attorneys he supervises.  (*Id.* ¶¶ 122, 127, 131-132.)

These allegations establish the exact situations for which Plaintiffs' First Cause of Action seeks declaratory relief.[3]  Indeed, in an effort to respond to the concern the Court articulated in its recent order regarding the many hypothetical situations that *could* place in question the applicability of § 25982, Plaintiffs' Fourth Amended Complaint alleges the following:  "For the sake of clarification, Plaintiffs do not seek a determination as to any of the three 'hypotheticals' imagined by the Court in its order

---

[3]     While Plaintiffs are confident that the allegations in the Fourth Amended Complaint are particular enough for this Court to address the immediate (and non-hypothetical) question of § 25982's inapplicability to remote sales of their products, the declarations filed in support of Plaintiffs' motion for summary judgment provide additional evidence regarding the manner of Plaintiffs' out-of-state foie gras sales. (Dkts. 216-1 – 216-5.)

of January 1[4], 2020, and Plaintiffs do not believe that there is a dispute between the parties regarding the enforceability of § 25982 in those examples." (*Id.* ¶ 129.) Plaintiffs have thus provided concrete allegations enabling this Court to answer the specific question of whether § 25982 applies to their conduct while avoiding any other hypothetical situation not properly before the Court.

### C. Section 25982 Applies Only to a Product Actually "Sold in California" — Not to Products Sold Outside the State But Sent Here — and Defendant Provides No Sensible Reasons to Rule Otherwise.

As in his prior motion to dismiss, Defendant's primary argument is that "the application of § 25982 does not turn on where title passes under the UCC. Rather, section 25982 applies to all sales in California, including *all sales of force-fed foie gras products purchased from an out-of-state seller that are delivered to a buyer in California*." Mot. at p. 5 (emphasis added). There are at least seven compelling reasons for this Court to reject Defendant's reading of § 25982 — and to declare that it does *not* apply to Plaintiffs' foie gras products sold in commerce by out-of-state sellers *outside* California, even if the products are sent to addresses here.

#### 1. The Plain Language of § 25982 Is Limited to Products "Sold in California."

First, the plain language of § 25982 demonstrates that it prohibits a subject foie gras product from being "sold *in California*." The term does not prohibit any products from being sold anywhere *outside* California. And the dictionary defines "sale" as "the act of selling — specifically: the *transfer of ownership of and title* to property from one person to another for a price." *See, e.g.*, https://www.merriamwebster.com/dictionary/sale (emphasis added). On its face and under its plain meaning, § 25982 thus bars "the transfer of ownership of and title to" certain foie gras products only if those acts take place "*in California*."

#### 2. Unlike Other Statutes, § 25982 Does Not Include Any Special or More Expansive Definition of the Term "Sold in California."

Second, § 25982 does not include any special definition of the term "sold in

California" that would extend it to sales *outside* California — whereas that particular term itself and the term "sale" are specially defined in numerous other statutes.  For example, the same term — "sold in California" — is given a special definition in section 22761 of the Business and Professions Code, regulating smartphones, as follows: "'Sold in California,' or any variation thereof, means that the smartphone is sold at retail from a location within the state, or the smartphone is sold *and shipped to an end-use consumer at an address within the state*."  Cal. Bus. & Prof. Code § 22761(a)(4).

Examples abound even in the same Health and Safety Code in which § 25982 appears.  Section 25990 provides that a "business owner or operator shall not knowingly engage in the *sale within the state*" of pork from pigs raised in a certain manner, Cal. Health & Safety Code § 25990(b), and section 25991 provides a special definition of "sale" for that statute: "For purposes of this section, a *sale shall be deemed to occur at the location where the buyer takes physical possession of an item* covered by Section 25990."  Cal. Health & Safety Code § 25991(o) (emphasis added).  Likewise, section 14950 of the Health and Safety Code, part of the California Cigarette Fire Safety and Firefighter Protection Act, provides that "sale" or "sell" "means *any transfer*, exchange, or barter, *in any manner* or by any means whatever, or *any agreement* for these purposes."  Cal. Health & Safety Code § 14950(10) (emphasis added).  *See also, e.g.*, Cal. Health & Safety Code § 24532(a) ("As used in this chapter [regulating the sale of bunk beds], 'sale' or 'sell' means remanufacturing, retrofitting, selling, *contracting to sell or resell*, leasing, subletting, or otherwise placing in the stream of commerce.") (emphasis added); Cal. Health & Safety Code § 108042(k) ("Sell" or "sale" in product recall statute "means a transfer for consideration of title or of the right to use, by lease or sales contract, *including*, but not limited to, *transactions conducted through* sales outlets, catalogs, or *the Internet or any other similar electronic means*.") (emphasis added).  In sharp contrast, the Legislature assigned no such special or expansive meanings for purposes of when foie gras products are "sold" under § 25982.

### 3. There Is No Actual Evidence of Legislative Intent to Extend § 25982 to Out-of-State Sales.

Third, there is no *actual* evidence of any legislative intent to the contrary. Nothing in Senate Bill 1520 (2004) or the statute's legislative history addressed "sales" other than in passing, let alone evinced an intent to reach sales in other States.  Indeed, Plaintiffs' Fourth Amended Complaint details the decades of legislative proceedings and history — and the statements regarding the intent of the legislation made therein — that culminated in § 25982.  (4AC ¶¶ 22-24, 48-71.)  This history evidences *zero* intent to apply § 25982 to out-of-state foie gras sales.  In 1975 and 1976, John Burton, then a congressman from California who would go on, decades later, to introduce a state-level foie gras ban in the California Senate, tried and failed to garner support for federal legislation banning the "importation" of foie gras products to the United States.  (*Id.* ¶¶ 22-24.)  Mr. Burton's first two attempts to ban foie gras products reveal that he knew full well how to draft a law that attempts to ban the *importation* of a product containing foie gras, as opposed to just its *sale*.  (*Id.* ¶ 24.)  Mr. Burton's legislative draftsmanship is important in interpreting the scope of § 25982 of the California Health and Safety Code.

As a California State Senator in 2004, Mr. Burton introduced Senate Bill 1520 to target the force-feeding of ducks in California.  (*Id.* ¶ 48.)  Mr. Burton's focus was on the production of foie gras in California.  The various legislative analyses all state: "According to the author's office, this bill is intended to prohibit the force feeding of ducks and geese for the purpose of enlarging their livers beyond their normal size."  (*Id.* ¶ 53.)  The legislative analyses of SB 1520 discuss the number of ducks *in California* that would be affected by the bill as well as *the volume of sales in California*.  (*Id.* ¶ 55.)  By contrast, the legislative analyses made no more than a passing reference to Plaintiff Hudson Valley or the sales of foie gras products in other States, let alone the shipment of foie gras products from other States to recipients in California.  And, despite the fact that at least one of the Canadian Farmers was selling foie gras in the

United States at the time, the legislative analyses make no reference to any foie gras producer in Canada. (*Id.* ¶ 56.)

Further evidence of the California Legislature's intention that SB 1520 would be operative only as to in-state producers of foie gras is found in the provisions of the legislation that were included in the penultimate amendment to the bill. On June 21, 2004, the California Assembly added a subsection (d) to section 25984, which declared the Legislature's "support" for assisting "*California businesses* that currently rely on the sale of force fed birds" to identify alternate business opportunities. (*Id.* ¶62.) Although this subsection was ultimately removed from the final version of the bill, this language demonstrates that the persons or entities whose agricultural practices the California Legislature was targeting in S.B. 1520 were not out-of-state businesses such as Hudson Valley and the Canadian farmers (who had no participation in California's legislative process) but, rather, only sellers *in California*. (*Id.* ¶ 63.)

While Defendant makes much of the Ninth Circuit's conjecture that the Legislature must have intended to "discourage the consumption of products produced by force feeding birds and prevent complicity in a practice that it deemed cruel to animals," that language was pulled from thin air, without a single citation to any California source or authority. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 952 (9th Cir. 2013). Instead, the Ninth Circuit compared § 25982 to a statute banning the slaughter of horsemeat for human consumption — whereas § 25982 does not ban either the slaughter of ducks or the consumption of their fattened livers. Indeed — putting aside the fact that nothing in S.B. 1520 even purports to ban the "consumption" of foie gras from force-fed birds — this divination of the Legislature's intention runs directly contrary to statements made by even the legislator who introduced the bill, Senator John Burton, that "[t]his bill has nothing to do … with banning, uh, foie gras." (Dkt. 118-5 [Tenenbaum Decl. 5/14/2014 at ¶ 2].) And in his signing message, then Governor Arnold Schwarzenegger wrote to the Senate, "This bill's intent is to ban the current foie gras production practice . . . It does not ban the

- 11 -

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

food product, foie gras."

### 4. Absent a Special Definition, California Courts Look to the Commercial Code's Default Rule for Where a Sale of Goods Is Deemed to Take Place.

Fourth, the California Commercial Code provides a default rule to determine the place of sale where, as here, a statute does not further define a "sale."  The California Courts of Appeal have applied the UCC's definition of "sale" to situations where, as here, a product is shipped to a California consumer from an out-of-state seller:  "The State Tax Law … does not set forth any rule for determining the point at which title passes.  Since the sales at issue in this appeal were negotiated at retailers in a California city *but had to be shipped to the California consumer from an out-of-state location, title passed out of state* under section 2401[(2)]."  *City of South San Francisco v. Board of Equalization*, 232 Cal.App.4th 707, 728 (Cal. Ct. App. 2014) (emphasis added); *see also City of Fontana v. Cal. Dep't of Tax & Fee Admin.*, 17 Cal.App.5th 899, 905 (Cal. Ct. App. 2017) (noting that state board "did not exceed its authority 'by using section 2401[(2)]'" to determine location of sale).

Section 2106 of the Commercial Code defines a "sale" (not unlike the dictionary does):  "A 'sale' consists in the passing of title from the seller to the buyer for a price (Section 2401)."  Cal. Comm. Code § 2106.  Section 2401, in turn, provides: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods … and in particular … (a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment[.]"  Cal. Comm. Code 2401(a)(2).

In his motion, Defendant argues that the UCC does not apply because section 2102 of the UCC provides that "Division 2 'does not impair or repeal any statute regulating sales to consumers' or 'any specified classes of buyers.'"  Mot. at p. 7 (citing UCC § 2102.)  Defendant takes this to mean that the UCC "cannot properly be used to interpret section 25982" because section 2102 makes the UCC inapplicable to instances

- 12 -

in which another statute regulates *what* may be sold to consumers.  *Id.*  This argument misunderstands section 2102's limitation on the applicability of the UCC to consumer transactions.  As the official California Code Comment to section 2102 explains, that provision was intended to "exclude certain special statutes pertaining to sales to *unique groups of buyers*."  Cal. Code Comment to Cal. Comm. Code § 2102 (emphasis added); *see Mysel v. Gross*, 70 Cal.App.3d Supp. 10, 14 n.2 (Sup. Ct. App. Dep't 1977) (citing code comment and rejecting argument that this "impair or repeal" phrase rendered code inapplicable since statute at issue "applie[d] to all contracts of sale").

By contrast, § 25982 is not a special statute pertaining to sales to unique groups of buyers; it applies to all sales of foie gras products in California, regardless of the type of buyer — whether a consumer or a business, such as a restaurant.  Moreover, the rule as to impairment or repeal actually operates in exactly the opposite direction from that argued by Defendant:  the Commercial Code provides that "*no part of it shall be deemed to be impliedly repealed by subsequent legislation*" — such as § 25982— "if such construction can reasonably be avoided."  Cal. Comm. Code § 1104 (emphasis added).  Defendant asks the Court to ignore the UCC's default rule regarding the location of sale, but Defendant has no authority for any other definition of the term "sold in California" in the statute (§ 25982) he is threatening to enforce

### 5.   The Legislature Knows Full Well How to Proscribe the Conduct Defendant Is Now Threatening to Punish — Such as the Shipment, Distribution, or Delivery of Foie Gras Products — But It Chose Not to Prohibit That Activity.

Fifth, it is obvious that the Legislature decided *not* to include any of the *other* statutory terms it knows how to use when it seeks to ban products from even being shipped to California, such as bans on shipping, distribution, or physical delivery to a consumer.  *E.g.*, Cal. Bus. & Prof. Code § 22761(a)(4) ("'Sold in California,' or any variation thereof, means that the smartphone is sold at retail from a location within the state, or the smartphone is *sold and shipped to an end-use consumer at an address within the state*."); Cal. Food & Agric. Code § 27519.5 ("'Shipped egg' means an egg

that is produced outside the State of California and *shipped into the state* for purposes of resale or use by a direct user."); Cal. Health & Safety Code § 25996 (providing that certain shelled eggs "shall not be sold or *contracted for sale for human consumption* in California"); Cal. Health & Safety Code § 11107.2(d)(3)-(4) ("Sell" or "sale" of prohibited nonodorized butane means "to furnish, give away, exchange, transfer, *deliver*, surrender, distribute, or supply, in exchange for money or any other consideration"; "seller" means any person ... that sells nonodorized butane *to any customer within this state*."); Cal. Pen. Code § 597z(a)(2) ("For the purposes of this section, the sale of a dog or dogs shall not be considered complete ... unless and until the seller physically transfers the dog or dogs to the purchaser."); Cal. Rev. & Tax Code§ 25135(a) ("Sales of tangible personal property are in this state if: (1) The property is *delivered or shipped* to a purchaser ... within this state regardless of the f.o.b. point or other conditions of the sale."); Cal. Corp. Code § 25008 (defining sale of security to include when "the security is *delivered to the purchaser in this state*").

Legislatures know exactly how to extend a ban to out-of-state sales of animal products that are transported into their states. In Maryland, for example, two bills introduced last month define a "retail pet store" to include one that sells household pets "by internet transaction," Md. Sen. Bill 625 (Feb. 3, 2020) (available at http://mgaleg. maryland.gov/2020RS/bills/sb/sb0625f.pdf), and prohibit the "transport into or with in the State, by common carrier or other for-hire transportation service, [of] cats or dogs for sale or transfer in the State," Md. Sen. Bill 626 (Feb. 3, 2020) (available at http://mgaleg.maryland.gov/2020RS/bills/sb/sb0626f.pdf).

While Defendant would like this Court to read such expansive provisions into § 25982, the California Legislature said nothing of the sort when it prohibited a pro-duct from being "sold in California." The Legislature's choice *not* to do so in § 25982 compels this Court to conclude that a "sale" under § 25982 does not include a transaction in which an out-of-state seller sells and transfers title to foie gras products outside California, even if the products are shipped to a recipient in California.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### 6.    Applying § 25982 to Sales from Out-of-State Sellers Would Violate the Presumption Against Extraterritoriality.

Sixth, interpreting § 25982's ban on foie gras products "sold in California" as applying only to sales that actually take place within California — and not those consummated in other States — will satisfy an important canon of statutory interpretation. The California Supreme Court applies a "presumption against extraterritoriality" to California statutes. "However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) (cleaned up). There is nothing in § 25982 (or the provisions enacted with it) that suggests that the Legislature intended to reach Plaintiffs' foie gras products sold in other States — even if the products are sent to someone in California.

### 7.    Declaring § 25982 Applicable Only to Products Sold by Sellers in California to Buyers in California Respects the Doctrine of Constitutional Avoidance.

Seventh, under the "doctrine of constitutional avoidance," statutes should not be construed to raise constitutional issues "if any other possible construction remains available." *People v. Garcia*, 2 Cal.5th 792, 804 (2017). This canon "reflects the prudential concern that constitutional issues not be needlessly confronted." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). In this case, two of Plaintiffs' causes of action (which will ultimately be the subject of a Ninth Circuit appeal) arise under dormant Commerce Clause doctrine and depend on the extent of the burden that § 25982 imposes on interstate and foreign commerce. The doctrine of constitutional avoidance provides yet another reason for this Court to declare that § 25982's ban on products "sold in California" does not apply to products sold in other States — i.e., when title passes outside California from an out-of-state seller to a buyer at the time and place of shipment outside California —

- 15 -

as such a declaration will avoid magnifying the burden that § 25982 already imposes on interstate commerce.

＊　　＊　　＊

All of the foregoing support a construction of § 25982 which is limited to circumstances where foie gras products are actually "sold in California" — and which does not punish the sale of products in *other* States, even if they are ultimately shipped to addresses in California.  As the United States Supreme Court held in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 573 (1996), one State "does not have the power, however, to punish [a private business] for conduct that was lawful where it occurred and that had no impact on [that State] or its residents.  Nor may [that State] impose sanctions on [the business] in order to deter conduct that is lawful in other jurisdictions."  Plaintiffs' interpretation ensures that § 25982 does not let California impose civil penalties on out-of-state sellers of wholesome, unadulterated USDA-approved poultry products for sales that take place outside California — where they are entirely legal — merely because those products are ultimately sent to a recipient in California.

**D.    Extending the Application of § 25982 to the Sale of Plaintiffs' Products Outside California Based on Their Shipment to an Address in California—As Defendant Proposes—Would Lead to Absurd Results and Would Only Magnify the State's Burden on Interstate and Foreign Commerce.**

Defendant's final argument in favor of dismissing Plaintiffs' declaratory relief claim is that "Plaintiffs fail to grapple with the various absurdities that would result if the UCC could be used, as they suggest, to avoid operation of section 25982."  To the contrary, it is actually Defendant's position that would create a host of absurdities.  Defendant's view is that § 25982 applies to "all sales of force-fed foie gras products purchased from an out-of-state seller that are delivered to a buyer in California."  Mot. at p. 5.  Under this sweeping view, the act of delivery to a buyer in California is what would trigger application of the statute, such that third-party delivery companies such as FedEx and UPS (or even the Post Office) would become accomplices to violations of

§ 25982.  Moreover, it is hard to imagine that the Legislature intended to allow a Californian to purchase foie gras products outside California and physically carry them back here himself (or have a friend bring or ship them to him) while making it unlawful for him to use the convenience of a common carrier to deliver them for him.

In support of its claim that Plaintiffs' proposed construction is absurd, Defendant argues that, "if adopted, [the rule advocated by Plaintiffs] would enable the sale of the proscribed products in the California market."  Mot. at p. 7.  Defendant ignores an essential aspect of § 25982, which demonstrates why Plaintiffs' rule accords with the intention of the Legislature:  under Plaintiffs' cited definitions, the "sale" is *not* "in the California market."  Of course, nothing in § 25982 even purports to prohibit the mere receipt, possession, or consumption of foie gras products in California.

Defendant attacks a straw man when he asserts that the UCC cannot apply because a "buyer and seller could easily circumvent § 25982 simply by agreeing between them that title to an otherwise-prohibited product passes outside of California, *even if both the buyer and the seller are in California.*"  Mot. at p. 8 (emphasis added).  Plaintiffs are not asking this Court to make any determination whatsoever regarding § 25982's application where both a buyer and seller are in California.  Quite explicitly, Plaintiffs seek a declaration only that § 25982 is unenforceable against out-of-state sellers of foie gras products that are "shipped to persons in California after title has passed from a seller outside the State of California, such as where … *out-of-state sellers* accept orders for foie gras products outside California and deliver foie gras products to shippers outside California for *delivery to a shipping address in California.*"  (4AC, Prayer for Relief ¶ A1 (emphasis added).)  And in any event, Plaintiffs have squarely alleged that they do not contract around the UCC's default rule with their customers, making Defendant's exaggerated argument irrelevant to the facts Plaintiffs ask this Court to rule on.  (4AC ¶¶ 121, 126.)

Indeed, the sheer breadth of the rule urged by Defendant should cause this Court to rethink the burden Defendant's interpretation would impose on interstate commerce.

1    While States certainly have police power over farmers and farm animals within their

2    borders — as well as the power to regulate the in-state sales of products from those

3    animals — what is "absurd" is the attempt by a State such as California to prohibit

4    even the shipment by out-of-state sellers to recipients in California of wholesome

5    poultry products that are sold outside California (especially when based solely on the

6    way a farm animal was fed outside California). *Cf. Sam Francis Fdn. v. Christies, Inc.*,

7    784 F.3d 1320, 1323 (9th Cir. 2015) (California statute as applied to sales by Califor-

8    nia resident that take place outside of California is an unconstitutional extraterritorial

9    regulation).

10        And what would further be "absurd" is a result in this case that transmogrifies

11   the term "sold in California" in § 25982 to include even the interstate shipment of a

12   wholesome poultry product produced in another State from animals raised in another

13   State — and sold by a seller in another State — merely because that wholesome product

14   is shipped to a recipient in California.  As Plaintiffs have pointed out in their pending

15   motion for reconsideration (Dkt. 215) to be heard concurrently with their pending

16   motion for summary judgment (Dkts. 218-1 & 216, another chambers of this Court

17   just recently recognized that the allegation that "California has no legitimate local

18   interest in farming conditions in other states" is sufficient to suggest "the absence of

19   any benefits that would justify [a statute's ban on sale of food products from animals

20   raised outside California] alleged burden on interstate commerce." *North American*

21   *Meat Institute v. Becerra*, No. 2:19-cv-08569-CAS, 2020 WL 919153 at *3 (C.D. Cal.

22   Feb. 24, 2020).  (*See* Dkt. 215.)

23                                *    *    *

24        If California had intended for § 25982 to apply as broadly as Defendant would

25   now like, then the Legislature would have provided as much.  Plaintiffs have more than

26   adequately alleged their claim for declaratory relief as to the application of § 25982.  If

27   the Court were to believe any additional facts were necessary to state a claim, Plaintiffs

28   would respectfully request leave to further amend to include them.  Yet this motion

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

should not even be a close one.  Indeed, as more fully developed in Plaintiffs' cross-motion for summary judgment (Dkts. 218-1 & 216), the Court should now issue a declaratory judgment in Plaintiffs' favor on this claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.

Dated:          March 23, 2020          Respectfully submitted,

*/s/ Michael Tenenbaum*
Michael Tenenbaum, Esq.
THE OFFICE OF MICHAEL TENENBAUM, ESQ.
*Counsel for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS