1  Michael Tenenbaum, Esq. (No. 186850)
2  *mt@post.harvard.edu*
   THE OFFICE OF MICHAEL TENENBAUM, ESQ.
3  1431 Ocean Ave., Ste. 400
   Santa Monica, CA  90401-2136
4  Tel     (424) 246-8685
5  Fax     (424) 203-4285

6  *Counsel for Plaintiffs*

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        WESTERN DIVISION

11
   ASSOCIATION DES ÉLEVEURS DE          Case No. 2:12-cv-05735-SVW-RZ
12 CANARDS ET D'OIES DU QUÉBEC, a
   Canadian nonprofit corporation; HVFG
13 LLC, a New York limited liability      **PLAINTIFFS' REPLY IN SUPPORT**
   company; and SEAN "HOT"                **OF MOTION FOR SUMMARY**
14 CHANEY, an individual;                 **JUDGMENT ON FIRST CAUSE OF**
                                          **ACTION FOR DECLARATORY**
15                                        **RELIEF**
                        Plaintiffs,
16
17            – against –

18
   XAVIER BECERRA, in his official        Date:        April 13, 2020
19 capacity as Attorney General of        Time:        1:30 p.m.
   California;                            Courtroom: 10A
20
21                      Defendant.        Hon. Stephen V. Wilson

22                                        <u>ORAL ARGUMENT REQUESTED</u>
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT .......................................................................................................2

I.    Defendant Fails to Controvert Plaintiffs' Evidentiary Showing — Despite Having Had *Years* to Seek Discovery ...............................................2

      A.    Defendant Does Not Offer an Iota of Evidence to Dispute Any of Plaintiffs' Uncontroverted Facts and Conclusions of Law ......................2

      B.    Defendant Has No Valid Excuse for Failing to Come Up with Any Evidence — or for Belatedly Seeking to Undertake Full-Blown Discovery ...............................................................................................3

II.    Plaintiffs Are Entitled to Summary Judgment on Their First Cause of Action for a Declaratory Judgment that § 25982 Does Not Apply to Sales of Their Foie Gras Products that Take Place Outside California, Even if the Product is Sent to a Recipient in California. ..............................................5

      A.    Defendant's Claim that Plaintiffs Have Submitted "Virtually the Same" Evidence to Support Their Entitlement to Declaratory Relief is Belied by Plaintiffs' Declarations ............................................5

      B.    Defendant Does Not Actually Address Plaintiffs' Arguments that the Plain Language and Legislative History of § 25982 Support Plaintiffs. ...............................................................................................7

      C.    Defendant Presents No Sensible Reason to Ignore California's Own Commercial Code Where, As Here, California's Legislature Chose Not to Provide a Special Definition of "Sold in California" ..........8

      D.    Defendant Does Even Attempt to Address Plaintiffs' Argument that California's Legislature Chose Not to Use Language Defining "Sold in California" to Include "Delivered in California" — Even Though It Has Done So in Countless Other Statutes. .............................12

      E.    Defendant's Responses to Plaintiffs' Other Arguments Are Meritless .........................................................................................13

CONCLUSION .................................................................................................14

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 2

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
        729 F.3d 937 (9th Cir. 2013) ....................................................................... 7

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) .................................................. 15

*Burlington N. Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*,
        323 F.3d 767 (9th Cir. 2003) ....................................................................... 4

*Cornwell v. Electro Central Credit Union*, 439 F.3d 1018 (9th Cir. 2006) ............... 3

*City of South San Francisco v. Board of Equalization*,
        232 Cal.App.4th 707 (Cal. Ct. App. 2014) ................................................ 13

*English v. Ralph Williams Ford*, 17 Cal. App. 3d 1038 (Cal. Ct. App. 1971) ........... 9

*Mysel v. Gross*, 70 Cal.App.3d Supp. 10 (Sup. Ct. App. Dep't 1977) ..................... 9

*North American Meat Institute v. Becerra*,
        No. 2:19-cv-08569-CAS, 2020 WL 919153 (C.D. Cal. Feb. 24, 2020) .......... 11

*People v. Garcia*, 2 Cal.5th 792 (2017) .................................................................... 13

*Quartz of Southern California, Inc. v. Mullen Bros., Inc.*,
        151 Cal. App. 4th 901 (Cal. Ct. App. 2007) ................................................. 9

*Sam Francis Fdn. v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) ......................... 11

*South Dakota v. Wayfair*, 138 S. Ct. 2080 (2018) .................................................... 8

*Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004) ......................................................... 5

*Tatum v. City and County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006) ......... 4, 5

## Statutes, Regulations, and Rules

Fed. R. Civ. P. 26  ............................................................................................. 1, 3, 4

Fed. R. Civ. P. 56 ....................................................................... 5

L.R. 56-3 ............................................................................... 2, 3

Cal. Bus. & Prof. Code § 22761 ........................................... 12

Cal. Comm. Code § 1104 ....................................................... 9

Cal. Comm. Code § 2102 ................................................... 8, 9

Cal. Food & Agric. Code § 27519.5 ..................................... 12

Cal. Health & Safety Code § 25982 ................................. *passim*

Cal. Health & Safety Code § 25996 ..................................... 12

Cal. Vehicle Code § 5600 ....................................................... 9

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1

## INTRODUCTION

2      Defendant's opposition is remarkable for what it fails to offer: even a scrap of

3  evidence to dispute the concrete facts adduced by Plaintiffs regarding the places and

4  manner in which out-of-state sellers of their foie gras products receive orders, process

5  them, and ship the products — all of which takes place outside of California.  The

6  Court will surely note that Defendant's opposition papers do not include any declara-

7  tions addressing the material facts on this motion, any documentary exhibits, or even a

8  request for judicial notice.  Indeed, Defendant offers zero evidence to controvert any-

9  thing in Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law.  (Dkt.

10 221.)  Under this Court's own rules, the Court must credit the facts in Plaintiffs' motion

11 and conclude that § 25982 does not apply to sales of Plaintiffs' foie gras products con-

12 summated outside California, even if the products are sent to a recipient in California.

13     Defendant's only excuse for having come up with a goose egg in terms of oppo-

14 sing evidence is that he hasn't taken any discovery and wishes to start now.  But there is

15 no reason to indulge Defendant's request to delay ruling on this motion when he has

16 been sleeping on his rights.  Contrary to Defendant's say-so (Chang Decl. ¶ 3), the

17 parties had a Rule 26(f) conference of counsel back in *2012*, and Defendant has thus

18 been free to seek discovery at various points since then — including during the *entire*

19 *year* since Defendant said he may wish to do so in connection with a prior summary

20 judgment motion on this claim.  Fed. R. Civ. P. 26(d); Tenenbaum Reply Decl. ¶¶ 2-9.

21     In any event, Defendant fails to even identify a single piece of potential evidence

22 that he expects would somehow defeat this motion.  Indeed, considering the nature of

23 Plaintiffs' showing, what could Defendant expect to discover to controvert the manner

24 in which out-of-state sellers of Plaintiffs' foie gras products conduct their sales?  Absent

25 any evidence that Plaintiffs' declarants are perjurers — and of course, there is none —

26 Defendant cannot avoid summary judgment through a mere hope that unspecified

27 discovery may somehow undermine Plaintiffs' ample evidence.

28     Defendant's legal arguments against Plaintiffs' declaratory judgment claim are

- 1 -

just as devoid of merit.  Without any authority whatsoever, Defendant insists that where a product is sold for purposes of § 25982 has nothing to do with where title passes — and that § 25982 reaches so far as to encompass "all sales of products resulting from force feeding purchased from an out-of-state seller that are delivered to a buyer in California."  (Dkt. 220 ("Opp") at p. 4, lns. 9-13.)  Defendant fails to provide any authority — nothing in the language of the statute, its legislative history, or any case law whatsoever — to support his view that § 25982 reaches out-of-state commercial sales of products sent to a purchaser here.

Unlike other statutes, § 25982 does not include any of the terms that would give it this expansive reach.  Defendant tries to avoid application of the default rule in California's Commercial code for determining the place of sale, though he fails to offer any legal authority to support the application of any other rule.  Rather, as Defendant is forced to acknowledge in passing, § 25892 should be read as intended to proscribe only sales of foie gras products "within the state's borders."  (Dkt. 220 at p. 4, ln. 14.)  Plaintiffs are thus entitled to a declaratory judgment that § 25982 does not apply to sales of Plaintiffs' products by sellers *outside* California, i.e., where a seller in another State delivers them to a shipping company outside California, even if sent to a recipient in California.

## ARGUMENT

### I.  Defendant Fails to Controvert Plaintiffs' Evidentiary Showing — Despite Having Had *Years* to Seek Discovery.

On summary judgment, once the moving party has met its initial burden, the nonmoving party must affirmatively present admissible evidence and identify specific facts sufficient to show a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Defendant fails to do that here.

### A.  Defendant Does Not Offer an Iota of Evidence to Dispute Any of Plaintiffs' Uncontroverted Facts and Conclusions of Law.

Defendant failed to "controvert[] *by declaration or other written evidence* filed in opposition to the motion" even *a single one* of the 21 material facts in Plaintiffs'

- 2 -

Statement of Uncontroverted Facts and Conclusions of Law (Dkt. 216-7, ¶¶ 2-22), which Defendant was required to do under this Court's local rules in order to survive this motion.  L.R. 56-3 (emphasis added).  As a result, the Court may — and here must — assume that these material facts "are admitted to exist without controversy." *Id.*  Instead, in each of his 21 responses, Defendant cut-and-pasted the exact same boilerplate language — which does not even attempt to dispute their materiality or truth.  (Dkt. 221, ¶¶ 2-22.)  Indeed, Defendant's responses reflect that, after eight years of litigation, he cannot even determine the extent to which Plaintiffs facts are "relevant" — and his responses notably *do not even say that he "disputes"* Plaintiffs' facts.  (*Id.*)

In light of this Court's rules governing motions for summary judgment, the entire contents of Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law (Dkt. 216-7) must thus be deemed "admitted to exist without controversy."  L.R. 56-3.  And Defendant's failure to adduce any conflicting evidence is inexcusable.

## B. Defendant Has No Valid Excuse for Failing to Come Up with Any Evidence — or for Belatedly Seeking to Undertake Full-Blown Discovery.

In an attempt to avoid the day of reckoning in this action, Defendant makes a disingenuous plea for full-blown discovery on issues relating to Plaintiffs' First Cause of Action (Chang Decl. ¶ 5b-f), including tangential issues such as Plaintiffs' "marketing" of their foie gras products (*id.* ¶ 5a).  But, both figuratively and literally, Defendant's request would amount to a wild goose chase.  The Court should deny this indulgence in any event.

A party requesting additional time to oppose a summary judgment motion must demonstrate that it "diligently pursued previous discovery opportunities." *Cornwell v. Electro Central Credit Union*, 439 F.3d 1018, 1026 (9th Cir. 2006) (citation omitted).  For the second time in a year, Defendant makes the conclusory — and demonstrably untrue — claims that he needs "an opportunity to conduct discovery" and has "not yet [been] permitted" to seek discovery because he believes that "[t]he parties have also not yet conferred as required by Federal Rule of Civil Procedure 26(f)."  (Opp. at p. 13;

Chang Decl. ¶ 3.)  At this point in the case, Defendant must know these statements are unfounded — and that this Court's own docket reflects as much.

As described in the declaration of Plaintiffs' counsel from October 2012, which was filed with the parties' stipulation:  "During the week of September 24, 2012, without awaiting the issuance of a scheduling order, I conferred with Defendants' counsel as required under FRCP 26(f) to discuss the subjects of that rule, *including expected discovery* …"  (Dkt. 94-1 at ¶ 3 (emphasis added).  That was back in *2012*, such that — under FRCP 26(d)(1) — Defendant has been free to seek discovery in this case starting more than seven *years* ago, including on Plaintiffs' First Cause of Action, which was first included in Plaintiffs' pleading filed on April 2, 2014, i.e., more than *five years* ago.  (Dkt. 112 [2AC] at p. 25.)  (It is true that this case has twice been stayed pending appeals, but Defendant has never bothered to initiate any discovery during any of the periods — before October 17, 2012; during the nearly 11 months between March 12, 2014, and February 4, 2015; or in the more than 14 months since January 8, 2019 — when there has been no stay in effect.  (Tenenbaum Reply Decl. ¶¶ 2-4, 8-9; Dkts. 95, 107, 160 & 174.)[1]

Defendant has known about Plaintiffs' declaratory relief claim for years and yet never lifted a finger in terms of discovery.  Indeed, Defendant even told Plaintiffs' counsel back in March of 2019 — a full year ago — that he may wish to take discovery on the subjects of this motion, and he said it again in February of this year.  (Tenenbaum Reply Decl. ¶¶ 5-8.)  But he never bothered to do so.  (*Id.* at ¶¶ 6-9.)  In any event, this Court should uphold the requirement that a party "must identify by affidavit the *specific facts* that further discovery would reveal, and explain why those facts would preclude summary judgment."  *Tatum v. City and County of San Francisco*, 441

---

[1]     Even if Defendant had been operating under the misimpression that the parties had not yet conferred under Rule 26(f), he has not done anything about it, such as propose a time for the conference he thinks has never taken place, seek a stipulation or order allowing discovery, or even deliver any early Rule 34 requests.  (*Id.* at ¶ 9 n.1.  Fed. R. Civ. P. 26(d)(2).)

F.3d 1090, 1100 (9th Cir. 2006); *see also Burlington N. Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 775-76 (9th Cir. 2003) (requiring "some basis for believing that the information sought **actually exists**") (emphasis added).  Defendant does not even come close to satisfying this requirement.

Instead, Defendant lists only topics, such as "The specific type of sales transactions against which the District Attorneys allegedly threatened enforcement of section 25982." (Opp. at pp. 11-12.)  Yet Defendant does not explain why — at any point in the more than five years since the District Attorneys sent letters threatening sellers of Plaintiffs' foie gras products — he could not obtain this information directly from those District Attorneys, over whom the California Constitution gives him "direct supervision."  Cal. Const. Art. 5, § 13.  Nor does Defendant show what specific facts he believes would somehow preclude summary judgment, which is fatal to his request.  *See Tatum*, 441 F.3d at 1101 ("Absent a showing by Tatum that additional discovery would have revealed specific facts precluding summary judgment, the district court did not abuse its discretion by denying Tatum's request for a continuance[.]").[2]

## II.   Plaintiffs Are Entitled to Summary Judgment on Their First Cause of Action for a Declaratory Judgment that § 25982 Does Not Apply to Sales of Their Foie Gras Products that Take Place Outside California, Even if the Product is Sent to a Recipient in California.

### A.   Defendant's Claim that Plaintiffs Have Submitted "Virtually the Same" Evidence to Support Their Entitlement to Declaratory Relief is Belied by Plaintiffs' Declarations.

Defendant argues that this Court should "decline to exercise its authority under the Declaratory Judgment Act" because Plaintiffs have failed to present evidence of "the exact circumstances" on which the Court should rule.  (Opp. at p. 10 (citing Dkt. 212

---

[2]   Defendant merely lists virtually every general discovery procedure under the Federal Rules.  (Opp. at pp. 12-13.)  *Cf. Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (requiring that nonmoving party "must state with some precision the materials he hopes to obtain with further discovery") (citation omitted).  That is the exact opposite of the specific, targeted discovery that Rule 56(d) requires — and yet another reason that compels the denial of Defendant's attempt to delay a judgment against him.

at p. 8).)  Instead, Defendant argues that Plaintiffs have presented "virtually the same" allegations "as those this Court found deficient in denying Plaintiffs' prior motion for summary judgment." (*Id.* at p. 11.)  Defendant would have the Court conclude that "Plaintiffs have failed to cure the defect that the Court identified." (*Id.* at p. 10.)

This suggestion is contradicted by a look at the docket itself.  While Plaintiffs' earlier complaint alleged broadly that Plaintiffs' foie gras products are sold through pre-paid Internet (and telephone) orders placed with Plaintiffs and other sellers outside California, their current pleading goes into the specifics about how these transactions are structured.  (Dkt. 213 [4AC] at ¶¶ 116-132.)  More to the point, in direct response to this Court's invitation to "present declarations or other evidence which establish sufficient facts for this Court to determine Plaintiffs' proposed course of action" (Dkt. 212 at p. 9), Plaintiffs have now submitted *detailed* declarations in support of this motion that describe each aspect of how their products are sold by out-of-state sellers.

For instance, Plaintiffs' newest evidence shows that Hudson Valley's website is hosted on servers located outside California, that its orders are processed at its facilities in Sullivan County, New York, and that it tenders purchasers' foie gras products to third-party shipping companies in New York.  (Henley Decl. ¶¶ 10-12.)  Likewise, Plaintiffs have now supplied detailed evidence showing that foie gras products produced by both Hudson Valley and the Canadian Farmers — including those sold by Palmex, Inc. — are regularly sold in the same manner by third-party sellers outside California, such as D'Artagnan, Inc. ("D'Artagnan"), and Laurel Pine, Living Luxury, LLC ("Laurel Pine"), among others across the country from Nevada to Florida.  (Henley Decl. ¶¶ 7, 15; Smatrakalev Decl. ¶¶ 6, 8.)  These sales take place through the out-of-state sellers' websites as well as through orders placed by email, telephone, and fax — all outside of California.  (Smatrakalev Decl. ¶¶ 6-8; Pine Decl. ¶¶ 2-3; Wertheim Decl. ¶¶ 2-3.)  The sellers' personnel fulfill the orders from their facilities outside California.  (*Id.*)  For instance, Laurel Pine (which sells Palmex's foie gras products) fulfills orders at its facility in Nevada and physically delivers the foie gras products to a third-party

- 6 -

shipping company, typically FedEx, at Laurel Pine's facility in Nevada.  (Smatrakalev Decl. ¶ 8; Pine Decl. ¶ 3.)  Likewise, D'Artagnan fulfills orders at its facility in New Jersey and physically delivers the foie gras products to FedEx in New Jersey.  (Wertheim Decl. ¶ 3.)  The shipping companies then transport the products to recipients designated by the purchasers, which, until as recently as January 2019, included recipients in California.  (Smatrakalev Decl. ¶¶ 6-8; Pine Decl. ¶¶ 2-3; Wertheim Decl. ¶¶ 2-3.)  As noted above, Defendant did not introduce any contrary evidence.

Plaintiffs have adduced ample evidence permitting this Court to rule that § 25982 does not apply to the sale of their foie gras products by out-of-state sellers, even if the products are sent to a recipient in California.

**B.   Defendant Does Not Actually Address Plaintiffs' Arguments that the Plain Language and Legislative History of § 25982 Support Plaintiffs.**

Defendant argues that "both the plain language of the law and legislative intent establish that section 25982 applies to foie gras products resulting from force feeding sold by out-of-state sellers, such as plaintiff Hudson Valley, to buyers in California." (Opp. at p. 5.)  But Defendant cites ***absolutely nothing in the actual legislative history*** of § 25982 to support this claim.  Instead, Defendant relies solely on language that the Ninth Circuit pulled from thin air, without a single citation to any California source or authority.  (*Id.* at p. 4 (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 952 (9th Cir. 2013) (imagining that the Legislature must have intended to "discourage the consumption" of foie gras, even though the Legislature said nothing about consumption).  And with respect to the plain meaning of the words "sold in California," Defendant provides no analysis or authority supporting his interpretation that "sold in California" means "sold by a seller outside California and sent to a recipient in California."  (*See* Opp. at pp. 4-5.)  Defendant certainly does not point to any dictionary, canon of statutory construction, or even a case that interprets a ban on products "sold in California" as applying to commercial sales consummated outside the state.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Instead of actually addressing Plaintiffs' arguments regarding the text and legislative history of § 25982, Defendant makes the conclusory claim that "it is beyond question that California has the authority to regulate [s]ales in the state, including sales from out-of-state sellers to buyers in the state." (Opp. at p. 4.) In support of this circular argument — which contains an implicit premise that a sale by a seller located outside California is somehow a sale within the state — Defendant cites the Supreme Court's opinion in *South Dakota v. Wayfair*, 138 S. Ct. 2080 (2018). But that was a tax case that simply held that a seller's "physical presence" in a state was no longer necessary for the state to require the seller to collect and remit sales tax. *Id.* at 2096-99. Indeed, the Supreme Court in *Wayfair* reiterated that, under the Dormant Commerce Clause, "States may not impose undue burdens on interstate commerce" — a reminder that weighs against interpreting § 25982 to completely prohibit out-of-state commercial sales merely because the product is shipped to a person in California.

### C.   Defendant Presents No Sensible Reason to Ignore California's Own Commercial Code Where, As Here, California's Legislature Chose Not to Provide a Special Definition of "Sold in California."

Defendant claims that the default rule set forth in California's Commercial Code — defining a sale as taking place where the goods are transferred from the seller to the shipper — does not apply to § 25982 for two reasons. First, Defendant argues that the rule does not apply because section 2102 of the UCC provides that "Division 2 'does not impair or repeal any statute regulating sales to consumers.'" (Opp. at p. 5.) Defendant takes this to mean that the UCC "cannot properly be used to interpret section 25982" because section 2102 makes the UCC inapplicable to instances in which another statute regulates *what* may be sold to consumers. (*Id.* at p. 6.) This argument misunderstands section 2102's limitation on the applicability of the UCC to consumer transactions. As the official California Code Comment to section 2102 explains, that provision was intended to "exclude certain special statutes pertaining to sales to *unique groups of buyers*." Cal. Code Comment to Cal. Comm. Code § 2102 (emphasis

1  added); *see Mysel v. Gross*, 70 Cal.App.3d Supp. 10, 14 n.2 (Sup. Ct. App. Dep't 1977)

2  (citing code comment and rejecting argument that this "impair or repeal" phrase

3  rendered code inapplicable since statute at issue "applie[d] to all contracts of sale).  In

4  any event, Plaintiffs are not arguing that the UCC "impairs or repeals" § 25982.

5       Yet § 25982 is not a special statute pertaining to sales to unique groups of

6  buyers; it applies to foie gras products "sold in California," regardless of the type of

7  buyer — whether a consumer *or* a business, such as a restaurant.  In spite of Defen-

8  dant's claim to the contrary (Opp. at p. 8), the statute at issue in *Mysel*, like § 25982,

9  contained no language specifying a "class of buyers" to whom it applies; by its own

10 terms, it applied to all "sales" no matter who the purchaser may be.  *See Mysel*, 70

11 Cal.App.3d Supp. at 14 n.2.  Moreover, the rule as to impairment or repeal actually

12 operates in exactly the opposite direction from that argued by Defendant:  the Commer-

13 cial Code provides that "*no part of it shall be deemed to be impliedly repealed by*

14 *subsequent legislation*" — such as § 25982 — "if such construction can reasonably be

15 avoided."  Cal. Comm. Code § 1104 (emphasis added).

16      Defendant's cases interpreting UCC § 2102 in the context of the California

17 Vehicle Code do nothing to show that the UCC does not apply to § 25982.  Indeed, the

18 California Courts of Appeal in both *Quartz of Southern California, Inc. v. Mullen*

19 *Bros., Inc.*, 151 Cal.App.4th 901, 907 (Cal. Ct. App. 2007), and *English v. Ralph*

20 *Williams Ford*, 17 Cal.App.3d 1038, 1046 (Cal. Ct. App. 1971), made clear that sales

21 of automobiles are not subject to the default rule regarding the passage of title set forth

22 in the UCC because — unlike § 25982 — the Vehicle Code itself contains a provision

23 specifically detailing the manner of passage of title for vehicles (i.e., Vehicle Code

24 § 5600).  The court in *English* even went on to rely on provisions of the UCC.

25      The problem for Defendant in our case is that the Legislature never included the

26 kind of more expansive definition of sale he wishes it did — let alone any definition of

27 sale — or otherwise banned the "shipment" or other conduct incident to commercial

28 sales in other States.  Defendant asks the Court to ignore the UCC's default rule for

ascertaining the location of a sale, but Defendant provides no authority for any other definition of the term "sold in California" in the statute he is threatening to enforce.

Second, Defendant claims the UCC cannot apply because "various absurdities" "would result if the UCC could be used" "to avoid operation of section 25982." (Opp. at p. 6.) To the contrary, it is actually Defendant's position that would create a host of absurdities. Defendant's view is that § 25982 applies to "all sales of force-fed foie gras products purchased from an out-of-state seller that are delivered to a buyer in California." (*Id.* p. 4.) Under this sweeping view, the act of delivery to a buyer in California would trigger application of the statute, such that third-party delivery companies like FedEx and UPS (or even the Post Office) would be complicit in violations of § 25982. Moreover, it is hard to imagine that the Legislature intended to allow a Californian to purchase foie gras products from sellers outside California and physically fetch them himself (or have a friend ship them to him) while making it unlawful for him and an out-of-state seller to use the convenience of a common carrier to deliver them for him.

In support of his claim of absurdity, Defendant argues that, "if adopted, [the rule advocated by Plaintiffs] would enable the sale of the proscribed products in the California market." (Opp. at p. 6.) Defendant ignores an essential aspect of § 25982, which demonstrates why Plaintiffs' rule accords with the intention of the Legislature: nothing in § 25982 even purports to prohibit the delivery, receipt, possession, or consumption of foie gras products in California. Simply put, products sold by out-of-state sellers and delivered to shipping companies outside California are not sold "in the California market."

Defendant attacks a straw man when he asserts that the UCC cannot apply because a "buyer and seller could easily circumvent § 25982 simply by agreeing between them that title to an otherwise-prohibited product passes outside of California, *even if both the buyer and the seller are in California*." (Opp. at pp. 6-7 (emphasis added).) Plaintiffs are not seeking to "circumvent" the law but, rather, need to ensure that, when sellers of their products comply with it to the letter, their sales are not

punished by Defendant.  Indeed, Plaintiffs are not even asking this Court to make any determination regarding § 25982's application where a *seller in California* physically transfers a foie gras product for a price to a *buyer in California*.  And in any event, Plaintiffs have squarely alleged that they do not contract around the UCC's default rule with their customers, making Defendant's exaggerated argument irrelevant to the facts Plaintiffs ask this Court to rule on.  (4AC ¶¶ 121, 126.)

Indeed, the sheer breadth of the rule urged by Defendant should cause this Court to rethink the burden Defendant's interpretation would impose on interstate commerce. While States certainly have police power over farmers and farm animals within their borders — as well as the power to regulate the in-state sales of products from those animals — what is "absurd" is the attempt by a State such as California to prohibit even the interstate shipment by out-of-state sellers of wholesome poultry (especially when based solely on the way a farm animal was fed outside California).  *Cf. Sam Francis Fdn. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (holding California statute as applied to sales by California resident that take place outside California to be unconstitutional extraterritorial regulation).

And what would further be "absurd" is a result in this case that transmogrifies the term "sold in California" in § 25982 to include even the interstate *shipment* of a wholesome poultry product produced in another State from animals raised in another State — and sold by a seller located in another State — merely because that wholesome product is sent to a recipient in California.  As Plaintiffs have pointed out in their pending motion for reconsideration (Dkt. 215), to be heard concurrently with this motion, another chambers of this Court just recently recognized that the allegation that "California has no legitimate local interest in farming conditions in other states" is sufficient to suggest "the absence of any benefits that would justify [a statute's ban on sale of food products from animals raised outside California] alleged burden on interstate commerce."  *North American Meat Institute v. Becerra*, No. 2:19-cv-08569-CAS, 2020 WL 919153 at *3 (C.D. Cal. Feb. 24, 2020).  (*See* Dkt. 215.)

- 11 -

**D.   Defendant Does Even Attempt to Address Plaintiffs' Argument that California's Legislature Chose Not to Use Language Defining "Sold in California" to Include "Delivered in California" — Even Though It Has Done So in Countless Other Statutes.**

Plaintiffs moving papers cited multiple examples of the California Legislature's exercise of its ability to draft statutory language banning products from even being received in California, such as bans on shipping, distribution, or physical delivery to a consumer.  (*See* Mot. at pp. 17-18, 20-21.)  *E.g.*, Cal. Bus. & Prof. Code § 22761(a)(4) ("'Sold in California,' or any variation thereof, means that the smartphone is sold at retail from a location within the state, or the smartphone is ***sold and shipped to an end-use consumer at an address within the state.***"); Cal. Food & Agric. Code § 27519.5 ("'Shipped egg' means an egg that is produced outside the State of California and ***shipped into the state*** for purposes of resale or use by a direct user.").  Plaintiffs even cited section 25996 of the California Health & Safety Code as an example of a California law that was drafted so as to apply not just to a product being "sold" in California but even to one that is "***contracted for sale*** … in California" — a common statutory term entirely absent from § 25982.  Defendant, on the other hand, has failed to identify a single statute using the language "sold in California" that, without more, has been interpreted to include "delivery in California" or anything similar.

Legislatures know exactly how to extend a ban to products from out-of-state that are so much as transported into their states.  While Defendant would like this Court to re-write such expansive provisions into § 25982, the California Legislature said nothing of the sort when it prohibited a product from being "sold in California."  The Legislature's choice ***not*** to do so in § 25982 compels this Court to conclude that a "sale" under § 25982 does not include a transaction in which an out-of-state seller sells and transfers physical possession (and title) to foie gras products outside California, even if the products are shipped to a recipient in California.

**E.   Defendant's Responses to Plaintiffs' Other Arguments Are Meritless.**

Defendant does not provide serious responses to Plaintiffs' remaining arguments.

- 12 -

(Opp. at pp. 8-10.)  First, Defendant attempts to downplay *City of South San Francisco v. Board of Equalization*, 232 Cal.App.4th 707 (Cal. Ct. App. 2014) (and ignores Plaintiffs' similar second case), by simply declaring that application of § 25982 has nothing to do with where title passes.  (Opp. at p. 9.)  But these cases are real examples of courts relying on the California Commercial Code to determine the location of a sale where — like here — the California Legislature does not provide a definition of "sale." And reliance on the Commercial Code's default provision to determine *where* a sale takes place makes sense, since that provision is used in the Uniform Commercial Code adopted by all 50 states.  (*See* https://www.uniformlaws.org/acts/ucc.)

Second, Defendant argues that this Court need not consider the doctrine of constitutional avoidance because two of Plaintiffs' other claims raising constitutional issues (which will ultimately be the subject of a Ninth Circuit appeal) have been dismissed.  (Opp. at p. 10.)  But that does not obviate this Court's obligation to construe § 25982 to avoid constitutional issues, *People v. Garcia*, 2 Cal.5th 792, 804 (2017), especially in light of Plaintiffs' pending motion for reconsideration on one of its dormant Commerce Clause claims.  This Court should declare that § 25982's ban on products "sold in California" does not apply to products sold in other States — i.e., when title passes outside California from an out-of-state seller to a buyer at the time and place of shipment outside California — as such a declaration will avoid magnifying the burden that § 25982 already imposes on interstate commerce.

Defendant further claims his interpretation of § 25982 does not violate the presumption against exterritoriality because "section 25982's application to sales *in California* by out-of-state sellers has no extraterritorial reach."  (Opp. at pp. 9-10 (emphasis in original).)  This claim is silly and assumes as its premise the conclusion Defendant wishes the Court to reach.  The very question for the Court is whether to construe the term "sold in California" to include transactions that take place entirely outside California based on the subsequent shipment of a wholesome poultry product to a recipient (not necessarily even the purchaser himself) in California.  The presumption against

- 13 -

1    extraterritoriality in California law counsels strongly against such overreach.

2          Finally, Defendant's concurrently-filed reply in support of his motion to dismiss

3    includes a full section on a point raised only in a footnote of his opening brief on that

4    motion — and repeated in a footnote in his opposition to this motion (Opp. at p. 10,

5    n.1) — to the effect that neither the Canadian Farmers nor Chef Sean Chaney can assert

6    their present claim.  Defendant is as wrong on this point as he is on the others in his

7    brief.  In the first place, this is not a case involving damages, where the presence of a

8    necessary party may be required to afford complete relief; rather, the claim at issue here

9    is for a declaratory judgment and injunction against enforcement of § 25982, and the

10   summary judgment *evidence* supplied by sellers of the Canadian Farmers' foie gras

11   products readily provides the Court with the facts it requested, without requiring indivi-

12   dual members to join as parties.  In any event, "[i]t is common ground that an organi-

13   zation can assert the standing of its members."  *W. Watersheds Project v. Kraayen-*

14   *brink*, 632 F.3d 472, 483 (9th Cir. 2011).  And, as to Plaintiff Sean Chaney, the

15   Supreme Court has repeatedly held that standing to bring a claim under the dormant

16   Commerce Clause is not limited to out-of-state *sellers* affected by the state law at issue,

17   as at least one federal district court in California has recognized.  "[B]y permitting

18   *purchasers* of disfavored out-of-state products to bring claims in each of those case, the

19   Supreme Court held either implicitly or explicitly that — in at least some circumstances

20   — participants in interstate commerce have a cognizable right to be free of discrimina-

21   tory restraints even when they are not the target of discrimination."  *HomeAway, Inc.*

22   *v. City and County of San Francisco*, No. 14-cv-04859-JCS, 2015 WL 367121, at *8-9

23   (N.D. Cal. Jan. 27, 2015) (collecting cases).

24                              *        *        *

25          If California had intended for § 25982 to apply as broadly as Defendant would

26   now like, then the Legislature would have said as much.  Plaintiffs have provided ample

27   evidence of how their products are sold from outside California as well as evidence

28   supporting a construction of § 25982 that is limited to circumstances where foie gras

1  products are actually "sold in California" — and which does not punish the sale of

2  products in *other* States, even if they are ultimately shipped to addresses in California.

3  As the United States Supreme Court held in *BMW of N. Am., Inc. v. Gore*, 517 U.S.

4  559, 573 (1996), one State "does not have the power, however, to punish [a private

5  business] for conduct that was lawful where it occurred and that had no impact on

6  [that State] or its residents.  Nor may [that State] impose sanctions on [the business] in

7  order to deter conduct that is lawful in other jurisdictions."  Plaintiffs' interpretation

8  ensures that § 25982 does not let California impose civil penalties on out-of-state sellers

9  of wholesome, unadulterated USDA-approved poultry products for sales that take place

10  outside California — where they are entirely legal — merely because those products are

11  ultimately sent to a recipient in California.

## CONCLUSION

13       For the foregoing reasons, this Court should issue the declaratory judgment and

14  permanent injunction requested in Plaintiffs' motion.

16  Dated:        March 30, 2020            Respectfully submitted,

17                                         */s/ Michael Tenenbaum*

18                                         Michael Tenenbaum, Esq.
                                           THE OFFICE OF MICHAEL TENENBAUM, ESQ.

19                                         *Counsel for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT